IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MISSISSIPPI STATE CONFERENCE OF THE
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE;
DR. ANDREA WESLEY; DR. JOSEPH
WESLEY; ROBERT EVANS; GARY
FREDERICKS; PAMELA HAMMER                                              PLAINTIFFS

VS.                                    CIVIL ACTION NO. 3:22-cv-734-DPJ-HSO-LHS

STATE BOARD OF ELECTION
COMMISSIONERS; TATE REEVES, *in his
official capacity as Governor of Mississippi*;
LYNN FITCH, *in her official capacity as
Attorney General of Mississippi*; MICHAEL
WATSON, *in his official capacity as Secretary
of State of Mississippi*; DAN EUBANKS, *in his
official capacity as Ranking House Member of
the Standing Joint Legislative Committee on
Reapportionment and Redistricting*; and DEAN
KIRBY, *in his official capacity as Vice
Chairman of the Standing Joint Legislative
Committee on Reapportionment and
Redistricting*                                                          DEFENDANTS

## MEMORANDUM OF AUTHORITIES IN SUPPORT OF
## LEGISLATIVE DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

This Court should dismiss all claims against the two legislators named as defendants in this case—Dan Eubanks and Dean Kirby ("the Legislative Defendants"). The claims here—that a state law violates Section 2 of the Voting Rights Act and the Fourteenth Amendment—may not be brought against legislators.

1

This lawsuit seeks declaratory and injunctive relief against the enforcement of the 2022 Mississippi laws establishing state senate and state house legislative maps in light of the 2020 census. The Legislative Defendants have no role in enforcing or executing those laws. They are not executive officials. They are legislators. They are improper defendants multiple times over. *First*, this Court lacks subject-matter jurisdiction over any claims against the Legislative Defendants. Those defendants have no role in enforcing the 2022 laws, so any relief ordered against those defendants would not redress Plaintiffs' alleged injury. Plaintiffs thus lack standing to sue the Legislative Defendants. *Second*, sovereign immunity bars Plaintiffs' Fourteenth Amendment claim. That claim is effectively against the State. And no exception to sovereign immunity applies because the Legislative Defendants have no role in executing the challenged laws. *Third*, legislative immunity bars all claims against the Legislative Defendants. The Legislative Defendants have been sued by Plaintiffs in their official legislative capacities related to their legislative acts. They are immune from such suits.

The Legislative Defendants are clearly not proper defendants in this case. The Court should dismiss the claims against the Legislative Defendants forthwith.

## STATEMENT OF FACTS

Consistent with the United States Constitution, see U.S. CONST. art. I, § 2, the Mississippi Constitution directs that every ten years the Legislature must "apportion the state in accordance with the Constitution of the state and of the United States into consecutively numbered senatorial and representative districts of contiguous territory." MISS. CONST. art. 13, § 254. Although the Census Bureau typically releases census data sometime in the spring the year after the census, the Bureau was delayed in releasing the 2020 Census Data—until August 2021. With 2023 elections

and related qualifying deadlines rapidly approaching, the Legislature accordingly began its apportionment work.

That work started with the creation of the Standing Joint Committee[1]—a committee of legislators that is created to deliberate and draw legislative maps. *See* MISS. CODE ANN. §§ 5-3-91 - 5-3-103, 5-3-121. In accordance with state law, the Legislature created the Standing Joint Committee, and the Lieutenant Governor and Speaker of the House called an organizational meeting of the committee on June 30, 2021. At that meeting, the Standing Joint Committee elected former Representative Charles Jim Beckett[2] as Chairman and Senator Dean Kirby as Vice-Chairman, adopted a public records policy, hired and retained counsel, and announced the schedule for public hearings. The Standing Joint Committee conducted public hearings across the State, provided the Census results at several hearings once it was released (on August 12, 2021), and adopted neutral redistricting criteria in an open meeting in November 2021.

The Standing Joint Committee held an open meeting on March 27, 2022, and adopted redistricting plans. On March 29, the Mississippi House of Representatives adopted a House Redistricting Plan (JR 1), and the Mississippi State Senate adopted a Senate Redistricting Plan (JR 202). On March 31, the House adopted JR 202 and the Senate adopted JR 1 and upon their signing and enrolling, those maps (the "2022 Maps") became law.

Once the 2022 Maps became law, the Legislature and the Standing Joint Committee had no remaining role in redistricting and elections. Enforcing and implementing that law is the work

---

[1] The "Standing Joint Committee" is the commonly used name of the Standing Joint Legislative Committee on Reapportionment, which is charged by statute with reapportioning the two chambers of the State Legislature, and the Standing Joint Congressional Redistricting Committee, which is charged by statute with redistricting the State's Congressional seats. *See* MISS. CODE ANN. §§ 5-3-91 - 5-3-103, 5-3-121.

[2] Representative Beckett has since retired from the House of Representatives.

of various executive officials. Centrally, enforcement of legislative redistricting plans is committed to the authority of the State Board of Election Commissioners ("SBEC"), which consists of the Governor, the Secretary of State, and the Attorney General. MISS. CODE ANN. § 23-15-211(1). The SBEC is authorized to rule on candidates' qualifications to run for state legislative offices and to approve the state ballot for such offices. *Id.* § 23-15-211(2). The Secretary of State, local officials, and political parties administer elections. *See* MISS. CODE ANN. § 23-15-211.1 *et seq.* Like every other state legislator, the Legislative Defendants have no role to play in executing, enforcing, or overseeing the 2022 Maps.

## ARGUMENT

### I. THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS AGAINST THE LEGISLATIVE DEFENDANTS BECAUSE THIS COURT LACKS SUBJECT-MATTER JURISDICTION AS TO THOSE CLAIMS.

#### A. Standard for dismissal under Rule 12(b)(1).

Rule 12 of the Federal Rules of Civil Procedure authorizes the dismissal of a case for lack of subject-matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). Without subject-matter jurisdiction, a court lacks power to grant injunctive (or other) relief. *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470-471 (5th Cir. 1985) (injunction vacated on appeal because district court failed to determine whether jurisdiction was proper prior to granting injunctive relief). So a party seeking injunctive relief in federal court must establish the court's subject-matter jurisdiction. *Id.* at 470; *Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001). Further, Plaintiffs have standing to sue only if they present a case or controversy within the meaning of Article III. *See Steel Co. v. Citizens for A Better Env't*, 523 U.S. 83, 102-104 (1998); *Delta Commercial Fisheries Ass'n v. Gulf of Mexico Fishery Mgmt. Council*, 364 F.3d 269, 272 (5th Cir. 2004).

**B. Subject-matter jurisdiction fails as to both of Plaintiffs' claims against the Legislative Defendants because Plaintiffs lack standing to assert those claims.**

Subject-matter jurisdiction fails where the plaintiffs lack Article III standing. *See Stallworth v. Bryant*, 936 F.3d 224, 232 (5th Cir. 2019). When the plaintiffs lack standing, there is no case or controversy under Article III of the U.S. Constitution, the court lacks subject-matter jurisdiction, and the court has no power to proceed. *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982). On a motion under Rule 12(b)(1), "if the Court lacks subject matter jurisdiction to adjudicate one or more of the Plaintiff's claims because the Plaintiff lacks standing, those claims must be dismissed." *Shields v. Metro. Prop. & Cas. Ins. Co.*, Civil Action No. 1:19-CV-00222-GHD-RP, 2020 WL 7338065, at *2 (N.D. Miss. Dec. 14, 2020) (citing *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F. 3d 787, 795 n.2 (5th Cir. 2011)). And for standing to exist with respect to a given claim, the plaintiffs must show three things: (1) an injury in fact; (2) a traceable causal connection; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In the absence of any one of these elements, the plaintiffs lack Article III standing, and the claim (or claims) in question must be dismissed. *See Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001) (en banc).

As the Fifth Circuit recognized in *Okpalobi*, the requirements for standing set forth in *Lujan*, *supra*—and particularly redressability—"are entirely consistent with the long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of statute." 244 F.3d at 426. It is an "elemental fact that a state official cannot be enjoined to act in any way that is beyond his authority to act in the first place." *Id.* at 427. Where certain "defendants have no powers to redress the injuries alleged, the plaintiffs have no case or controversy with th[o]se defendants that will permit them to maintain [an] action in federal court," and the court lacks subject-matter jurisdiction. *See id.* at 427, 429. *See also McCreary v. Richardson*, 738 F.3d

651, 655 (5th Cir. 2013) (reaffirming that plaintiffs lack standing where defendant lacks authority to redress plaintiffs' alleged injuries).

The question of standing, informed by *Okpalobi's* holding regarding redressability, is to be resolved at the threshold of litigation "without reliance on whether the part[y] sued had Eleventh Amendment immunity." *Planned Parenthood of Greater Tex. Surgical Health Servs. v. City of Lubbock, Tex.*, No. 5:21-CV-114-H, 2021 WL 2385110, at *1 (N.D. Tex. June 1, 2021). *See also K.P. v. LeBlanc*, 729 F.3d 427, 437-40 (5th Cir. 2013); *Bhattarai v. Fitch*, Civil Action No. 3:19-CV-560-DPJ-FKB, 2020 WL 1821253, at *2, 5, n.7 (S.D. Miss. Apr. 10, 2020). Where "declaratory and injunctive relief directed to the [defendants] will not redress the [plaintiffs'] injury," the plaintiffs lack Article III standing, and the court lacks subject-matter jurisdiction. *See LeBlanc*, 729 F.3d at 437; *Bhattarai*, 2020 WL 1821253 at *1, 6. *See also Scott v. Taylor*, 405 F.3d 1251, 1259 (11th Cir. 2005) (Jordan, J., concurring) (noting that, pursuant to rationale articulated in *Okpalobi, supra*, plaintiff in redistricting case lacked standing to sue legislators who "d[id] not have enforcement authority and [we]re not involved in conducting elections").

In the case at bar, Plaintiffs' claims against the Legislative Defendants fail for lack of standing, and thus for lack of subject-matter jurisdiction, because the Legislative Defendants have no enforcement authority over elections. Against all defendants, Plaintiffs assert a Section 2 Voting Rights Act claim and a Fourteenth Amendment racial gerrymandering claim, both of which arise out of allegations pertaining to the 2022 Maps. Complaint at 89-92, ¶¶ 168-75 (Dkt. #1). Plaintiffs seek to have this Court enjoin the defendants from holding elections using the enacted 2022 maps. *Id.* at 92, ¶ 177. They further seek to have this Court order the defendants to conduct elections using maps that redraw certain legislative districts to their liking. *See id.* at ¶ 178. Relatedly, they seek a declaratory judgment that the enacted 2022 Maps violate Section 2 of the

Voting Rights Act and the U.S. Constitution. *See id.* at ¶ 176. But the Legislative Defendants have no power to enforce the enacted 2022 Maps or any redrawn maps. As set forth above and below, that power is vested in the SBEC and its members. Therefore, Plaintiffs lack standing to pursue either of their claims against the Legislative Defendants, and this Court lacks subject-matter jurisdiction over those claims.

Nowhere in Plaintiffs' complaint do they allege that the Legislative Defendants have any connection with the *enforcement* of legislative redistricting plans or, for that matter, any other aspect of Mississippi election law. Pursuant to the Mississippi Election Code, MISS. CODE ANN. § 23-15-1 *et seq.*, enforcement of legislative redistricting plans is committed to the authority of the SBEC, which consists of the Governor, the Secretary of State, and the Attorney General. MISS. CODE ANN. § 23-15-211(1). The SBEC is authorized to rule on candidates' qualifications to run for State legislative offices and to approve the state ballot for such offices. *See id.* § 23-15-211(2). *See also O'Hara v. Miss. Office of Sec'y of State*, Civil Action No. 2:06cv180KS-MTP, 2007 WL 2071796, at *1 (S.D. Miss. July 17, 2007). The SBEC thus "control[s] the continued election of members to a legislative body found to be unconstitutionally constituted, and is the only agency with statewide power to prevent the ballot placement of candidates for election to a malapportioned district." *Thomas v. Bryant*, 366 F. Supp. 3d 786, 801-02 (S.D. Miss. 2019), *aff'd*, 931 F.3d 455 (5th Cir. 2019), *on reh'g en banc sub nom. Thomas v. Reeves*, 961 F.3d 800 (5th Cir. 2020) (quoting *Connor v. Winter*, 519 F. Supp. 1337, 1343 (S.D. Miss. 1981)) (internal quotation marks omitted).

No enforcement power is vested in the Legislative Defendants or the Standing Joint Committee of which they are members. *See* MISS. CODE ANN. § 5-3-91 *et seq.* Thus, pursuant to well-established law, Plaintiffs lack standing to pursue injunctive relief against these defendants.

Because the Legislative Defendants lack the power to redress Plaintiffs' alleged injuries, Plaintiffs also lack standing to pursue declaratory relief against these defendants. Standing to seek a declaratory judgment is governed by the same three requirements set forth in *Lujan*, *supra*, including redressability. *BroadStar Wind Sys. Group Ltd. Liab. Co. v. Stephens*, 459 Fed. Appx. 351, 356 (5th Cir. 2012); *Texas v. Travis County*, 272 F. Supp. 3d 973, 978 (W.D. Tex. 2017). It is well settled that "[u]nder the Declaratory Judgment Act, a federal court may only 'declare the rights and other legal relations' of parties in 'a case of actual controversy'" in the Article III sense. *Tex. Cent. Business Lines Corp. v. City of Midlothian*, 669 F.3d 525, 534 (5th Cir. 2012). *See also Poly-America, L.P. v. Stego Indus., L.L.C.*, 694 F. Supp. 2d 600, 604-05 (N.D. Tex. 2010).

Where a given defendant would be powerless to effectuate a requested injunction, "[i]t follows that declaratory and injunctive relief directed to the [defendant] will not redress the [plaintiffs'] injury," and accordingly the plaintiffs lack standing. *See LeBlanc*, 729 F.3d at 437. *See also City of Lubbock*, 2021 WL 2385110 at *11 (finding lack of standing where "order from the Court enjoining the [defendant] or declaring the law invalid would, for redressability purposes, be 'utterly meaningless'"); *Tap Pilam Coahuiltecan Nation v. Alamo Trust, Inc.*, Civil Action No. 5:19-cv-01084-OLG, 2019 WL 10945421, at *4 (W.D. Tex. Dec. 23, 2019) (finding lack of standing where "a declaratory judgment or injunctive relief against [the defendant] simply fails to redress Plaintiffs' injuries").

In sum, because the Legislative Defendants are not "the state executive officers charged with administering Mississippi's election laws," *Connor*, 519 F. Supp. at 1340 n.1, and have no authority to enforce the 2022 Maps or any other redistricting plans, any requested declaratory and injunctive relief against the Legislative Defendants would be "utterly meaningless" if granted. *See Okpalobi*, 244 F.3d at 426. Therefore, Plaintiffs lack standing to assert both the Section 2 Voting

8

Rights Act claim and racial gerrymandering claim against the Legislative Defendants, and both claims against these defendants should be dismissed on this ground alone.

C. **Subject-matter jurisdiction further fails as to Plaintiffs' racial gerrymandering claim against the Legislative Defendants because that claim is barred by the Eleventh Amendment.**

Subject-matter jurisdiction fails where the plaintiffs' claims are barred by the Eleventh Amendment. *Sissom v. Univ. of Tex. High Sch.*, 927 F.3d 343, 346-49 (5th Cir. 2019). Motions to dismiss predicated on Eleventh Amendment sovereign immunity are accordingly jurisdictional and are likewise brought pursuant to Rule 12(b)(1). *Id.* at 346.

The principle of Eleventh Amendment sovereign immunity generally precludes actions against state officers in their official capacities. *See Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020). It is well settled that absent waiver of Eleventh Amendment sovereign immunity or congressional abrogation, a plaintiff's official capacity claims against a state official are barred by the Eleventh Amendment unless the *Ex parte Young* exception applies. *See Ex parte Young*, 209 U.S. 123 (1908). *See also City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019); *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 274 (5th Cir. 2020).

Precedent holds that the Voting Rights Act validly abrogated Eleventh Amendment sovereign immunity. *Fusilier v. Landry*, 963 F.3d 447, 455 (5th Cir. 2020). But Plaintiffs' racial gerrymandering claim is predicated on the Fourteenth Amendment and is brought solely pursuant to 42 U.S.C. § 1983. It is well established that § 1983 did <u>not</u> abrogate states' Eleventh Amendment sovereign immunity. *Spec's Family Partners, Ltd. v. Nettles*, 972 F.3d 671, 681 (5th Cir. 2020). Nor has the State of Mississippi waived its sovereign immunity. Therefore, Plaintiffs' racial gerrymandering claim is barred as to the Legislative Defendants unless Plaintiffs can show

9

that the *Ex parte Young* exception applies.  As set forth below, *Ex parte Young* cannot save Plaintiffs' constitutional claim against the Legislative Defendants.

The *Ex parte Young* exception to Eleventh Amendment immunity "only applies when the named defendant state officials have *some connection with the enforcement of the act*" and threaten to enforce it.  *Okpalobi*, 244 F.3d at 416 (italics in original).  The Fifth Circuit has defined "enforcement" as "typically involv[ing] compulsion or constraint."  *Paxton*, 943 F.3d at 1000 (internal quotation marks omitted).  While the "precise scope of the 'some connection' requirement is still unsettled, . . . [i]t is not enough that the official have a '*general* duty to see that the laws of the state are implemented.'"  *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400-01 (5th Cir. 2020) (italics in original, underscore added).  Rather, the official sued must be "statutorily tasked with enforcing the challenged law."  *Id.* at 401.  Further, the official "must have taken some step to enforce" the law.  *Id.*  At a "bare minimum," there must be "'some scintilla' of affirmative action by the state official" to enforce the law in question.  *Id.  See also Paxton*, 943 F.3d at 1001-02 (holding that *Ex parte Young* exception did not apply, and suit was barred by Eleventh Amendment, where plaintiff failed to show some scintilla of evidence of specific enforcement action by defendant).

Here, Plaintiffs do not allege that the Legislative Defendants, both of whom are sued in their official capacities only, see Complaint at 14-15, ¶¶ 35-36 (Dkt. #1), have any connection with the enforcement of the enacted 2022 Maps or any other legislative redistricting plans.  As discussed in detail in Part I.B. above, any such enforcement authority is vested in the SBEC and its members—not in the Legislature or any legislator.  Nor do Plaintiffs allege that the Legislative Defendants have taken or threatened to take any action to enforce the enacted 2022 Maps.  Therefore, as a matter of law, *Ex parte Young* has no application here, and Plaintiffs' Fourteenth

Amendment racial gerrymandering claim is barred by Eleventh Amendment immunity.  *See Hall v. Louisiana*, 974 F. Supp. 2d 944, 953-54 (M.D. La. 2013) (holding that Eleventh Amendment sovereign immunity barred constitutional claims asserted pursuant to § 1983 against legislature and individually-named legislators arising from enactment of judicial redistricting plan).  For this additional reason, Plaintiffs' racial gerrymandering claim against the Legislative Defendants should be dismissed for lack of subject-matter jurisdiction.

## II. ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS AGAINST THE LEGISLATIVE DEFENDANTS BECAUSE BOTH OF PLAINTIFFS' CLAIMS ARE BARRED BY LEGISLATIVE IMMUNITY.

### A. <u>Standard for dismissal under Rule 12(b)(6).</u>

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim for relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Nor do "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.*  (alteration in original) (quoting *Twombly*, 550 U.S. at 557).  A plaintiff must plead enough facts to establish "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  A complaint that fails to state such plausible claims for relief "must be dismissed."  *Twombly*, 550 U.S. at 570.

### B. <u>Both of Plaintiffs' claims against the Legislative Defendants are barred by legislative immunity.</u>

Even putting aside that all claims against the Legislative Defendants must be dismissed for lack of subject-matter jurisdiction, those claims must be dismissed for the independent reason that legislative immunity bars them.  The process of "redistricting and reapportioning legislative bodies is a legislative function."  *Ramos v. Koebig*, 638 F.2d 838, 843 (5th Cir. 1981 Unit A).  Plaintiffs

11

cannot sue any legislators for voting to pass or for performing their legislative functions of formulating the 2022 Maps.

It "is well established that federal, state, and regional legislators are entitled to absolute immunity from civil liability for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998). State legislators acting within the scope of their legislative duties are absolutely immune from civil suits for damages. *Tenney v. Brandhove*, 341 U.S. 367, 372-79 (1951). *See also Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967) (purpose of legislative immunity is to protect legislators engaged in sphere of legitimate legislative activity from consequences of litigation and burden of defending themselves). State legislators likewise enjoy immunity from claims for prospective or injunctive relief premised on their acts taken in a legislative capacity. *Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 732-34 (1980). *See also State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 85-87 (2d Cir. 2007) (when applicable, legislative immunity doctrine may extinguish injunctive relief claims against state officials); *Scott v. Taylor*, 405 F.3d 1251, 1255 (11th Cir. 2005) (holding legislator-defendants absolutely immune from claims for prospective relief); *Larsen v. Senate of the Commonwealth of Pennsylvania*, 152 F.3d 240, 252-54 (3d Cir. 1998) (state senators sued for declaratory and injunctive relief shielded by legislative immunity).

Legislative immunity extends to all acts that a legislator takes in a legislative capacity—whether that is work on the Standing Joint Committee, in deliberating on the resulting apportionment plans, or in voting on those plans. *Bogan*, 523 U.S. at 54-55 (legislative immunity applies to all acts taken as "integral steps in the legislative process"). It plainly extends to redistricting. *See City of Safety Harbor v. Birchfield*, 529 F.2d 1251, 1256-57 (5th Cir. 1976) (legislative immunity barred claims against legislators for damages and injunctive relief arising

from passage of legislation drawing municipal utilities' service areas); *Harris v. Ariz. Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042, 1063-65 (D. Ariz. 2014) (three-judge court) (legislative immunity barred claims against commissioners responsible for drawing redistricting maps, rejecting argument that *Ex parte Young* overcomes the immunity, and holding Arizona Secretary of State responsible for "enforcement" of the map/running elections); *Hall*, 974 F. Supp. at 952-57 (sovereign immunity barred constitutional claims and legislative immunity barred all claims, including VRA § 2 claims, asserted against legislature and individually named legislators arising from enactment of judicial redistricting plan).

These principles show that legislative immunity plainly bars Plaintiffs' claims against the Legislative Defendants. Both the Voting Rights Act claim and the racial gerrymander claim relate to legislative actions taken by Senator Kirby and Representative Eubanks in their official capacities as members of the Mississippi Legislature and the Standing Joint Committee. Plaintiffs sue Senator Kirby and Representative Eubanks solely in their official legislative capacities related to their legislative acts. They are immune from such suits. The claims against them should be dismissed with prejudice.

## **CONCLUSION**

The Legislative Defendants should be dismissed from this lawsuit.

THIS the 10th day of February, 2023.

                Respectfully submitted,

                DAN EUBANKS, IN HIS OFFICIAL CAPACITY
                AS A MEMBER OF THE STANDING JOINT
                LEGISLATIVE COMMITTEE ON
                REAPPORTIONMENT AND REDISTRICTING,
                AND DEAN KIRBY, IN HIS OFFICIAL
                CAPACITY AS VICE CHAIRMAN OF THE
                STANDING JOINT LEGISLATIVE

COMMITTEE ON REAPPORTIONMENT AND REDISTRICTING, DEFENDANTS

By:    LYNN FITCH, ATTORNEY GENERAL
        STATE OF MISSISSIPPI

By:    s/Rex M. Shannon III
        REX M. SHANNON III (MB #102974)
        Special Assistant Attorney General

REX M. SHANNON III (MB #102974)
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi 39205-0220
Tel.: (601) 359-4184
Fax: (601) 359-2003
rex.shannon@ago.ms.gov

TOMMIE S. CARDIN (MB #5863)
P. RYAN BECKETT (MB #99524)
B. PARKER BERRY (MB #104251)
BUTLER SNOW LLP
Post Office Box 6010
Ridgeland, Mississippi 39158-6010
Tel.: (601) 985-4570
Fax: (601) 985-4500
tommie.cardin@butlersnow.com
ryan.beckett@butlersnow.com
parker.berry@butlersnow.com

ATTORNEYS FOR DEFENDANTS DAN EUBANKS, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE STANDING JOINT LEGISLATIVE COMMITTEE ON REAPPORTIONMENT AND REDISTRICTING, AND DEAN KIRBY, IN HIS OFFICIAL CAPACITY AS VICE CHAIRMAN OF THE STANDING JOINT LEGISLATIVE COMMITTEE ON REAPPORTIONMENT AND REDISTRICTING

**CERTIFICATE OF SERVICE**

    I, Rex M. Shannon III, Special Assistant Attorney General and one of the attorneys for the above-named defendants, do hereby certify that I have this date caused to be filed with the Clerk of the Court a true and correct copy of the above and foregoing via the Court's ECF filing system, which sent notification of such filing to all counsel of record.

    THIS the 10th day of February, 2023.

s/Rex M. Shannon III  
REX M. SHANNON III
