# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

MISSISSIPPI STATE CONFERENCE OF
THE NATIONAL ASSOCIATION FOR
THE ADVANCEMENT OF COLORED
PEOPLE; DR. ANDREA WESLEY; DR.
JOSEPH WESLEY; ROBERT EVANS;
GARY FREDERICKS; PAMELA
HAMNER; BARBARA FINN; OTHO
BARNES; SHIRLINDA ROBERTSON;
SANDRA SMITH; DEBORAH HULITT;
RODESTA TUMBLIN; DR. KIA JONES;
ANGELA GRAYSON; MARCELEAN
ARRINGTON; VICTORIA ROBERTSON,

    Plaintiffs,

    v.

STATE BOARD OF ELECTION
COMMISSIONERS; TATE REEVES, *in his
official capacity as Governor of Mississippi*;
LYNN FITCH, *in her official capacity as
Attorney General of Mississippi*; MICHAEL
WATSON, *in his official capacity as
Secretary of State of Mississippi*,

    Defendants.

**3:22-cv-734-DPJ-HSO-LHS**

**STIPULATION AND ORDER
REGARDING DISCOVERY OF
ELECTRONICALLY STORED
INFORMATION ("STIPULATION" OR
"ORDER")**

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

MAY 2 6 2023

ARTHUR JOHNSTON
BY_____ DEPUTY

      The Parties to the above-captioned action HEREBY STIPULATE AND AGREE, by and through their undersigned counsel, that the following specifications shall govern discovery of all documents, electronically stored information ("ESI"), and any other materials and information produced by the Parties during discovery in the above-captioned action.

## I.    General

      1.    The Parties, as well as their respective officials, employees, and agents in their official capacities are referred to as the "Parties" solely for purposes of this Stipulation.

2.     The Parties shall take reasonable steps to comply with the procedures set forth in this Stipulation.

3.     This Stipulation is intended to streamline production to promote a "just, speedy and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

4.     To the extent reasonably practicable, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs. The terms of this Stipulation shall be construed so as to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules, and any orders by this Court.

5.     Except as specifically limited herein, this Stipulation governs the production of discoverable documents by the Parties during the litigation. In the event of transfer to other courts, this Stipulation will remain in effect in all respects, until adopted by the transferee court or replaced by a successor agreement. This Stipulation shall not enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders, nor imply that discovery produced under the terms of this Stipulation is properly discoverable, relevant, or admissible in this or in any other litigation. Subject to this Stipulation, the Parties' objections and responses to requests for production of documents and interrogatories, all documents that are responsive to discovery requests and not designated as "privileged" shall be produced in the manner provided herein. Nothing in this Stipulation shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege that may be applicable. Additionally, nothing in this Stipulation shall be deemed to waive or limit any Party's right to object to the production of certain ESI, or to move

for an appropriate order pursuant to the Federal Rules of Civil Procedure on the ground that the sources are not reasonably accessible because of undue burden or cost or on the ground that there is good cause for the documents' production.

6.      The Parties agree to promptly alert all other Parties concerning any technical problems associated with producing documents, ESI, and any other materials in accordance with this Stipulation.  To the extent compliance with this Stipulation imposes an undue burden with respect to any protocol, source, or search term listed herein, the Parties shall promptly confer in an effort to resolve the issue.

7.      Consistent with their obligations under applicable Federal Rules of Civil Procedure, the Parties will attempt to resolve, in person, in writing (including e-mail) or by telephone, disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

## II.      Preservation

1.      The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody or control.

2.      The Parties agree that by preserving documents, things, and ESI for the purpose of this litigation, they are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

3.      This Stipulation and Order does not modify any Party's obligation to maintain and preserve documents, things, and ESI where otherwise required by law, pursuant to a court order or administrative order, or in response to other anticipated litigation.

III.   **Limitations on Obligation to Preserve and Produce**

For purposes of this action, the Parties agree to limit the scope of preservation as described in this section.

1.     The Parties agree that for purposes of this litigation they <u>do not</u> need to take specific, affirmative steps to preserve the following categories of ESI unless they become aware that these sources contain unique, potentially responsive ESI:

a. Delivery or read receipts of e-mails;

b. Logs or other data from video-conferencing (including, e.g., Teams or Zoom) or instant messaging tools involving (i) attorneys for the Plaintiffs in this case (and their staff) and/or (ii) attorneys for Defendants in this case (and their staff);

c. Temporary or cache files, including internet history, web browser cache, and cookie files, wherever located;

d. Internally facing server system logs;

e. Externally facing or hosted file sharing system logs;

f. System data from photocopiers or fax machines;

g. Auto-saved copies of electronic documents;

h. Deleted, slack, fragmented, or other data only accessible by forensics;

i. Random access memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

j. Logs of or other data from audio calls (including, e.g., landline phones, mobile devices, and Voice Over Internet Protocol ("VOIP")) made to or from (i) attorneys for the Plaintiffs in this case (and their staff) or (ii) attorneys for Defendants in this case (and their staff);

4

k. Voicemail messages on the voicemail systems of (i) attorneys for the Plaintiffs in this case (and their staff) or (ii) attorneys for Defendants in this case (and their staff).

2.     When duplicate copies[1] of relevant ESI exist in more than one location, this Order does not require a Party to preserve all duplicates as follows:

a. ESI existing or stored on mobile or portable devices (e.g., smartphones, tablets, thumb drives, CDs, DVDs, etc.) or file sharing sites does not need to be preserved pursuant to this Order provided that duplicate copies of the ESI, including metadata, are preserved in another location reasonably accessible to the Party.

b. ESI on backup tapes, continuity of operations or disaster recovery systems, data or system mirrors or shadows, and other systems that are used primarily for the purpose of system recovery or information restoration and are not reasonably accessible ("Backup Systems") need not be preserved pursuant to this Order provided that duplicate copies of relevant ESI have been preserved in another reasonably accessible location. However, if a Party knows that relevant ESI exists only on a Party's Backup System, the Party will take reasonable steps to preserve ESI on the Backup System until the Parties can agree on how and when the ESI will be preserved or produced. If the Parties cannot reach agreement, they will seek a ruling from the Court.

## IV.   Limitations on Obligation to Collect, Review, and Produce

For purposes of this action, the Parties agree to limit the scope of collection, review, and production as described in this section.

1.     For relevant documents, things, or ESI (including internal communications, drafts, versions, and collaboration on case-related work) created or exchanged on or after December 20,

---

[1] A "duplicate" in the context of this Order means a copy of an identical document, identified by matching hash values, as described in paragraph X.5, below.

2022, the date on which the case was filed, the Parties agree that they do not need to collect, review, or produce such materials created by and, if shared with any other(s), exchanged solely among: (1) attorneys for any of the Plaintiffs in this case (and their staff); or (2) attorneys for any of the Defendants in this case (and their staff). The Parties further agree that they do not need to collect, review, or produce privileged communications exchanged solely between the Parties and their attorneys, created on or after December 20, 2022, provided that the communications do not include non-privileged materials.

2.      For relevant documents, things, or ESI (including internal communications, drafts, versions, and collaboration on case-related work) created or exchanged before December 20, 2022, the Parties agree that they do not need to collect, review, or produce such materials created by and, if shared with any other(s), exchanged solely among (1) the attorneys for a particular Plaintiff or Plaintiff Group (and their staff); or (2) the attorneys for a particular Defendant or Defendant Group (and their staff).

3.      The Parties agree not to seek discovery of documents, things, and ESI that they have agreed not to collect, review, or produce pursuant to § IV.1-2 above. As provided in § XI.10 below, the Parties do not need to list such items on a privilege log prepared and served in connection with discovery in this case.

## V.      Identification and Collection of Documents

1.      Except at otherwise agreed upon in this Stipulation, the Parties will meet and confer in an effort to agree upon the following:

        a. List of records custodians;

        b. Search methodology to be applied, including, but not limited to, search terms and date restrictions; and

c. Location of relevant data sources including custodial and non-custodial.

2.      The Parties will also meet and confer prior to the use of any advance culling or technology assisted review methodologies.

3.      <u>Search Methodology:</u>

a. Email and Non-Email: the Parties agree to search for and produce unique, responsive records from sources of accessible hard copy and ESI to the extent a custodian reveals that such locations may contain responsive information or if after a reasonable inquiry or investigation, the source is identified as containing potentially responsive information and such data is within the possession, custody or control of the Producing Party.

b. The mere fact that a document is hit or captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation. Determinations of discoverability, responsiveness and privilege shall be made by the Producing Party.

**VI.   Production Format – Hardcopy**

1.      Each hardcopy document should be scanned as in PDF format or single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "PAGES" and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. If an original document contains relevant information in color necessary to understand the meaning or content of the document, the

document should be produced as single-page, 300 DPI with a minimum quality level of 75, 24-bit, color JPG images. To the extent that the Producing Party OCR's the document for its own benefit, OCR should also be provided. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. Unless the parties agree in writing to produce color content in black and white, a party shall produce color content in color.

**VII.    Production Format – Electronically Stored Information**

1.      Unless specifically addressed elsewhere in this protocol, electronically stored information ("ESI") should be produced as single-page, Group IV, 300 DPI TIFF images with the exception of source code, audio, video, and spreadsheet-type files, including, but not limited to, Microsoft Excel, CSV, Presentations (.ppt) – which should be produced in native format. All ESI should be produced with a delimited, database load file that contains the metadata fields listed in Appendix 1, attached hereto, to the extent captured at the time of the collection.  To the extent that metadata does not exist, is not reasonably accessible or available for any documents produced or would be burdensome to provide, nothing in this Stipulation shall require any Party to extract, capture, collect or produce such data. The Parties agree that certain documents identified and collected as part of a targeted collection that originated as ESI may be produced without metadata but compliant with Section VII. An .opt image cross-reference file should also be provided for all TIFF images.  Specifications for the load files are listed in Appendix 2.

2.      TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFF images of e-mail messages should include the BCC line. PowerPoint documents should be processed with hidden slides and all speaker notes unhidden, and should be processed to show both the slide and

the speaker's notes on the TIFF/JPG image.  Color originals may be produced in B&W TIFF format, but either Party may subsequently request, by Bates number(s), a replacement set of images in color only to the extent that the Requesting Party demonstrates that the loss of the color detracts from the usability or reduces the ability to understand the information imparted in the original, however categorical or wholesale requests are deemed invalid.

      3.     If a document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been produced in native format should also be provided. No native ESI items will be produced for redacted items, except when producing redacted TIFF images is not technically reasonable or for native spreadsheets redacted using a native redaction tool. If documents requested in native format require redactions and reasonably cannot be produced in TIFF, the Parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either Party believes that native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to this paragraph or to the extent records do not easily conform to native or TIFF format (*i.e.*, structured data), the Parties should meet and confer in good faith.

## VIII. Production Format - Other Data (e.g., Structured Data, Social Media, Text and/or Chat Messaging, Ephemeral Messaging)

      To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in a database, social media, text and/or chat messaging, ephemeral messaging tools or any other unique data sources, the Parties will produce

the information as detailed in the subsection below and/or meet and confer to discuss the most appropriate production format.

    1.        Specifications for Specific File Types:

        a. Text Messages. The Parties will meet and confer to seek agreement on an appropriate production format if a Party identifies text messages that are potentially responsive to a request.

        b. Audio files and video files shall be produced as native files unless the native form is a proprietary format, in which case the Parties will meet and confer regarding production. Any such conference shall be held within seven (7) days of identification of such materials in initial disclosures, a direct request for the production of audio or video files, or a determination by a producing Party that such materials are responsive to a broader request, and any such conference shall include the technicians with sufficient knowledge to explain the content and format of the material at issue.

        c. Excel or other types of spreadsheets shall be produced as native files with all cells unlocked. For each Excel or spreadsheet file, a placeholder image containing the file name shall be included in the production.

        d. Presentations (e.g., PowerPoint) shall be produced as both (1) color images with extracted text and (2) native files with all notes unaltered and viewable. For each presentation file, a placeholder image containing the file name shall be included in the production.

        e. Social media content (including comments, "likes," sharing, and other interactions with the post(s)) should be produced as individual images with extracted text, including information about the participants and the date and time of the communications.

f. For all other ephemeral messaging tools or any other unique data sources, the Parties will meet and confer to discuss the most appropriate and cost-effective production format.

## IX.   Production Format - Media

1.      Except for records or data produced from large databases or database systems (e.g., state voter files), responsive documents and ESI shall be exchanged on DVD-ROMs, CD-ROMs, USB drives, portable hard drives or through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission.  Productions produced via an electronic file transfer site will be divided into .zip files of no more than 20 gigabytes each.

2.      The production media shall be labeled with the (1) party producing the information, (2) the date of the production, and (3) the Volume Number along with the Bates Number range(s) of the materials, and where not practicable to do so, may be provided in an accompanying letter.

3.      Records or data produced from large databases or database systems (e.g., state voter files, etc.) will be produced on CD, DVD, thumb drive, or hard drive appropriate to the size of the production via overnight delivery to counsel for the requesting Party. Such production media will be clearly labeled to indicate (1) the Party producing the information, (2) the date of the production, and (3) the Volume Number along with the Bates Number range(s) of the materials, and where not practicable to do so, may be provided in an accompanying letter.

4.      Any document production that may contain protected material shall be produced in encrypted form and the production media shall be labeled "MAY CONTAIN NON-PUBLIC PERSONAL INFORMATION" or "MAY CONTAIN CONFIDENTIAL HEALTH INFORMATION" as applicable.  If a Producing Party encrypts or "locks" the production, the Producing Party shall send, under separate cover, an explanation of how to decrypt the files.

5.      When the Producing Party ships by U.S. Mail, Federal Express, UPS, or other courier delivery service, any Protected Material to others, the Producing Party will encrypt the electronic data and supply the password in separate correspondence to the recipient.

**X.      Processing and Other Specifications**

1.      <u>On-Site Inspections</u>: On-site inspections of ESI under Rule 34(b) shall not be permitted absent a good-faith showing by the Requesting Party of good cause and specific need or upon agreement of the Parties. As appropriate, the Court may condition on-site inspections of ESI, as authorized in the preceding sentence, to be performed by independent third-party experts, and the Court may set other conditions deemed appropriate by the Court.

2.      <u>Bates Numbering and Confidentiality Designations</u>: Each page of a produced image shall have a legible, unique Bates number that includes an alpha prefix along with a fixed number, i.e., ABC00000001, electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source document. Each image page or native file assigned a Bates number shall be assigned a Bates number that is unique, sequential and maintains a constant length across the entire document production. If a Bates number of set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production. No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

3.      <u>ESI Date and Time Processing</u>: Each Party's ESI should be processed using a consistent Time Zone for all data. The Party shall share the Time Zone selected for processing of its data with the other Party.

4.      <u>Attachments</u>: All documents attached to a responsive document (including, documents that are not responsive) shall be produced. However, a producing party may withhold

small image files or extracted embedded files that are unresponsive or irrelevant, even if other documents in the same document family are responsive.

5.     <u>Global or Horizontal Deduplication</u>: Removal of duplicate documents should only be done on exact duplicate documents at the family level (based on MD5 or SHA-1 hash values or near duplicate analysis where documents are 100% textual matches but due to underlying data sources or differences in processing over time the hash values do not match). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. When applying global deduplication, metadata identifying all custodians in possession of each document that is removed as a duplicate must be provided in the CUSTODIAN metadata field subject to any exceptions provided in this Stipulation.

6.     <u>Email Thread Suppression</u>: Each Party may also deduplicate e-mails in such a way as to eliminate earlier or incomplete chains of duplicate[2] e-mails, and produce only the most complete iteration of an e-mail chain. To Producing Party agrees to produce suppressed lesser-inclusive email threads upon request.

7.     <u>Embedded Objects</u>: Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, Access and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded unless otherwise subject to an exception provided within this Stipulation.

---

[2] A "duplicate" in the context of this Order means a copy of an identical document, identified by matching hash values, as described in paragraph X.5.

8.     <u>Compressed Files</u>:  Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

9.     <u>Redactions</u>:  The Producing Party can redact documents for privilege only. If, during the course of discovery, the Parties identify other kinds of information that any Party has a reasonable basis for redacting, the Parties will meet and confer regarding it before such redactions are made.  If the issue cannot be resolved, the Parties will seek resolution from the Court.

When a document is redacted, the document will be produced in TIFF image unless otherwise agreed to by the Parties (e.g., if a native document that requires redaction is difficult to convert to TIFF or is not reasonably usable when converted to TIFF format, the Producing Party can redact in native format). The TIFF image for a document produced in redacted form will include a label identifying the redacted area of the document and reason for redaction. For redacted items that were originally ESI, non-redacted metadata fields will be provided.

10.    Privilege Log: Unless the Parties agree otherwise, for all documents withheld in whole or in part based on privilege, the Parties agree to furnish logs which comply with the legal requirements under the Federal Rules of Civil Procedure. At minimum, the privilege log must contain a Bates range, the type of document, the date of the creation or last modification or transmission of the document, the author or authors of the document with any attorneys designated as such, the recipients of the document (including individuals copied or blind- copied, if available) with any attorneys designated as such, whether the document contains attachments, the privilege or privileges claimed, and the basis for the assertion of the privilege or protection. .

Privilege logs may be produced on a rolling basis, but, in any event, no later than 30 days after each associated production. If any log is produced less than 30 days before the close of

discovery, the receiving Party shall have thirty (30) days from the date of receipt to review and register complaints about said log(s), and shall have the right to have those complaints resolved, and have any non-privileged documents produced, regardless of the date of the close of discovery.

If any discovery request appears to call for the production of documents, things or ESI covered by § III or IV, the responding Party is not required to produce or identify such information on a privilege log. However, if a Party preserves relevant documents, things, or ESI covered by § III or IV to support a claim or defense in this case, the Party shall produce such information or identify it on a privilege log notwithstanding this subsection.

11.    No Designation of Discovery Requests:  Production of hard copy documents and ESI in the reasonably usable form set out in this Stipulation need not include any reference to the requests to which a document or ESI may be responsive.

## XI.    Production of Privileged Material

No Waiver by Disclosure.  This Order is entered pursuant to Rule 502(d) of the Federal Rules of Evidence.  Subject to the provisions of this Order, if a Party or nonparty (the "Disclosing Party") discloses information in connection with the pending litigation that the Disclosing Party thereafter claims to be privileged or protected by the attorney-client privilege or work product protection ("Privileged Information"), the disclosure of that Privileged Information will not constitute or be deemed a waiver or forfeiture – in this or any other federal or state action – of any claim of privilege or work product protection that the Disclosing Party would otherwise be entitled to assert with respect to the Privileged Information and its subject matter.

This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

1.    <u>Notification Requirements; Best Efforts of Receiving Party</u>.  A Disclosing Party must promptly notify the Party receiving the Privileged Information ("the Receiving Party"), in writing, that it has disclosed that Privileged Information without intending a waiver by the disclosure.  Upon such notification, the Receiving Party must – unless it contests the claim of attorney-client privilege or work product protection in accordance with paragraph (c) – promptly (i) notify the Disclosing Party that it will make best efforts to identify and return, sequester, or destroy (or in the case of electronically stored information, delete) the Privileged Information and any reasonably accessible copies it has and (ii) provide a certification that it will cease further review, dissemination, and use of the Privileged Information.  Within five business days of receipt of the notification from the Receiving Party, the Disclosing Party must explain as specifically as possible why the Protected Information is privileged.

2.    <u>Contesting Claim of Privilege or Work Product Protection</u>.  If the Receiving Party contests the claim of attorney-client privilege or work product protection, the Receiving Party must – within five business days of receipt of the notice of disclosure – move the Court for an Order compelling disclosure of the information claimed as unprotected (a "Disclosure Motion").  The Disclosure Motion must be filed under seal and must not assert as a ground for compelling disclosure the fact or circumstances of the disclosure.  Pending resolution of the Disclosure Motion, the Receiving Party must not use the challenged information in any way or disclose it to any person other than those required by law to be served with a copy of the sealed Disclosure Motion.

3.    <u>Stipulated Time Periods</u>.  The Parties may stipulate to extend the time periods set forth in paragraphs (1) and (2).

4.     <u>Attorney's Ethical Responsibilities</u>.  Nothing in this Order overrides any attorney's ethical responsibilities to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the Disclosing Party that such materials have been produced.

5.     <u>Burden of Proving Privilege</u>.  The Disclosing Party retains the burden – upon challenge pursuant to paragraph (2) – of establishing the privileged or protected nature of the Protected Information.

6.     <u>*In camera* Review</u>.  Nothing in this Order limits the right of any Party to petition the Court for an *in camera* review of the Privileged Information.

7.     <u>Voluntary and Subject Matter Waiver</u>.  This Order does not preclude a Party from voluntarily waiving the attorney-client privilege or work product protection.  The provisions of Federal Rule 502(a) apply when the Disclosing Party uses or indicates that it may use information produced under this Order to support a claim or defense.

8.     <u>Review</u>.  Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. Further nothing contained herein is intended to reduce the time frame provided to the Disclosing Party to complete their review should they choose to do so.

9.     <u>Proportionality</u>.   Nothing contained herein is intended to limit a Party's proportionality and burden arguments specifically related to the costs to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

10.  <u>Rule 502(b)(2)</u>.  The provisions of Federal Rule of Evidence 502(b)(2) are inapplicable to the production of Protected Information under this Order.

## XII.  Legislative Privilege

1.  The parties expressly reserve all rights regarding legislative privilege issues. Whether and how legislative privilege must be invoked, preserved, disclosed and/or challenged will be the subject of further conferral and may require court resolution.

## XIII.  Discovery Liaisons

1.  Each Party shall designate one or more individuals as Designated ESI Liaison(s) for purposes of meeting and conferring with the other Parties and of attending Court hearings on the subject of relevant ESI. The Designated ESI Liaison shall be reasonably prepared to speak about and explain the Party's relevant electronic systems and capabilities and the technical aspects of the manner in which the Party has responded to eDiscovery, including (as appropriate) relevant ESI retrieval technology and search methodology.

## XIV.  Third Party Documents

1.  A Party that issues a non-Party subpoena ("Issuing Party") for ESI shall include a copy of this Stipulation with the subpoena and state that the Parties to the litigation have requested that third Parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall produce any documents obtained pursuant to a non-Party subpoena to the opposing Party. Nothing in this Stipulation is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third Parties to object to a subpoena.

## XV.  Good Faith

1.  The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Stipulation. If a Producing Party cannot comply with any material aspect of this Stipulation, such Party shall inform the Requesting Party as to why

compliance with the Stipulation was unreasonable or not possible within fifteen (15) days after so learning. No Party may seek relief from the Court concerning compliance with the Stipulation unless it has conferred with other affected Parties to the action.

**XVI. No Effect on Discovery or Admissibility**

1. This Stipulation does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI. The Parties are not waiving the right to seek any discovery, and the Parties are not waiving any objections to specific discovery requests. Nothing in this Stipulation shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the work product doctrine, or any other privilege that may be applicable. Nothing in this Stipulation shall be construed to affect the admissibility of any document or data. All objections to the admissibility of any document or data, except as to the authenticity of the documents produced by a Party as to which that Party stipulates, are preserved and may be asserted at any time

**XVII. Costs and Burden**

1. Each Party shall bear the costs of producing its own documents, things, and ESI.

2. All Parties reserve the right to seek shifting or sharing of certain discovery costs, including vendor and attorney fees, in appropriate circumstances.

**XVIII. Authenticity**

1. A document produced in this litigation shall be presumed to be authentic if offered as evidence against the Party that produced it unless the Party (a) gives notice reasonably in advance of trial that the authenticity of the document may be challenged, including the reasons for such a challenge; or (b) shows good cause for its failure to give such notice.

2.     When documents produced in accordance with this Stipulation are used in any proceeding herein, including depositions, hearings, or trial, the image copy of documents shall be the copy used. Extracted text files shall not be used in any proceeding as a substitute for the image of any document. This paragraph does not apply to any Federal Rule of Evidence 1006 summary exhibits or summary demonstratives.

**XIX.   Rolling Productions**

1.     The Parties understand that this Stipulation contemplates rolling productions of documents, and they acknowledge that nothing in this Order waives, restricts, or eliminates the Parties' respective rolling production obligations, the Parties' respective supplementation obligations prescribed in the Federal Rules of Civil Procedure, or the Parties' 502(d) obligations, and other obligations pursuant to the Case Management Order entered in this case.

**XX.     Miscellaneous**

1.      The Stipulation may be executed in counterparts.

2.      The terms of this Stipulation and Order are not exhaustive. Each Party reserves the right to subsequently request to meet and confer to address any discovery matters, including forms of production and other matters not addressed herein.

3.      None of the meet and confer provisions of this Stipulation shall be construed to extend the time within which a Party must respond to a discovery request.

4.      Nothing in this Stipulation shall be construed to alter or amend any deadlines established by the governing Case Management Order.

5.      The Parties agree that discovery requests may be served by e-mail.

**XXI.   Modification**

1.      This Stipulation may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

Dated: _MAY 26_, 2023

SO ORDERED:

_[signature]_

Hon. Judge F. Keith Ball
United States Magistrate Judge

Respectfully submitted,

*/s/ P. Ryan Beckett*
Tommie S. Cardin (MB #5863)
P. Ryan Beckett (MB #99524)
B. Parker Berry (MB #104251)
**BUTLER SNOW LLP**
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
P.O. Box 6010, Ridgeland, MS 39158-6010
Phone: 601.948.5711
Fax:    601.985.4500
tommie.cardin@butlersnow.com
ryan.beckett@butlersnow.com
parker.berry@butlersnow.com

*/s/ Joshua Tom*
Joshua Tom (MB #105392)
ACLU OF MISSISSIPPI
101 South Congress Street
Jackson, MS 39201
Phone: 601.354.3408
joshua.tom@aclu-ms.org

**APPENDIX 1: METADATA FIELDS**

| Field Name | Example / Format | Description |
|---|---|---|
| BEGBATES | ABC00000001 (Unique ID) | The Document ID Number associated with the first page of the document. |
| ENDBATES | ABC00000003 (Unique ID) | The Document ID Number associated with the last page of the document. |
| BEGATTACH | ABC00000001 (Unique ID Parent- Child Relationships) | The Document ID Number associated with the first page of the parent document. |
| ENDATTACH | ABC00000008 (Unique ID Parent- Child Relationships) | The Document ID Number associated with the last page of the last attachment. |
| PAGES | 3 (Numeric) | The number of pages for a document. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive (vendor assigns). |
| RECORDTYPE | Options: e-mail, attachment, hard copy, loose e-file | The record type of a document. |
| DESIGNATION | Confidential, Highly Confidential, etc. | Please populate this field for all documents that carry a confidentiality designation, separate and apart from the stamping of produced TIFFs. If the document is only provided in native, this field would be populated with the designation the native file should have if printed. |
| REDACTED | Yes | Please populate this field for all documents that have a redaction. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM | The time the email was sent. |
| CREATEDDATE | MM/DD/YYYY | The date the document was created.<br><br>*Parties acknowledge that the CREATEDATE field may not actually reflect the date the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date and time reflects the date when the file was created in that particular location on the computer or on the other storage device location) |

| | | |
|---|---|---|
| CREATETIME | HH:MM | The time the document was created.<br><br>*Parties acknowledge that the CREATETIME field may not actually reflect the time the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date and time reflects the time when the file was created in that particular location on the computer or on the other storage device location). |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| FILEPATH | i.e. John Smith/E-mail/Inbox | Location of the original document. The source should be the start of the relative path. |
| AUTHOR | jsmith | The author of a document from extracted metadata.<br><br>*Parties acknowledge that the Author field may not actually reflect the author of the document. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name or e-mail of the sender of an e-mail. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the recipient(s) of an e-mail. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the copyee(s) of an e-mail. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the blind copyee(s) of an e-mail. |
| SUBJECT | | The subject line of the e-mail. |
| CUSTODIAN | John Smith; Tim Jones; Finance Department | The custodian/source of a document. NOTE: If the documents are de-duped on a global level, this field should contain the name of each custodian from which the document originated. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including imbedded attachments). |

| MD5HASH (or equivalent) | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| --- | --- | --- |
| EMAIL CONVERSATION INDEX | | ID used to tie together e-mail threads. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The relative path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text or OCR of the document.  There should be a folder on the deliverable, containing a separate text file per document.  These text files should be named with their corresponding bates numbers.<br><br>If the attachment or e-file does not extract any text, then OCR for the document should be provided (only to the extent the Producing Party OCR's the document for their own benefit). |

** As it relates to the CUSTODIAN metadata field above, the Producing Party reserves the right to produce in multiple fields (e.g., CUSTODIAN + DUPLICATE CUSTODIAN) since the metadata may already be exported and logged as such.

** Same is true with all DATE and TIME Fields.  These fields can be provided in separate fields or be combined into a single field as long as the required information is produced in the load file.

## Appendix 2: Load File Formats

### Image Load Files

- Every document referenced in a production image load file must have all corresponding images, text and metadata.
- The name of the image load file must mirror the name of the delivery volume and should have a .LFP, or .OPT extension.
- The volume names must be consecutive (e.g., ABC001, ABC002…). If, for any reason, the volume names are not consecutive, that fact and the reason for the discrepancy shall be promptly disclosed to the party receiving the documents.
- The load file must contain one line per image.
- Every image in the delivery volume must be contained in the image load file. The image key must be named the same as the Bates number of the image.
- Load files must not span across media.

### Metadata Load Files

- The metadata load file must use the following delimiters: Column delimiter:
  - ASCII 020
  - Text qualifier: ASCII 254
  - New line:  ASCII 174
- Data for documents must be produced in only one data load file throughout the productions, unless that document is noted as being a replacement document.
- The first record must contain the field names in the order of the data set forth in Appendix 1.
- All date/time fields must be produced in "MM/DD/YYYY  HH:MM:SS AM/PM (UTC)" format, null dates will be blank
- A carriage-return line-feed must be used to indicate the start of the next document. Load files must not span across media.
- The name of the metadata load file must mirror the name of the delivery volume, and must have a .DAT extension.
- The volume names must be reasonably consecutive (e.g., ABC001, ABC002…).