**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| **MISSISSIPPI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; DR. ANDREA WESLEY; DR. JOSEPH WESLEY; ROBERT EVANS; GARY FREDERICKS; PAMELA HAMMER** | **PLAINTIFFS** |
| **VS.** | **CIVIL ACTION NO. 3:22-cv-734-DPJ-HSO-LHS** |
| **STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES,** *in his official capacity as Governor of Mississippi*; **LYNN FITCH,** *in her official capacity as Attorney General of Mississippi*; **MICHAEL WATSON,** *in his official capacity as Secretary of State of Mississippi* | **DEFENDANTS** |

## DEFENDANTS' MOTION TO SET DEADLINES

In accordance with the Court's instructions conveyed at the Case Management Conference on May 18, 2023 and pursuant to the Court's Order dated May 19, 2023, Defendants State Board of Election Commissioners, Governor Tate Reeves, Attorney General Lynn Fitch and Secretary of State Michael Watson (hereinafter collectively "Defendants") submit this request for the Court to set this matter for trial during the time frame of December 9-20, 2024, and to establish discovery and other case-related deadlines. In support of their request, Defendants would show the following:

1.      Plaintiffs in this matter are suddenly in a hurry. That has not been the case for the previous 15 months. The enabling legislation, a pair of Joint Resolutions which are the subject of this action, passed the Mississippi House and Senate on March 31, 2022. The original Complaint

1

in this matter was filed on December 20, 2022, almost nine months later.  Since filing the original Complaint, Plaintiffs have confessed a Motion to Dismiss filed by two prior Defendants, State Senator Dean Kirby and State Representative Dan Eubanks, and amended their Complaint.

2. Now, more than six months after bringing the original Complaint and more than 15 months after passage of the enabling Joint Resolutions, Plaintiffs seek a trial setting that is a little less than nine months from now.  That is an unreasonably short period of time to conduct fact discovery, expert discovery, and engage in dispositive motion practice.

3. Plaintiffs' Amended Complaint contains 197 paragraphs sprawling over 99 pages. With respect to the Senate map, Plaintiffs advocate for the creation of four new majority-minority Senate districts and allege that a fifth Senate district is a racial gerrymander.  With respect to the House map, Plaintiffs advocate for the creation of three new majority-minority House districts and allege that two other House districts are racial gerrymanders.

4. In total, Plaintiffs are challenging 10 legislative districts.  Those 10 legislative districts share borders with 60 other legislative districts (36 House districts and 24 Senate districts). Thus, in total, there are **70 legislative districts** that are impacted by Plaintiffs requested relief.

5. Those 70 impacted districts will be examined by experts and tested through discovery and motion practice.  In fact, in Plaintiffs' proposed draft Case Management Order, Plaintiffs proposed, and Defendants agreed, that the trial of this matter will take 10 days and involve as many as 30 total witnesses.  Plaintiffs have proposed that the trial of this matter will involve 12 testifying expert witnesses.

6. Further, Plaintiffs have proposed that each side be allowed up to 13 depositions of fact witnesses without leave of court. There will also be up to 12 expert witnesses to potentially be deposed.[1]

7. During the parties' Rule 26(f) conference, counsel for Plaintiffs made clear that they intend to engage in additional discovery against non-parties, including sitting and former State legislators. While Defendants do not concede that such discovery is proper, Plaintiffs' intention portends a significant risk of discovery disputes and related motion practice. The expectation of 12 or more expert witnesses testifying on complex subject matter portends significant *Daubert* motion practice.

8. Simply put, there is a great deal to do between today and the trial of this matter. If anything, the significant discovery and large number of witnesses proposed screams out for a prolonged discovery period, not a truncated and expedited one.

9. Plaintiffs' desire to cram this case into a nine-month, start-to-finish setting is unrealistic, problematic and ignores the realities of complex litigation. If Plaintiffs wanted to get this in front of the 2024 legislature meeting in regular session, then perhaps they should have brought this matter on April 1, 2022.[2]

10. And, even if Plaintiffs are successful and receive the remedy requested, any new plan would have to go through the same intense and rigorous process that led to the enactment of

---

[1] Plaintiffs have also proposed that each side be allowed 30 Interrogatories, more than the default provision provided in FED. R. CIV. P. 33.

[2] That is exactly what the intervenor Mississippi Republican Executive Committee did in the two-decades long Congressional redistricting challenge. *See Smith v. Clark:* 3:01-cv-00855 (S.D. Miss) at Dkt. #143 (Jan. 24, 2022). They brought a motion, the same day the Governor signed the most recent Congressional redistricting plan into law, seeking to lift the injunction in that case. The Congressional plan was approved in the same regular legislative session as the House and Senate plans at issue here.

the current Senate and House maps (the "Maps").[3]  A new Standing Joint Committee[4] will need to be appointed by the Lieutenant Governor and Speaker of the House.  Due to the retirement of the current Speaker, there will be a new Speaker of the House.  The Lieutenant Governor and all 174 State legislators are on the ballot this year.  Due to the retirement of the previous Chairman, the Standing Joint Committee will require a new and different Chairman.  The membership of any new Standing Joint Committee could be entirely different due to all of these factors.  Once a new Standing Joint Committee is in place, the process essentially starts anew.

11.     There is an extraordinary amount of work to be done in this case.  Defendants are willing to work with Plaintiffs in good faith to see that this litigation moves in an appropriate manner towards trial.  But Defendants and the Mississippi Attorney General's Office have limited resources and cannot shift the entirety of the State's attention to this one matter.

12.     Defendants respectfully suggested at the Case Management Conference that a trial setting in the late Fall of 2024 is a more realistic goal than Plaintiffs' proposal of February of 2024.  They reiterate that suggestion now.  An early December trial setting, after the 2024 election cycle has been completed, makes the most sense given the significant discovery sought, the number of witnesses and experts, and nature of this complex litigation.  It will also serve to provide the least

---

[3] The Standing Joint Committee went through a months-long process of meeting with and hearing from affected legislators and constituents, holding public hearings, working with counsel and experts and creating new Maps before coming back to the legislature and seeking approval of each chamber.  During that process, members of the Standing Joint Committee held nine open public meetings (in addition to the four open Committee meetings) across the State of Mississippi to hear the concerns of and answer questions posed by the public.  Additionally, the Chair and Vice Chair of the Standing Joint Committee opened the door to *all* of their members to meet with them and share their desires and concerns for the composition of their individual districts.  The entire process started June 30, 2021, and concluded on March 31, 2022.  It took nine months.

[4] The "Standing Joint Committee" is the commonly used name of the Standing Joint Legislative Committee on Reapportionment, which is charged by statute with reapportioning the two chambers of the State Legislature, and the Standing Joint Congressional Redistricting Committee, which is charged by statute with redistricting the State's Congressional seats.  *See* Miss. Code Ann. § 5-3-91, -121.

amount of confusion to the public. Further, it will avoid the specter of back-to-back legislative elections in 2023 and 2024, the least-desired outcome for the legislature, local election officials, and the public.

13. Assuming that the trial is set for the two-week period beginning December 9, 2024, Defendants suggest that the Court set all other deadlines in the ordinary manner, as follows:

| | |
|---|---|
| Trial: | December 9-20, 2024 |
| Pre-Trial: | November 11, 2024 |
| Discovery: | July 9, 2024 |
| Amendments: | June 30, 2023 |
| Experts: | March 9, 2024 for Plaintiffs |
| | May 9, 2024 for Defendants |
| Motions: | August 9, 2024 |

Defendants further suggest that all such other deadlines as might be necessary be based off of the aforementioned proposed deadlines.[5]

**WHEREFORE, PREMISES CONSIDERED**, Defendants respectfully request that the Court make and enter a Case Management Order which sets this matter for trial during the time frame of December 9-20, 2024, and set all other deadlines as customary and proposed herein. Defendants seek such other, further and additional relief as to which they may be entitled in the premises.

---

[5] Defendants reserve the right to revisit any trial setting and related deadlines based on subsequent changes to the law in this area. The constitutionality of Section 2's application to legislative redistricting was taken up by the United States Supreme Court in the challenge to Alabama's 2022 legislative redistricting. *See Caster v. Merrill*, cert. granted 2022 WL 264819 (Jan. 24, 2022). Oral argument was heard on October 4, 2022, and a decision is expected in June of 2023. This decision will have implications on the legal principles at issue in this matter. Likewise, the Defendants reserve the right to revisit any trial setting and related deadlines should the Plaintiff's change their requested relief.

THIS the 26th day of May, 2023.

    Respectfully submitted,
STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF MISSISSIPPI; LYNN FITCH, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF MISSISSIPPI; MICHAEL WATSON, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE, DEFENDANTS


   */s/ P. Ryan Beckett*
   P. Ryan Beckett (MB #99524)

*COUNSEL FOR DEFENDANTS*

OF COUNSEL:
Tommie S. Cardin (MB #5863)
P. Ryan Beckett (MB #99524)
B. Parker Berry (MB #104251)
**BUTLER SNOW LLP**
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
P.O. Box 6010, Ridgeland, MS 39158-6010
Phone: 601.948.5711
Fax:    601.985.4500
tommie.cardin@butlersnow.com
ryan.beckett@butlersnow.com
parker.berry@butlersnow.com

Rex M. Shannon III (MB #102974)
**STATE OF MISSISSIPPI**
**OFFICE OF THE ATTORNEY GENERAL**
**CIVIL LITIGATION DIVISION**
Post Office Box 220
Jackson, Mississippi 39205-0220
Tel.: (601) 359-4184
Fax: (601) 359-2003
rex.shannon@ago.ms.gov

## **CERTIFICATE OF SERVICE**

I, P. Ryan Beckett, do hereby certify that I have this day served the above and foregoing document via electronic mail on all counsel of record.

SO CERTIFIED, this 26th day of May, 2023.

/s/ P. Ryan Beckett
P. Ryan Beckett

69443154.v2