**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| MISSISSIPPI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; DR. ANDREA WESLEY; DR. JOSEPH WESLEY; ROBERT EVANS; GARY FREDERICKS; PAMELA HAMNER; BARBARA FINN; OTHO BARNES; SHIRLINDA ROBERTSON; SANDRA SMITH; DEBORAH HULITT; RODESTA TUMBLIN; DR. KIA JONES; ANGELA GRAYSON; MARCELEAN ARRINGTON; VICTORIA ROBERTSON, <br><br> *Plaintiffs*, <br><br> vs. <br><br> STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES, *in his official capacity as Governor of Mississippi*; LYNN FITCH, *in her official capacity as Attorney General of Mississippi*; MICHAEL WATSON, *in his official capacity as Secretary of State of Mississippi*. <br><br> *Defendants*. | **CIVIL ACTION NO. 3:22-cv-734-DPJ-HSO-LHS** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR EXPEDITED TRIAL**

Plaintiffs, by and through counsel, hereby move the Court for an expedited discovery and trial schedule consistent with their proposed Rule 26(f) Case Management Order.

Expedited treatment is proper in this case for several reasons. Expedited treatment is achievable here because the anticipated discovery in this action is limited in scope. Expedited treatment will also prevent the potential for irreparable harm and serve the public interest. If Plaintiffs succeed in this redistricting case, they intend to seek a court order requiring that special elections be held in remedial districts that comply with the Voting Rights Act and the

Constitution.  Due to long-pending Supreme Court litigation concerning the Voting Rights Act, November 2024 is the earliest time that such a special election could be held concurrently with a planned election.  An expedited schedule and a trial well in advance of November 2024 will ensure that, if Plaintiffs succeed on the merits and obtain a judgment in their favor, there will be adequate time to put such a remedy in place consistent with the principles set forth in *Purcell v. Gonzalez*, 549 U.S. 1 (2006).  By contrast, without expedition, any judgment Plaintiffs secure will likely be too close to the 2024 election to be put into effect, meaning that voters will be required to live with unlawful legislative districts for years, and will suffer irreparable harm as a result.

For those reasons, an expedited trial best ensures that the fundamental right to vote is protected and Plaintiffs and similarly situated voters will not be required to live with unlawful districts for years after the conclusion of trial.

## PROCEDURAL HISTORY

This lawsuit involves a challenge to certain state legislative districts that are part of the new legislative maps enacted by the Mississippi Legislature in late March 2022.  Am. Compl. at ¶ 78, ECF No. 27.  Plaintiffs—the State Conference of the NAACP and fifteen individual voters from across the State—first filed suit in December 2022, challenging Mississippi's enacted redistricting plans for the State House and State Senate.  Plaintiffs raise two causes of action: Count I alleges that the configuration of State House and State Senate districts in certain areas of the State dilute the voting strength of Black Mississippians in violation of Section 2 of the Voting Rights Act ("VRA"), 52 U.S.C. § 1301.  Am Compl. ¶ 184–86.  Count II alleges that certain State House and State Senate districts constitute racial gerrymanders in violation of the Fourteenth Amendment to the U.S. Constitution.  Am Compl. at ¶¶ 187–91.

Pursuant to Federal Rule of Civil Procedure 26(f), Plaintiffs conferred with Defendants and were unable to agree to a proposed trial schedule. On May 11, 2023, Plaintiffs submitted a proposed case management order with an expedited schedule that sets the conclusion of discovery on December 11, 2023, with a trial-ready date of February 26, 2024. *See* Ex. A. Defendants proposed a schedule under which the case would not be trial ready until much later in 2024. In a subsequent telephonic conference, the Court ordered both parties to file motions on their respective proposed schedules. *See* Text-Only Order (Dkt. entry dated May 19, 2023).

## ARGUMENT

Plaintiffs allege that the challenged legislative maps draw Black Mississippians into districts that dilute their voting strength, and also contain districts that were improperly constructed with race as a predominant consideration, in violation of all Mississippians' basic right to fair political lines. "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government. And the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). Accordingly, courts have repeatedly determined that "[a]bridgement or dilution of a right so fundamental as the right to vote constitutes irreparable injury." *Alpha Phi Alpha Fraternity Inc. v. Raffensperger*, 587 F. Supp. 3d 1222, 1320 (N.D. Ga. 2022) (Section 2 case) (quoting *Cardona v. Oakland Unified Sch. Dist.*, 785 F. Supp. 837, 840 (N.D. Cal. 1992)); *see also League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) ("Courts routinely deem restrictions on fundamental voting rights irreparable injury.").

Here, an expedited schedule is both achievable, and a sensible and necessary precaution against the risk of irreparable harm. Indeed, without an expedited schedule, Plaintiffs and similarly situated voters would be at risk of living under, and voting in, unlawful districts until well into the second half of the decade. This irreparable harm runs afoul of the principles underlying both Section 2 of the Voting Rights Act and the U.S. Constitution as it pertains to the right to vote. Plaintiffs' request for an expedited schedule that will allow for the possibility of effective relief in 2024 should be granted.

**I.      Plaintiffs' Proposed Expedited Schedule is Achievable**

Due to the nature of Plaintiffs' two claims, the anticipated discovery needs of the case are sufficiently limited to make an expedited trial achievable.

Section 2 vote dilution claims are primarily proved up through expert testimony. Under Section 2, Plaintiffs must make a threshold showing that (1) a majority-minority district can be drawn consistent with traditional districting principles; (2) the minority group votes cohesively for preferred candidates in the elections at issue; and (3) bloc voting by the White majority will typically defeat Black-preferred candidates under the challenged districting scheme. *See Thornburg v. Gingles*, 478 U.S. 30, 50–51 (1986). Plaintiffs will prove the three *Gingles* preconditions primarily if not exclusively through expert testimony of a demographer and political scientist, as is typical in cases raising Section 2 claims. *See, e.g. Veasey v. Abbott*, 830 F.2d 216, 250-252 (5th Cir. 2016). Further, Plaintiffs will prove under the totality of circumstances that the enacted districting scheme denies Black Mississippians an equal opportunity to elect candidates of choice. *See* 52 U.S.C. § 10301(b); *see also Fairley v. Hattiesburg, Miss.*, 662 Fed. Appx. 291, 295–296 (5th Cir. 2016). This evidence will be proved up primarily through expert testimony as well, including the testimony of a historian and a social

scientist. Plaintiffs' proposed schedule contemplates serving initial expert reports by the end of the summer, which would allow more than sufficient time for responses and depositions to take place in 2023.

Plaintiffs' racial gerrymandering claim requires limited additional discovery. In their Complaint, Plaintiffs assert that the State assigned voters in two Senate districts and three House districts predominantly based on their race in a manner that was not narrowly tailored to serve a compelling state interest, and thus in violation of the Fourteenth Amendment. *See, e.g.*, *Bethune-Hill v. Virginia State Bd. of Elections*, 580 U.S. 178, 187–93 (2017). Discovery for the constitutional claim will include some additional expert testimony analyzing the particular districts, and a limited amount of fact discovery focused on the post-2020 Census map-drawing process, much of which will likely come from the staff of the State Legislature's Standing Joint Legislative Committee on Reapportionment & Redistricting. Plaintiffs and Defendants have already agreed to the production of relevant documents from the map-drawing process, and Plaintiffs are prepared to serve requests for production and depositions in short order to establish the limited set of witnesses for both claims.

## II. Plaintiffs' Proposed Expedited Schedule Impedes Risk of Irreparable Harm

An expedited trial schedule obviates the risk that Plaintiffs will be unable to obtain relief ahead of elections in November 2024.

Because of the pendency of *Allen v. Milligan*, No. 21-1086 (S. Ct., probable jurisdiction noted Feb. 7, 2022), Plaintiffs in this case never had the practical ability to obtain preliminary injunctive relief prior to the November 2023 general election. In light of the pendency of the Milligan case on the one hand, and the so-called *Purcell* principle against revising district lines too late into the election calendar on the other, Plaintiffs will have no workable opportunity to

seek remedial districts in advance of the November 2023 general election. *Milligan* also involves vote dilution claims under Section 2 of the VRA, and the case has been pending in the Supreme Court since before the legislative maps at issue in this case were even released to the public. As of May 26, 2023, the Supreme Court has still not yet issued its decision in *Milligan* and may not do so until June. Even if Plaintiffs sought a preliminary injunction as soon as the Court rendered its decision, a decision on such an application could not be rendered until the eve of the August 2023 primary, which would almost certainly be too late to order changes to the district lines. *See, e.g.*, *Smith v. Hosemann*, 2022 WL 2168960 at *8 & n.12 (S.D. Miss. May 23, 2022) (in case challenging congressional district lines, holding that by May 2022, the processes of the 2022 congressional elections were "too far advanced for the federal courts to interfere" and citing *Purcell v. Gonzales*, 549 U.S. 1, 5-6 (2006) and the pending *Milligan* case); *see also Merrill v. Milligan*, 142 S. Ct. 879, 881 (J. Kavanaugh, concurring).

Plaintiffs will thus seek relief for the 2024 election cycle, in the form of special elections in new legislative districts in those areas where Plaintiffs have proven the enacted maps to be unlawful. However, absent an expedited trial schedule, the *Purcell* principle could yet again preclude such relief now for the November 2024 general election. Defendants have requested a schedule that contemplates a trial in Fall 2024, potentially on the eve of the 2024 general election, by which time any injunctive relief Plaintiffs obtain would be at serious risk of being stayed past 2024 on *Purcell* grounds. *See Robinson v. Ardoin*, 37 F.4th 208, 229 (5th Cir. 2022) ("Even where an election is many months away, the movant's showing a likelihood of success on the merits, for example, may counsel in favor of staying a district court's injunction."). The next major election after the 2024 general election will be the 2026 mid-terms, by which point

legislative maps with unlawful districts will have been in use, depriving voters of their fundamental rights, for almost an entire 4-year cycle.

An expedited trial schedule that better provides for timely implementation of relief guards against the risk that Plaintiffs might be denied any effective relief until deep into the latter half of the 2020s on *Purcell* grounds.  Such a result would constitute irreparable harm to Plaintiffs' and others' fundamental rights under Section 2 of the Voting Rights Act and the Fourteenth Amendment.  *See League of Women Voters of N.C.*, 769 F.3d at 248 ("[O]nce the election occurs, there can be no do-over and no redress.  The injury to these voters is real and completely irreparable if nothing is done to enjoin this law.").

Moreover, that risk is well worth guarding against, because if Plaintiffs do succeed on the merits of their claims, they will likely be able to establish an entitlement to the relief of special election.

In considering whether to grant a special election as a remedy for unlawful districting schemes, courts weigh a series of equitable factors.  *See, e.g. Covington v. North Carolina*, 270 F.Supp.3d 881, 888 (M.D.N.C. 2017); *Wright v. Sumter Cnty. Bd. of Elections & Registration*, 361 F. Supp.3d 1296, 1305 (M.D. Ga. 2018), *aff'd*, 979 F.3d 1282 (11th Cir. 2020); *Toney v. White*, 488 F.2d 310, 315 (5th Cir. 1973).  Most centrally, courts take into account three non-exclusive factors: (1) "the severity and nature of the … violation"; (2) "the extent of the likely disruption to the ordinary processes of governance if early elections are imposed"; and, (3) "the need to act with proper judicial restraint when intruding on state sovereignty." *North Carolina v. Covington*, 137 S. Ct. 1624, 1625, 1626 (2017).  Courts in the Fifth Circuit have long since considered a comparable set of factors in ordering special election relief where elections under unlawful maps would have otherwise occurred.  *See, e.g. Williams v. City of Dallas*, 734 F. Supp.

1317, 1318 (N.D. Tex. 1990); *Tucker v. Buford,* 603 F. Supp. 276, 279 (N.D. Miss. 1985); *Toney v. White,* 488 F.2d 310, 314–15 (5th Cir. 1973); *Keller v. Gilliam*, 454 F.2d 55, 57 (5th Cir. 1972).

Should Plaintiffs prevail under an expedited trial schedule, the *Covington* factors would likely be satisfied.  First, Plaintiffs' claims invoke serious infringements on their fundamental right to vote.  Courts have long recognized the societal harm of racial gerrymandering.  *See Covington,* 270 F.Supp.3d at 891 ("[U]njustifiably drawing districts based on race encourages elected representatives to believe that their primary obligation is to represent only the members of [a particular racial] group, rather than their constituency as a whole.").  Further, with respect to both the VRA and constitutional claims, there is a "serious ongoing constitutional harm" of "putting into office legislators acting under a cloud of constitutional illegitimacy."  *Id.*  Such a result is of particular importance in this case where Plaintiffs may otherwise be unable to seek relief for years.

Second, under an expedited schedule where trial occurs in February 2024, there will likely be negligible disruption to the governance of elections should the court order remedial maps.  Defendants would be left with over eight months to draw lines to cure statutory and constitutional violations in the areas of focus.  Additionally, preparations for those special elections would occur concurrently with upcoming federal elections in November 2024, further minimizing disruption to the ordinary course of State election administration.  *See Nation v. San Juan Cnty.* 2017 WL 6547635 at *18 (D. Utah Dec. 21, 2017), *aff'd sub nom. Navajo Nation v. San Juan Cnty.,* 929 F.3d 1270 (10th Cir. 2019) (finding no significant disruption where special elections would proceed alongside regularly scheduled elections under a staggered term schedule).  Mississippi law already provides for the administration of special elections in other

circumstances during presidential election cycles.  *See* Miss. Code Ann. § 23-15-833 (Rev. 2018) (designating a regular special election day in November of each year to fill vacancies in certain local elective offices); *see also* Geoff Pender, *Four Mississippi legislative races headed for runoff after Tuesday special elections*, MISSISSIPPI TODAY (Sept. 23, 2020), https://mississippitoday.org/2020/09/23/four-mississippi-legislative-races-headed-for-runoff-after-tuesday-special-elections/.

Lastly, principles of judicial restraint weigh in favor of ordering a special election.  To be clear, that a special election "will intrude on state sovereignty does not necessarily mean that this factor weighs against order of such an election."  *Covington*, 270 F.Supp.3d at 895.  The fundamental rights at stake and the widespread irreparable harm imposed by unlawful maps remaining in effect outweigh a special election's intrusion into state sovereignty.  *See id.* Plaintiffs also do not request a special election to occur on an accelerated schedule compared to the regularly scheduled elections in 2024:  With an expedited trial schedule, the special election may occur at the same time as federal election in November 2024, minimizing voter confusion and disruption to governance of elections.  *See Wright,* 361 F.Supp.3d at 1305; *see also Purcell*, 549 U.S. at 4–5.

Fifth Circuit courts have also considered special elections a more favorable form of retroactive relief where Plaintiffs first seek pre-election relief and were denied.  *See Tucker*, 603 F. Supp. at 277–279; *Williams*, 734 F. Supp. at 1415.  Similarly, where the pendency of a Supreme Court decision interferes with a plaintiff's ability to seek pre-election relief, a special election may also be a proper remedy.  Thus, in *Clark v. Roemer*, the district court ruled in favor of a special election under analogous circumstances in which a pending Supreme Court decision in *Houston Lawyers' Ass'n v. Attorney General of Texas*, 501 U.S. 419 (1991), would have

otherwise delayed plaintiffs from receiving timely relief for judicial districts already found to have violated Section 2 of the Voting Rights Act. 777 F. Supp. 471, 484–485 (M.D. La. 1991). This case is on all fours with *Clark* in that regard. But for the pendency of *Milligan*, Plaintiffs might have been able to rush this case to court and seek preliminary relief in advance of the 2023 general election; given *Milligan*, however, a special election is the only practicable remedy available other than delaying relief for years after a judgment. *See id.* (finding an undue delay of relief where the "next regularly scheduled elections for trial judges are at least five years away").

Because an expedited schedule is achievable, and because it guards against the significant risk of irreparable harm to Mississippi voters by positioning the Court to grant effective and timely relief in the event that Plaintiffs succeed on the merits, Plaintiffs' request should be granted.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for an expedited trial should be granted.

DATED: May 26, 2023                                       Respectfully submitted,

/s/ *Joshua Tom*                                                    Ari J. Savitzky*
Joshua Tom, MSB 105392                                    *asavitzky@aclu.org*
*jtom@aclu-ms.org*                                               Kelsey Miller*
**ACLU OF MISSISSIPPI**                                    *kmiller1@aclu.org*
101 South Congress Street                                    Ming Cheung*
Jackson, MS 39201                                                *mcheung@aclu.org*
(601) 354-3408                                                       Sophia Lin Lakin**
                                                                            *slakin@aclu.org*
Robert B. McDuff, MSB 2532                               **ACLU FOUNDATION**
*rbm@mcdufflaw.com*                                         125 Broad Street
**MISSISSIPPI CENTER FOR JUSTICE**             New York, New York 10004
767 North Congress Street                                   (212) 549-2500
Jackson, MS 39202
(601) 969-0802                                                      Patricia Yan*
                                                                            *pyan@aclu.org*
                                                                            **ACLU FOUNDATION**

Carroll Rhodes, MSB 5314
**LAW OFFICES OF CARROLL RHODES**
*crhodes6@bellsouth.net*
PO Box 588
Hazlehurst, MS 39083
(601) 894-1464

John P. Lavelle, Jr.*
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:     +1.202.739.3000
Facsimile:      +1.202.739.3001
*john.lavelle@morganlewis.com*

Drew C. Jordan*
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Telephone:     +1.713.890.5000
Facsimile:      +1.713.890.5001
*drew.jordan@morganlewis.com*

James A. Nortey*
**MORGAN, LEWIS & BOCKIUS LLP**
1000 Louisiana, Suite 4000
Houston, Texas 77002
Telephone:     +1.713.890.5000
Facsimile:      +1.713.890.5001
*james.nortey@morganlewis.com*

915 15th Street NW
Washington, DC 20005
(202) 457-0800

Ezra D. Rosenberg*
*erosenberg@lawyerscommittee.org*
Jennifer Nwachukwu*
*jnwachukwu@lawyerscommittee.org*
David Rollins-Boyd*
*drollins-boyd@lawyerscommittee.org*
Jon Greenbaum*
*jgreenbaum@lawyerscommittee.org*
**LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW**
1500 K Street NW Suite 900
Washington, DC 20005
(202) 662-8600

*\* admitted pro hac vice*
*\*\* application for pro hac vice forthcoming*

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

  I, Joshua Tom, hereby certify that on May 26, 2023, I filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all parties on file with the Court.

                   /s/: Joshua Tom_____
                   Joshua Tom, MSB # 105392