# EXHIBIT C



August 11, 2023

Jeremy B. Esterkin, Esq.
Morgan, Lewis & Bockius LLP
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
jeremy.esterkin@morganlewis.com

RE: *Mississippi State Conference for the National Association for the Advancement of Colored People, et al. v. State Board of Election Commissioners, et al.*
S.D. Miss. 3:22-cv-734-DPJ-HSO-LHS.

Dear Mr. Esterkin,

We are in receipt of and thank you for your meet and confer message regarding the Responses and Objections filed in response to the first eight (8) Subpoenas *Duces Tecum* served by Plaintiffs in this matter. These non-parties have produced the entirety of the public record, including all documents revealed to the public during the course of the legislative process. This included (1) the transcripts of the public meetings, (2) the handouts available at public meetings, (3) sign-in sheets and question cards from public meetings, (4) the notices and minutes of the Standing Joint Committee's hearings and meetings, (5) the legislative history of the two bills, (6) communications with third parties such as citizens and non-legislative public officials, and (7) all contracts with third parties. In the case of Rep. Eubanks, he also produced the single social media post in which he made reference to legislative redistricting.

All of the documents being withheld by our clients are communications and materials that are within "the legislative process itself" made or created when they were "acting in the sphere of legitimate legislative activity." They broadly include (1) internal communications amongst the staff, (2) documents prepared by the Standing Joint Committee or its staff, (3) communications by and amongst Legislators with the staff, (4) communications between Legislators, (5) draft versions of individual districts drawn at the request of individual Legislators, (6) draft plans, and (7) communications between the SJC and its Members with counsel. These communications and documents are entirely legislative in nature.

For those reasons, our clients do not have any obligation to provide a privilege log for any of the documents being withheld from production based on the legislative privilege. While acknowledging the recent panel decision in *Jackson Mun. Airport Authority v. Harkins*, 67 F.4th 678 (5th Cir. 2023), we note that no mandate has issued to the District Court from the Fifth Circuit due to the appellants' Petition for Rehearing *En Banc*. Thus, there is no direct guidance from the 5th Circuit yet on the issue of privilege logs in the context of an assertion of legislative privilege.

Post Office Box 6010
Ridgeland, MS 39158-6010

**P. RYAN BECKETT**
601.985.4557
Ryan.Beckett@butlersnow.com

Suite 1400
1020 Highland Colony Parkway
Ridgeland, MS 39157

T  601.948.5711  •  F  601-985-4500  •  www.butlersnow.com
BUTLER SNOW LLP

Jeremy B. Esterkin, Esq.
August 11, 2023
Page 2

Instead, as acknowledged by the Fifth Circuit's decision in *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228 (5th Cir. 2023), handed down a week *after JMAA*, the scope of legislative privilege covers "the many actions and documents that are within 'the legislative process itself' and that the common-law privilege therefore traditionally protects." *La Union,* 68 F.4th at 235, *citing In re Hubbard*, 803 F. 3d 1298, 1308 (11th Cir. 2018). The burden of producing a privilege log in this instance would swallow the purpose of the privilege - shielding part-time citizen legislators from the burdens of discovery to "allow[] lawmakers to focus on their jobs rather than on motions practice in lawsuits." *Id.*, at 237; *see also Hubbard*, 803 F. 3d at 1310. Further, "the privilege would be of little value if legislators 'could be subjected to the cost and inconvenience and distractions of a trial upon conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives.'" *Id.* This is particularly true in cases where plaintiffs are seeking evidence of legislative motive in cases "involving racial animus for the exercise of [constitutional] rights." *Id.* at 237, *citing Tenney v. Brandhove*, 341 U.S. 367, 377 (1951); *see also Hubbard*, F. 3d at 1310.

We further note that the Eighth Circuit handed down a decision quashing subpoenas served on legislators and their aides in redistricting litigation *after* the panel decision of the Fifth Circuit in *JMAA*. *See In re: North Dakota Legislative Assembly*, 70 F.4th 460 (8th Cir. 2023). Finding the legislative privilege to be a "absolute bar to interference" when legislators are "acting in the sphere of legitimate legislative activity," the Eighth Circuit reversed the district court's discovery order which, among other things, required the production of a privilege log. *North Dakota*, 70 F.4th at 466.

For those reasons, and based on these authorities, there are no additional documents in the possession, custody or control of these non-parties that are responsive to the Subpoenas that are not otherwise shielded from production by the legislative privilege.

Finally, we acknowledge the obligation, under ordinary circumstances, to provide a log of documents withheld on the grounds of the attorney-client privilege. All documents being withheld under the attorney-client privilege are also covered by the legislative privilege. Therefore, we will stand on legislative privilege unless and until the Court orders us to do otherwise.

          Sincerely,

          BUTLER SNOW LLP

          P. Ryan Beckett

PRB:fsw

81658495.v1