IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MISSISSIPPI STATE CONFERENCE OF THE
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE;
DR. ANDREA WESLEY; DR. JOSEPH
WESLEY; ROBERT EVANS; GARY
FREDERICKS; PAMELA HAMNER;
BARBARA FINN; OTHO BARNES;
SHIRLINDA ROBERTSON; SANDRA SMITH;
DEBORAH HULITT; RODESTA TUMBLIN;
DR. KIA JONES; ANGELA GRAYSON; MARCELEAN
ARRINGTON; VICTORIA ROBERTSON,                                        PLAINTIFFS

VS.                          CIVIL ACTION NO. 3:22-cv-734-DPJ-HSO-LHS

STATE BOARD OF ELECTION
COMMISSIONERS; TATE REEVES, *in his
official capacity as Governor of Mississippi*;
LYNN FITCH, *in her official capacity as
Attorney General of Mississippi*; MICHAEL
WATSON, *in his official capacity as Secretary
of State of Mississippi,*                                               DEFENDANTS

AND

MISSISSIPPI REPUBLICAN
EXECUTIVE COMMITTEE                                    INTERVENOR-DEFENDANT

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF THE
LEGISLATIVE SUBPOENA RECIPIENTS' RESPONSE TO
PLAINTIFFS' MOTION TO COMPEL**

**INTRODUCTION**

This Court should deny Plaintiffs' Motion to Compel the Production of a Privilege Log [Dkt. No. 80] for multiple reasons. *First*, state legislators are immune from compulsory evidentiary process in civil cases regarding their motives. *Second,* the Fifth Circuit confirmed just

1

recently that the legislative privilege is broad and should be applied broadly to prevent discovery of legislative motive. *Third*, the production of a privilege log (or alternatively *in camera* production) defeats the purpose of the legislative privilege itself – that is, to remove the burden of participating in discovery in civil lawsuits.

## STATEMENT OF FACTS

Consistent with the United States Constitution, see U.S. CONST. art. I, § 2, the Mississippi Constitution directs that every ten years the Legislature must "apportion the state in accordance with the Constitution of the state and of the United States into consecutive numbered senatorial and representative districts of contiguous territory." MISS. CONST. art. 13, § 254. Although the Census Bureau typically releases census data sometime in the spring the year after the census, the Bureau was delayed in releasing the 2020 Census Data—until August 2021. With 2023 elections and related qualifying deadlines rapidly approaching, the Legislature accordingly began its apportionment work in the summer of 2021.

That work started with the creation of the Standing Joint Committee[1]—a committee of legislators that is created to deliberate and draw legislative maps. *See* MISS. CODE ANN. § 5-3-91-103, 121. In accordance with state law, the Legislature created the Standing Joint Committee, and the Lieutenant Governor and Speaker of the House called an organizational meeting of the committee on June 30, 2021. At that meeting, the Standing Joint Committee elected former Representative Charles Jim Beckett[2] as Chairman and Senator Dean Kirby as Vice-Chairman,

---

[1] The "Standing Joint Committee" is the commonly used name of the Standing Joint Legislative Committee on Reapportionment, which is charged by statute with reapportioning the two chambers of the State Legislature, and the Standing Joint Congressional Redistricting Committee, which is charged by statute with redistricting the State's Congressional seats. *See* MISS. CODE ANN. §§ 5-3-91-103, 121.

[2] Representative Beckett has since retired from the House of Representatives.

adopted a public records policy, hired and retained counsel, and announced the schedule for public hearings. The Standing Joint Committee conducted public hearings across the State, provided the Census results at several hearings once it was released (on August 12, 2021), and adopted neutral redistricting criteria in an open meeting in November 2021.

The Standing Joint Committee held an open meeting on March 27, 2022, and adopted redistricting plans. On March 29, the Mississippi House of Representatives adopted a House Redistricting Plan (JR 1), and the Mississippi State Senate adopted a Senate Redistricting Plan (JR 202). On March 31, the House adopted JR 202 and the Senate adopted JR 1 and upon their signing and enrolling, those maps (the "2022 Maps") became law.[3]

Once the 2022 Maps became law, the Legislature and the Standing Joint Committee had no remaining role in redistricting and elections. Enforcing and implementing the law and administering elections is the work of various state and local executive officials and state political parties. *See* MISS. CODE ANN. § 23-15-211.1 *et seq.*

After waiting nearly nine months after the Mississippi Legislature adopted the 2022 Maps, Plaintiffs brought this action challenging those 2022 Maps under the Voting Rights Act and the Fourteenth Amendment to the United States Constitution. *See* Complaint [Dkt. # 1]. Plaintiffs subsequently confessed a Motion to Dismiss [Dkt. ## 17, 18, 24] brought by two prior Defendants, State Senator Dean Kirby and State Representative Dan Eubanks, and amended their Complaint [Dkt. # 27]. Plaintiffs' Amended Complaint contains 197 paragraphs spread over 99 pages. As for the Senate map, Plaintiffs advocate for the creation of four new majority-minority Senate districts and allege that a fifth Senate district is a racial gerrymander. As for the House map, Plaintiffs advocate for the creation of three new majority-minority House districts and allege that

---

[3] The adoption of these Joint Resolutions does not require the Governor's signature.

two other House districts are racial gerrymanders. The proposed changes to the enacted 2022 Maps will impact at least 70 current districts. The parties have exchanged discovery and Plaintiffs have served their expert reports. Defendants must serve their expert reports on October 16, 2023.

In June of 2023, Plaintiffs served ten separate subpoenas *duces tecum* on various members of the Mississippi Legislature and their staff. The recipients included: (1) the Standing Joint Legislative Committee on Reapportionment and Redistricting ("Standing Joint Committee"); (2) former Chairman Charles "Jim" Beckett; (3) Vice-Chairman Dean Kirby; (4) Representative Dan Eubanks; (5) House Speaker Phillip Gunn; (6) Lt. Governor Delbert Hosemann; (7) Nathan Upchurch; (8) James F. "Ted" Booth; (9) Ben Collins; and (10) Neal Smith (collectively, the "Legislative Subpoena Recipients"). The Standing Joint Committee has been described *supra*. Beckett was the Chairman of the Standing Joint Committee and was a member of the Mississippi Legislature during this time. Kirby and Eubanks are current members of the Mississippi Legislature and members of the Standing Joint Committee. Speaker Gunn is a member of the Mississippi Legislature and serves as Speaker of the House of Representatives. Lt. Governor Hosemann is the President of the Mississippi Senate. Upchurch was the Chief of Staff to Lt. Governor Hosemann during this time. Booth is counsel to the Standing Joint Committee. Collins and Smith served as staff members of the Standing Joint Committee. The work of the Standing Joint Committee, including its members, staff and aides, described *supra* is entirely legislative in nature. Following the passage of the legislation, the Legislative Subpoena Recipients have no role to play in executing, enforcing, or overseeing the 2022 Maps.

In response to the Subpoenas served on them, the Standing Joint Committee assembled and produced the entire public record relating to redistricting. That production included: (1) transcripts of the public meetings; (2) handouts available at public meetings; (3) sign-in sheets and

4

question cards from public meetings; (4) notices and minutes of the Standing Joint Committee's hearings and meetings; (5) legislative history of each Joint Resolution; (6) *all* communications with third parties such as citizens and non-legislative public officials; and (7) all contracts between the Standing Joint Committee and third parties. *See* Motion to Compel [Dkt. # 80] at Ex. A and C. In total, the Standing Joint Committee has produced 2,134 pages of records to Plaintiffs. In addition, Rep. Eubanks produced a non-privileged social media message he posted during the relevant period, and Lt. Governor Hosemann and his Chief of Staff Upchurch produced some non-privileged documents and communications with third parties.

What the Legislative Subpoena Recipients have not produced, collectively, are their communications and records relating to the legislative process itself, all of which are shielded from production by the legislative privilege. *See* Motion to Compel [Dkt. # 80] at Exs. A and C. The documents that the Standing Joint Committee, their staff and some Legislators have not produced include: (1) internal communications among the staff; (2) documents prepared by the Standing Joint Committee or its staff; (3) communications by and amongst the Legislators and the staff of the Standing Joint Committee; (4) communications between Legislators; (5) draft versions of individual districts drawn at the request of individual Legislators; (6) draft redistricting plans; and (7) communications between the Standing Joint Committee and its Members with counsel ("Privileged Documents"). *See* Motion to Compel [Dkt. # 80] at Ex. C. These descriptions of the Privileged Documents were timely provided to Plaintiffs. All of these documents were created and used in the redistricting process, within the sphere of legitimate legislative activity.

The Legislative Subpoena Recipients have already incurred significant burdens in terms of cost and expense. They have produced thousands of pages of the public record, transcribed hearings and presentations and are now in written motion practice with the Plaintiffs. The

Legislative Subpoena Recipients are not parties to this litigation and should not be subjected to any additional burdens. Moreover, the Court should not undergo the unnecessary burden of *in camera* review, nor should the Legislative Subpoena Recipients bear the cost of a special master.

## ARGUMENT

### A. State legislators are immune from discovery regarding their motives.

State legislators enjoy broad immunity for discovery aimed at discovering their motives in connection with the drafting, supporting or opposing of proposed or enacted legislation. The Supreme Court first addressed the question of legislative privilege in a case brought, like this one, under § 1983. *Tenney v. Brandhove*, 341 U.S. 367 (1951). The *Tenney* Court found that the purpose of the legislative privilege was to shield legislators from the cost and burdens of civil process. *Tenney*, 341 at 372. *Tenney* further observed:

> The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives. The holding of this Court in *Fletcher v. Peck*, 6 Cranch [10 U.S.] 87, 130 [(1810)], that it was not consonant with our scheme of government for a court to inquire into the motives of legislators, has remained unquestioned.

*Id.* at 377. Quoting this passage from *Tenney*, the Fifth Circuit recently doubled down on legislative privilege, holding that "courts are not to facilitate an expedition seeking to uncover a legislator's subjective intent in drafting, supporting, or opposing proposed or enacted legislation." *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 238 (5th Cir. May 17, 2023).

In *La Union* (also a Voting Rights Act case), the Fifth Circuit upheld the district court's application of legislative privilege over Plaintiffs' waiver claims. The Plaintiffs claimed that (1) communications with party leaders and lobbyists, (2) a legislator's hand-written notes on a document received from a third party, (3) correspondence from constituents, and (4) advice from the Secretary of State's office, were all exempt from or otherwise waived the legislative privilege.

6

*Id.* at 236-37. Rejecting these claims, the Court found that "A privilege that protected so little of the lawmaking process would not rightly be called 'legislative'." *Id.* at 236.

*La Union* cites and relies heavily on *Hubbard*. *In re Hubbard*, 803 F.3d 1298 (11th Cir. 2015). Under substantially identical circumstances as this case, the Eleventh Circuit in *Hubbard* rejected the contention that a privilege log was required because legislative privilege precludes discovery of legislative motive under any circumstances. *Hubbard*, 803 F. 3d at 1311. In *Hubbard*, plaintiffs claimed that a statute "was an unconstitutional act of government retaliation against [the Alabama Education Association] for its past acts of political expression." *Id.* at 1304 (footnote omitted). The District Court then ordered the Governor and three legislators to respond to discovery subpoenas. *Id.* at 1304-05. The Eleventh Circuit reversed, holding, "The privilege applies with full force against requests for information about the motives for legislative votes and legislative enactments." *Id.* at 1310. The Court also rejected the District Court's requirement "that the privileged documents be specifically designated and described." *Id.* at 1309. The Court reasoned, "The subpoenas' only purpose was to support the lawsuit's inquiry into the motivation behind Act 761, an inquiry that strikes at the heart of the legislative privilege." *Id.* at 1310.[4] The Court continued, "Any material, documents, or information that did not go to legislative motive was irrelevant to the retaliation claim, while any that did go to legislative motive was covered by the legislative privilege." *Id.* at 1311.[5]

---

[4] The Fourth Circuit and Ninth Circuit have similarly rejected discovery aimed at legislators to ascertain their motives. *See Schlitz v. Virginia*, 854 F.2d 43, 46 (4th Cir. 1988) and *Lee v. City of Los Angeles*, 908 F.3d 1175, 1188 (9th Cir. 2018).

[5] The Eighth Circuit also recently reached a similar conclusion, broadly interpreting the legislative privilege to cover all matters for legislators and their aides when they are "acting withing the sphere of legitimate legislative activity" and denying the production of a privilege log. *In re North Dakota Legislative Assembly*, 70 F 4th 460, 465 (8th Cir. June 6, 2023).

Here, Plaintiffs are remarkably frank about what they seek with this discovery: "documents and communications related to the line-drawing decisions that led to the challenged maps" namely "the use or misuse of race in constructing the lines for certain challenged districts." *See* Brief [Dkt #81] at p. 3. That is motive and nothing more.

*La Union* is now the law in the Fifth Circuit and controls.[6] It is clear that the Legislative Subpoena Recipients – Legislators, their staff and aides – enjoy a privilege against compulsory evidentiary process in civil cases aimed at discovering their motive. Here, that right and privilege was timely invoked in response to the various subpoenas.

**B. The scope of the legislative privilege is broad and should be broadly applied.**

To define the scope of the legislative privilege, this Court should again look to *La Union*:

> State lawmakers can invoke legislative privilege to protect actions that occurred within "the sphere of legitimate legislative activity" or within "the regular course of the legislative process." "The privilege is not limited to the casting of a vote on a resolution or bill; it covers all aspects of the legislative process." As part of that process, lawmakers routinely "meet with person outside the legislature – such as executive officers, partisans, political interest groups, or constituents—to discuss issues that bear on potential legislation." "Consequently, some communications with third parties, such as private communications with advocacy groups, are protected by legislative privilege. These cases teach, and we agree, that the legislative privilege's scope is necessarily broad."

*La Union*, 68 F4th at 235-236 (internal footnotes and citations omitted), *citing Hubbard*, 803 F.3d at 1308, *and Tenney*, 341 U.S. at 376. Thus, the privilege applies broadly to all documents,

---

[6] As this Court is aware, whether the privilege relieves state legislators from production of a log is currently before the Fifth Circuit Court of Appeals in a different matter involving control over the Jackson Municipal Airport Authority. The Fifth Circuit has granted *en banc* review of an order from the United States District Court for the Southern District of Mississippi directing a different set of Mississippi Legislators to produce a privilege log in the face of a legislative privilege objection. *See Jackson Municipal Airport Authority*, 78 F.4th 844 (5th Cir. Aug. 29, 2023). Should the Fifth Circuit find that the Plaintiffs there have standing, they will again reach this issue of legislative privilege logs on the merits. The underlying panel decision, *JMAA,* 2023 WL 5522213 (5th Cir. August 25, 2023), was vacated, leaving *La Union* as controlling authority.

communications or other materials "that occurred within 'the sphere of legitimate legislative activity' or within 'the regular course of the legislative process.'" *Id.*

The Privileged Documents in question include:

(1) internal communications among the staff; (2) documents prepared by the Standing Joint Committee or its staff; (3) communications by and amongst the Legislators and the staff of the Standing Joint Committee; (4) communications between Legislators; (5) draft versions of individual districts drawn at the request of individual Legislators; (6) draft redistricting plans; and (7) communications between the Standing Joint Committee and its Members with counsel.

*See* Motion to Compel [Dkt. # 80] at Ex. C. These documents all fall within the sphere of legitimate legislative activity. They were created and used within the regular course of the legislative process. The Privileged Documents do not contain anything shared with any third parties or revealed to the public. If the privilege is broad enough to cover a legislator's conversation with a constituent or lobbyist, it is certainly broad enough to cover a legislator's own internal communications with other legislators and their staff. Legislative privilege shields these legislators and their staff and aides from disclosure of the Privileged Documents.

### C. The Legislative Subpoena Recipients should not be compelled to produce a privilege log or be required to submit documents for *in camera* review.

Because the only relevant information that the Legislative Subpoena Recipients possess is privileged, the compiling of a privilege log is a useless task, imposing exactly the distractions and burdens of effort and expense that legislative privilege aims to avoid. *Hubbard*, 803 F.3d at 1306. Requiring these lawmakers and their staff and aides to "specifically designate and describe the documents … covered by legislative privilege" and requiring them to explain why the privilege applies to those documents" would itself violate the privilege. *Id.* at 1311. That is because requiring the production of a log "would undermine a primary purpose in the legislative privilege

9

– shielding lawmakers from the distraction created by inquiries into the regular course of the legislative process." *Id.*[7]

Plaintiffs contend that the Legislative Subpoena Recipients "refuse to disclose any details about the documents they are withholding." *See* Plaintiffs' Brief [Dkt. #81] at p. 6. They also contend that the Legislative Subpoena Recipients have not complied with Fed. R. Civ. P. 45(e)(2). *See* Plaintiffs' Brief [Dkt. #81] at p. 5. Both contentions are false. The Legislative Subpoena Recipients have satisfied Rule 45(e)(2) by "expressly ma[king] the claim" and "describ[ing] the nature of the withheld documents and communications" by providing the descriptions of those documents set forth *supra*. *See* Motion to Compel [Dkt. #80] at Exs. A and C. That is all that Rule 45(e) requires.[8] Neither the Plaintiffs nor the Court need a log to examine the validity of the claim, because a log would reveal no new information. The log will simply repeat what has been set forth previously, perhaps a couple of thousand times, a burden that the legislative privilege was designed to specifically prevent.[9]

---

[7] Every other Circuit Court that has considered this issue has ruled similarly. *See American Trucking Ass'ns, Inc. v. Alviti*, 14 F. 4th 76, 88-89 (1st Cir. 2021); *In re North Dakota Legislative Assembly*, 70 F.4th at 465.

[8] The Legislative Subpoena Recipients admit that Local Rule 26(e) requires the production of a privilege log when a party generally claims a privilege. U.L. Civ. R. 26(e). However, there is no way for the Legislative Subpoena Recipients to comply with this Local Rule without waiving the legislative privilege.

[9] *Tenney*, 341 U.S. at 372 ("the privilege of legislators to be free from … civil process"); *Hubbard*, 803 F.3d at 1311 ("To insist on unnecessary detail and procedures … would undermine a primary purpose of the legislative privilege—shielding lawmakers from the distraction created by inquiries into the regular course of the legislative process."); *Burtnik v. McLean,* 76 F.3d 611, 613 (4th Cir. 1996) (the privilege protects legislators from "the burden of defending themselves"); *Dombrowski v. Eastland,* 387 U.S. 82, 85 (1967); and *La Union*, 68 F4th at 237 (the privilege serves the "'public good' by allowing lawmakers to focus on their jobs rather than on motions practice in lawsuits").

Plaintiffs have also cited *Jackson Mun. Airport Auth. v. Harkins*, 2023 WL 5522213 (5th Cir. 2023), a now-vacated opinion in which the Court discussed waiver. To the extent that Plaintiffs contend that they need a log to determine whether any waiver has occurred, they are wrong. The now-vacated *JMAA* panel majority approved a log because "legislative privilege as to certain documents is waived when the Legislator *publicly* reveals those documents." *JMAA* Substituted Opinion at 11, citing *Favors v. Cuomo*, 285 F.R.D. 187, 212 (E.D.N.Y. 2012).[10] But the Fifth Circuit has already recognized that "[t]he very fact that Plaintiffs need discovery to access these documents shows that they have not been shared publicly." *La Union*, 68 F.4th at 237. Whatever disclosure might arguably be appropriate in a case where there was reason to believe a waiver might have occurred, plaintiffs offer no such evidence here. The compilation of a log simply imposes a burden for no purpose.

Plaintiffs next urge this Court to adopt the five-factor *Rodriquez* test used in the Southern District of New York. *See* Plaintiffs' Brief [Dkt. #81] at p. 7; *see also Rodriquez v. Pataki*, 280 F. Supp. 2d 89 (S.D.N.Y 2003). However, the Fifth Circuit abandoned and rejected this approach in *La Union*. *La Union* was an appeal from an order from the United States District Court for the Western District of Texas applying the five-factor *Rodriquez* test and ordering four non-party members of the Texas Legislature to produce their communications and other documents in connection with a Voting Rights Act challenge to the Texas Integrity Act of 2021. The *La Union* plaintiffs argued *extensively* on appeal that the Fifth Circuit should adopt this five-factor standard

---

[10] Plaintiffs claim that the *JMAA* panel was unanimous regarding the production of a privilege log. *See* Brief [Dkt. # 81] at p.7 & fn4. That is simply not true. Judge Duncan addressed only standing in his dissent and found none. He did join in any part of the majority opinion addressing a privilege log. *JMAA*, 2023 WL 5522213 at *9-12. Regardless, the *JMAA* Substituted Opinion was not marked for publication and vacated days later in favor on *en banc* review, giving it no precedential authority here.

11

employed by the District Court, who relied on and cited *Rodriguez*, *Jefferson Cmty. Health Care Ctrs. Inc.* and the original order from the *JMAA* District Court opinion from 2017, 2017WL65209697, at *6 (S.D. Miss. Dec. 19, 2017), reversed and rendered on appeal.  *See La Union,* Fifth Circuit Docket No. 22-50435: Appellant's Opening Brief, Dkt. No. 39-1 at p. 15, 34-35; Brief of the United States as Appellee, Dkt. No. 47, at pp. 10-11, 38-48; Brief of LULAC as Appellee, Dkt. No. 48, at pp. 37-40.  The application of the *Rodriquez* factors employed by the District Court was *the central issue on appeal* in *La Union*.

    *La Union* flatly rejected this approach in favor of the broad application of the legislative privilege that is now the law in the Fifth Circuit.  Any further reliance on cases using *Rodriquez* (a district court case from an out-of-circuit district court) is wrong.[11]  That is because acceptance of the "balancing act" in *Rodriquez* effectively eliminates much of the protection that the Supreme Court intended to provide in *Tenney* which the Fifth Circuit adopted in *La Union*.  As *Tenney* explained, "The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial based upon a conclusion of the pleader . . . ." 341 U.S. at 377.  These Legislative Subpoena Recipients have already been "subjected to the cost and inconvenience and distractions" of modern discovery, based on nothing more than plaintiffs' speculation that they might be hiding something important.  They have produced documents and served objections, conferred with the Magistrate Judge and will have a hearing before the Magistrate Judge (and, if necessary, before the District Court and Fifth Circuit).  Plaintiffs' suggested approach would allow anyone disappointed by a legislative outcome to file meritless challenges hoping to discover and publicize their opponents' communications.

---

[11] That includes the other cases cited by Plaintiffs.  *See Petteway v. Galveston County*, 2023 WL 3452065 (S.D. Tex. May 15, 2023; *Perez v. Perry*, 2014 WL 106927 (W.D. Tex., Jan. 8, 2014; *Hall v. Louisiana*, 2014 WL 1652791 (5th Cir. May 20, 2022).

Plaintiffs' reliance on *Jefferson Cmty Health* is also misplaced. *La Union* takes *Jefferson Cmty Health* directly on, rejecting the notion that it adopted a qualified privilege for purposes of compelling discovery:

> But that case provides no support for the idea that state legislators can be compelled to produce documents concerning the legislative process and a legislator's subjective thoughts and motives. There, a Louisiana parish sought to evict a health care center from property that the parish owned… . We rejected the city council members' arguments for a legislative privilege that would have barred the court from even deciding whether to issue injunctive relief … . We said only that "at any rate, even assuming that the council members' reasons for passing the resolutions are privileged in the sense that they cannot be directly compelled to disclose them, this evidentiary privilege cannot bar the adjudication of a claim." We held only that a claim for injunctive relief could proceed. That holding says nothing about cases like this one.

*La Union*, 68 F.4th at 240.

This Court should hold that the Legislative Subpoena Recipients cannot be compelled to produce evidence of their motives and should not have to produce a log. Here, Plaintiffs seek only documents concerning the "development, consideration and passage" of the 2022 House Map (JR 1) and the 2022 Senate Map (JR 202). *See* Motion to Compel [Dkt. #80] at Ex. A (definition of "2022 Redistricitng Process" in each subpoena attached). In this case, whether construed strictly or liberally,[12] there is no doubt that the Privileged Documents described by the Legislative Subpoena Recipients are within the sphere of legitimate legislative activity. *La Union*, 68 F.4th at 235-236. There is no reason to log communications which are clearly within the scope of the privilege. This Court can rule on the discoverability of those categories of documents, as

---

[12] *Tenney* stands for the proposition that legislative privilege is to be construed liberally in favor of legislative privilege. *Tenney*, 341 U.S. at 374. Plaintiffs claim that because the privilege is qualified, it must be strictly construed against a finding of legislative privilege. Brief at 5, *citing Jefferson Cmty. Health Care Ctrs.t*, 849 F.3d at 624 (5th Cir. 2017). However, *La Union* rejected that interpretation of *Jefferson Cmty. Health*. *La Union*, 68 F.4th at 240. In this instance, it is of no moment, as there can be no genuine dispute that the categories of documents disclosed by the Legislative Subpoena Recipients are legislative in nature.

described, without any need for further information. These non-party citizen legislators and their staff and aides should not be compelled to undertake the significant burden of logging these Privileged Documents.

Plaintiffs also contend that the Legislative Subpoena Recipients are "attempting to force one of two bad options" but that could not be further from the truth. *See* Plaintiffs' Brief [Dkt. #81] at p. 2. The timing of this matter has at all times been driven by Plaintiffs. After waiting almost nine months to bring their suit after the adoption of the 2022 Maps, Plaintiffs demanded a truncated trial setting with an ambitiously short period of time to marshal the proof that they claim they will need to carry their burden at trial. The Legislative Subpoena Recipients timely invoked legislative privilege over the Privileged Documents because they have a right to do so. Plaintiffs clearly knew that any subpoenas served on the Legislative Subpoena Recipients would result in claims of legislative privilege. They also knew that the Legislative Subpoena Recipients would have no choice but to seek an appeal if they were compelled to produce either their Privileged Documents or a privilege log. It would be foolish for this set of Mississippi Legislators to compromise the positions their colleagues have maintained on appeal for years in the *JMAA* litigation. Moreover, the Legislators here have no control over the Fifth Circuit's docket or the timing of its decisions in the *JMAA* appeal. If Plaintiffs have a set of "two bad options," it is a situation entirely of their own making. *See* Motion for Expedited Trial Setting [Dkt. ## 40, 41].

Finally, Plaintiffs contend that the Court can "sidestep the issue (of a privilege log) entirely" by ordering the Legislative Subpoena Recipients to produce the Privileged Documents for *in camera* review by the Court or a special master empowered to assess the claims of legislative privilege. *See* Plaintiffs' Brief [Dkt. #81] at p. 9. But this proposed workaround cures *none* of the problems with the discovery that are addressed *supra*. *See* Plaintiffs' Brief [Dkt. # 81] at 3, 9-10.

14

Moreover, requiring *in camera* review imposes as much or more of a burden on these non-party citizen legislators and their staff and aides, than would be required by a log. The substantial burden of reviewing, numbering, logging and producing these Privileged Documents for *in camera* review is precisely the type of burden that legislative privilege is meant to prevent. An *in camera* review would also be a substantial burden on the Court. Review by a special master would be timely and expensive, and the Legislative Subpoena Recipients have already incurred substantial expenses to date. If ordered to produce these documents for *in camera* review, the Legislative Subpoena Recipients will have no choice but to seek appellate relief.

## CONCLUSION

The Legislative Subpoena Recipients should not be subjected to the unnecessary burden of preparing a legislative privilege log or the unnecessary burden of producing their Privileged Documents for an *in camera* review by the Court or a special master. If any aggrieved citizen, disappointed in a legislative action, can subject all 174 members of the Mississippi Legislature to the rigors of modern discovery, those Legislators will have time for little else.

THIS the 29th day of September, 2023.

                              Respectfully submitted,

                              LEGISLATIVE SUBPOENA RECIPIENTS

                              By: */s/ P. Ryan Beckett*
                                  P. Ryan Beckett (MB #99524)

                              ONE OF THEIR COUNSEL

OF COUNSEL:
Tommie S. Cardin (MB #5863)
P. Ryan Beckett (MB #99524)
B. Parker Berry (MB #104251)
**BUTLER SNOW LLP**
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
P.O. Box 6010, Ridgeland, MS 39158-6010
Phone: 601.948.5711
Fax:    601.985.4500
tommie.cardin@butlersnow.com
ryan.beckett@butlersnow.com
parker.berry@butlersnow.com

## **CERTIFICATE OF SERVICE**

       I, P. Ryan Beckett, attorney for the Legislative Subpoena Recipients, hereby certify that I have on this date served the above and foregoing on all counsel of record via electronic mail.

       This the 29th day of September, 2023.

                                  */s/ P. Ryan Beckett*
                                  P. Ryan Beckett

82810705.v4