IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MISSISSIPPI STATE CONFERENCE OF THE
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE;
DR. ANDREA WESLEY; DR. JOSEPH
WESLEY; ROBERT EVANS; GARY
FREDERICKS; PAMELA HAMMER
BARBARA FINN; ORHO BARNES;
SHIRLINDA ROBERTSON; SANDRA
SMITH; DEBORAH HULITT; RODESTA
TUMBLIN; DR. KIA JONES; ANGELA
GRAYSON; MARCELEAN ARRINGTON;
VICTORIA ROBERTSON                                                                 PLAINTIFFS

VS.                                       CIVIL ACTION NO. 3:22-cv-734-DPJ-HSO-LHS

STATE BOARD OF ELECTION
COMMISSIONERS; TATE REEVES, *in his
official capacity as Governor of Mississippi*;
LYNN FITCH, *in her official capacity as
Attorney General of Mississippi*; MICHAEL
WATSON, *in his official capacity as Secretary
of State of Mississippi*                                                            DEFENDANTS

AND

MISSISSIPPI REPUBLICAN
EXECUTIVE COMMITTEE                                              INTERVENOR-DEFENDANT

**LEGISLATIVE SUBPOENA RECIPIENTS' BRIEF IN SUPPORT OF THEIR MOTION TO QUASH SUBPOENAS**

## INTRODUCTION

Comes now Representative Charles "Jim" Beckett (fmr.), Senator Dean Kirby, James F. "Ted" Booth and Ben Collins (collectively, the "Legislative Subpoena Recipients") and file this, their memorandum in support of their Motion to Quash Subpoenas as to the Deposition Subpoenas served on them by the Plaintiffs. These legislators and their staff are shielded from being compelled

to testify regarding their legislative activities and intentions by the doctrine of legislative privilege. Courts have long recognized that legislators and their staff members cannot be subject to compulsory process for testimony in civil litigation regarding their motives and actions done within the sphere of legislative activity or with the regular course of legitimate legislative activity.

## STATEMENT OF FACTS

In accordance with the United States Constitution, *see* U.S. Const. art. I, § 2, the Mississippi Constitution directs that every ten years the Legislature must "apportion the state in accordance with the Constitution of the state and of the United States into consecutive numbered senatorial and representative districts of contiguous territory." MISS. CONST. art. 13, § 254. The Legislature started its work with the creation of the Standing Joint Committee[1]—a committee of legislators that is created to deliberate and draw legislative maps. *See* MISS. CODE ANN. § 5-3-91-103, 121. Pursuant to state law, the Legislature created the Standing Joint Committee, and the Lieutenant Governor and Speaker of the House called an organizational meeting of the committee. The Standing Joint Committee elected former Representative Charles Jim Beckett[2] as Chairman and Senator Dean Kirby as Vice-Chairman, adopted a public records policy, hired and retained counsel, and announced the schedule for public hearings. The Standing Joint Committee conducted public hearings across the State, provided the Census results at several hearings once it was released (on August 12, 2021), and adopted neutral redistricting criteria in an open meeting in November 2021.

---

[1] The "Standing Joint Committee" is the commonly used name of the Standing Joint Legislative Committee on Reapportionment, which is charged by statute with reapportioning the two chambers of the State Legislature, and the Standing Joint Congressional Redistricting Committee, which is charged by statute with redistricting the State's Congressional seats. *See* MISS. CODE ANN. §§ 5-3-91-103, 121.

[2] Representative Beckett has since retired from the House of Representatives.

The Standing Joint Committee held an open meeting on March 27, 2022, and adopted redistricting plans (the "2022 Maps") that were ultimately adopted by the Mississippi House of Representatives and the Mississippi State Senate on March 29, 2022. Thereafter, the Legislature and the Standing Joint Committee had no remaining role in redistricting and elections. Enforcing and implementing the law and administering elections is the work of various state and local executive officials and state political parties. *See* MISS. CODE ANN. § 23-15-211.1 *et seq.*

Subsequently, Plaintiffs brought this action challenging those 2022 Maps under the Voting Rights Act and the Fourteenth Amendment to the United States Constitution. *See* Complaint [Dkt. # 1]. Plaintiffs previously issued 10 Subpoenas Duces Tecum to 10 Legislators and their staff seeking production of their documents related to redistricting. The Standing Joint Committee produced the entire public record, totaling 2,134 pages of documents. The remaining Legislators and staff members objected on grounds of legislative privilege. Plaintiffs moved to compel, the Legislators and their staff members responded, and that issue is fully briefed and pending before this Court. *See* [Dkt. ## 80, 81, 85, 86 and 93].

Subsequently, on November 1, 2023, Plaintiffs served four additional subpoenas (the "Deposition Subpoenas") on two members of the Mississippi Legislature and two staff members of the Standing Joint Committee seeking to take their depositions. The recipients included: (1) former Representative Charles "Jim" Beckett; (2) Senator Dean Kirby; (3) James F. "Ted" Booth; and (4) Ben Collins (collectively, the "Legislative Subpoena Recipients"). *See* Return of Service of Deposition Subpoenas [Dkt. ## 109, 110, 112 and 113]. Beckett was the Chairman of the Standing Joint Committee and was a member of the Mississippi Legislature during this time. Kirby is a current member of the Mississippi Legislature and Vice-Chairman of the Standing Joint Committee. Booth is counsel to the Standing Joint Committee. Collins is as staff member of the

Standing Joint Committee. The work of the Standing Joint Committee, including its members, staff and aides, described *supra* is entirely legislative in nature. Following the passage of the legislation, the Legislative Subpoena Recipients have no role to play in executing, enforcing, or overseeing the 2022 Maps.

The Legislative Subpoena Recipients have already incurred significant burdens in terms of cost and expense. They have produced thousands of pages of the public record, transcribed hearings and presentations and are now in a second round of written motion practice with the Plaintiffs in this case. They are not parties to this litigation and should not be subjected to any additional burdens.

## ARGUMENT

Rule 45 requires the Court to "quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter . . . ." Fed. R. Civ. P. 45(d)(3)(A)(iii). Plaintiffs' subpoenas should be quashed on grounds of legislative privilege because they seek discovery into the actions, statements, and motives of members of the Legislature in the legislative process surrounding the 2022 Redistricting Process. *See La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228 (2023) ("State lawmakers can invoke legislative privilege to protect actions that occurred within 'the sphere of legitimate legislative activity' or within 'the regular course of the legislative process.'") (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951) and *United States v. Helstoski*, 442 U.S. 477, 489 (1979)); *see also Purnell v. Florida Bd. Of Gov. of State Univ.*, --- F.4th ----, 2023 WL 7125049 (11th Cir. Oct. 30, 2023) (quoting *Bryant v. Jones*, 575 F.3d 1281, 1304-05 (11th Cir. 2009)) (In the face of a request for documents or testimony that is privileged, "state legislators can 'protect the integrity of the legislative process' by invoking the [legislative] privilege to quash the request.'").

4

Federal courts "have the authority and duty to recognize claims of privilege that are valid under federal common law." *In re Hubbard*, 803 F.3d 1298, 1307 (11th Cir. 2015). Courts must quash or limit subpoenas that require the disclosure of privileged or other protected matter or that impose undue burden on non-parties. FED. R. CIV. P. 45(d)(3)(A)(iii) and (iv). Additionally, Courts may issue an order forbidding or limiting discovery to protect a person from annoyance, embarrassment, oppression, or undue burden or expense. FED. R. CIV. P. 26(c)(1).

### A. Plaintiffs' Deposition Subpoenas Should be Quashed Because They Seek Discovery into the Legislators Motives

State legislators and their staff and aides enjoy broad immunity for discovery aimed at discovering their motives in connection with the drafting, supporting or opposing of proposed or enacted legislation. *See La Union*, 68 F.4th at 238 (quoting *Tenney*, 341 U.S. 367. 377 (1951)). In *Tenney*, the Supreme Court held that "[t]he privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives." *Tenney*, 341 U.S. at 377.[3]

The most recent case on legislative privilege in the Fifth Circuit is *La Union*, which cautioned that "courts are not to facilitate an expedition to uncover a legislator's subjective intent in drafting, supporting or opposing proposed or enacted legislation. *La Union*, 68 F.4th at 238. The Fifth Circuit cited and adopted *Tenney's* proscription into Courts allowing discovery as to legislative motives:

> The Supreme Court explained in *Tenney* that "[t]he reason for the privilege is clear." "In order to enable and encourage a representative of the public to discharge

---

[3] The issue of legislative privilege, including its origins and history, has been extensively briefed already in this litigation. In the interest of brevity, the Legislative Subpoena Recipients adopt and incorporate by reference their Memorandum of Authorities in support of their Response to Plaintiffs' Motion to Compel. *See* [Dkt. ## 85 and 86].

5

> his public trust with firmness and success, it is indispensably necessary[ ] that he should enjoy the fullest liberty of speech, and that he should be protected from the resentment of every one, however powerful, to whom the exercise of that liberty may occasion offense." "Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference ...." "[I]t [i]s not consonant with our scheme of government for a court to inquire into the motives of legislators," and courts are not to facilitate an expedition seeking to uncover a legislator's subjective intent in drafting, supporting, or opposing proposed or enacted legislation.

*La Union*, 68 F.4th at 238. *La Union* also cites and relies heavily on *In Re Hubbard*, 803 F.3d 1298, an Eleventh Circuit case that struck down subpoenas served on legislators whose "only purpose was to support the lawsuit's inquiry into the motivation behind Act 761, an inquiry that strikes at the heart of the legislative privilege." *Id.* at 1310.[4] "The legislative privilege 'protects against inquiry into acts that occur in the regular course of the legislative process and *into the motivation for those acts*.*" Hubbard*, 803 F.3d at 1310 (emphasis in original).

The purpose of legislative privilege "is not [only] to protect against disclosure in general, but to foster the 'public good' by protecting lawmakers from 'deterrents to the uninhibited discharge of their legislative duty.'" *La Union*, 68 F.4th at 233 (quoting *Tenney*, 341 U.S. at 377). Further, "litigation itself distracts lawmakers from the job that voters sent them to do. They cannot get that time back." *Id.* So, "the privilege is not limited to the casting of a vote on a resolution or bill; it covers all aspects of the legislative process." *Id.* (quoting *Jackson Mun. Airport Auth. v. Harkins*, No.21-60312, 67 F.4th 678, 686-87 (5th Cir. 2023)). Accordingly, "the legislative privilege's scope is necessarily broad." *Id.*

---

[4] The Fourth Circuit, Eighth Circuit and Ninth Circuit have similarly rejected discovery aimed at legislators to ascertain their motives. *See Schlitz v. Virginia*, 854 F.2d 43, 46 (4th Cir. 1988); *In re North Dakota Legislative Assembly*, 70 F4th 460, 465 (8th Cir. 2023); *and Lee v. City of Los Angeles*, 908 F.3d 1175, 1188 (9th Cir. 2018). No other Circuit Court has found otherwise.

Thus, it is clear that the Legislative Subpoena Recipients enjoy a broad privilege against compulsory evidentiary process in civil cases aimed at discovering their motives. Plaintiffs did not disclose what information they seek from the Legislative Subpoena Recipients in the Deposition Subpoenas, but they have been remarkably frank about what they have sought before: evidence relating to "the use or misuse of race in constructing the lines for certain challenged districts." *See, e.g.,* Plaintiffs' Brief in Support of Motion to Compel, [Dkt #81] at p. 3. That is motive and nothing more. Accordingly, the Court must quash Plaintiffs' Deposition Subpoenas.

**B.     Plaintiffs' Deposition Subpoenas Should be Quashed Because They Seek Discovery of Information Within the Sphere of Legislative Activity or Within the Regular Course of the Legislative Process**

The scope of the legislative privilege is "necessarily broad" and covers all actions that lawmakers engage in that is legislative in nature:

> State lawmakers can invoke legislative privilege to protect actions that occurred within "the sphere of legitimate legislative activity" or within "the regular course of the legislative process." "The privilege is not limited to the casting of a vote on a resolution or bill; it covers all aspects of the legislative process." As part of that process, lawmakers routinely "meet with person outside the legislature – such as executive officers, partisans, political interest groups, or constituents—to discuss issues that bear on potential legislation." "Consequently, some communications with third parties, such as private communications with advocacy groups, are protected by legislative privilege. These cases teach, and we agree, that the legislative privilege's scope is necessarily broad."

*La Union*, 68 F4th at 235-236 (internal footnotes and citations omitted), (citing *Hubbard*, 803 F.3d at 1308, *and Tenney*, 341 U.S. at 376). Thus, the privilege applies broadly to all actions, documents, communications or other materials "that occurred within 'the sphere of legitimate legislative activity' or within 'the regular course of the legislative process.'" *Id.*

In *La Union* (also a Voting Rights Act case), the Plaintiffs claimed that (1) communications with party leaders and lobbyists, (2) a legislator's hand-written notes on a document received from a third party, (3) correspondence from constituents, and (4) advice from the Secretary of State's

7

office, were all exempt from or otherwise waived the legislative privilege. *Id.* at 236-37. Rejecting these claims, the Court found that "[a] privilege that protected so little of the lawmaking process would not rightly be called 'legislative'." *Id.* at 236.[5]

The only information on which the Legislative Subpoena Recipients can testify is necessarily legislative in nature, and therefore both within the sphere of legitimate legislative activity and within the regular course of the legislative process. Thus, the only information they possess that is relevant is privileged. Any other non-privileged information is not relevant to Plaintiffs claims. Therefore, legislative privilege precludes the compulsory discovery pertaining to the legislative process here. *See La Union*, 68 F.4th at 239. For this additional reason, the Plaintiffs' Deposition Subpoenas should be quashed.

C.   **Plaintiffs' Deposition Subpoenas are Unduly Burdensome**

To be discoverable, information must be nonprivileged, relevant to a party's claim or defense, and "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1).

---

[5] The Eight Circuit also recently broadly interpreted the legislative privilege to cover all matters for legislators and their aides when they are "acting withing the sphere of legitimate legislative activity" and quashing subpoenas for legislators to testify. *In re North Dakota Legislative Assembly*, 70 F.4th 460, 465 (8th Cir. 2023). Addressing the dissent, the Eighth Circuit stated a "proposal to order a deposition during which a legislature could 'invoke legislative privilege' does not sufficiently appreciate that compulsory process constitutes a 'substantial intrusion' into the workings of a legislature that must 'usually be avoided.'" *Id.* (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18).

In addition to being privileged, the information Plaintiffs seek would impose a disproportional burden on the Legislative Subpoena Recipients who have already been "subjected to the cost and inconvenience and distractions" of modern discovery, based on nothing more than plaintiffs' speculation that they might be hiding something important. *See La Union*, 68 F.4th at 237-38.  They Standing Joint Committee has produced thousands of pages of documents regarding the redistricting process that are the best evidence of legislative intent. *See Garcia v. United States*, 469 U.S. 70, 76 (1984) ("In surveying legislative history we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which 'represen[t] the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation.'").  In addition, these Legislative Subpoena Recipients have already been forced to serve objections, confer with the Magistrate Judge and participate in a hearing before the Magistrate Judge, all in connection with the first document subpoenas served on them.  Now, they once again find themselves facing another attempt to haul them into court.

These non-party citizen legislators and their staff and aides should not be compelled to undertake the significant burden of preparing for and sitting for depositions that beckon privileged information.  Doing so would impose the distractions and burdens of effort and expense that the legislative privilege aims to avoid.  *La Union*, 68 F.4th at 238 (citing *Tenney*, 341 U.S. at 377), and *Hubbard*, 803 F.3d at 1306.  For this additional reason, the Plaintiffs' Deposition Subpoenas should be quashed.

**CONCLUSION**

Accordingly, for each of the reasons set forth *supra*, the Legislative Subpoena Recipients respectfully request that the Court enter an order quashing the Deposition Subpoenas.

THIS the 10th day of November, 2023.

                                                     Respectfully submitted,

                                                     LEGISLATIVE SUBPOENA RECIPIENTS
                                                     CHARLES "JIM" BECKETT, DEAN KIRBY,
                                                   JAMES F. "TED" BOOTH AND BEN COLLINS

                        By:    */s/ P. Ryan Beckett*
                               P. Ryan Beckett (MB #99524)

                               ONE OF THEIR COUNSEL

OF COUNSEL:

Tommie S. Cardin (MB #5863)
P. Ryan Beckett (MB #99524)
B. Parker Berry (MB #104251)
**BUTLER SNOW LLP**
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
P.O. Box 6010, Ridgeland, MS 39158-6010
Phone: 601.948.5711
Fax:    601.985.4500
tommie.cardin@butlersnow.com
ryan.beckett@butlersnow.com
parker.berry@butlersnow.com

## CERTIFICATE OF SERVICE

I, P. Ryan Beckett, one of the attorneys for the Legislative Subpoena Recipients, do hereby certify that I have this day filed the above and foregoing document with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

This the 10th day of November, 2023.

                                             */s/ P. Ryan Beckett*
                                             P. Ryan Beckett

84066731.v3