# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

MISSISSIPPI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; DR. ANDREA WESLEY; DR. JOSEPH WESLEY; ROBERT EVANS; GARY FREDERICKS; PAMELA HAMNER; BARBARA FINN; OTHO BARNES; SHIRLINDA ROBERTSON; SANDRA SMITH; DEBORAH HULITT; RODESTA TUMBLIN; DR. KIA JONES; MARCELEAN ARRINGTON; VICTORIA ROBERTSON,

*Plaintiffs*,

vs.

STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES, *in his official capacity as Governor of Mississippi*; LYNN FITCH, *in her official capacity as Attorney General of Mississippi*; MICHAEL WATSON, *in his official capacity as Secretary of State of Mississippi*,

*Defendants,*

AND

MISSISSIPPI REPUBLICAN EXECUTIVE COMMITTEE,

*Intervenor-Defendant.*

**CIVIL ACTION NO.
3:22-cv-734-DPJ-HSO-LHS**

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR THE COURT TO TAKE JUDICIAL NOTICE

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. 1
TABLE OF AUTHORITIES .......................................................................................................... 2
INTRODUCTION .......................................................................................................................... 4
BACKGROUND ............................................................................................................................ 4
ARGUMENT .................................................................................................................................. 6
CONCLUSION ............................................................................................................................... 9
CERTIFICATE OF SERVICE ..................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Alabama State Conference of NAACP v. Alabama*,
    612 F. Supp. 3d 1232 (M.D. Ala. 2020) ................................................................................ 7

*Alpha Phi Alpha Fraternity Inc. v. Raffensperger*,
    (No. 1:21-CV-5337-SCJ), 2023 WL 5675032, (N.D. Ga. Aug. 23, 2023) .............................. 8

*Cannon v. Nash*,
    (No. 3:17CV488-DPJ-FKB), 2019 WL 2110594, (S.D. Miss. Apr. 29, 2019) ....................... 8

*Hardy v. Johns-Manville Sales Corp.*,
    681 F.2d 334 (5th Cir. 1982) .................................................................................................. 6

*Hollinger v. Home State Mutual Insurance Co.*,
    654 F.3d 564 (5th Cir. 2011) .................................................................................................. 8

*League of United Latin American Citizens v. Abbott*,
    617 F. Supp. 3d 622 (W.D. Tex. 2022) ................................................................................ 7, 8

*Luna v. American National Insurance Co.*,
    (No. EP-21-CV-00064-FM), 2021 WL 1911339, (W.D. Tex. May 12, 2021) ....................... 7

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
    876 F. Supp. 2d 758 (S.D. Miss. 2012) .................................................................................. 8

*Mississippi State Chapter, Operation Push, Inc. v. Mabus*,
    932 F.2d 400 (5th Cir. 1991) .................................................................................................. 9

*Shelby County, Alabama v. Holder*,
    570 U.S. 529 (2013) ............................................................................................................... 7

*Stringer v. Whitely*,
    942 F.3d 715 (5th Cir. 2019) ............................................................................................... 7, 8

*Taylor v. Charter Medical Corp.*,
    162 F.3d 827 (5th Cir. 1998) .................................................................................................. 6

*Thomas v. Bryant*,
    366 F. Supp. 3d 786 (S.D. Miss. 2019) .................................................................................. 9

*Thomas v. Bryant*,
    938 F.3d 134 (5th Cir. 2019) .................................................................................................. 9

*United States v. Berrojo*,
   628 F.2d 368 (5th Cir. 1980) ................................................................................................ 8

*Weinhoffer v. Davie Shoring, Inc.*,
   23 F.4th 579 (5th Cir. 2022) ................................................................................................ 6

**Other Authorities**

*About Voting and Registration*, U.S. Census Bureau (Nov. 22, 2021),
   https://www.census.gov/topics/public-sector/voting/about.html ............................................ 4

*Collecting Data*, U.S. Census Bureau (Aug. 9, 2022), https://www.census.gov/programs-
   surveys/cps/technical-documentation/methodology/collecting-data.html ............................... 4

*Frequently Asked Questions (FAQs) About Voting and Registration*, U.S. Census Bureau
   (Nov. 22, 2021), https://www.census.gov/topics/public-sector/voting/about/faqs.html .......... 5

*Methodology*, U.S. Census Bureau (Nov. 19, 2021), https://www.census.gov/programs-
   surveys/cps/technical-documentation/methodology.html ...................................................... 8

Stephen Ansolabehere et al.,
   *The Current Population Survey Voting and Registration Supplement Overstates
   Minority Turnout*, 84 The Journal of Politics 1850 (2022) .................................................. 5, 9

*Top Questions About the Survey*, U.S. Census Bureau (June 27, 2023),
   https://www.census.gov/programs-surveys/acs/about/top-questions-about-the-
   survey.html ........................................................................................................................... 8

**Rules**

Advisory Committee Notes to Fed. R. Evid. 201(b) (1972) ............................................................ 6

Fed. R. Evid. 201 ..................................................................................................................... 4, 6

# INTRODUCTION

Defendants seek judicial notice of unreliable, disputed data from the Current Population Survey Voting and Registration Supplement ("CPS"), a self-reported, unverified survey of voting behavior administered by the U.S. Census Bureau. Under Federal Rule of Evidence 201(b)(2), judicial notice is appropriate where a fact "cannot reasonably be questioned." Data from the CPS is the subject of considerable controversy in the political science literature as a measure of political participation by race, because of the well-known tendency of survey respondents to over-report voter participation, and the well-known differential rates of over-reporting of voting between Black and White survey respondents. This Court and the Fifth Circuit have acknowledged the CPS's problems and discredited its use in Voting Rights Act cases for this reason.

Defendants initially noticed an expert witness to introduce and discuss the CPS data, but then chose to withdraw this witness after Plaintiffs' experts contested the accuracy and import of the CPS data. The CPS data is not properly judicially noticeable on a standalone basis, and Defendants' motion should accordingly be denied.

# BACKGROUND

The CPS is a monthly survey the U.S. Census Bureau conducts on a wide range of topics. In even-numbered election years, it includes questions related to voting and registration in a "Voting and Registration Supplement." *About Voting and Registration*, U.S. Census Bureau, https://www.census.gov/topics/public-sector/voting/about.html (last revised Nov. 22, 2021). The data is based on voluntary interview responses to survey questions from a sample of people. *Collecting Data*, U.S. Census Bureau, https://www.census.gov/programs-surveys/cps/technical-documentation/methodology/collecting-data.html (last revised Aug. 9, 2022). The Census Bureau acknowledges that voting data collected through the CPS may contain errors as a result of

4

"population controls," "survey coverage," and "[r]espondent misreporting." *See Frequently Asked Questions (FAQs) About Voting and Registration*, U.S. Census Bureau, https://www.census.gov/topics/public-sector/voting/about/faqs.html (last updated Nov. 22, 2021). The CPS also acknowledges that these errors can result in data that differs from "official vote counts," such as those collected by the Mississippi Secretary of State. *Id*.

Academic researchers have found that the CPS specifically overestimates Black political participation relative to White political participation. *E.g.*, Stephen Ansolabehere et al., *The Current Population Survey Voting and Registration Supplement Overstates Minority Turnout*, 84 The Journal of Politics 1850 (2022), at 1852 ("[T]he CPS consistently overstates the participation rate among blacks and Hispanics, while it sometimes underestimates participation among whites."); Ex. 1 (November 22, 2023 Responsive Expert Report of Dr. Byron D'Andra Orey), at 1 (noting same, and finding "this known issue of differential overreporting by race makes it especially problematic" to "rely solely on an unverified survey to estimate turnout by race in Mississippi"); Ex. 2 (January 29, 2024 Second Rebuttal Report of Dr. Jordan Ragusa), at 1-2 ("[D]ozens of highly reputable peer reviewed studies show that unverified surveys, including the CPS specifically, over report Black political participation relative to White respondents" such that Dr. Ragusa "[does] not endorse the use of CPS data in this context"). Indeed, before Defendants withdrew Dr. Peter Morrison as an expert, he agreed that the issue of overreporting on the CPS was disputed, calling it "a controversial topic among political scientists." ECF No. 170-2, at 124; *see also id*. at 194:9-195:11 (calling over-reporting on voting surveys "an ongoing controversy among political scientists" and noting "[l]atest word, still controversial").

5

**ARGUMENT**

A "court may judicially notice a fact that is not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). While the "usual method of establishing adjudicative facts is through the introduction of evidence, ordinarily consisting of the testimony of witnesses," "[i]f particular facts are" "outside the area of reasonable controversy, this process is dispensed with as unnecessary." Advisory Committee Notes to Fed. R. Evid. 201(b) (1972). "A high degree of indisputability is the essential prerequisite" for taking judicial notice. *Id.*; *see also Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 583 (5th Cir. 2022). In other words, the "'indisputability' hurdle" of Rule 201(b) requires showing a particular fact is a "self-evident truth[] that no reasonable person could question." *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998). By contrast, "where there is evidence on both sides of an issue the matter is subject to reasonable dispute." *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 347–48 (5th Cir. 1982).

Here, the CPS survey data on voter turnout and registration data is "subject to reasonable dispute" and its accuracy can "reasonably be questioned" on the present record. Fed. R. Evid. 201(b). Most notably, CPS data significantly overstates voter participation, with the degree of error varying between racial groups, making it especially questionable and subject to dispute on the precise issue—voter turnout by race—for which Defendants seek to introduce it into the record. Indeed, the parties were preparing to dispute the issue, but Defendants withdrew their expert who would have testified about the CPS data. Now, they ask that the data be admitted without rebuttal or cross-examination.[1]

---

[1] *See* Advisory Committee Notes to Rule 201(b) ("With respect to judicial notice of adjudicative facts, the tradition has been one of caution in requiring that the matter be beyond reasonable

Defendants make no effort to apply the disputability standard in their Memorandum of Law supporting their Motion. ECF No. 189 at 9-11. Instead, Defendants rely on cases where courts have found *other* Census Bureau data to be judicially noticeable. ECF No. 189 at 9-10. The mere fact that the Census Bureau published some data does not make it judicially noticeable—especially where the data is an unverified survey that the Census Bureau itself states may contain errors due to misreporting. *See Luna v. Am. Nat'l Ins. Co.*, No. EP-21-CV-00064-FM, 2021 WL 1911339, at *4 (W.D. Tex. May 12, 2021) ("Publication in a government document alone is not necessarily sufficient to render a fact so self-evident that no reasonable person could question it.").

Defendants have not provided a single case where CPS data was subject to judicial notice,[2] instead conflating other Census sources with the CPS. In two of the cases they cite, ECF No. 189 at 10-11, the Court took judicial notice of data from the American Community Survey ("ACS"), a distinct survey on different issues with different methodology. *See Stringer v. Whitely*, 942 F.3d 715, 722 n.23 (5th Cir. 2019); *League of United Latin Am. Citizens v. Abbott*, 617 F. Supp. 3d 622, 631 n.2 (W.D. Tex. 2022). The ACS has a larger sample size than the CPS and is conducted yearly, and responding to the ACS is required by law (similar to the decennial Census itself), whereas responding to the CPS is not. *See Top Questions About the Survey*, U.S. Census Bureau,

---

controversy" because "fair procedure in resolving disputes of adjudicative facts calls for giving each party a chance to meet" and dispute facts, including via "rebuttal evidence" and "cross-examination").

[2] Defendants point to the fact that two courts have discussed data from the CPS in the past. ECF No. 189 at 9-10 (discussing *Shelby Cnty., Ala. v. Holder*, 570 U.S. 529, 535 and *Ala. State. Conf. Of NAACP v. Ala.*, 612 F. Supp. 3d 1232, 1290 (M.D. Ala. 2020)). But there is no indication that those courts *took judicial notice* of the data, and the *Ala. State Conf.* case was simply citing the *Shelby County* case. 612 F. Supp. 3d 1232, 1290 (M.D. Ala. 2020). Regardless, since 2013, substantial political science literature has developed on the topic and further demonstrated over-reporting on the CPS whereby Black voters over-report participation at higher rates than White voters, as discussed *supra*.

7

https://www.census.gov/programs-surveys/acs/about/top-questions-about-the-survey.html (last revised June 27, 2023); *Methodology*, U.S. Census Bureau, https://www.census.gov/programs-surveys/cps/technical-documentation/methodology.html (last revised Nov. 19, 2021). Further, as discussed above, over-reporting is a known problem when surveys ask about *voting behavior, and voting behavior by race, in particular*. The data in the judicial notice cases Defendants cite involved demographics and economic information, not voting behavior. *Stringer*, 942 F.3d at 722 n.23 (ACS data about frequency of moving in one's lifetime); *League of United Latin Am. Citizens*, 617 F. Supp. 3d at 631 n.2 (ACS data about Hispanic population in an area); *Mississippi ex rel. Hood v. AU Optronics Corp.*, 876 F. Supp. 2d 758 at 773-74 n.13 (S.D. Miss. 2012) (data about mobile phone ownership); *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 572 (5th Cir. 2011) (data about rates of relocation).[3]

In contrast to the cases Defendants rely on involving other data sets, courts have repeatedly questioned the accuracy of the CPS in particular. A federal district court in Georgia recently denied a motion for judicial notice of the same CPS voter turnout data in a Voting Rights Act Section 2 case because "the Census Bureau expressly states" that the CPS "voter turnout and registration data has errors" and because its "accuracy . . . is questioned by the Census Bureau itself." *Alpha Phi Alpha Fraternity Inc. v. Raffensperger*, No. 1:21-CV-5337-SCJ, 2023 WL 5675032, at *3 (N.D. Ga. Aug. 23, 2023). Similarly, this Court and the Fifth Circuit have

---

[3] In the remaining cases Defendants cite, courts took notice of classically judicially noticeable facts that were virtually irrefutable facts and did not require additional inferences, not complex or controversial survey data. *United States v. Berrojo*, 628 F.2d 368 at 369 (5th Cir. 1980) (court took judicial notice of a drug's presence on the Schedule II controlled substance list); *Cannon v. Nash*, No. 3:17CV488-DPJ-FKB, 2019 WL 2110594, at *1 (S.D. Miss. Apr. 29, 2019) (court took judicial notice only of the fact of a prisoner's release based on a government website). Those cases are inapposite.

acknowledged issues with the CPS and questioned its accuracy. *Thomas v. Bryant*, 366 F. Supp. 3d 786, 808 (S.D. Miss. 2019) (finding that CPS voter turnout data by race, offered by expert Dr. Peter Morrison, "fail[ed] to persuade" because it "rel[ied] upon known issues with self-reported voting surveys—issues that [ecological inference], in contrast, seeks to overcome"); *Thomas v. Bryant*, 938 F.3d 134, 162–63 (5th Cir. 2019) (upholding same, because CPS data has "serious problems" and "known issues" as a "self-reported voting survey[]"); *Mississippi State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400, 412 (5th Cir. 1991) (affirming district court decision to favor expert analysis of voter registration based on official state records, over self-reported Census Bureau survey data on voter participation, due to unreliability of "uncorroborated self-reporting" and to "evidence demonstrating that black respondents to the [census] questionnaire overreported voter registration at a higher rate than white respondents.").

The same result should occur here. The accuracy of the CPS data on voter participation by race is significantly disputed on the exact issue for which Defendants seek to rely on it: It understates White turnout and registration and overstates Black turnout and registration, likely making racial disparities in voter turnout and registration appear smaller than they are. *See, e.g.*, Ansolabehere, *supra*. Such controversial, disputed data is not properly the subject of judicial notice.[4] The motion should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion for the Court to Take Judicial Notice. If the motion is granted, Plaintiffs reserve all

---

[4] Defendants also ask for admission of a table summarizing the relevant data pursuant to Federal Rule of Evidence 1006. ECF No. 188 at 2. Should this Court take judicial notice of the CPS survey data, which it should not, Plaintiffs do not object to the use of a summary table in the record.

9

rights to elicit expert testimony from Dr. Orey and Dr. Ragusa on the unreliability of the CPS voter participation data.

This the 16th day of February, 2024.

/s/ *Joshua Tom*
Joshua Tom, MSB 105392
*jtom@aclu-ms.org*
ACLU OF MISSISSIPPI
101 South Congress Street
Jackson, MS 39201
(601) 354-3408

Robert B. McDuff, MSB 2532
*rbm@mcdufflaw.com*
MISSISSIPPI CENTER FOR JUSTICE
767 North Congress Street
Jackson, MS 39202
(601) 969-0802

Carroll Rhodes, MSB 5314
Law Offices of Carroll Rhodes
*crhodes6@bellsouth.net*
PO Box 588
Hazlehurst, MS 39083
(601) 894-1464

John P. Lavelle, Jr.
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:    +1.215.963.4824
Facsimile:    +1.215.963.5001
*john.lavelle@morganlewis.com*

Drew C. Jordan
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Telephone:    +1.202.739.5962
Facsimile:    +1.202.739.3001
*drew.jordan@morganlewis.com*

Ari J. Savitzky
*asavitzky@aclu.org*
Casey Smith
*csmith@aclu.org*
Ming Cheung
*mcheung@aclu.org*
ACLU FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500

Patricia Yan
*pyan@aclu.org*
ACLU FOUNDATION
915 15th Street NW
Washington, DC 20005
(202) 457-0800

Ezra D. Rosenberg
*erosenberg@lawyerscommittee.org*
Jennifer Nwachukwu
*jnwachukwu@lawyerscommittee.org*
David Rollins-Boyd
*drollins-boyd@lawyerscommittee.org*
Javon Davis
*jdavis@lawyerscommittee.org*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street NW Suite 900
Washington, DC 20005
(202) 662-8600

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

      I, Joshua Tom, do certify that on this day I caused to be served a true and correct copy of the foregoing by electronic mail to all counsel of record.

      This the 16th day of February, 2024.

                                              /s/ *Joshua Tom*
                                              Joshua Tom