## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

MISSISSIPPI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; DR. ANDREA WESLEY; DR. JOSEPH WESLEY; ROBERT EVANS; GARY FREDERICKS; PAMELA HAMNER; BARBARA FINN; OTHO BARNES; SHIRLINDA ROBERTSON; SANDRA SMITH; DEBORAH HULITT; RODESTA TUMBLIN; DR. KIA JONES; MARCELEAN ARRINGTON; VICTORIA ROBERTSON,

*Plaintiffs*,

vs.

STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES, *in his official capacity as Governor of Mississippi*; LYNN FITCH, *in her official capacity as Attorney General of Mississippi*; MICHAEL WATSON, *in his official capacity as Secretary of State of Mississippi*,

*Defendants*,

AND

MISSISSIPPI REPUBLICAN EXECUTIVE COMMITTEE,

*Intervenor-Defendant*.

**CIVIL ACTION NO.
3:22-cv-734-DPJ-HSO-LHS**

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR JUDICIAL NOTICE**

Pursuant to Rule 201 of the Federal Rules of Evidence, Plaintiffs submit this memorandum in support of their motion for judicial notice ("Motion") in advance of trial and respectfully request

1

the Court take judicial notice of specific facts and information identified within *Exhibits A through N* attached to the Motion.

## I. INTRODUCTION

Plaintiffs ask that the Court take judicial notice of certain facts relating to the nature and timing of special elections in Mississippi, which relate to the remedy that Plaintiffs seek should they prevail at trial. Plaintiffs also seek judicial notice of the facts pertaining to Mississippi's Planning and Development Districts ("PDDs"), which is one way in which Plaintiffs' mapping expert, Mr. Bill Cooper, identified communities of interest in Mississippi.

Notice of these facts is appropriate under FRE 201 because they are generally known within the territorial jurisdiction of the trial court and are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. Judicially noticing these facts will also conserve judicial resources because it will avoid the need for Plaintiffs to present evidence concerning relevant facts that are beyond dispute. First, taking judicial notice of public election calendars and deadlines will aid this Court in crafting a remedy should Plaintiffs prevail at trial, without necessitating a separate or prolonged proceeding to determine those facts. Second, noticing basic facts regarding PDDs will help streamline the trial presentation from Mr. Cooper and obviate the need for evidentiary arguments and rulings during the trial about the admissibility of multiple exhibits related to PDDs, whose structure and function are not in dispute.[1]

---

[1] In order to reduce further motions practice and to streamline trial, Plaintiffs had proposed several stipulations in the Joint Pretrial Order related to the facts requested to be noticed. The parties could not reach an agreement on those stipulations. Plaintiffs understand Defendants to be making objections based on relevance, rather than disputing the accuracy of the facts or the authenticity of the documents that Plaintiffs seek to introduce or rely on.

2

## II. FACTS TO BE NOTICED

### A. Facts To Be Noticed Regarding Special Elections

Plaintiffs seek judicial notice of the following facts, pertaining to the nature and timing of recent special elections that were scheduled to fill four vacancies in the Mississippi state legislature during 2020 and 2021:

*Procedures for Special Elections*

1. In Mississippi special elections, candidates run without party labels on the ballot. Ex. A; Ex. B; Ex. C; Miss. Code Ann. § 23-15-359.

2. The top two vote-earners proceed to a run-off election if no candidate wins a majority of the vote. Miss. Code Ann. § 23-15-833 ("[W]here no candidate receives a majority of the votes cast in the election, a runoff election shall be held three (3) weeks after the election.").

3. The Governor may issue a writ and set a special election with 60 days' notice to fill a vacancy in the state legislature. Miss. Code Ann. § 23-15-851.

4. The qualifying deadline for the special election is 50 days before the election. *Id.*

5. If only one candidate qualifies to be a candidate in a special election, the State Board of Elections shall cancel the special election, and the Governor shall appoint the candidate to fill the vacancy. Miss. Code Ann. § 23-15-837.

*2020 Special Elections*

6. On January 31, 2020, a vacancy arose in District 88 of the Mississippi House ("HD 88") when Rep. Ramona Blackledge resigned. Ex. A.

7. There was a nonpartisan special election, originally scheduled for April 21, 2020, to fill the vacancy in HD 88. Ex. A.

3

8. On April 2, 2020, Governor Tate Reeves announced that the special election was to be postponed to June 23, 2020. Ex. A; Ex. B.

9. The runoff date for the HD 88 election was delayed from May 12 to July 14. Ex. A.

10. The special election for HD 88 was held on June 23, 2020. Ex. D at 1–5.

11. A vacancy arose in District 37 of the Mississippi House ("HD 37") when Rep. Gary Chism resigned in June 2020. Ex. E.

12. A vacancy arose in District 66 of the Mississippi House ("HD 66") when Rep. Jarvis Dorch resigned in July 2020. *Id.*

13. A vacancy arose in District 15 of the Mississippi Senate ("SD 15") when Sen. Gary Jackson resigned in June 2020. *Id.*

14. A vacancy arose in District 39 of the Mississippi Senate ("SD 39") when Sen. Sally Dotty resigned in July 2020. *Id.*

15. By statute, the qualifying deadline for the HD 29, SD 32, and SD 38 special elections, which were to take place on September 22, 2020, was August 3, 2020.

16. The special elections for HD 37, HD 66, SD 15, and SD 39 were held on September 22, 2020. Ex. D at 6–13, 26–37, 50–56, 64–65; Ex. F.

17. Runoffs in connection with the HD 37, HD 66, SD 15, and SD 39 special elections occurred on October 13, 2020. Ex. D at 14–25, 38–49, 57–63, 66–68.

*2021 Special Elections*

18. A vacancy arose in District 32 of the Mississippi Senate ("SD 32") when Sen. Sampson Jackson II resigned on June 30, 2021. Ex. C; Ex. H.

19. A vacancy arose in District 38 of the Mississippi Senate ("SD 38") when Sen. Tammy Witherspoon resigned on June 30, 2021. *Id.*

20. On July 14, 2021, the State scheduled special elections for November 2, 2021 to fill the vacancies in SD 32, and SD 38. Ex. C; Ex. H.

21. A vacancy arose in District 29 of the Mississippi House ("HD 29") when Representative Abe Hudson resigned on August 30, 2021. Ex. G.

22. After Representative Hudson resigned, a special election for HD 29 was scheduled for November 2, 2021. Ex. I.

23. Per statute, the qualifying deadline for the HD 29, SD 32, and SD 38 special elections was September 13, 2021. Ex. H; Ex. I; EX J.

24. On September 14, 2021, the State cancelled the special election for HD 29 scheduled for November 2, 2021, because only one candidate had qualified. Ex. I.

25. The special elections for SD 32 and SD 38 occurred on November 2, 2021. Ex. H.

26. Mississippi had a regularly scheduled general election on November 2, 2021. Ex. K (2021 election calendar, *available at* https://www.sos.ms.gov/content/documents/elections/2021%20Website%20Calendar.pdf (last visited Feb. 21, 2024)).

27. A runoff in connection with the SD 32 special election occurred on November 23, 2021. *Id.*

**B.    Facts To Be Noticed Regarding Planning and Development Districts**

28. "The ten Planning and Development Districts in Mississippi were created to assist local governments in the late 1960s in an attempt to address problems and issues on a multi–jurisdictional basis." Ex. L at 8.

29. "In 1971, in an effort to standardize regional economic development and planning boundaries, Governor Williams issued Executive Order 81, designating the Planning and Development Districts as Mississippi's official sub-state regions." *Id.*; *see also* Ex. M (Executive Order No. 81, to which Defendants do not object).

30. "[E]ach District represents a distinctly different region of the state." Ex. L at 8.

31. According to a legislative report on PDDs issued by the Joint Legislative Committee on Performance Evaluation and Expenditure Review ("PEER"), PDDs, as nonprofit corporations, are "governmental service providers chartered for a public purpose." PEER, *Report to the Mississippi Legislature* (Jan. 5, 1988) ("PEER Report") at 2, *available at* https://da.mdah.ms.gov/series/legislature/peer-su/detail/520066 (last visited Feb. 21, 2024).

32. PDDs provide a variety of government services throughout the state, including by supporting regional economic development (such as streets, water, and sewage systems), administering loan programs, funding community development, human resource development, providing technical assistance (such as demographic analysis and redistricting), assisting with local and regional planning, addressing regional job-training needs, setting district-wide plans for allocation of federal funding for the elderly, and providing elderly care through Medicaid programs. Ex. L at 8–11.

33. In a 2007 opinion, the Mississippi Ethics Commission concluded that PDDs are government entities under Miss. Code Ann. § 25-4-103(g)(v) and that PDD board members are "public servants" under Miss. Code Ann. § 25-4-103(p). *See* Miss. Ethics Commission, Advisory Op. No. 06-107-E, *available at*

6

https://www.ms.gov/msec/ethics/Opinion/Document/06107.pdf (last visited Feb. 21, 2024).

### III. LEGAL STANDARD AND ARGUMENT

"Rule 201(b) of the Federal Rules of Evidence provides: '[A] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.'" *Am. Gen. Life Ins. Co. v. Hannah*, No. 1:12-CV-00087-GHD, 2014 WL 1413540, at *4 (N.D. Miss. Apr. 11, 2014) (quoting Fed. R. Evid. 201(b)) (citing *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830–31 (5th Cir. 1998)); *see also Weaver v. United States*, 298 F.2d 496, 498–99 (5th Cir. 1962) ("Specific facts and propositions of generalized knowledge which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy may be judicially noticed.").

Courts routinely take judicial notice of public records that include the date of certain governmental functions. *See, e.g.*, *Gates v. City of Biloxi, Mississippi*, No. 1:22-CV-356-LG-RPM, 2024 WL 510325, at *4 (S.D. Miss. Jan. 3, 2024), *report and recommendation adopted*, No. 1:22-CV-356-LG-RPM, 2024 WL 289354 (S.D. Miss. Jan. 25, 2024) ("The Court takes judicial notice that the fiscal year for the City of Biloxi begins on October 1 each year."); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (recognizing court may take "judicial notice of the state agency's own website"); *Denius v. Dunlap*, 330 F.3d 919, 927 (7th Cir. 2003) (permitting judicial notice of government records readily available in the public domain, such as the internet, because the fact of recordkeeping is not subject to reasonable dispute and the accuracy could not reasonably be questioned).

Judicial notice may also be taken of public records maintained by state agencies and corporate entities regarding those entities' structure and activities, where the accuracy of the information is not reasonably in dispute. *See Boudreaux v. Louisiana State Bar Ass'n*, 86 F.4th 620, 635 (5th Cir. 2023) (taking judicial notice of a nonprofit corporation's activities on its website); *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 519 (5th Cir. 2015) (judicially noticing a corporation's principal place of business based on state agency records); *Kennedy v. Equifax Info. Servs*. LLC, No. SA-23-CV-00470-FB, 2024 WL 332925, at *3 (W.D. Tex. Jan. 29, 2024) (taking judicial notice of a corporation's structure and the nature of its business as described on the company's website); *Reed v. LKQ Corp.*, 436 F. Supp. 3d 892, 900–01 (N.D. Tex. 2020) (same).

### A. The Court Should Take Judicial Notice of the Conduct of Special Elections in Mississippi

The Court should take judicial notice of election processes and deadlines for at least two reasons. First, the nature and timing of elections is "generally known" throughout the jurisdiction. Fed. R. Evid. 201(b)(1). Second, election-related procedures are capable of accurate and ready determination by consulting sources whose accuracy cannot be reasonably questioned. Fed. R. Evid. 201(b)(2). Exhibits A–K, which Plaintiffs cite above, consist exclusively of reliable news publications reporting on official announcements by government officials and government records regarding elections and elections administration. *See Gates*, 2024 WL 510325, at *4 (taking notice of municipal timeline); *see also Coleman*, 409 F.3d at 667 (taking notice of state agency website). Defendants cannot dispute the timeline of special elections in Mississippi—as acknowledged by the Secretary of State's Rule 30(b)(6) witness, the state "typically" announces special elections with 60 days' of notice, and candidate qualifications for such elections are completed in less than two weeks' time. Ex. N at 27 (Kirkpatrick Tr. 102:14–25).

### B. The Court Should Take Judicial Notice of the History and Structure of Mississippi's Planning and Development Districts

Judicial notice should be taken of PDDs' basic structure and functions, which are a matter of public record. The PDDs (and the regions they represent) have been recognized via executive order since 1971. Ex. M. PDDs are considered government service providers, and their members are public servants subject to the same state ethics laws applicable to government officials.

The accuracy of the information relied upon in this motion to determine the basic features of PDDs cannot be reasonably questioned. *See* Fed. R. Evid. 201(b)(2). Plaintiffs rely on Exhibit L, which is an annual directory posted by and about the PDDs. The directory includes information about the PDDs' history and structure, and the role that they play in provision of key government services in Mississippi. *See Boudreaux*, 86 F.4th at 635 (taking judicial notice of a nonprofit corporation's description of its activities on its website); *Kennedy*, 2024 WL 332925, at *3 (taking judicial notice of a corporation's structure and the nature of its business as described on the company's website); *Reed*, 436 F. Supp. 3d at 900–01 (same). Plaintiffs also cite a legislative committee report that was drafted by PEER, which has oversight responsibility over the PDDs, and an opinion from a state agency, the Mississippi Ethics Commission. *See Swindol*, 805 F.3d at 519 (taking judicial notice of a corporation's principal place of business based on state agency records).

### IV. CONCLUSION

As set forth above, Plaintiffs respectfully request that the Court take judicial notice of the facts set forth above and in Exhibits A through N attached hereto.

9

This the 22nd day of February, 2024.

*s/ Joshua Tom*
Joshua Tom, MSB 105392
*jtom@aclu-ms.org*
ACLU OF MISSISSIPPI
101 South Congress Street
Jackson, MS 39201
(601) 354-3408

Robert B. McDuff, MSB 2532
*rbm@mcdufflaw.com*
MISSISSIPPI CENTER FOR JUSTICE
767 North Congress Street
Jackson, MS 39202
(601) 969-0802

Carroll Rhodes, MSB 5314
Law Offices of Carroll Rhodes
*crhodes6@bellsouth.net*
PO Box 588
Hazlehurst, MS 39083
(601) 894-1464

John P. Lavelle, Jr.
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103-2921
Telephone:    +1.202.739.3000
Facsimile:    +1.202.739.3001
*john.lavelle@morganlewis.com*

Drew C. Jordan
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Telephone:    +1.713.890.5000
Facsimile:    +1.713.890.5001
*drew.jordan@morganlewis.com*

*Attorneys for Plaintiffs*

Ari J. Savitzky
*asavitzky@aclu.org*
Ming Cheung
*mcheung@aclu.org*
Casey Smith
*csmith@aclu.org*
Garrett Muscatel
*gmuscatel@aclu.org*
ACLU FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500

Ezra D. Rosenberg
*erosenberg@lawyerscommittee.org*
Jennifer Nwachukwu
*jnwachukwu@lawyerscommittee.org*
David Rollins-Boyd
*drollins-boyd@lawyerscommittee.org*
Javon Davis
*jdavis@lawyerscommittee.org*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street NW Suite 900
Washington, DC 20005
(202) 662-8600

**CERTIFICATE OF SERVICE**

I, Joshua Tom, do certify that on this day I caused to be served a true and correct copy of the foregoing by electronic mail to all counsel of record.

This the 22nd day of February, 2024.

s/Joshua Tom
Joshua Tom
