IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| MISSISSIPPI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; DR. ANDREA WESLEY; DR. JOSEPH WESLEY; ROBERT EVANS; GARY FREDRICKS; PAMELA HAMNER; BARBARA FINN; OTHO BARNES; SHIRLINDA ROBERTSON; SANDRA SMITH; DEBORAH HJULITT; RODESTA TUMBLIN; DR. KIA JONES; ANGELA GRAYSON; MARCHELEAN ARRINGTON; AND VICTORIA ROBERTSON | PLAINTIFFS |
| VS. | CIVIL ACTION NO. 3:22-CV-734-DPJ-HSO-LHS |
| STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES, *in his official capacity as Governor of Mississippi*; LYNN FITCH, *in her official capacity as Attorney General of Mississippi*; MICHAEL WATSON, *in his official capacity as Secretary of State of Mississippi* | DEFENDANTS |
| and | |
| MISSISSIPPI STATE REPUBLICAN EXECUTIVE COMMITTEE | INTERVENOR-DEFENDANT |

**BRIEF OF THE MISSISSIPPI REPUBLICAN EXECUTIVE COMMITTEE CONCERNING REMEDY**

At a hearing on Monday afternoon, July 8, 2024, this Court announced its inclination to order elections in an unspecified number of districts but to do so without permitting party primaries. Counsel for the Republican Party advised the Court that, because the Court had decided to set aside what it found to be illegal general elections, the proper remedy would be to hold legal

1

3019901v1

general elections, which would allow the Party to conduct primaries to nominate its candidates, pursuant to statute. The Court asked whether it had equitable authority to disregard the general election statutes, and counsel stated his belief that the Court had no authority to disregard statutes not shown to be invalid. The Court gave the Party until Wednesday, July 10, 2024, to file a brief supporting that position.

In its extensive review of Mississippi history, the Court referred to the legislative redistricting litigation beginning in 1991. Because no decision could be reached in time for the 1991 general election, the Court permitted the plan adopted in the previous decade to be used, professing its intention to order a new election under a new and valid plan thereafter. *Watkins v. Mabus*, 771 F.Supp. 789 (S.D. Miss.), *aff'd in part and vacated in part*, 502 U.S. 954 (1991). The next year plaintiffs asked the Court to "adopt the regular election format prescribed by Mississippi law, rather than a special election schedule, advocated by the plaintiffs, which does not include party primaries." *Watkins v. Fordice*, 791 F.Supp. 646, 648 (S.D. Miss. 1992). The Court carefully explained its reasons for rejecting that contention.

> This is because, as a section 5 court, we must interfere with state policy only to the extent necessary to remedy statutory or constitutional violations. *Upham v. Seamon,* 456 U.S. 37, 43, 102 S.Ct. 1518, 1522, 71 L.Ed.2d 725 (1982); *White v. Weiser,* 412 U.S. 783, 795, 93 S.Ct. 2348, 2355, 37 L.Ed.2d 335 (1973) ("a federal district court, in the context of legislative reapportionment, should follow the policies and preferences of the State, as expressed in statutory and constitutional provisions ... whenever adherence to state policy does not detract from the requirements of the Federal Constitution"). Adhering to Mississippi's established procedure for holding legislative elections, including holding party primaries, fulfills this goal better than using the format for special elections. *E.g., Martin v. Mabus,* 700 F.Supp. 327, 343–44 (S.D.Miss.1988) (recognizing Mississippi state policy is expressed in election scheduling laws; declining to adopt proposed remedy of omitting party primaries; holding that court "should follow the state policy of using party primaries in judicial elections").

*Id.*

As the *Watkins* Court noted, adherence to general election principles as a remedy was well established in Mississippi. In *Martin*, responding to plaintiffs' request to use special election schedules instead of general election schedules, Judge Barbour said, "The Court finds that it cannot grant that request for the following reasons." 700 F.Supp. at 343. Among those reasons was the determination that candidates "should be given a fair chance to make that decision and conduct adequate campaigns." *Id.*, at 344. In addition, "The public also needs adequate time before elections are conducted." *Id.* For that reason, the Court directed "that judicial elections be conducted in accordance with the time periods established by state law in the districts found in violation of Section 2." *Id.*

*Martin* and *Watkins* do not merely represent sound exercises of equitable discretion. Instead, they recognized the limits of equitable discretion imposed by the Supreme Court of the United States in redistricting cases. As that Court explained in *Upham v. Seamon*, 456 U.S. 37, 43 (1982);

> Whenever a district court is faced with entering an interim reapportionment order that will allow elections to go forward it is faced with the problem of "reconciling the requirements of the Constitution with the goals of state political policies." *Connor v. Finch*, [431 U.S. 407,] 414 [(1977)]. An appropriate reconciliation of these two goals can only be reached if the district court's modifications of a state plan are limited to those necessary to cure any constitutional or statutory defect.

Because the utilization of a special election schedule was not "necessary to cure any constitutional or statutory defect," *Watkins* and *Martin* properly held that they had no equitable authority to disregard the general election statutes.[1]

---

[1] Appearing on Monday, plaintiffs' counsel relied on a case entitled *Taylor v. Monroe County Bd. of Sup'rs*. The only case matching that name which the Republican Party has been able to locate is found at 421 F.2d 1038 (5th Cir. 1970). The District Court had refused to order a new election before the end of the terms of the serving supervisors, and the Fifth Circuit reversed. That Court held that, "if it is possible to hold such a special election on or before July 1, 1970, this should be required." *Id.*, at 1043. The Court said nothing about whether this new election should be held under the special election statutes or the general election statutes. Whatever order the District Court may have entered on remand does not appear to be reported anywhere. Whatever the Fifth Circuit may have meant, it could not have taken into account the *White* and *Upham* decisions which had not then been rendered.

Because *Martin* and *Watkins* so obviously acted correctly in applying the equitable limitations established by *White* and *Upham*, it should not be necessary to dig any deeper into the extent of this Court's equitable authority. However, Justice Thomas accurately reviewed that history in *Whole Woman's Health v. Jackson*, 595 U.S. 30, 53 (2021) (Thomas, J., concurring and dissenting);

> The negative injunction remedy against state officials countenanced in *Ex parte Young*, 209 U.S. 123 (1908), is a "standard tool of equity," J. Harrison, Ex Parte *Young*, 60 Stan. L. Rev. 989, 990, (2008), that federal courts have authority to entertain under their traditional equitable jurisdiction, see Judiciary Act of 1789, § 11, 1.Stat. 78. As we have explained elsewhere, a federal court's jurisdiction in equity extends no further than "the jurisdiction in equity exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act." *Grupo Mexicano De Desarrollo, S. A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318 (1999) (internal quotation marks omitted). For this reason, a negative injunction must fall "within some clear ground of equity jurisdiction." *Boise Artesian Hot & Cold Water Co. v. Boise City*, 213 U.S. 276, 285 (1909); see also *Missouri v. Jenkins*, 515 U.S. 70, 127 (1995) (THOMAS, J., concurring) ("[C]ourts of equity must be governed by rules and precedents no less than the courts of law"). Federal courts therefore lack "power to create remedies previously unknown to equity jurisprudence." *Grupo Mexicano*, 527 U.S. at 332.

The majority in *Whole Woman's Health* made clear that "[w]e agree with all of these principles." 595 U.S. at 46. *See also United States v. Texas*, 97 F.4th 268, 307-12 (Oldham, J., dissenting).

According to Miss. Code Ann. § 23-15-193(1) (Supp. 2023), Representatives and Senators are elected pursuant to the party primary process described in Miss. Code Ann. § 23-59-191 (Rev. 2018). For general elections, Miss. Code Ann. § 23-15-359 (1) (Supp. 2023), provides that "the ballot shall contain the names of all party nominees certified by the appropriate executive committee." The sample ballot distributed by the Secretary of State under Miss. Code Ann. § 23-15-367 (Rev. 2018) has historically included the name of the party alongside the name of its

4

nominee.[2]  There is no runoff after a general election.  Instead, the Secretary of State must "ascertain the person or persons having the largest number of votes for each office, and declare such person or persons to be duly elected."  Miss. Code Ann. § 23-15-605 (Rev. 2018).  *Accord,* Miss. Code Ann. § 23-15-601 (Rev. 2018) (applying to legislative "districts composed of one (1) county or less").

Since the first Republican primaries were held over 50 years ago, generations of Republicans have worked diligently to build the value of its nomination.  Republican voters benefit from the requirement that candidates compete for that nomination.  They have exercised the authority to reject candidates whom they believe do not adhere to the Party's principles.  Plaintiffs do not suggest that there is anything invalid about this process, nor do they suggest that the Republican Party has done anything to injure the rights of black voters in the three areas identified by this Court.  There is nothing equitable about depriving Republicans of the value of a process regulated by statute which they have used to advance their principles for more than half a century when they have done nothing wrong.

Should this Court nevertheless cast aside the statutes requiring and authorizing party nominations, this Court, in revising the schedule, should not revise the process any more than necessary.  General election ballots include the party affiliation of each candidate appearing thereon.  Should the Court use a different election system, it should nevertheless provide that candidates may indicate their party affiliation on the ballot.  It is always better for voters to have more information rather than less information, and there is nothing inequitable about providing that information on the ballot.

Of course, it is always possible that the parties and the Legislature may come to an agreement in the next session as they did in *Watkins* in 1992.  That process will necessarily take more time than

---

[2] A copy of the 2023 sample ballot is attached hereto as Exhibit 1.

5

was available over the holiday weekend since this Court released its findings and conclusions. Absent such an agreement, the general election statutes should be followed in carrying out any remedy in this case.

This the 10th day of July, 2024.

Respectfully submitted,

                                              **MISSISSIPPI STATE REPUBLICAN EXECUTIVE COMMITTEE**

                                    By:    */s/ Michael B. Wallace*
                                                        MICHAEL B. WALLACE

**OF COUNSEL:**

Michael B. Wallace (MSB #6904)
Charles E. Cowan (MSB #104478)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, Mississippi 39205-0651
Ph: (601) 968-5500
Fax: (601) 968-5519
mbw@wisecarter.com
cec@wisecarter.com

6

## **CERTIFICATE OF SERVICE**

I, Michael B. Wallace, one of the attorneys for the Mississippi State Republican Party Executive Committee, do hereby certify that I have this date filed the foregoing with the ECF system, which sent notification of such filing to all counsel of record with the ECF.

**SO CERTIFIED**, this the 10th day of July, 2024.

>                    */s/ Michael B. Wallace*
>                    MICHAEL B. WALLACE