UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MISSISSIPPI STATE CONFERENCE OF
THE NATIONAL ASSOCIATION FOR
THE ADVANCEMENT OF COLORED
PEOPLE, ET AL.                                                                              PLAINTIFFS

V.                                           CIVIL ACTION NO. 3:22-CV-734-DPJ-HSO-LHS

STATE BOARD OF ELECTION
COMMISSIONERS, ET AL.                                                                  DEFENDANTS

Before SOUTHWICK, *Circuit Judge,* JORDAN, *Chief District Judge*, and OZERDEN, *District Judge*.

PER CURIAM:

In our July 2, 2024, opinion in this case, we concluded that the Plaintiffs had shown violations of Section 2 of the Voting Rights Act. *Mississippi State Conf. of the NAACP v. State Bd. of Election Comm'rs.*, No. 3:22-CV-734, 2024 WL 3275965, at *53 (S.D. Miss. July 2, 2024); *see* 52 U.S.C. § 10301. We found the Plaintiffs had shown that two illustrative senate districts and one illustrative house district satisfied the *Thornburg v. Gingles*, 478 U.S. 30 (1986), framework. *Id.* at *32. To remedy those violations, we stated that the Mississippi Legislature would be given an opportunity to create new districts and ultimately special elections would be needed in all reformed districts. *Id.* at *54–55. We expressed our desire to have the elections before the end of 2024, but the parties were to propose schedules for implementation of a remedy for the violations.

At a hearing after our opinion was released, the Plaintiffs stated that their best estimate of the number of districts that would have to be reformed to comply with our findings of Section 2 violations would be about one third of the 52 senate districts and perhaps nine or ten of the 122 house districts. New elections need to be held in all districts that are changed from the enacted plan for each house. Our task now is to determine whether new districts should be formed and elections held this year, or whether the factors the Supreme Court has identified for courts to consider before issuing remedial orders to protect voting rights require us to allow the State to wait until 2025.

We back up to indicate what was proposed in March, once the trial in this case ended, as a schedule for the Mississippi Legislature to act and for elections to be held. The Defendants did not propose a schedule, taking the position that no violations of the Voting Rights Act had been proven. The Plaintiffs proposed two schedules that allowed for elections in November 2024: (1) having a remedial map in place by May 28, 2024, with party primaries conducted on August

6, 2024; or (2) having a remedial map in place by June 2024 and primaries conducted in September 2024.  Doc. [220], at 212, 288.  These are the dates that would have allowed implementation of the usual manner for electing legislators in Mississippi, which includes party primaries, runoffs when needed, and then a general election.  *See* MISS. CODE ANN. §§ 23-15-191 to -197.  Those proposed dates, however, became moot because this court's opinion did not issue in time to apply either proposal.

After our opinion was released, we had the parties consult to determine if they could agree on what the necessary schedule of events would be if new elections were still to be held in November 2024.  These would be special elections, with no party primaries and all candidates appearing on the same ballot.  With quite minor differences, the parties agreed on the operative dates for different events but disagreed as to whether our imposing that schedule would be appropriate or even feasible.  We note the minor disagreement in dates in our summary of the proposed schedule:

> August 2, 2024: The Legislature needs to adopt remedial maps.  The Governor would have needed well before this date to call a special session of the Legislature.
>
> August 7, 2024: The parties need to submit to this court any objections and/or any proposed remedial plans, including any supporting data, documents, or reports.  The State Defendants suggested August 9 as the relevant date for these submissions.
>
> August 13, 2024: The Court needs to approve new maps.
>
> August 14, 2024: Local election officials need to receive information to implement new district lines.
>
> September 6, 2024: Candidate qualifying deadline.
>
> September 21, 2024: Deadline for ballots to be sent in compliance with the federal Uniformed and Overseas Citizens Absentee Voting Act.
>
> November 5, 2024: Election Day.
>
> November 26, 2024: Runoff elections where necessary.

Doc. [227], at 3; Doc. [228], at 3.

The Plaintiffs assert that all parties "fundamentally agree that the special elections may feasibly be held in 2024."  Doc. [228], at 4.  "Feasible," though, may be an inapt word to describe the agreement.  The State Defendants agree those dates must be met, but they also insist that accomplishing what must be done by each of those dates is "likely impossible, due to many factors — practical, political, logistical, and legal."  Doc. [227], at 4.  In summary, the State Defendants argue that redrawing "nearly one quarter of the state['s districts] is not realistically achievable by August 2, 2024."  *Id.* at 4–5.

Although the Plaintiffs argue that a special election in November is "feasible," their evidence is underwhelming.  All parties agree the time has passed to call a special election with

primaries. *See* Doc [220] ¶ 561. Regarding special elections without primaries, the Plaintiffs ask us to take judicial notice of Mississippi election laws and three special elections held in 2021. *See* Pls.' Mot. [196]; *see also* Doc [220] ¶ 566. The court deferred ruling on that portion of the Plaintiffs' Motion for Judicial Notice [196]. The court now denies it. First, although we may consider Mississippi election laws, we need not use judicial notice to consider the relevant statutes because they are "legislative facts." FED. R. EVID. 201(a). Second, even if the court could take judicial notice of the news reports and other materials regarding the 2021 special elections, it would not change this ruling. *See* Pls.' Mot. [196] Exs. A–K. Those special elections all involved vacancies in existing districts. *See id.* None of those elections required the state to redraw a district, much less redraw one third of the state senate. Those three elections also do not provide evidence about the time it would take to accomplish redistricting here, and the Plaintiffs cite no other evidence on that point.

The State Defendants maintain that the appropriate remedy "would be to allow the Legislature to produce new maps in the 2025 legislative session" and hold elections in 2025. Doc [227], at 3–4. The Intervenor Defendant agrees and asserts Mississippi election law and equity forbid special elections without primaries. *See* Doc [225]. We disagree that it is beyond our equitable power to order special elections that do not have primaries. The extent of our authority is not the initial question, though. Instead, as the Supreme Court has directed, we are to "undertake an 'equitable weighing process' to select a fitting remedy for the legal violations [this court] has identified." *North Carolina v. Covington*, 581 U.S. 486, 488 (2017) (per curiam) (quoting *NAACP v. Hampton Cnty. Election Comm'n*, 470 U.S. 166, 183. n.36 (1985)). That requires "taking account of 'what is necessary, what is fair, and what is workable.'" *Id.* (quoting *New York v. Cathedral Acad.*, 434 U.S. 125, 129 (1977)).

We see two choices: (1) order steps be taken to have elections in 2024 or (2) allow the State to take the needed steps and have the elections at some point in 2025. The Plaintiffs are correct to emphasize that already-scheduled elections in 2024, including for President, Senate, and Congress, will almost certainly have much higher voter participation than would elections in 2025, in which no general, statewide elections are scheduled. In addition, holding elections in 2024 would allow the new legislators to serve a full three years of the four-year terms for those offices. Waiting until 2025 has the benefits of avoiding the exceedingly compressed schedule for the Governor, Mississippi Legislature, and this court to act; allowing party primaries to be employed for the large number of senators and a meaningful number of house members who need to be elected; and allowing for candidates to have more time to campaign.

Those differences go into the factual mix as we evaluate the three factors the *Covington* Court identified for deciding what is necessary, fair, and workable: "[1] the severity and nature of

3

the particular constitutional[1] violation, [2] the extent of the likely disruption to the ordinary processes of governance if early elections are imposed, and [3] the need to act with proper judicial restraint when intruding on state sovereignty." *Id.* We considered those factors in our July 2, 2024, opinion and concluded they require redistricting and elections to be held in any reformed districts. In deciding how to schedule the needed remedy, we now analyze those factors again, having the benefit of the parties' briefing as to how many districts likely need to be reformed and what schedule is required for having new elections this year.

When we previously considered the first factor — the severity of the violation — we acknowledged that the State's Section 2 violations affected only two out of 52 senate districts and only one of 122 house districts. Nonetheless,

> if left as is, black voters in each affected district will be served for a full term by a legislator chosen in an election that diluted black votes. The harm is localized, but it is severe to the affected voters. This is the exact kind of injury that warrants a remedy.

*Mississippi State Conf. of the NAACP*, 2024 WL 3275965, at *54. The issue now is more focused: It is not whether a remedy is needed at all, but the timing of the remedy.

Our earlier opinion also concluded that the second factor — the likely disruption of the ordinary processes of government — weighed in favor of ordering relief. Timing, again, is now our narrower issue. The Plaintiffs believe that one third of the state senate will need to be elected. The schedule the parties agree must be met to have elections this year would be followed without the usual form of party primaries first and then a general election. Although special elections are an available remedy, this court may not order such elections unless it is equitable to do so. *Covington*, 581 U.S. at 488. We find that electing so significant a portion of either house of the legislature in a manner different than what state law requires, meaning without primaries, is a significant disruption.[2]

That disruption also implicates the third factor, which is for a federal court to act with restraint when it orders a state to act.

Applying all three factors, we put on the scales how few districts are subject to our finding of a Section 2 violation, how rushed the actions of the Governor and the two houses of the legislature would need to be, and how the final districts would not be known until this court accepted the remedial legislative plans or adopted its own. The equitable weighing process we

---

[1] Though *Covington* dealt with constitutional violations, these factors apply equally to violations of Section 2. *See Veasey v. Abbott*, 830 F.3d 216, 270 (5th Cir. 2016).

[2] A Mississippi statute allows for legislative elections without primaries but only when filling vacancies. *See* Miss. Code Ann. § 23-15-851. Otherwise, state law envisions primaries for legislative races. The inapplicability of this statute is additional support that ordering elections without primaries for so many legislative districts is disruptive to the ordinary processes of government.

must use when selecting the proper remedy for Voting Rights Act violations leads us to conclude that the Mississippi Legislature need not act until its regular 2025 session. Because there are no general, statewide elections in 2025, the Mississippi Legislature must also determine the most appropriate dates in 2025 for elections in the affected districts.

We will allow the Mississippi Legislature until the conclusion of its regular 2025 session to remedy the Section 2 violations that our July 2, 2024, opinion found in the enacted legislative maps. Should the Mississippi Legislature adopt a new redistricting plan, we ORDER counsel to provide formal notice to the court of that action within seven days of its adoption. Any party who objects to the new redistricting plan should be prepared at that same time to present an alternative redistricting plan. Should the Mississippi Legislature instead make clear in some form that no new maps will be drawn, or should the session end without a new plan, we ORDER counsel within seven days of either event to provide formal notice to the court. Again, new redistricting plans must be presented to the court at that time.

If the Mississippi Legislature adopts a new redistricting plan, it will also need to schedule elections for any districts whose boundaries will have changed from the districts used for the 2023 elections. The parties may present objections to the dates or any other details of the special elections ordered by the Mississippi Legislature.

It is SO ORDERED.