# Exhibit K

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MISSISSIPPI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; DR. ANDREA WESLEY; DR. JOSEPH WESLEY; ROBERT EVANS; GARY FREDERICKS; PAMELA HAMNER; BARBARA FINN; OTHO BARNES; SHIRLINDA ROBERTSON; SANDRA SMITH; DEBORAH HULITT; RODESTA TUMBLIN; DR. KIA JONES; MARCELEAN ARRINGTON; VICTORIA ROBERTSON,

*Plaintiffs*,

vs.

STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES, *in his official capacity as Governor of Mississippi*; LYNN FITCH, *in her official capacity as Attorney General of Mississippi*; MICHAEL WATSON, *in his official capacity as Secretary of State of Mississippi*,

*Defendants,*
AND

MISSISSIPPI REPUBLICAN EXECUTIVE COMMITTEE,

*Intervenor-Defendant.*

CIVIL ACTION NO.
3:22-cv-734-DPJ-HSO-LHS

**EXPERT REPORT OF DR. MARVIN KING**

**Section 1. Introduction**

My name is Marvin King. I am an Associate Professor of Political Science and African American Studies at The University of Mississippi. I teach classes on American Politics, African American Politics, the Politics of the American South, American Federalism, and Political Inequality. The issues of voting, redistricting, and vote dilution, as well as the role of race in politics in the American South in general and Mississippi in particular, are frequent topics in several of the classes I teach. My CV is included at the end of this document.

My Ph.D. is from The University of North Texas. I have lived and worked in Mississippi since 2005.

I have been asked by Plaintiffs' counsel to write a report on factors that could affect voter turnout, and particularly Black voter turnout, with respect to the remedial House Plan enacted in 2025 by the Legislature.

I am paid at a rate of $200/per hour for the work in this case. That does not affect the conclusions that I reach herein. This report relies on publicly available sources and literature commonly used in the academic discipline of political science, as well as material provided to me by the attorneys for the Plaintiffs.

I previously submitted two reports during the trial phase of this case and later testified at trial. I incorporate my prior reports (which were marked as exhibits PTX-013 and PTX-014) as well as my trial testimony by reference.

I reserve the right to further modify or augment my report.

**Section 2. General Overview**

This report examines specific problems with the Legislature's Remedial House Plan relating to House Districts 16, 22, and 36. This section includes a discussion of factors known to affect turnout, such as incumbency status, low turnout in special elections, and the effect of party switching in Mississippi politics.

**Section 3. Problems with the Legislature's Remedial House Plan**

Under the Legislature's Remedial House Plan, sitting State Representative Jon Lancaster (District 22 – R – Amory) will be place in a "new" Black-majority district, HD 22. The Black voting-age population percentage of this district is 51.2%. Representative Lancaster was first elected as a Democrat and then party switched to the Republican Party in 2021. It is more than reasonable to question how realistic the opportunity for Black voters to elect their preferred candidate will be in this district with such a narrow numerical majority.

An extensive body of political science scholarship has established that socioeconomic factors and disparities such as education and income have a large effect on voting behavior, and a larger effect for Black voters than White voters. I understand that the effect of socioeconomic

disparities on political participation is part of the trial record already and accordingly will not delve into that point.

A number of additional, specific factors may further impede the ability of Black voters to elect candidates of choice in the newly configured HD 22: The powers of incumbency, low turnout in special elections, and the unique situation of party switching.

**Power of Incumbency**

Incumbents win far more elections than they lose. In one of the more studied genres in political science, there is a wealth of literature demonstrating the incumbency advantage for both federal and state legislative races. Jewell and Breaux (1988) and Garand (1991) find that not only do incumbents win far more often in state legislative races but that their margin of victory grows over time.[1] Carey, et al. (2000) (et al.) find that the incumbency advantage is great for all state legislators, regardless of the district-type, term length, or legislative professionalism (i.e. salary).[2] Furthermore, the incumbency advantage is heightened in low-information environments such as state legislative races.[3]

Given the well-established advantage that incumbent legislators in particular possess, it is clear that a Black-supported challenger will be less likely to be elected in HD 22 with Rep. Lancaster already in that seat and running as an incumbent as compared to in an open-seat election.

**Turnout in Special Elections**

Special elections routinely have lower voter turnout rates than regularly scheduled general elections. While no uniform dataset of special election turnout exists, a review of recent special elections in Mississippi demonstrates the point.

In 2019, there were three special elections in Mississippi: House Districts 32, 71, and 101. Table 1 presents the turnout in the special election as compared to the turnout in the general election (all held in 2019). Table 2 presents the turnout in the special election as compared to the turnout in the general election in the singular special election in 2023.

---

[1] Jewell, Malcolm E. and David Breaux. 1988. "The Effect of Incumbency on State Legislative Elections." *Legislative Studies Quarterly* 13 (4): 495-514.

Garand, James. 19991. "Electoral Marginality in State Legislative Elections." *Legislative Studies Quarterly* 16 (1): 7-28.

[2] Carey, John M., Richard G. Niemi, and Lynda W. Powell. 2000. "Incumbency and the Probability of Reelection in State Legislative Elections." *Journal of Politics* 62 (3): 671-700.

[3] Hogan, Robert E. 2008. "Policy Responsiveness and Incumbent Reelection in State Legislatures." *American Journal of Political Science* 52 (4): 858-873.

PTS-REMEDY-EX.K-003

**Table 1 - Turnout in Mississippi 2019 House Legislative Special Elections**[4]

| District | Special Election Turnout | General Election Turnout | Special Election Turnout Rate as a Percentage of General Election Turnout Rate |
|---|---|---|---|
| 32 | 1,305 | 4,679 | 27.9% |
| 71 | 512 | 5,260 | 9.7% |
| 101 | 2,587 | 7,719 | 33.5% |

**Table 2 - Turnout in Mississippi 2023 House Legislative Special Election**[5]

| District | Special Election Turnout | General Election Turnout | Special Election Turnout Rate as a Percentage of General Election Turnout Rate |
|---|---|---|---|
| 23 | 2,383 | 8,106 | 29.4% |

These rates of turnout are comparatively low (in the case of 9.7%, abysmally low). For comparison, the turnout rate in the 2023 state general election was approximately 52%.[6]

The data thus shows that special elections in Mississippi have a recent history of exceedingly low turnout. This is another reason for concern that Black voters may be unable to elect a candidate of choice in HD 22 in a 2025 (*i.e.*, off-year) special election against a White incumbent.

---

[4] (n.d.). *Mississippi elections, 2019*. Ballotpedia. Retrieved March 8, 2025, from https://ballotpedia.org/Mississippi_elections,_2019.

[5] (n.d.). *Mississippi state legislative special elections, 2023*. Ballotpedia. Retrieved March 8, 2025, from https://ballotpedia.org/Mississippi_state_legislative_special_elections,_2023.

[6] Based on author's calculations of 812,000 votes cast out of roughly 1,572,000 registered voters.

3

**Party Switching in Mississippi**

In a database maintained by Ballotpedia.org, Mississippi ranks as the number one state for party-switchers.[7] A party-switcher is an elected state legislator who switches political affiliation during their term in office. In other words, they will qualify to run as a Democrat, campaign as a Democrat, get elected as a Democrat, and once serving in office, then switch their party affiliation to Republican.

In every case in the Ballotpedia dataset, party-switchers are either White Democrats who switch to become Republicans (15) or are White Democrats who become a registered Independent (5). The effect of party-switching is likely to be an erosion of trust between the candidate and voters as it raises questions about the opportunism of the office holder.[8] Consistent with that, it is possible that Black voters who previously supported Rep. Lancaster when he was a Democrat may be comparatively more distrustful of the electoral process considering his recent party switch.

Given Rep. Lancaster's advantages as an incumbent, his switch to the Republican Party, and the very low turnout common in special elections, it is likely that the new Black majority district as presented in the Legislature's remedial plan does not offer the opportunity for Black voters to elect their candidate of choice.

###

I reserve the right to amend or supplement my report considering additional facts, testimony and/or materials that may come to light. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information, and beliefs.

_____
Dr. Marvin King

March 14, 2025

---

[7] (n.d.). *State legislators who have switched political party affiliation*. Ballotpedia. Retrieved March 8, 2025, from https://ballotpedia.org/State_legislators_who_have_switched_political_party_affiliation

[8] Hood, M. V., III, and Seth C. McKee. 2015. "Sunshine State Dilemma: Voting for the 2014 Governor of Florida." *Electoral Studies* 40:293–99.

4

## Party Switching in Mississippi

In a database maintained by Ballotpedia.org, Mississippi ranks as the number one state for party-switchers.[7] A party-switcher is an elected state legislator who switches political affiliation during their term in office. In other words, they will qualify to run as a Democrat, campaign as a Democrat, get elected as a Democrat, and once serving in office, then switch their party affiliation to Republican.

In every case in the Ballotpedia dataset, party-switchers are either White Democrats who switch to become Republicans (15) or are White Democrats who become a registered Independent (5). The effect of party-switching is likely to be an erosion of trust between the candidate and voters as it raises questions about the opportunism of the office holder.[8] Consistent with that, it is possible that Black voters who previously supported Rep. Lancaster when he was a Democrat may be comparatively more distrustful of the electoral process considering his recent party switch.

Given Rep. Lancaster's advantages as an incumbent, his switch to the Republican Party, and the very low turnout common in special elections, it is likely that the new Black majority district as presented in the Legislature's remedial plan does not offer the opportunity for Black voters to elect their candidate of choice.

### 

I reserve the right to amend or supplement my report considering additional facts, testimony and/or materials that may come to light. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information, and beliefs.

*Dr. Marvin King*

March 14, 2025

---

[7] (n.d.). *State legislators who have switched political party affiliation.* Ballotpedia. Retrieved March 8, 2025, from https://ballotpedia.org/State_legislators_who_have_switched_political_party_affiliation

[8] Hood, M. V., III, and Seth C. McKee. 2015. "Sunshine State Dilemma: Voting for the 2014 Governor of Florida." *Electoral Studies* 40:293–99.

4

PTS-REMEDY-EX.K-006