Case 3:22-cv-00734-DPJ-HSO-LHS    Document 261    Filed 04/29/25    Page 1 of 11

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

MISSISSIPPI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; DR. ANDREA WESLEY; DR. JOSEPH WESLEY; ROBERT EVANS; GARY FREDERICKS; PAMELA HAMNER; BARBARA FINN; OTHO BARNES; SHIRLINDA ROBERTSON; SANDRA SMITH; DEBORAH HULITT; RODESTA TUMBLIN; DR. KIA JONES; MARCELEAN ARRINGTON; VICTORIA ROBERTSON,

*Plaintiffs*,

vs.

STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES, *in his official capacity as Governor of Mississippi*; LYNN FITCH, *in her official capacity as Attorney General of Mississippi*; MICHAEL WATSON, *in his official capacity as Secretary of State of Mississippi*,

*Defendants,*

AND

MISSISSIPPI REPUBLICAN EXECUTIVE COMMITTEE,

*Intervenor-Defendant.*

**CIVIL ACTION NO.
3:22-cv-734-DPJ-HSO-LHS**

**PLAINTIFFS' RESPONSE TO THE SBEC REMEDIAL PLAN**

## INTRODUCTION

Defendant the State Board of Election Commissioners ("SBEC") has submitted a proposed remedial Senate Plan (the "SBEC Plan") that does not fully remedy vote dilution in the DeSoto County area of interest, and that deviates from the policy judgments of the Legislature. Because of these and other flaws, the Court should select Plaintiffs' Senate Plan A, or else Plaintiffs' Senate Plan B. Those plans, as explained previously in Plaintiffs' Partial Objections (ECF No. 243) and their letter brief (ECF No. 256),[1] completely remedy vote dilution while adhering to the policy judgments of the Legislature and to traditional districting principles.

## ARGUMENT

### I. PLAINTIFFS' PLANS SHOULD BE ADOPTED OVER THE SBEC PLAN

Having sustained Plaintiffs' objections as to the 2025 Legislative Senate Plan in the DeSoto County area, the Court's role is to put into place a plan that (1) completely remedies vote dilution, (2) adheres to the Legislature's policy judgments if possible, and also (3) comports with traditional districting principles to the extent they are compatible with those two requirements. *See* Pls.' Letter Brief at 1-4, ECF No. 256 (collecting and discussing cases). In considering which plan best meets these criteria, the SBEC Plan merits no more or less consideration than the Plaintiffs' Plans. Only plans passed *by the Legislature* can command deference, because the Legislature is the body vested by state law with authority to draw district lines in the first instance. *See* MISS. CONST. art. XIII, § 254; Miss. Code § 5-3-91, 101 (2019); *see, e.g., In re Landry*, 83 F.4th 300, 303 (5th Cir. 2023) ("[L]egislative reapportionment is primarily a matter for legislative consideration and determination." (citation omitted)). That is why the Supreme Court has repeatedly said, when "faced with the necessity of drawing district lines by judicial order, a court, as a general rule,

---

[1] Plaintiffs incorporate these prior submissions and the trial record by reference here.

should be guided by *the legislative policies* underlying a state plan … to the extent those policies do not lead to violations of the Constitution or the Voting Rights Act." *E.g.*, *Perry v. Perez*, 565 U.S. 388, 393 (2012) (emphasis added) (quoting *Abrams v. Johnson*, 521 U.S. 74, 79 (1997)); *accord Upham v. Seamon*, 456 U.S. 37, 40-41 (1982) (per curiam). The SBEC Plan was authorized in a divided vote by the three state executive officials who comprise the SBEC, and who are the nominal defendants in this case—not by the Legislature. *See* Defs.' Notice Ex. A, ECF No. 259-1 (minutes of SBEC meeting noting 2-1 vote among the three SBEC members to approve the SBEC Plan). Any suggestion that the SBEC's own assertions of "the State's interests" should receive deference or "flexibility" as the Court considers which plan to approve, *see* Defs.' Notice at 7, ECF No. 259; *see also* Defs.' Letter Br. at 2, ECF No. 260, is simply wrong. The only question at this point is which of the plans before the Court best meets the legal requirements for a valid remedy.

For three reasons, the SBEC Plan falls short compared to Plaintiffs' Plans.

***First***, the SBEC Plan fails to completely remedy vote dilution, the paramount goal for any remedial plan. *E.g.*, *Miss. N.A.A.C.P. v. State Bd. of Election Comm'rs*, 739 F. Supp. 3d 383, 464 (S.D. Miss. 2024) (citing *United States v. Brown*, 561 F.3d 420, 435 (5th Cir. 2009)). In the SBEC's configuration, the DeSoto County area has two numerically Black-majority districts. SBEC Plan District 11 (the geographic equivalent of District 1 in the 2025 Legislative Plan and in Plaintiffs' Plans) extends from Coahoma and Quitman counties in the North Delta, through Tunica County, and then into densely populated and more diverse precincts in the area around Horn Lake and Southaven (rather than into the predominantly White community of Hernando as in the 2025 Legislative Plan). Report of William Cooper Regarding SBEC Plan ("Cooper SBEC Report"), attached as Ex. A, at ¶ 4. Dr. Handley agrees based on her analysis that, in terms of electoral

performance, this district provides a realistic opportunity for Black voters to elect candidates of choice based on the prior performance of Black candidates. Report of Dr. Lisa Handley Regarding SBEC Plan ("Handley SBEC Report"), attached as Ex. B, at 2-3.

SBEC Plan District 2, however, falls short. SBEC Plan District 2 includes part of northern Tunica County and precincts in DeSoto County along the Tennessee line, including additional parts of the Horn Lake and Southaven areas. Cooper SBEC Report ¶ 3. Its location is similar Senate District 11 in the 2025 Legislative Plan and the Plaintiffs' Plans, but it cedes some higher-BVAP areas in Horn Lake and Southaven to SBEC Plan District 11, and in their stead extends deeper east into Southaven and to Olive Branch, taking in the residence of incumbent Senator David Parker in the process. *Id.* at ¶¶ 3-4, 11; *see id.* Exs. C-1 & C-2 (showing division of DeSoto County communities between Senate districts in the SBEC Plan).

As Dr. Handley's analysis shows, SBEC Plan District 2's effectiveness score is under .5—indeed, it is slightly lower than the effectiveness score of 2025 Legislative Senate Plan District 1, which this Court found insufficient (.486 versus .488). Handley SBEC Report at 3. In contrast, the challenged districts that this Court upheld, 2025 Legislative House Plan Districts 16 and 22, had higher effectiveness scores that were over the .5 threshold, *see* April 15 Findings of Fact and Conclusions of Law at 12-17, ECF No. 254. *See also* Handley Responsive Report, attached as Ex. A to Pls.' Reply Br. ("Handley Resp. Report"), ECF No. 252-1 at Appendix p. Ex.A-015 (reporting effectiveness scores for various metrics for 2025 Legislative House Plan Districts 16 and 22).

Again, and as Dr. Handley explains, "[a] score of less than .5 means that the average vote share received by the Black-preferred Black candidates is less than 50% and the district is not likely to provide Black voters with an opportunity to elect their candidates of choice." Handley SBEC Report at 1. And while Dr. Alford finds an effectiveness score of slightly over .5 for SBEC

3

Plan District 2, his analysis excludes elections from prior to 2019, ignoring the statewide elections in 2015 even though he has acknowledged that statewide election years are especially relevant, and thus offering a less comprehensive analysis. Handley SBEC Report. at 1; *see also* Handley Resp. Report at 2-3. Notably, Dr. Handley's Appendix shows that *every election set* that includes the 2015 elections, even those that exclude federal elections, results in an effectiveness score of less than .5% for SBEC Plan District 2. *See* Handley SBEC Report Appendix. In other words, Dr. Alford is only able to characterize the district as performing by excluding the 2015 contests.

Defendants point out that the Percent Won Score for SBEC Plan District 2 is greater than 50%. Defs.' Notice at 6, ECF No. 259. But Dr. Handley's analysis shows that the Percent Won Score for the district is in the marginal, 50-60% range (58.8%). Handley SBEC Report at 3-4. And importantly, the score drops under 50% when looking at the 2015, 2019, and 2023 statewide elections (whether or not restricted to biracial contests). *See* Handley SBEC Report Appendix.

In other words, while the performance of SBEC Plan District 2 is slightly better than 2025 Legislative Senate Plan District 1, the evidence on balance shows the State Senate candidates preferred by Black voters are likely to be defeated in that district.[2] And all of that is before considering that a White Republican incumbent, Senator Parker, has been placed in the district. Incumbency is a powerful advantage and can thus impact the ability of Black voters to overcome racially polarized voting and win state legislative contests. *See* Pls.' Partial Objections at 28-29,

---

[2] In terms of whether Black voters have "less opportunity" than White voters in the DeSoto County area "to elect representatives of their choice" in the Mississippi State Senate, 52 U.S.C. § 10301(b), Black-preferred candidates *cannot* win in any of the neighboring White-majority districts under the SBEC Plan, as Dr. Handley's analysis shows. *See* Handley SBEC Report at 3 (showing effectiveness scores under .4 and percent won scores of 0%, 0%, and 5.9% for White-majority Senate Districts 1, 10, and 19). The level of opportunity enjoyed by Black voters in Black-majority District 2 under the SBEC Plan is thus much less than the level of opportunity enjoyed by White voters in neighboring White-majority districts.

4

ECF No. 243; Report of Dr. Marvin King, attached as Ex. K to Pls.' Objections, ECF No. 243-11; *see also Bone Shirt v. Hazeltine*, 387 F. Supp. 2d 1035, 1040-1041 (D.S.D. 2005), *aff'd*, 461 F.3d 1011 (8th Cir. 2006). And unlike for House District 22 in the 2025 Legislative House Plan, "the effectiveness scores" for SBEC Plan District 2 are not "high enough to absorb" that impact. April 15 Findings of Fact and Conclusions of Law at 14, ECF No. 254.

Again, the only question at this point is which plan best satisfies the requirements of the law, first and foremost providing a complete remedy for vote dilution in the area where it was proven. *E.g.*, *United States v. Brown*, 561 F.3d 420, 435 (5th Cir. 2009); *see also Singleton v. Allen*, 690 F. Supp. 3d 1226, 1302 (N.D. Ala. 2023). The SBEC Plan does not do that. But there is no dispute that under Plaintiffs' Plans, Black voters, while not guaranteed a victory, are likely to prevail in both the Black-majority districts in the DeSoto County area. *See* Pls.' Letter Br. at 4-5, ECF No. 256; *see also* Handley SBEC Report at 3.

***Second***, the SBEC Plan does not adhere to the Legislature's policy judgments, as required. *See* Pls.' Letter Br. at 2-3, ECF No. 256 (collecting cases). In crafting a remedial plan, the Senate prioritized creating an *open* Black-majority District in DeSoto County. *See* Mississippi Senate Webcast Recording for February 26, 2025 ("Feb. 26 Senate Floor Video"), Ex. C to Pls.' Partial Objections, ECF No. 243-3, at 4:24:58 - 4:26:03 (Sen. Kirby) ("[W]e did exactly what the court asked us to do: To create a new [district] [sic], in the North and South, with a newly minority-majority minority district with no incumbent."). It thus placed no incumbents in the new Black-majority districts, both in DeSoto County and in Hattiesburg, and paired incumbents in neighboring districts. *Id.*

This was a significant plan-drawing judgment—and Plaintiffs' Plans conform to that legislative choice: Both plans leave the new, DeSoto-County-based Black-majority district open,

5

while pairing one set of incumbents elsewhere, just as the Legislature did. *See, e.g.*, Pls.' Letter Br. at 6, ECF No. 256. Moreover, while the identity of the paired incumbents should not be a concern at this stage, *id.* at 3, 8 n.2 (citing *Wyche v. Madison Par. Police Jury*, 769 F.2d 265, 268 (5th Cir. 1985)), Plaintiffs' Plan B even pairs the same two incumbents as the 2025 Legislative Plan.

In contrast, the SBEC Plan does not follow this legislative judgment. Instead, the SBEC Plan "does not include any pairings as each affected incumbent continues to reside in his district." Defs.' Notice at 2, ECF No. 259. Defendants do not explain why the SBEC decided to depart from the Legislature's approach on this important districting decision. But adopting a plan that deviates so obviously from the Legislature's judgment would contravene the requirement to adhere to those judgments where it is possible to do so while remedying vote dilution (as Plaintiffs' Plans demonstrate it is possible to do here). *See, e.g.*, *Perry*, 565 U.S. at 393.[3]

***Third***, traditional districting principles support the adoption of Plaintiffs' Plans. As Mr. Cooper's analysis shows, Plaintiffs' Plans are "on par with or superior to the SBEC Plan" with respect to those principles. Cooper SBEC Report ¶ 10 & figs. 3-4.

To be clear: Plaintiffs do not believe the SBEC Plan impermissibly subordinates traditional districting principles to race beyond what is allowed in the Section 2 remedial context, or that it

---

[3] The SBEC Plan's configuration of involves a second digression as well: It contains only a single district that is wholly within DeSoto County. *See* Cooper SBEC Report Ex. C-1. That is in contrast to the 2022 Enacted Plan, which contained three districts wholly within DeSoto County, Trial Tr. 194:8-15 (cross-examination of Mr. Cooper), and the 2025 Legislative Plan and Plaintiffs' Plans, which each contained two such districts. Indeed, to the extent that having districts contained wholly within DeSoto County was an aim of the Legislature, Plaintiffs' Plan A is superior, because it contains two district that are entirely within DeSoto County and a third that is over 90% in DeSoto County by population. Cooper Remedial Report, attached as Ex. I to Pls.' Partial Objections, ECF No. 243-9, at ¶¶ 33. *See also infra* pp. 7-8.

comes particularly close to the line on that score. *See* Pls.' Letter Br. at 3-4, ECF No. 256. But in light of the *Callais* case pending in the Supreme Court, and the concerns raised by DeSoto County in its amicus submissions, Plaintiffs submit that Plaintiffs' Senate Plan A continues to be the best and most defensible choice from a traditional districting principles perspective, and especially with respect to communities of interest. *Id.*

Under Plaintiffs' Senate Plan A, the North Delta-based Black-majority district (labeled SD 1) does not take in any part of DeSoto County, and Plaintiffs' Senate Plan A firmly "maintain[s] the North-Delta-based character of" that district. Cooper Remedial Report, attached as Ex. I to Pls.' Partial Objections, ECF No. 243-9, at ¶ 33. Plaintiffs' Plan A meanwhile contains "three Senate districts that are strongly based in DeSoto County: Two districts (SDs 2 and 19) that are majority-White and that are entirely within DeSoto County, and one (SD 11) that is majority-Black and that is 92.24% from DeSoto County by total population[.]" *Id.*

In contrast, under the SBEC Plan, both Black-majority districts in the area take significant population from DeSoto County. Under the SBEC Plan's configuration of Black-majority Senate District 11 (*i.e.*, the North Delta-based district), the district stretches from Clarksdale in the North Delta, north along the eastern edge of Tunica County, and then into population-rich precincts in Horn Lake and Southaven in central DeSoto County. *See* Defs.' Notice at 3, ECF No. 259; Cooper SBEC Report at ¶¶ 3-4, fig. 1 & Exs. C-1 and C-2. The district contains virtually all of Clarksdale's population (over 17,000) but also draws nearly half its population (over 25,000) from those suburban DeSoto County communities in the Memphis metro area. *Id.*

While there are certainly connections other than race between the North Delta and DeSoto County, *see, e.g.*, Pls.' Proposed Findings of Fact and Conclusions of Law, ECF No. 220, at ¶¶ 103-104, Plaintiffs' Senate Plan A is the most easily defended configuration from a

7

communities-of-interest perspective.

Plaintiffs' Plans, and especially Plaintiffs' Senate Plan A, are specifically designed to meet the relevant criteria at this stage in the case: They fully remedy vote dilution; they follow important legislative judgments about how to approach districting in the DeSoto County area; and they comply with traditional districting principles. Plaintiffs' Plans should accordingly be chosen over the SBEC Plan, which does not meet the required criteria.

## II. THE COURT SHOULD ADOPT THE SECOND SPECIAL ELECTION SCHEDULE PROPOSED BY DEFENDANTS

Plaintiffs do not object to the schedules set forth in Defendants' letter brief. Plaintiffs specifically suggest that the second proposed schedule set out in Defendants' brief, which would move the deadline for the state party executive committees back slightly in order to allow at least a one-week candidate qualifying period, should be adopted. *See* Defs.' Letter Br. at 3, ECF No. 260. Most importantly, Defendants' second schedule, by moving back the end of the qualifying period to June 9, would ensure that potential candidates, including Black candidates in newly created Black-majority districts who may not have sought elective office before, will have at least one month to assess the new district lines and determine whether they will mount a campaign in the August primary election, while at the same time providing local election officials in affected areas with sufficient time to update the State's electronic election management system.

## CONCLUSION

The Court should adopt Plaintiffs' Senate Plan A, or in the alternative, Plaintiffs' Senate Plan B, as a remedy for vote dilution in the DeSoto County area. It should partially modify the special election calendar for 2025 in the interests of justice, as set forth above and in Defendants' letter brief.

Respectfully submitted,

This the 29th day of April.

| | /s/ *Ari J. Savitzky* |
|---|---|
| Joshua Tom, MSB 105392 | Ari J. Savitzky |
| *jtom@aclu-ms.org* | *asavitzky@aclu.org* |
| ACLU OF MISSISSIPPI | Ming Cheung |
| 101 South Congress Street | *mcheung@aclu.org* |
| Jackson, MS 39201 | 125 Broad Street, 18th Floor |
| (601) 354-3408 | New York, New York 10004 |
| | (212) 549-2500 |
| Robert B. McDuff, MSB 2532 | |
| *rbm@mcdufflaw.com* | Jennifer Nwachukwu |
| MISSISSIPPI CENTER FOR JUSTICE | *jnwachukwu@lawyerscommittee.org* |
| 767 North Congress Street | David Rollins-Boyd |
| Jackson, MS 39202 | *drollins-boyd@lawyerscommittee.org* |
| (601) 969-0802 | Javon Davis |
| | *jdavis@lawyerscommittee.org* |
| Carroll Rhodes, MSB 5314 | LAWYERS' COMMITTEE FOR CIVIL RIGHTS |
| LAW OFFICES OF CARROLL RHODES | UNDER LAW |
| *crhodes6@bellsouth.net* | 1500 K Street NW Suite 900 |
| PO Box 588 | Washington, DC 20005 |
| Hazlehurst, MS 39083 | (202) 662-8600 |
| (601) 894-1464 | |
| John P. Lavelle, Jr. | Drew Cleary Jordan |
| MORGAN, LEWIS & BOCKIUS LLP | MORGAN, LEWIS & BOCKIUS LLP |
| 2222 Market Street | 1111 Pennsylvania Ave. NW |
| Philadelphia, PA 19103-3007 | Washington, DC 20004-2541 |
| Telephone:    +1.215.963.5000 | Telephone:    +1.202.739.3000 |
| Facsimile:    +1.215.963.5001 | Facsimile:    +1.202.739.3001 |
| *john.lavelle@morganlewis.com* | *drew.jordan@morganlewis.com* |

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Ari Savitzky, do certify that on this day I caused to be served a true and correct copy of the foregoing by electronic mail to all counsel of record.

This the 29th day of April 2025.

/s/ *Ari J. Savitzky*
Ari J. Savitzky