EXHIBIT NO. PTX-064 evid.
CAUSE NO. 3:22cv734-DPJ-HSO-LHS
WITNESS
CLERK: SHONE POWELL

MAR -6 2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
Candice Crane, REPORTER



U.S. Department ˙ Justice

Civil Rights Division

*Office of the Assistant Attorney General*     *Washington, D.C. 20530*

February 27, 1990

John P. Fox, Esq.
P.O. Box 167
Houston, Mississippi  38851

Dear Mr. Fox:

    This refers to the proposed redistricting of board of supervisor districts for Chickasaw County, Mississippi, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. 1973c. We received the information necessary to complete your submission on December 29, 1989.

    We have given careful consideration to the materials you have submitted, as well as to information and comments from other interested parties. We note that the proposed redistricting was prompted by a finding in Gunn v. Chickasaw County, 705 F.Supp. 315 (N.D. Miss. 1989) that the existing districts violated Section 2 of the Voting Rights Act, 42 U.S.C. 1973. The proposed plan was drawn with the stated criterion of avoiding dilution of minority voting strength, as well as additional criteria of maintaining population equality, minimizing disruption of existing voting precincts in the rural areas and placing incumbents in separate districts. At least six specific districting plans, as well as numerous minor variations, were drawn by or presented to the county and the county adopted two of these, one of which is now before us for Section 5 review.

    Under Section 5 of the Voting Rights Act, the submitting authority has the burden of demonstrating that a proposed change does not have a racially discriminatory purpose or effect. Georgia v. United States, 411 U.S. 526 (1973). However, where, as here, an existing election system has been held by the court to be in violation of the Voting Rights Act, the affected jurisdiction bears the dual burden of not only demonstrating that the proposed plan is free of the proscribed purpose and effect but also of eliminating the dilution found by the court to exist. See S. Rep. No. 97-417, 97th Cong., 2d Sess. (1982) at 31; Dillard v. Crenshaw County, Ala., 831 F.2d 246, 249 (11th Cir. 1987); Edge v. Sumter County Sch Dist., 775 F.2d 1509, 1510 (11th Cir. 1985).

cc:  Public File

3:22-cv-734
PTX-064

- 2 -

While the County's stated criteria certainly would seem to be sufficient for creating a plan which adequately remedies the Section 2 violation, it does not appear, based on the information you provided, that the alternative plan adopted by the county and here submitted for Section 5 review accomplishes this. For example, the plan splits a larger number of precincts and does significantly less to avoid dilution of minority voting strength than a number of the available alternative configurations, including alternatives that actually better serve the stated nonracial criteria. In fact, the county's failure to adhere to its stated nonracial criteria appears to have unnecessarily limited the number of black persons contained in one proposed district (District 4) where blacks otherwise would have had a realistic opportunity to elect a representative of their choice.

It is important to note that this is not a situation where adherence to nonracial standards such as maintaining existing precinct boundaries, population equality or separation of incumbents simply outweighed the stated goal of avoiding dilution of minority voting strength, and resulted in a smaller black percentage than otherwise might be obtained. To the contrary, the stated nonracial goals harmonized completely with the goal of protecting minority voting strength and, as demonstrated by readily available alternatives, the failure to adopt a configuration which better maintained precincts and better equalized population led directly to a lower black population percentage in District 4 than otherwise would be expected.

Thus, from all that appears, the kind of fragmentation which characterized the existing plan continues to a significant degree in the proposed plan. Because of the failure to eliminate fully the dilutive features of the existing plan, and given the other options readily available to the county, the choices made in adopting the submitted plan would seem to have been calculated to minimize black voting strength. Under such circumstances, I am unable to conclude, as I must under the Voting Rights Act, that the county has met its burden of showing that the plan does not have the proscribed purpose. Accordingly I must, on behalf of the Attorney General, interpose an objection to the proposed redistricting plan for Chickasaw County.

Of course, as provided by Section 5 of the Voting Rights Act, you have the right to seek a declaratory judgment from the United States District Court for the District of Columbia that this change has neither the purpose nor will have the effect of denying or abridging the right to vote on account of race or color. In addition, Section 51.45 of the guidelines permits you to request that the Attorney General reconsider the objection. However, until the objection is withdrawn or a judgment from the District of Columbia Court is obtained, the submitted change continues to be legally unenforceable. 28 C.F.R. 51.10.

- 3 -

Because this matter is related to the case of Gunn v. Chickasaw County, supra, we are providing a copy of our determination to that Court.

To enable this Department to meet its responsibility to enforce the Voting Rights Act, please inform us of the course of action Chickasaw County plans to take with respect to this matter. If you have any questions, feel free to call Sandra S. Coleman (202-724-6718), Deputy Chief of the Voting Section.

Sincerely,

James P. Turner
Acting Assistant Attorney General
Civil Rights Division