EXHIBIT NO. PTX -0617evid.
CAUSE NO. 3:22cv734-DPJ-HSO-LHS
WITNESS
CLERK: _____ SHONE POWELL

MAR - 6 2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
Cordia Crane , REPORTER



**U.S. Department of Justice**

Civil Rights Division

*Office of the Assistant Attorney General*                    *Washington, D.C. 20035*

September 22, 1997

Sandra M. Shelson, Esq.
Special Assistant Attorney General
State of Mississippi
P.O. Box 220
Jackson, Mississippi  39205-0220

Dear Ms. Shelson:

This refers to the administrative plan for implementation of the National Voter Registration Act of 1993, 42 U.S.C. 1973gg to 1973gg-10 ("NVRA") for the State of Mississippi, which designates agencies for purposes of voter registration, includes voter registration forms for federal elections only, establishes procedures for conducting voter registration, and transmitting and processing voter registration forms in state agencies, and authorizes circuit clerks to develop procedures for notifying NVRA registrants of their federal-elections-only status and for registering NVRA registrants for state and local elections, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. 1973c. We received your submission on July 23, 1997; supplemental information was received on September 4, 5, 11, 12, 16, 18, and 19, 1997.

We have given careful consideration to the information the State has provided, as well as data from the U.S. Census and other federal agencies, information and comments from other interested persons, and information available from the Section 5 enforcement action that led to this submission. In addition, we have reviewed the State's submission in accordance with the Supreme Court's opinion in Young v. Fordice, 117 S.Ct. 1228 (1997). Our review has led to the conclusion that the submitted changes do not meet the standards for preclearance under Section 5 of the Voting Rights Act.

3:22-cv-734
PTX-067

-2-

In Young, the Court held that Mississippi's administrative NVRA plan "contains 'practices and procedures' that are significantly 'different from' ... the system that was in effect in 1994" and that "the State has not precleared those differences." 117 S.Ct. at 1235. The Court stated that:

> It is the discretionary elements of the new federal system that the State must preclear. The problem for Mississippi is that preclearance typically requires examination of discretionary changes in context--a context that includes history, purpose, and practical effect. See City of Lockhart v. United States, 460 U.S., at 131, 103 S.Ct., at 1002 ("The possible discriminatory purpose or effect of the [changes], admittedly subject to § 5, cannot be determined in isolation from the 'preexisting' elements of the council").

Young, 117 S.Ct. at 1239.

An important part of the context in which we must review the submitted changes is the state's prior experience with a requirement that its citizens register to vote twice to be eligible for all elections. For nearly a century, up until 1988, Mississippi had a dual registration requirement under which voters had to register separately for state and municipal elections. Ten years ago, a federal district court found that the original version of this dual registration requirement, adopted in 1890, had been "adopted for a racially discriminatory purpose" and that a revised version of the dual registration requirement, adopted in 1984, violated Section 2 of the Voting Rights Act because it had "result[ed] in a denial or abridgement of the right of black citizens in Mississippi to vote and participate in the electoral process." Operation PUSH v. Allain, 674 F. Supp. 1245, 1252 (N.D. Miss. 1987), aff'd sub nom. Operation PUSH v. Mabus, 932 F.2d 400, 413 (5th Cir. 1991).

The PUSH court found that in Mississippi "[b]lacks ... continue to face disproportionate economic and educational levels resulting from past discrimination which inhibits their political participation," id. at 1266, that "administrative barriers" such as dual registration were "harder to overcome for persons of lower socio-economic status and persons of lower educational attainment, a group that is disproportionately black," id. at 1255-56, and that the registration rate among black citizens lagged some 25 percentage points behind the registration rate of white citizens (54 percent for blacks in comparison to 79 percent for whites). Id. at 1253-55. The PUSH court also found that in Mississippi "the widespread variations among counties in voter registration practices ... may result in the unequal treatment of similarly situated persons" and that "[u]nfettered discretion in

-3-

voting registration procedures unnecessarily restricts access to
the political process." 674 F.Supp. at 1267; see also id. at
1257-58.

In 1994, just prior to the time Mississippi began its
implementation of the NVRA, the State had a unitary voter
registration system, which included voter registration by mail,
the availability of state voter registration forms at drivers'
license offices, and fairly uniform local voter registration
procedures. Under this unitary system, irrespective of the
office at which voters registered, or the manner in which they
registered, filling out one form would register them for all
elections. At that point, the State's voter registration system
had been fully unitary for just over six years, as a result of
state legislation adopted to remedy the Voting Rights Act
violation found in PUSH.

Pursuant to the State's submitted NVRA procedures, which the
State began implementing without preclearance in early 1995,
persons who register to vote in Mississippi solely under the NVRA
are allowed to vote only in federal elections. To be eligible to
vote in state and local elections, NVRA registrants in
Mississippi must register a second time through pre-NVRA state
voter registration procedures. This has led to a new dual
registration system in Mississippi for voters who have registered
only for federal elections under the NVRA, and for voters who
have registered for all elections under state procedures, with
separate registration procedures, separate registration lists,
and separate ballots and voting booths.

In Mississippi, according to 1990 Census data, black persons
comprise 35.6 percent of the total population and 31.6 percent of
the voting age population. The 1990 Census also shows that black
residents of the State continue to labor under severe socio-
economic disparities as compared to white residents in areas such
as education, poverty, and access to transportation.

Statistics provided by the State indicate that a majority of
the applications for voter registration in Mississippi under the
NVRA have come from public assistance offices, and in particular,
from the Mississippi Department of Human Services. Statistics
reported by the U.S. Department of Health and Human Services and
the U.S. Department of Agriculture indicate that participants in
Mississippi's public assistance programs which offer voter
registration are predominantly black. Therefore, it appears
likely that a majority of the applicants for voter registration
under the NVRA in Mississippi are black.

It appears that the Mississippi Department of Human Services
provides its public assistance clients the opportunity to
register to vote solely through the NVRA forms, which only
register voters for federal elections; and, as noted above, the

-4-

majority of these clients are black. By contrast, although it appears that the drivers' license offices of the Mississippi Department of Public Safety early in 1995 abandoned using the state's mail-in voter registration forms in favor of only offering NVRA forms, it also appears that after voters registered under the NVRA were not allowed to vote in state elections, the drivers' license offices resumed distributing state forms. As a result, it appears that clients at drivers' license offices now are offered a choice between state forms (which will register voters for all elections) and NVRA forms (which will register voters only for federal elections), and that many voters choose the state forms. Based on statistics reported by the State, it appears that overall, persons who obtain drivers' licenses and picture identification cards at drivers' license offices in Mississippi are predominantly white.

For more than two and a half years after the State began implementing the NVRA only for federal elections, the State has continued to use NVRA voter registration forms which bear titles such as "Mississippi Voter Registration Application" and instructions about how to "register to vote in Mississippi." The Supreme Court in <u>Young</u> found that these forms "probably would have led [NVRA registrants] ... to believe that NVRA registration permitted them to vote in all elections" and thus "might well mislead if they cannot in fact be used to register for state elections." <u>Young</u>, 117 S.Ct. at 1237. Although the State has submitted certain steps that it indicates have been taken in state agencies to advise NVRA applicants that they are registering only for federal elections, it appears that these steps have varied from agency to agency, and in any event, have not been sufficient to advise NVRA voters of their federal-only status. There appears to be widespread agreement among election officials in Mississippi that NVRA voters remain significantly confused about their inability to vote in state and local elections. Although the State has now proposed to begin stamping these forms "registration for federal elections only" this would not appear to significantly reduce the potential for confusion.

At this time, more than 30,000 persons, that is, more than half of the persons who have registered to vote in Mississippi under the NVRA, have not registered to vote a second time under state procedures, and thus are not eligible to vote in state and local elections. This is true despite the authority granted circuit clerks under the proposed NVRA implementation plan to notify NVRA registrants that they are registered for federal elections only and to register them for state elections using the state voter registration form. There appears to be significant variation in the efforts undertaken across the state by circuit clerks to notify NVRA registrants of their federal-elections-only status and to register NVRA voters for state and local elections through state procedures. Several of the State's poorest counties with significant black populations appear to be among

-5-

thosa which have had the least success in registering NVRA voters
for state elections.

Thus, the State's federal-election-only implementation of
the NVRA has a disproportionate impact on black citizens,
preventing them, to a greater extent than white citizens, from
voting in state and local elections.  This has the overall impact
of hampering the ability of black persons to participate in the
political process.  This result is hardly surprising in light of
the recent findings in PUSH, the long history of discrimination
against black citizens in Mississippi, and the persistence of
severe socio-economic disadvantages among black citizens in
Mississippi.  Moreover, as set forth above, a number of aspects
of the federal-election-only manner in which the State is
implementing the NVRA virtually ensure that it will have a
discriminatory effect on black citizens.  The fact that the State
has implemented these voting changes without preclearance for
more than two and a half years has led to the full realization of
the discriminatory potential of these changes.  Under these
circumstances, it appears that the voting changes involved in the
State's administrative federal-elections-only NVRA implementation
plan and the manner in which the state proposes to implement
those changes "would lead to a retrogression in the position of
racial minorities with respect to their effective exercise of the
electoral franchise," Beer v. United States, 425 U.S. 130, 141
(1976), particularly with regard to registration and voting in
state and local elections.

Mississippi's proposal to implement the requirements of the
NVRA in a manner that would cause the State to revert to a form
of dual registration requirement is particularly noteworthy
because it occurred only a few years after a federal court had
found that a similar requirement had led to pronounced
discriminatory effects on black voters.  The State has also
administered this new dual registration requirement in such a way
that discriminatory effects on black voters were not just
foreseeable but almost certain to follow.  Moreover, several
proposals aimed at mitigating or eliminating the discriminatory
effects of the federal-elections-only manner in which Mississippi
is implementing the NVRA have been made over the last three
years.  At least some of these proposals appear to have had
widespread support, particularly among state and local election
officials who bear the extra burden and expense of implementing
the dual registration system, yet these proposals have several
times been rejected under somewhat unusual circumstances.  The
reasons offered by some state officials for opposing such
measures appear to have been insubstantial, and in some cases
have been couched in racially charged terms indicating antipathy
towards "welfare voters."  In light of these circumstances, we
cannot find that the State has met its burden of showing that the
State's submitted NVRA procedures are not tainted by improper
racial considerations.  See Village of Arlington Heights v.

-6-

Metropolitan Housing Corp., 429 U.S. 252 (1977).

Under Section 5 of the Voting Rights Act, the submitting authority has the burden of showing that a submitted change has neither a discriminatory purpose nor a discriminatory effect. Georgia v. United States, 411 U.S. 526 (1973); see also 28 C.F.R. 51.52. In light of the considerations discussed above, I cannot conclude, as I must under the Voting Rights Act, that your burden has been sustained in this instance. Therefore, on behalf of the Attorney General, I must object to Mississippi's administrative plan for implementation of the NVRA.

We note that under Section 5 the State has the right to seek a declaratory judgment from the United States District Court for the District of Columbia that the proposed changes neither have the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group. See 28 C.F.R. 51.44. In addition, the State may request that the Attorney General reconsider the objection. See 28 C.F.R. 51.45. However, until the objection is withdrawn or a judgment from the District of Columbia Court is obtained, the objected-to changes continue to be legally unenforceable. Clark v. Roemer, 500 U.S. 646 (1991); 28 C.F.R. 51.10.

This also refers to your July 22, 1997, letter concerning the procedures for removing from the voter registration list the names of NVRA registrants who have moved and the amended procedures for removing from the registration list the names of registrants who have moved for state and local elections.

While your letter purports to be a submission under Section 5, the information provided does not meet the requirements for a proper submission under Section 5 for changes affecting voting. In particular, your letter does not satisfy 28 C.F.R. 51.27(c). Under Section 5, a jurisdiction has the responsibility for clearly identifying the voting changes for which preclearance is being requested. Clark v. Roemer, 500 U.S. 646 (1991); McCain v. Lybrand, 465 U.S. 236 (1984); Allen v. State Board of Elections, 393 U.S. 544 (1969). Therefore, we are unable to accept your letter concerning the above-referenced voter removal procedures as a request for review under Section 5. See 28 C.F.R. 51.26(d) and 51.35.

We further note that the voter removal procedures referenced in your July 22, 1997, letter appear directly related to the administrative procedures for implementation of the NVRA objected to in this letter. Consequently, review of the voter removal procedures under Section 5 must await preclearance of the related NVRA implementation plan.

-7-

    To enable us to meet our responsibility to enforce the Voting Rights Act, please inform us of the action that the State of Mississippi plans to take concerning this matter.  If you have any questions, you should call Chris Herren (202-514-1416), an attorney in the Voting Section.

    Since the Section 5 status of Mississippi's NVRA implementation procedures is pending before the Court in Young v. Fordice (S.D. Miss.), we are providing a copy of this letter to the Court and counsel in that case.

                    Sincerely,

                    Isabelle Katz Pinzler
            Acting Assistant Attorney General
                Civil Rights Division

cc:  The Honorable E. Grady Jolly
     United States Circuit Judge

     The Honorable Tom S. Lee
     United States District Judge

     The Honorable William H. Barbour, Jr.
     United States District Judge

     Robert E. Sanders, Esq.
     Brenda Wright, Esq.
     A. Spencer Gilbert, III, Esq.
     Todd Cox, Esq.
     Margaret Carey, Esq.
     Laughlin McDonald, Esq.