# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

MISSISSIPPI STATE CONFERENCE OF THE
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE; DR.
ANDREA WESLEY; DR. JOSEPH WESLEY;
ROBERT EVANS; GARY FREDERICKS;
PAMELA HAMNER; BARBARA FINN; OTHO
BARNES; SHIRLINDA ROBERTSON; SANDRA
SMITH; DEBORAH HULITT; RODESTA
TUMBLIN; DR. KIA JONES; MARCELEAN
ARRINGTON; VICTORIA ROBERTSON,

     *Plaintiffs*,

     vs.

STATE BOARD OF ELECTION
COMMISSIONERS; TATE REEVES, *in his
official capacity as Governor of Mississippi*; LYNN
FITCH, *in her official capacity as Attorney General
of Mississippi*; MICHAEL WATSON, *in his official
capacity as Secretary of State of Mississippi,*

     *Defendants,*

AND

MISSISSIPPI REPUBLICAN EXECUTIVE
COMMITTEE,

*Intervenor-Defendant.*

**CIVIL ACTION NO.
3:22-cv-734-DPJ-HSO-LHS**

**PLAINTIFFS' BRIEF REGARDING NEXT STEPS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

ARGUMENT................................................................................................................... 5

I.      THIS COURT SHOULD DECLARE THAT THE 2025 REMEDIAL DISTRICTS ARE THE CURRENT, OPERATIVE LEGISLATIVE LINES.............................................. 5

II.     THE MOST APPROPRIATE NEXT STEPS DEPEND ON WHICH SENATE AND HOUSE LINES ARE CURRENTLY IN EFFECT. ................................................... 9

III.    *CALLAIS* DOES NOT FORECLOSE PLAINTIFFS' SECTION 2 CLAIMS...................... 11

CONCLUSION............................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. South Carolina State Conference of the NAACP*,
    602 U.S. 1 (2024)............................................................................................... 13

*Allen v. Milligan*,
    599 U.S. 1 (2023)...............................................................................................11

*Board of Election Commissioners v. NAACP*,
    No. 25-234, 2026 WL 1377105 (U.S. May 18, 2026) ............................................. 4

*LaSalle Bank National Association v. Sleutel*,
    289 F.3d 837 (5th Cir. 2002) ................................................................................ 7

*Louisiana v. Callais*,
    146 S. Ct. 1131 (2026) ................................................................................. passim

*Mauldin v. Branch*,
    866 So. 2d 429 (Miss. 2003)............................................................................. 8, 9

*Miller v. Johnson*,
    515 U.S. 900 (1995)........................................................................................... 13

*Mississippi State Conference of the National Association for the Advancement of Colored
    People v. State Board of Election Commissioners*,
    739 F. Supp. 3d 383 (S.D. Miss. 2024)................................................. 2, 8, 14, 15

*Mississippi State Conference of the National Association for the Advancement of Colored
    People v. State Board of Election Commissioners*,
    741 F. Supp. 3d 509 (S.D. Miss. 2024)............................................................. 2, 8

*Mississippi State Conference of the National Association for the Advancement of Colored
    People v. State Board of Election Commissioners*,
    782 F. Supp. 3d 336 (S.D. Miss. 2025)......................................................... 3, 5, 10

*Mississippi State Conference of the National Association for the Advancement of Colored
    People v. State Board of Election Commissioners*,
    782 F. Supp. 3d 349 (S.D. Miss. 2025)............................................................. 3, 5

*Shelby County v. Holder*,
570 U.S. 529 (2013)   12

ii

*South Carolina State Conference of the NAACP v. Alexander*,
    649 F. Supp. 3d 177 (D.S.C. 2023) ................................................................................ 13

*Thomas v. FireRock Products, LLC*,
    40 F. Supp. 3d 783 (N.D. Miss. 2014) .............................................................................. 7

*Veasey v. Abbott*,
    830 F.3d 216 (5th Cir. 2016) .......................................................................................... 14

**Statutes**

Ga. S. Bill 1EX, 2023 Gen. Assemb., 1st Ex. Sess. (Ga. 2023),
    https://gov.georgia.gov/document/2023-special-session-signed-legislation/sb-
    1ex/download ................................................................................................................ 6

Miss. Code Ann. § 1-1-8 ...................................................................................................... 8

Miss. Code Ann. § 1-1-25 .................................................................................................... 8

Miss. Code Ann. § 5-3-93 .................................................................................................... 9

Miss. Code Ann. § 5-3-101 ................................................................................................ 13

Miss. Code. Ann. § 27-115-51 ............................................................................................ 7

Miss. Code Ann. § 73-15-201 ............................................................................................. 7

Miss. S. Joint Res. 201, 2026 Leg., Reg. Sess. (Miss. 2026),
    https://legiscan.com/MS/text/JR201/id/3407717 ........................................................ 6, 7

**Other Authorities**

Miss. H.R. Joint Res. 1, 2025 Leg., Reg. Sess. (Miss. 2025),
    https://billstatus.ls.state.ms.us/documents/2025/html/JR/JR0001IN.htm .................... 3, 5, 6, 7

Miss. S. Joint Res. 202, 2025 Leg., Reg. Sess. (Miss. 2025),
    https://billstatus.ls.state.ms.us/documents/2025/html/JR/JR0202IN.htm .................... 3, 5, 6, 7

**Constitutional Provisions**

Miss. Const., art. 13, § 254 ................................................................................................. 9

Miss. Const., art. IV, § 61 ................................................................................................... 8

iii

**INTRODUCTION**

Following the Supreme Court's vacatur of the judgment in this case, the operative Senate and House districts today are those enacted by the Mississippi Legislature in 2025, including the configuration adopted in 2025 for DeSoto County-area Senate districts that that had been replaced by this Court in subsequent remedial proceedings.  Since the vacatur order, Governor Tate Reeves has publicly suggested the likelihood that a special legislative session may be called for the Legislature to enact new districts.  Under those circumstances, and on balance, Plaintiffs believe that a prudent course would be to stay this litigation through the end of the calendar year or until new lines are enacted, whichever comes first.  That would ensure that judicial and litigation resources are not expended on a challenge to district lines that may soon change, and would minimize unnecessary uncertainty or confusion regarding the lines in advance of elections in 2027.

Defendants, however, have indicated that they have a different view of the current state of play.  In their view, the Supreme Court's vacatur of this Court's judgment has in turn somehow overridden the 2025 actions of the Mississippi Legislature, such that the operative district lines have automatically reverted to the 2022 districts that this Court previously found to be unlawful. If that were the case, Plaintiffs would seek an expedited supplemental discovery schedule in order to set forth additional evidence to satisfy the new vote dilution factors articulated by the Supreme Court in *Louisiana v. Callais*, followed by an evidentiary hearing to supplement the trial record and then updated post-trial filings, so that this Court can issue a new ruling on Section 2 liability as to the relevant areas of the state ahead of next year's elections.  If the vote-dilutive 2022 districts were indeed back in effect, proceeding on such an expedited basis would be necessary to prevent irreparable harm.

The initial question of which districts are in effect today thus has considerable bearing on the right path forward—and resolving that question may enable the parties to agree on the scope and pace of the next steps in this litigation, including a potential stay or a potential discovery schedule.  This Court should therefore resolve that question at its earliest convenience, declare that the House and Senate districts created by the Legislature's 2025 joint resolutions, which have not been repealed or invalidated in any way, remain in effect today, and then order the parties to meet and confer on further next steps in light of that ruling.

## BACKGROUND

After presiding over a two-week trial, this Court found that the Mississippi House and Senate districts enacted by the Legislature in 2022 unlawfully diluted the voting strength of Black Mississippians in two areas of the Senate map (the DeSoto County and Hattiesburg areas) and one area of the House map (the Chickasaw and Monroe County area).  *Mississippi State Conf. of Nat'l Ass'n for Advancement of Colored People v. State Bd. of Election Comm'rs* ("*MS NAACP I*"), 739 F. Supp. 3d 383, 466 (S.D. Miss. 2024).  The Court then gave the Legislature the option to enact new maps that would remedy those violations, before the Court would impose a judicial remedy.  *Mississippi State Conf. of Nat'l Ass'n for Advancement of Colored People v. State Bd. of Election Comm'rs* ("*MS NAACP II*"), 741 F. Supp. 3d 509, 515 (S.D. Miss. 2024).

The Mississippi Legislature chose to enact new maps.  *See* Defendants' Formal Notice of Adoption of Remedial Redistricting Plans at 1–2, Dkt. 241.  Specifically, during its 2025 Regular Session, the Legislature passed Joint Resolution 1 ("J.R. 1"), which enacted new House districts that superseded the 2022 lines challenged by Plaintiffs.[1]  Similarly, the State passed Joint

---

[1] Available at https://billstatus.ls.state.ms.us/documents/2025/html/JR/JR0001IN.htm.

Resolution 202 ("J.R. 202"), which replaced the 2022 Senate districts.[2]  Each resolution provided that it "shall take effect and be in force from and after its approval by the United States District Court for the Southern District of Mississippi, Northern Division, in the matter styled Mississippi State Conf. of the NAACP v. State Bd. of Election Comm'rs., No. 3:22-CV-734." J.R. 1; J.R. 202. Furthermore, each resolution expressly repealed all prior districts, rendering them "null and void upon the date" the resolution "is effectuated."  J.R. 1; J.R. 202.  Neither resolution made its effectiveness contingent upon the outcome of any appeal in this matter or other litigation, or contained any repealer or reverter provisions conditioned on any such appellate outcome or any other potential future event.

Those resolutions took effect on April 15, 2025, when this Court issued a remedial order approving the Hattiesburg-area Senate districts (to which Plaintiffs had no objection) in J.R. 202 and the Chickasaw-area House districts (over Plaintiffs' objections) in J.R. 1.  *Mississippi State Conf. of the Nat'l Ass'n for the Advancement of Colored People v. State Bd. of Election Comm'rs* ("*MS NAACP III*"), 782 F. Supp. 3d 336, 349 (S.D. Miss. 2025).  This Court also found that the Legislature's DeSoto-area districts did not sufficiently remediate the vote dilution and ultimately adopted an alternative version proposed by Defendants.  *Mississippi State Conf. of Nat'l Ass'n for Advancement of Colored People v. State Bd. of Election Comm'rs* ("*MS NAACP IV*"), 782 F. Supp. 3d 349, 361 (S.D. Miss. 2025), *vacated and remanded sub nom. Bd. of Election Comm'rs v. NAACP*, No. 25-234, 2026 WL 1377105 (U.S. May 18, 2026).  The districts approved by the Court took effect and were used to hold special elections in November 2025.  *Id.*

---

[2] Available at https://billstatus.ls.state.ms.us/documents/2025/html/JR/JR0202IN.htm.

3

Defendants noticed an appeal of this Court's final judgment.  Dkt. 271.  On appeal, Defendants did not contest any of this Court's findings on the merits—the sole question presented on appeal in this case was a procedural issue: "Whether private parties may sue to enforce section 2 of the Voting Rights Act, 52 U.S.C. § 10301."  Jurisdictional Statement, *State Bd. of Election Comm'rs v. Mississippi State Conf. of Nat'l Ass'n for Advancement of Colored People*, No. 25-234 (U.S. Aug. 26, 2025).

On April 29, 2026, in *Louisiana v. Callais*, the Supreme Court "update[d]" the *Gingles* framework used to assess Section 2 liability, as described in further detail below.  146 S. Ct. 1131, 1157 (2026); *see also infra* Part III.  Notwithstanding Defendants' having appealed solely on the private-right-of-action issue, the Supreme Court then vacated the judgment in this case and remanded for further consideration in light of *Callais* in a one-sentence order.  *Bd. of Election Comm'rs v. NAACP*, No. 25-234, 2026 WL 1377105, at *1 (U.S. May 18, 2026).

The parties have met and conferred about next steps in this matter.  The parties disagree as to the effect of the Supreme Court's vacatur and the proper interpretation of J.R. 1 and J.R. 202, specifically whether the operative districts today are the 2025 remedial districts as set forth in J.R. 1 and J.R. 202 or the original 2022 districts that J.R. 1 and J.R. 202 superseded.  As Plaintiffs understand it, Defendants' position is that the U.S. Supreme Court's vacatur of the judgment in this case erased the 2025 resolutions passed by the Mississippi Legislature, automatically reverting to the original 2022 district lines challenged by Plaintiffs.  Plaintiffs' view is that the 2025 resolutions are duly enacted legislation, which took effect (and was indeed utilized in elections in November 2025) and remains in effect unless invalidated by a court order or amended or repealed by the Legislature, neither of which has happened.

4

**ARGUMENT**

**I.    THIS COURT SHOULD DECLARE THAT THE 2025 REMEDIAL DISTRICTS ARE THE CURRENT, OPERATIVE LEGISLATIVE LINES.**

The 2025 districts enacted by the Mississippi Legislature via Joint Resolutions 1 and 202 are the operative districts today.  Those resolutions, which repealed the 2022 districts, indisputably took effect in 2025, as special elections were held using districts created by those resolutions. Nothing in either resolution conditions their continued legal effect on any subsequent events.  The Supreme Court's vacatur of the judgment in this case has no effect on the 2025 legislation, which was enacted pursuant to the Mississippi Legislature's independent authority under the Mississippi Constitution.  At most, the vacatur does away with the court-ordered remedial districts in the DeSoto County area, where this Court found that the lines enacted via Joint Resolution 202 did not sufficiently remedy vote dilution.  *See MS NAACP IV*, 782 F. Supp. 3d at 360.  Therefore, the 2025 district lines, as enacted by the Legislature, are and remain in place in all three areas, until the Legislature or a court says otherwise.

This conclusion follows from the plain text of the resolutions adopted by the Legislature in 2025.  The resolutions provide that they take effect upon approval by *this Court*, and their continued effect is not dependent on any subsequent event or on the continued vitality of any underlying judgment or legal order.  Specifically, the two resolutions each specify that "this resolution shall take effect and be in force from and after its approval by the United States District Court for the Southern District of Mississippi, Northern Division, in the matter styled <u>Mississippi State Conf. of the NAACP v. State Bd. of Election Comm'rs.</u>, No. 3:22-CV-734."  *See* J.R. 1; J.R. 202.  Thus, the Mississippi Legislature specified a clear triggering event—approval by this Court—which occurred when the Court issued a remedial order on April 15, 2025.  *MS NAACP III*, 782 F. Supp. 3d at 349.  And having taken effect for the November 2025 elections, the

resolutions are "in force from and after" that point and remain so today. *See* J.R. 1; J.R. 202.

Legislatures can choose to include reversionary language in remedial legislation, such that invalidated districts may snap back into effect if the state prevails on appeal. For instance, the Georgia Legislature in 2023, following a court ruling that the state legislative districts violated Section 2, passed remedial districts that are to be used only if the original districts "may not lawfully be implemented" as of 60 days before the election begins. *E.g.,*, GA Senate Bill 1EX ("Georgia Senate Redistricting Act of 2023"), § 2(c) (2023).[3] That remedial legislation also made clear that it intended to preserve the legal force of the original districts, specifying that it "does not repeal or amend the provisions of the Georgia Senate Redistricting Act of 2021 or the 2021 Senate redistricting plan; and those provisions are merely suspended pending a final determination of their enforceability by the federal judiciary." *Id.* § 2(e). Mississippi could have done the same but did not do so here.

In fact, the Mississippi Legislature specifically recognized that it could enact legislation to return to the 2022 districts based on the litigation outcomes—and it deliberately chose *not* to. During the 2026 regular session, Senator Jeremy England introduced Joint Resolution 201, which provided that, "in the event the United States Supreme Court issues a final decision in the Louisiana congressional redistricting plan holding that the plan violates the U.S. constitution or is nonjusticiable, then the Senate legislative districts as presently set out shall be superseded by Joint Resolution No. 202, 2022 Regular Session." J.R. 201, 2026 Reg. Sess. (Miss.). The last paragraph of the resolution contained similar language, stating that, depending on the outcome in *Callais*,

---

[3] Available at https://gov.georgia.gov/document/2023-special-session-signed-legislation/sb-1ex/download.

"then the legislative districts as set out and described in this Joint Resolution shall be superseded by those as set out and described in Joint Resolution No. 202, 2022 Regular Session." *Id.* Critically, though, this resolution did *not* pass; rather, it died in committee on April 15, 2026.[4] The fact that the Mississippi legislature "knows how to" condition the new districts on litigation outcomes but declined to do so is strong evidence that J.R. 1 and J.R. 202 were not designed to self-liquidate based on the Supreme Court's vacatur order.[5] *See LaSalle Bank Nat'l Ass'n v. Sleutel*, 289 F.3d 837, 841 (5th Cir. 2002); *Thomas v. FireRock Prods., LLC*, 40 F. Supp. 3d 783, 792 (N.D. Miss. 2014).

Interpreting the resolutions to automatically revive the 2022 districts, in the absence of reversionary language or other legislative action, would be contrary to Mississippi law and rules of statutory construction.  Unlike the remedial redistricting legislation in Georgia, which merely suspended the challenged districts pending appellate review, J.R. 1 and J.R. 202 expressly repealed the 2022 districts, rendering them "null and void."  J.R. 1 ("[T]he redistricting contained in this resolution shall supersede any prior redistricting, and any prior redistricting *shall be null and void* upon the date this resolution is effectuated." (emphasis added)); J.R. 202 (similar).  And according to Miss. Code Ann. § 1-1-25, laws that have been repealed are not automatically revived even if the repealing statute is itself subsequently nullified—repealed laws must instead be expressly re-

---

[4]  Bill Text: MS JR201 | 2026 | Regular Session | Introduced, LegiScan, https://legiscan.com/MS/text/JR201/id/3407717.

[5]  Notably, Mississippi has also enacted legislation in other contexts that makes its legal effect contingent on external and future events. *See, e.g.*, Miss. Code. Ann. § 27-115-51(1)(d)(ii) (stating that a particular restriction would not apply "until after the first twelve (12) months of revenue generation"); Miss. Code Ann. § 73-15-201 ("This compact shall become effective and binding on the earlier date of legislative enactment of this compact into law by no less than twenty-six (26) states or December 31, 2018.").

enacted to have effect. *See* Miss. Code Ann. § 1-1-25 ("All statutes and parts of statutes which are repealed or abrogated by, or are repugnant to any law repealed by the Mississippi Code of 1972, and which have not been re-enacted or consolidated therein, shall continue to be so repealed, and shall remain abrogated.").[6]   Here, J.R. 1 and J.R. 202 have not been repealed by the Legislature, and even if they were, the Legislature would still need to pass a resolution to restore the now "null and void" 2022 districts. *See also* Miss. Const., art. IV, § 61 ("No law shall be revived or amended by reference to its title only, but the section or sections, as amended or revived, shall be inserted at length.").

The Mississippi Legislature was not required to enact new district lines in 2025; this Court rather gave the Legislature the "opportunity" to do so, consistent with the need to respect the Legislature's primary role in the line-drawing process. *MS NAACP I*, 739 F. Supp. 3d at 466; *accord MS NAACP II*, 741 F. Supp. 3d at 512.   Thus, this Court did not compel the particular districts that the State enacted via joint resolution in 2025.   And the State was undoubtedly aware that it was not required to pass any legislation at all: Following a recent finding of Section 2 liability in a redistricting case involving the state's Supreme Court districts, the Mississippi Legislature *declined* to enact any new districts despite being given a similar opportunity to remedy the identified vote dilution. *See* Defs.' Mem. on Remedial Issues at 7–8, *White v. State Bd. of Election Comm'rs*, No. 22-CV-62-SA-JMV, Dkt. 295 (N.D. Miss. Apr. 25, 2026); *see also, e.g.*, *Mauldin v. Branch*, 866 So. 2d 429, 431 (Miss. 2003) (noting Legislature's failure to enact new

---

[6] The term "Mississippi Code of 1972" refers to the ongoing codification of Mississippi's statutory laws, not just that codification that occurred in 1972. *See* Miss. Code Ann. § 1-1-8 ("The Mississippi Code of 1972 Annotated, as amended, modified and revised from time to time . . . [i]s the official code of the public statute laws of the State of Mississippi that are enacted by the Legislature.").

congressional plan following 2000 Census).

Unlike the Legislature's unique role in redistricting, Defendants, as executive officials of the State, have no authority to unilaterally re-implement the 2022 districts absent new legislation. Under the Mississippi Constitution, the power and duty of apportionment is assigned to the Legislature alone. Miss. Const., art. 13, § 254 ("The Legislature shall . . . by majority vote of all members of each house, apportion the state in accordance with the Constitution of the state and of the United States into consecutively numbered senatorial and representative districts of contiguous territory."). Similarly, under the Mississippi Code, the power to redistrict the state legislative districts is assigned to the Standing Joint Legislative Committee on Reapportionment. Miss. Code Ann. § 5-3-93 ("The members of the committee shall draw a plan to apportion, according to constitutional standards, the membership of the Mississippi Senate and the Mississippi House of Representatives."). And the Mississippi Supreme Court has held that the Legislature's power in redistricting is exclusive—"[t]hat power is not granted to any other governmental entity by the Mississippi Constitution, statutes, or case law." *See Mauldin*, 866 So.2d at 433. With the 2022 districts already repealed, there is simply no legal authority to resurrect them without further legislative action. In the absence of such action, the 2025 lines remain in effect.

## II. THE MOST APPROPRIATE NEXT STEPS DEPEND ON WHICH SENATE AND HOUSE LINES ARE CURRENTLY IN EFFECT.

The Court can and should resolve the question of which lines are currently in effect because it is critical to determining the scope of the remaining litigation in this case, and the pace of any next steps that may be needed.

If, as set forth above, the 2025 lines are now in effect, a stay may be the most appropriate course of action because it would serve judicial economy and conserve the resources of the parties and the Court. Based on public reporting, there is a significant chance that, if the 2025 lines are

in effect, a special session may be called to try to revert to the 2022 lines or otherwise replace the 2025 lines.  Of course, the outcome of any such session is necessarily uncertain.  But if such redistricting does occur and it replaces the 2025 lines, Plaintiffs would need to re-evaluate the new district lines to determine the application of Section 2, and might need to file an amended complaint, including to assert any additional causes of action.  The scope of the case and the nature of any discovery needed under the *Callais* factors, *see infra* Part III, could thus be very different depending on whether such further redistricting takes place.  Accordingly, assuming the 2025 lines remain in place, a stay of these proceedings through the end of the year (or until new districts are enacted, whichever occurs earlier) would be prudent.  Doing so would conserve judicial and public resources, and would be consistent with the public interest, as the 2025 lines completely remedy potential vote dilution in two of the three areas and at least partially mitigate the vote dilution in the DeSoto County area as well.  *See MS NAACP III*, 782 F. Supp. 3d at 343, 349.

If, however, the Court were to determine that the 2022 lines that this Court previously held to dilute the voting strength of Black Mississippians remain in effect, then a fairly expedited supplemental discovery schedule would be necessary in order to give Plaintiffs an opportunity to obtain relief before the 2027 elections.  In that case, the Court should order a period of supplemental discovery which will allow for the disclosure of additional expert analysis and any other evidence to satisfy the new *Callais* factors, followed by additional hearing days and supplemental post-trial submissions addressing these new elements of the Section 2 liability standard.  The district court presiding over the post-*Callais* phase of another Section 2 case, *White v. State Board of Election Commissioners*, recently issued a scheduling order to this effect (though unlike this case, remedial legislation was never enacted by the Legislature).  *See* Scheduling Order, *White v. State Bd. of Election Comm'rs*, No. 22-CV-62-SA-JMV, Dkt. 320 (N.D. Miss. July 10,

10

2026) (providing for expedited supplemental discovery over an approximately 100-day period); Order, *White v. State Bd. of Election Comm'rs*, No. 22-CV-62-SA-JMV, Dkt. 321 (N.D. Miss. July 13, 2026) (setting additional evidentiary proceeding for November 16, 2026).[7]

Because the scope and trajectory of this case depends significantly on which districts are currently in effect, this Court should resolve the parties' dispute regarding the current status quo at the earliest practicable moment. After doing so, it can then direct the parties to confer on next steps, including the terms of any stay or the scheduling of supplemental discovery.

III.    *CALLAIS* **DOES NOT FORECLOSE PLAINTIFFS' SECTION 2 CLAIMS**

However this case proceeds, Plaintiffs' Section 2 claims are not and would not be foreclosed by *Callais*. The Supreme Court in *Louisiana v. Callais* confirmed the constitutionality of Section 2 and held that compliance with the Voting Rights Act constitutes a compelling interest that can justify the use of race even to draw the congressional district at issue in that case (if the updated *Gingles* framework had been satisfied). 146 S. Ct. at 1143, 1161. The Court also confirmed that Section 2 vote dilution is ultimately a results test that does not require intentional discrimination. *Id.* at 1145 (explaining the history of Section 2 and noting that the legislative compromise produced a "final product [that] included both an effects test in § 2(a) and a 'robust disclaimer against proportionality' in § 2(b)." (quoting *Allen v. Milligan*, 599 U.S. 1, 13 (2023))); *Milligan*, 599 U.S. at 25 ("§ 2 turns on the presence of discriminatory effects, not discriminatory intent."). However, the Supreme Court also "update[d] the *Gingles* framework" by adding four discrete additional factors or considerations. *Id.* at 1159. Because Plaintiffs have already satisfied the original *Gingles* test, the only question remaining before confirming the Court's original

---

[7] Plaintiffs further reserve the right to seek preliminary injunctive relief in advance of the 2027 election cycle if the Court determines that the 2022 lines have snapped back into effect.

11

liability determination is whether Plaintiffs can satisfy the new factors, most of which are already addressed by this Court's earlier opinion.

*Callais* "update[d]" the *Gingles* test in four ways: As to the first *Gingles* factor, plaintiffs must now show that a reasonably configured, majority-minority district can be created (1) without "us[ing] race as a districting criterion," *Callais*, 146 S. Ct. at 1159; and (2) while accounting for the legislature's "legitimate districting objectives," including "specified political goals," *id*.  As to the second and third *Gingles* factors, *Callais* instructs that (3) plaintiffs must now "provide an analysis [of racially polarized voting] that controls for party affiliation," by showing that racial bloc voting "cannot be explained" by just "partisan affiliation," *id*.  And, as to the totality of the circumstances, courts (4) must give greater weight to "'current data' and 'current political conditions' that shed light on current intentional discrimination," *id.* at 1160 (quoting *Shelby Cnty. v. Holder*, 570 U.S. 529, 552–53 (2013)).

Whenever the case proceeds, Plaintiffs should be given an opportunity to reopen discovery and supplement the record to address those factors as to any areas of the state that remain in contention, particularly the first requirement that Plaintiffs submit illustrative maps without "us[ing] race as a districting criterion." *Callais*, 146 S. Ct. at 1159.  But *Callais* certainly does not preclude a map-drawer from having background knowledge of racial demographics.  Indeed, in *Callais*, 146 S. Ct. at 1159, the Court repeatedly relied on *Alexander v. South Carolina State Conference of the NAACP*, which reiterated that a mapdrawer's mere "awareness of . . . racial demographics" does not demonstrate predominance of racial considerations and thus does not raise

12

constitutional concerns.[8]  602 U.S. 1, 37 (2024); *see also Miller v. Johnson*, 515 U.S. 900, 915–16 (1995) ("Redistricting legislatures will . . . almost always be aware of racial demographics; but it does not follow that race predominates in the redistricting process.").  And in any event, even if *Callais* means that a mapdrawer can make no use of any racial demographic data in the mapdrawing process while still constructing reasonably-configured illustrative Black-majority districts for *Gingles* 1 purposes, Plaintiffs would still seek to and be able to proceed in introducing mapping analysis along those lines.

While Plaintiffs intend to further supplement the record, the existing trial record already weighs in Plaintiffs' favor on the three remaining *Callais* requirements.  For one, *Callais*' instruction that plaintiffs must account for the legislature's "specified political goals," including any "target partisan distribution of voters," 146 S. Ct. at 1159, is inapplicable here, because the Mississippi Legislature did not articulate any such goals when passing the 2022 state house and senate maps.  Rather, Miss. Code Ann. § 5-3-101, which sets out the State's redistricting "guidelines and standards," identifies only factors such as compactness, contiguity, and preservation of governmental or political boundaries, not partisanship.  Similarly, Joint Trial Exhibit 8 (JTX-008), which lists the redistricting criteria adopted by the legislative committee on redistricting in 2022, identified only equal population (specifically +/- 5 percent deviation from perfect population equality), contiguity, and compliance with all applicable state and federal laws. JTX-008 at 1.  Accordingly, Plaintiffs need not show illustrative plans that satisfy the State's "specified" political goals, because none were actually articulated by the Legislature.

---

[8] That is true even though the mapdrawer in South Carolina had such "detailed knowledge . . . regarding the racial demographics of the state down to the individual precinct level" that he could recall from memory the Black population of specific precincts moved.  *See S.C. State Conf. of NAACP v. Alexander*, 649 F. Supp. 3d 177, 191 n.12 (D.S.C. 2023).

13

Next, Plaintiffs have already controlled for the effect of partisanship when proving the existence of racial polarized voting. Indeed, in rejecting Defendants' arguments that polarization in Mississippi is partisan rather than racial, this Court found that none of the circumstances indicative of race-neutral, partisan polarization are present in Mississippi today. *See MS NAACP I*, 739 F. Supp. 3d at 441. Further, this Court found that "[r]ace matters" in Mississippi politics, as evidenced for example by White Democratic candidates earning a significantly greater share of the White vote compared to Black Democrats. *Id.* at 440. While this Court largely analyzed this issue as part of Senate Factor 2, this Court also concluded that advancing this consideration to the analysis of the second and third *Gingles* preconditions does nothing to change the outcome. *Id.* at 441 ("Just where the discussion best fits will not matter in this case, as ultimately the evidence does not support that racial polarization has become partisan divisions.").

And as to the totality of the circumstances, this Court, consistent with *Callais*, already gave greater weight to "'current data' and 'current political conditions' that shed light on current intentional discrimination" when it ruled in Plaintiffs' favor. *See* 146 S. Ct. at 1160. Indeed, this Court specifically held that "long-ago acts of official discrimination give context," but "[t]he most relevant historical evidence is relatively recent history, not long-past history." *MS NAACP I*, 739 F. Supp. 3d at 444 (quoting *Veasey v. Abbott*, 830 F.3d 216, 232, 257 (5th Cir. 2016)). Even when focusing on recent history, this Court found a "continuation of official discrimination" in Mississippi, including in redistricting, and that "more recent events still cause the first and third Senate Factors to weigh in favor of the Plaintiffs." *Id.* at 448–49.

In short, the totality of the trial record "give[s] rise to a strong inference of racial discrimination." *See Callais*, 146 S. Ct. at 1162. The Supreme Court in *Callais* extensively discussed the facts of *White v. Regester*, which is the origin of Section 2's requirement that political

14

processes be "equally open" to racial minorities. *Id.* at 1145–46. As the Supreme Court explained, "*White* presented a situation in which circumstantial evidence suggested very strongly that the State had . . . the purpose of diluting minority votes." *Id*. at 1146. This Court, at trial has already conducted this exact comparison to *White*, finding that "[o]ur facts and record are similar" to those in *White*. Specifically, this Court noted the following parallels between this case and *White*: "evidence of lack of minority political success since Reconstruction, a history of discrimination, voting requirements that depressed minority votes, racial campaign tactics, and a lack of responsiveness from elected officials in minority communities." *MS NAACP I*, 739 F. Supp. 3d at 452. Whenever and however this case proceeds, then, Plaintiffs intend to and will re-establish liability as to any areas that remain in contention.

## CONCLUSION

The Court should issue an order determining that, following the Supreme Court's vacatur order, the current operative districts are the 2025 districts enacted by the Mississippi Legislature and direct the parties to confer on next steps in light of that determination and report back within seven days of the Court's order.

15

This the 29th day of July, 2026.

/s/  Ari J. Savitzky
Ari J. Savitzky
*asavitzky@aclu.org*
Ming Cheung
*mcheung@aclu.org*
Nina Nayiri McKay*
*nmckay@aclu.org*
ACLU FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500

John P. Lavelle, Jr.
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103-2921
Telephone:      +1.215.963.4824
Facsimile:      +1.215.963.5001
*john.lavelle@morganlewis.com*

Drew C. Jordan
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Telephone:      +1.202.739.5962
Facsimile:      +1.202.739.3001
*drew.jordan@morganlewis.com*


*Pro hac vice motion forthcoming*

Joshua Tom, MSB 105392
*jtom@aclu-ms.org*
ACLU OF MISSISSIPPI
101 South Congress Street
Jackson, MS 39201
(601) 354-3408

Jennifer Nwachukwu
*jnwachukwu@lawyerscommittee.org*
David Rollins-Boyd
*drollins-boyd@lawyerscommittee.org*
Javon Davis
*jdavis@lawyerscommittee.org*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street NW Suite 900
Washington, DC 20005
(202) 662-8600

Robert B. McDuff, MSB 2532
*rbm@mcdufflaw.com*
MISSISSIPPI CENTER FOR JUSTICE
767 North Congress Street
Jackson, MS 39202
(601) 969-0802

Carroll Rhodes, MSB 5314
Law Offices of Carroll Rhodes
*crhodes6@bellsouth.net*
PO Box 588
Hazlehurst, MS 39083
(601) 894-1464


*Attorneys for Plaintiffs*

16

## CERTIFICATE OF SERVICE

I, Ari J. Savitzky, do certify that on this day I caused to be served a true and correct copy of the foregoing by electronic mail to all counsel of record.

This the 29th day of July, 2026.

/s/ Ari J. Savitzky
Ari J. Savitzky