# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

MISSISSIPPI STATE CONFERENCE OF THE
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE; DR.
ANDREA WESLEY; DR. JOSEPH WESLEY;
ROBERT EVANS; GARY FREDERICKS; PAMELA
HAMNER; BARBARA FINN; OTHO BARNES;
SHIRLINDA ROBERTSON; SANDRA SMITH;
DEBORAH HULITT; RODESTA TUMBLIN; DR.
KIA JONES; MARCELEAN ARRINGTON;
VICTORIA ROBERTSON,

       *Plaintiffs*,

       vs.

STATE BOARD OF ELECTION COMMISSIONERS;
TATE REEVES, *in his official capacity as Governor of
Mississippi*; LYNN FITCH, *in her official capacity as
Attorney General of Mississippi*; MICHAEL WATSON,
*in his official capacity as Secretary of State of
Mississippi,*

       *Defendants,*
AND

MISSISSIPPI REPUBLICAN EXECUTIVE
COMMITTEE,

*Intervenor-Defendant.*

**CIVIL ACTION NO.
3:22-cv-734-DPJ-HSO-LHS**

## DEFENDANTS' RESPONSE TO ORDER [303] REGARDING STATUS OF THE CASE

Pursuant to the Court's July 14, 2026 Order [303], Defendants State Board of Election

Commissioners, Tate Reeves, Lynn Fitch, and Michael Watson ("Defendants") submit this

response addressing the status of the case and the anticipated next steps after the Supreme Court

1

vacated the judgment and remanded for further consideration in light of *Louisiana v. Callais*, 608 U.S. ___, 146 S.Ct. 1131 (2026).[1]

Two consequential events have recently occurred affecting the status of this civil action. First, the Supreme Court has vacated the Final Judgment of this Court and remanded for further consideration in light of *Callais*. The effect of this vacatur is to restore the parties to their pre-suit positions. In their original Complaint, the Plaintiffs alleged that the legislative redistricting plans adopted by the Mississippi Legislature in March 2022 violated Section 2 of the Voting Rights Act and the 14th Amendment to the U.S. Constitution. Vacatur returns us to those claims to be assessed under the new analytical framework set forth in *Callais*.

Second, both the legislative and executive branches of state government have taken recent action which will likely affect the status of this case. The Mississippi Senate and House of Representatives have formed Select Committees to study and make recommendations to their respective chambers in light of the *Callais* decision.[2] The Lieutenant Governor and the Speaker of the House have indicated publicly their intention to address redistricting following *Callais*.[3] Further, on July 24, 2026, the Speaker announced House members to the Standing Joint Legislative Committee on Redistricting and Reapportionment, which is the constitutional and legislative committee tasked with legislative redistricting. *See* Exhibit A; *see also* Miss. Const. art. XIII, §

---

[1] After conferring in good faith with Plaintiffs' counsel in an effort to determine whether we could agree on a recommended path forward, and being unable to do so, Defendants set forth their recommended course of action herein.

[2] Frank Corder, *Lt. Governor Hosemann Appoints Senate Select Committee on Redistricting*, Magnolia Tribune (May 15, 20226) (https://magnoliatribune.com/2026/05/14/lt-governor-hosemann-appoints-senate-select-committee-on-redistricting/) (reporting Lt. Governor Hosemann and Speaker of the House White have appointed select committees on redistricting to move toward redistricting prior to the regular session).

[3] Mississippi Today, *Gov. Tate Reeves said on Thursday that he will likely call lawmakers into a special session to address redistricting*, Facebook (June 25, 2026), (https://www.facebook.com/watch/?v=1007754085198205) (noting Governor, Lt. Governor, Speaker of the House appear "on the same page" about redistricting).

254 (1890); Miss. Code Ann. § 5-3-91 *et seq.* Likewise, Lieutenant Governor Hosemann announced Senate members appointed to the Standing Joint Legislative Committee on Redistricting and Reapportionment on July 28, 2026. *See* Exhibit B. And, the Lieutenant Governor and Speaker have issued a joint call for the Standing Joint Committee on Redistricting and Reapportionment to meet at the Capitol on August 3, 2026. *See* Exhibit C. Additionally, Governor Reeves has stated publicly that he expects to call a special session to address legislative redistricting in light of *Callais*.[4] These actions by both the legislative and executive branches indicate that the 2022 Plans adopted pre-*Callais*, which are the subject of the pending civil action, are likely to change.

Based on these events, and for the reasons set forth herein, Defendants respectfully request that the Court: (1) recognize that Orders [224], [229], [254], [262], and [263] have no continuing legal effect due to the Supreme Court's vacatur; (2) recognize that no extant federal order displaces the Legislature's 2022 House and Senate plans (the "2022 Plans"), which remain in effect unless and until the Legislature enacts new plans; (3) determine that Plaintiffs are not "prevailing" parties under 52 U.S.C. § Section 10310(e) and that no fee entitlement arises from those vacated proceedings; and (4) hold any further merits proceedings in abeyance until the earlier of legislative enactment of new plans or January 15, 2027 (which is ten days after the opening of the 2027 Regular Session of the Mississippi Legislature). Defendants preserve all threshold and merits defenses, including their position that Section 2 does not provide a private right of action.

---

[4] Geoff Pender and Taylor Vance, Neshoba County Fair: Gov. Reeves says redistricting session likely, urges voters to pick his successor wisely, Mississippi Today (June 25, 2026) (https://mississippitoday.org/2026/06/25/neshoba-county-fair-reeves-gipson/); Heather Harrison, Mississippi Governor Says He May Call Special Session for Legislative Redistricting, Mississippi Free Press (June 26, 2026) (https://www.mississippifreepress.org/mississippi-governor-says-he-may-call-special-session-for-legislative-redistricting/) (reporting Governor Reeves said he would not be surprised by a special session before the next regular session, that the State would "definitely have our redistricting done before the 2027 election," and that both legislative chambers had appointed select redistricting committees).

**BACKGROUND**

In March 2022, the Mississippi Legislature adopted new state legislative districts following the 2020 Census. House Joint Resolution 1 established the House plan, and Senate Joint Resolution 202 established the Senate plan—together, the 2022 Plans. Plaintiffs filed this action in December 2022, challenging the 2022 Plans under Section 2 of the Voting Rights Act and the Equal Protection Clause.

After trial, this Court [224] rejected all of Plaintiffs' racial gerrymandering claims and most of their Section 2 claims, but found three Section 2 violations. [224] at 114-18. Orders [229], [254], and [262], thereafter implemented a remedial process based on that determination.

During the 2025 Regular Session, the Legislature adopted House Joint Resolution 1 and Senate Joint Resolution 202 as conditionally effective remedial proposals (the "2025 Remedial Plans"). Subsequently, the Court approved the Chickasaw County-area House districts and the Hattiesburg-area Senate districts, but rejected the DeSoto County-area Senate districts in the 2025 Remedial Plans. [254] at 1, 17-18. Instead, the Court substituted a different DeSoto County-area Senate map submitted by the State Board of Election Commissioners ("SBEC") (the "SBEC Plan"). [262] at 1, 10-12. Final Judgment [263] rested on those liability and remedial rulings and retained jurisdiction over collateral matters.

On April 29, 2026, the Supreme Court decided *Callais* and directed reconsideration of Section 2 vote dilution claims under a framework requiring reassessment of intent and compliance with legitimate state districting objectives. 146 S.Ct. 1131. The Court held that Section 2 imposes vote dilution liability only when the evidence supports a strong inference that the State intentionally drew districts to afford minority voters less opportunity because of race. 146 S.Ct. at 1155-57. *Callais* realigned the *Gingles* framework by requiring, among other things, that

illustrative maps not use race as a districting criterion, that they meet all legitimate state districting objectives, that Plaintiffs disentangle race from politics, and that the totality of circumstances inquiry focus on present day intentional discrimination. *Id.* at 1157-60.

On May 18, 2026, the Supreme Court vacated the judgment in this case [302] and remanded for further consideration in light of *Callais. Board of Election Commissioners v. Mississippi State Conference of the NAACP*, No. 25-234, 608 U.S. ___ (May 18, 2026) (mem.); *see* Supreme Court Judgment [302]. On June 9, 2026, Secretary Watson notified the Lieutenant Governor and Speaker of the House that, in light of *Callais* and his responsibilities as Mississippi's Chief Elections Officer, he instructed his staff to begin preparing the Statewide Elections Management System ("SEMS") for reversion to the original 2022 Plans. *See* Exhibit D. The letter further explained that no SEMS redistricting changes may be made while an election is in process and that circuit clerks would need at least one month to reinstall the 2022 Plans and complete related statutory duties. *Id.* On June 22, 2026, the Supreme Court issued its certified judgment, which vacated the district court's judgment "with costs" and ordered Appellants to recover $300 in costs from Appellees. Supreme Court Judgment [302] at 1. This Court then entered Order [303], directing simultaneous briefs on the status of the case and anticipated next steps.

**ARGUMENT**

**I.    THE SUPREME COURT'S VACATUR LEAVES NO OPERATIVE LIABILITY DETERMINATION, REMEDY, OR FINAL ORDERS.**

**A. Vacatur leaves no operative liability determination or remedial order**

Vacatur is not a pause in enforcement—it removes the judgment's legal force. The Supreme Court recently reaffirmed the rule that "vacated court orders are void *ab initio* and thus lack any prospective legal effect." *Hewitt v. United States*, 606 U.S. 419, 431 (2025). Going forward, the law treats a vacated order as though it never occurred. *Hewitt*, 606 U.S. at 431.; *see*

5

*also United States v. Munsingwear, Inc.*, 340 U.S. 36, 40-41 (1950) (vacatur prevents an unreviewed judgment from "spawning any legal consequences"); *Camreta v. Greene*, 563 U.S. 692, 713 (2011) (vacatur "strips the decision below of its binding effect" and clears the path for relitigation); *O'Connor v. Donaldson*, 422 U.S. 563, 577 n.12 (1975). Here, the judgment has been vacated and the case remanded for further proceedings. Accordingly, the prior liability and remedial orders do not presently supply operative relief.

That rule reaches the liability and remedial rulings that produced the Final Judgment. Interlocutory rulings ordinarily merge into the final judgment. *Dupree v. Younger*, 598 U.S. 729, 734 (2023). Here, the Final Judgment rested entirely on Order [224] and the derivative remedial orders [229], [254], and [262]. The Final Judgment had no independent basis. The Supreme Court did not preserve any component of liability or relief. It vacated "the judgment" and directed reconsideration in light of *Callais*. *See* [302].

The Fifth Circuit's application of vacatur in *United States v. Lipscomb* reinforces that conclusion. 66 F.4th 604 (5th Cir. 2023). There, the Fifth Circuit held that vacatur of an underlying sentence required vacatur of later revocation judgments because those judgments "flow from— and indeed are part of" the underlying sentence; once the underlying sentence was vacated, the derivative judgments were "legally void." 66 F.4th 604, 610–11 (5th Cir. 2023). The same dependency exists here. Order [224] supplied the federal liability predicate for remedial Orders [229], [254], and [262], and those remedial orders supplied the relief embodied in the Final Judgment. Therefore, those orders cannot retain prospective legal force after the Court has vacated the judgment incorporating the liability determination and resulting remedy.

The prior orders cannot continue to function as controlling law of the case, as an injunction, or as a predicate for any other legal consequence. *See Central Pines Land Co. v. United States*,

6

274 F.3d 881, 893 n.57 (5th Cir. 2001) (a vacated opinion has no precedential value). Any other conclusion would make the Supreme Court's vacatur largely meaningless. Liability would remain established, the remedial plans would remain in force, and only the caption of the final judgment would have disappeared. Vacatur does not cause that result. Instead, the case returns to the merits stage, not the remedial stage. Plaintiffs bring no surviving liability determination or remedial entitlement with them. Unless and until they plead and prove a violation under *Callais*, there is no federal wrong to remedy. Accordingly, proceedings on remand should resume from a pre-judgment posture under the standard set forth in *Callais*.

### B. Restoration of pre-judgment status

Restoration of this case to its pre-judgment status means the 2022 Plans are the operative plans in effect. Plaintiffs will likely urge this Court to consider the 2025 Remedial Plans adopted by the Legislature (without the DeSoto County-area Senate districts) in response to this Court's remedial order of July 18, 2024, as the operative plans post-vacatur. [229]. But, Plaintiffs cannot pick and choose what the Court vacated. There is no independent source of law for an à la carte map that retains the 2025 legislative amendments that Plaintiffs favor while opposing the ones they dislike (DeSoto County area). This approach would be inconsistent with the established effects of vacatur as prescribed by both the Supreme Court and the Fifth Circuit, while also ignoring the Legislature's conditional language in the 2025 Remedial Plans.

The 2025 Remedial Plans were not ordinary, unconditional exercises of legislative power. Their recitals identify the Court's liability and remedial orders as the reason for their adoption. Each resolution contains two operative conditions. First, each resolution provides that the new redistricting will supersede prior redistricting only when the resolution is "effectuated":

> That the redistricting contained in this joint resolution shall supersede any prior redistricting, and any prior redistricting shall be null and void upon the date this joint resolution is effectuated.

2025 Senate J.R. 202, lines 615-18; *accord* 2025 House J.R. 1, lines 917-20. Second, each resolution makes federal court approval the condition of effectuation:

> That this joint resolution shall take effect and be in force from and after it has been approved by the United States District Court for the Southern District of Mississippi in Mississippi State Conference of the NAACP v. State Board of Election Commissioners, Civil Action No. 3:22-cv-734-DPJ-HSO-LHS.

2025 Senate J.R. 202, lines 671-75; *accord* 2025 House J.R. 1, lines 972-79; see Dkts. 243-6, 243-7. The text accordingly makes court approval a condition precedent to prospective effect. The 2022 Plans were not repealed outright and would become null only upon effectuation of the 2025 resolutions, and effectuation depended on the Court's approval in this case. That approval has been vacated and is void *ab initio*. *See Hewitt*, 606 U.S. at 431.

The limited scope of the 2025 Remedial Plans further confirms that the 2022 Plans remained the legislative baseline. The 2025 Senate resolution modified only 10 of 52 districts—five in the DeSoto County area and five in the Hattiesburg area—and the 2025 House resolution modified only 5 of 122 districts. [243-9] at p. 3, ¶ 7. The remaining 42 Senate districts and 117 House districts were unchanged from the 2022 Plans. Put differently, 159 of Mississippi's 174 legislative districts retained the district lines established in 2022 even under the 2025 amendments. The phrase "2025 Remedial Plans" therefore refers to limited, court-prompted amendments layered onto the 2022 statewide baseline, not to wholly new statewide plans.

In both the House and Senate, the 2025 changes were limited amendments to the 2022 Plans. But in the Senate, the Court rejected the Legislature's chosen configuration for the DeSoto

County area and adopted the SBEC Plan in its place.[5] [253] at 17-18; [262] at 10-12. The Legislature never passed the SBEC Plan. Thus, once the remedial orders were vacated, the DeSoto County portion of the Senate configuration had no separate legislative authority to support it. Point being, the Senate posture is an even more direct showing that the 2025 configuration was a result of the federal court's remedial orders, not a result of legislative enactment.

The resulting Senate configuration was therefore a judicial composite: 2022 lines in most districts, court-ordered 2025 legislative amendments in the Hattiesburg and Chickasaw County areas, and court-selected SBEC lines in the DeSoto County area.[6] That combination had no independent legislative existence apart from Orders [254] and [262].

C. **Without an operative federal approved order, the 2022 Plans remain the only duly enacted statewide baseline not dependent on judicial relief**

Under *Hewitt*, the vacated orders cannot continue to satisfy the condition of prospective effectiveness contained in the 2025 Remedial Plans. 606 U.S. at 431. A vacated order cannot continue to produce legal consequences going forward. Treating the 2025 Remedial Plans as permanently activated by an approval that now lacks legal effect would do exactly what *Hewitt*, *Munsingwear*, and *Camreta* forbid.

Mississippi law confirms the reversion. When a voting law change is conditioned on external approval but the condition is not validly satisfied, the attempted change does not become

---

[5] The SBEC Plan used for the 2025 special elections in the DeSoto County area was not from the Legislature's 2025 Remedial Plans. The 2025 Remedial Plans changed five DeSoto-area districts—SDs 1, 2, 10, 11, and 19. After the Court rejected that remedial configuration, the SBEC proposed a different plan changing only SDs 1, 2, 11, and 19, thereby leaving SD 10 on the 2022 lines. [259] at 1–2; [262] at 4. The Court expressly acknowledged that "[t]he State Legislature did not adopt the SBEC map" and that the map had been offered "as a substitute for what the Legislature enacted." Order [262] at 11. The Court likewise recognized that the Mississippi Constitution grants redistricting authority to the Legislature "and no other state entity or official." *Id.*

[6] Plaintiffs cannot have it both ways. There is no independent source of law for an à la carte map that retains the 2025 legislative amendments that Plaintiffs favor while preserving the court selected SBEC lines in the DeSoto County area which Plaintiffs oppose.

enforceable, and the prior law remains in place. *Jones v. Moorman*, 327 So.2d 298, 299-300 (Miss. 1976) (conditional repeal "never became effective" when the condition of federal approval was not obtained); *In re McMillin*, 642 So.2d 1336, 1339 (Miss. 1994) (prior election statutes remained the "only enforceable provisions" when the condition of preclearance was absent). Those decisions address preclearance rather than court approval, but the principle is the same: the Legislature chose not to displace existing law unless an external legal condition was satisfied.

The same conclusion follows from Mississippi's redistricting history. In *Watkins v. Mabus*, the court ordered elections under the existing plan where a newly adopted plan had not become legally effective. 771 F. Supp. 789, 797-98 (S.D. Miss.), *aff'd in part and vacated in part*, 502 U.S. 954 (1991). And federal courts must respect the legislative judgments reflected in an effective state plan when judicial intervention is not required. *Upham v. Seamon*, 456 U.S. 37, 39-40 (1982). Here, the 2022 Plans are the most recent plans adopted by the Legislature with no dependence on a federal liability or approval order.

The severability provisions in the 2025 Remedial Plans do not change the result. Severability may preserve valid portions of an enactment after the enactment becomes operative. It cannot sever or rewrite the global condition that the Legislature itself placed on the effectiveness of the resolutions. Nor can it transform the court-selected SBEC Plans, which the Legislature never enacted, into a legislative plan. The State's current election-administration posture is consistent with that conclusion: Secretary Watson informed the presiding officers that he "instructed [his] team to begin preparing the Statewide Election Management System (SEMS) for a reversion to the original 2022 legislative districts maps adopted by the Mississippi Legislature." Ex. A. That direction does not decide the legal question before the Court, but it reflects the practical reality

that, once the vacated remedial orders no longer provide prospective authority, the 2022 Plans are the only legislatively-enacted statewide plans available for administration.

Reverting to the 2025 Remedial Plans is especially untenable after *Callais*. The 2025 Remedial Plans expressly sought to create additional majority-minority districts using race in response to the Court's now vacated Section 2 rulings. In contrast, *Callais* held that a State's understandable effort to comply with a Section 2 ruling cannot justify race-based districting when Section 2 did not require the added district. 146 S.Ct. at 1164-65. With the liability judgment vacated, no surviving finding supplies the remedial predicate on which the 2025 Remedial Plans depended. Continuing to utilize those lines by force of the vacated orders would create serious constitutional concerns rather than avoid them. Accordingly, the only reading of the 2025 Remedial Plans, Mississippi conditional enactment law, and federal vacatur doctrine is that the 2022 Plans again possess prospective legal force, pending new legislation.

Further, to the extent Plaintiffs would contend that Mississippi law independently requires state officials to administer future elections under the 2025 Remedial Plans, such a request would fall outside the permissible scope of federal equitable relief. Although a federal court may grant prospective relief against state officials to remedy an ongoing violation of federal law, it may not direct those officials to comply with state law. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984). That limitation is especially important here, where the relief Plaintiffs seek would require the Court to choose between competing redistricting plans. That choice belongs to Mississippi's political branch—not to a federal court exercising equitable authority. Adhering to *Pennhurst* therefore preserves the proper federal-state balance and ensures that any prospective remedy remains tied to the correction of an identified violation of federal law, rather than extending into policy choices reserved to Mississippi's elected legislators.

11

The only relevant federal question is whether Plaintiffs can plead and prove, as is their burden, that the plans designated for future administration—the 2022 Plans—violate federal law under *Callais*. If Plaintiffs cannot do so, the federal claims should be dismissed. And if no federal claims remain, the Court should decline supplemental jurisdiction over any residual dispute concerning the legal effect of the 2025 Remedial Plans. *See* 28 U.S.C. § 1367(c).

## II.   VACATUR DEFEATS ANY PRESENT CLAIM TO PREVAILING PARTY ATTORNEY'S FEES.

Another effect of vacatur is to render moot any claim Plaintiffs might try to assert for attorneys' fees under 52 U.S.C. § 10310(e). Even assuming without conceding that Section 10310(e) is available in this action, it authorizes fees only to a "prevailing party." That term does not turn on which side obtained favorable rulings at an intermediate stage. A plaintiff prevails only when, at the final resolution of the matter, a court conclusively grants enduring, judicially sanctioned relief on the merits that materially alters the parties' legal relationship. *Lackey v. Stinnie*, 604 U.S. 192, 199–204 (2025); *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598, 603–05 (2001). Plaintiffs never secured that status. The Supreme Court vacated the only final judgment in full, leaving no enforceable liability determination, injunction, remedial decree, or judgment in Plaintiffs' favor.

Binding Fifth Circuit authority confirms the fee consequence. In *Pool v. City of Houston*, 163 F.4th 284, 294–97 (5th Cir. 2026), the court affirmed vacatur of a civil rights fee award that had already been paid because the merits relief supporting it had subsequently been vacated. Once the underlying relief was nullified, the fee award lost its legal foundation. *See also Flowers v. Southern Regional Physician Services, Inc.*, 286 F.3d 798, 801–03 (5th Cir. 2002). The conclusion is even stronger here: no fee award was entered, and every asserted basis for one derives from

Orders [224], [229], [254], [262], and [263], which culminated in the judgment the Supreme Court vacated.

That conclusion does not depend on whether each prior order is separately removed from the docket. Even if those orders remain as historical interlocutory entries pending reconsideration, none supplies the final, enforceable, and enduring judicial relief Section 10310(e) requires. A vacated judgment cannot confer prevailing-party status nor support a fee award.

The 2025 special elections do not alter the analysis. Prevailing-party status must rest on enduring judicial relief—not on historical consequences of orders that no longer possess legal force. *Lackey*, 604 U.S. at 202–04. In the closest redistricting analogue, Judge Oldham explained that "a first-inning lead is no victory" and that vacatur "spells an end" to the fee application. *Thomas v. Reeves*, 961 F.3d 800, 848–50 (5th Cir. 2020) (Oldham, J., concurring). The Supreme Court's certified judgment points in the same direction: it vacated the judgment "with costs" and taxed $300 in costs against Appellees. [302] at 1. The fee issue is therefore not merely premature. Plaintiffs never acquired conclusive and enduring judicial relief and thus never became prevailing parties; Plaintiffs have no entitlement to fees from the vacated proceedings.

### III.    POST-*CALLAIS* PROCEEDINGS

#### A.  Trial Record

The prior trial and remedial record were developed under a materially different Section 2 standard. *Callais* now requires allegations and proof directed to present day intentional discrimination, race-neutral illustrative maps satisfying **_all_** legitimate state objectives, and evidence disentangling race from politics. 146 S.Ct. at 1155-60. More fundamentally, Plaintiffs litigated this case as a Section 2 results case and expressly disclaimed an intentional discrimination

13

theory. *See* [199] at 16 ¶ 9. The operative pleading and pretrial order therefore cannot be treated as though Plaintiffs already alleged and tried the intent theory *Callais* now requires.

The existing proof likewise cannot simply be carried forward as a completed showing of liability. The trial record in this case is rife with race—just what the Court in *Callais* held could not be used in developing redistricting plans. Plaintiffs' expert demographer, William Cooper, testified extensively about using race in producing alternative maps. His testimony contradicts the revised analytical framework *Callais* now requires. That analysis requires Mr. Cooper to produce alternative maps <u>not</u> considering race and employing the criteria used by the State in developing a plan, including partisan politics. Further, Dr. Lisa Handley, Plaintiffs' expert political scientist, did not disentangle race from politics as *Callais* now requires. 146 S.Ct. at 1157. And, on the totality of circumstances factors, Plaintiffs' experts relied predominantly on historical and antiquated acts of discrimination, also now no longer relevant under *Callais*. 146 S.Ct. at 1155-56, 1160-63.

These are just a few examples of how the current trial record offers no support for Plaintiffs if they choose to pursue a challenge to the 2022 Plans under the new *Callais* standard. Undoubtedly, Plaintiffs will need to develop their proof quite differently if they choose to mount a challenge to the 2022 Plans or any other(s).

When controlling precedent changes after trial, the parties are generally entitled to a fair opportunity to present evidence relevant to the new standard. *Carter v. Local 556, Transportation Workers Union of America*, 156 F.4th 459, 488 (5th Cir. 2025); *see Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 282 (5th Cir. 1999). Accordingly, if a live dispute remains, Plaintiffs should first be required to file an amended or supplemental complaint identifying the facts that allegedly satisfy *Callais*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Defendants then should be permitted to respond, and both sides should receive a reasonable opportunity for discovery, expert work, and evidence under the new framework.

### B.  Abeyance

However, before proceeding to reopen discovery and presumably submitting Defendants to compressed and expedited trial preparation at Plaintiffs' behest, this Court should take notice of recent events by the legislative and executive branches of state government demonstrating an intent to address redistricting in light of the *Callais* decision. Specifically, Governor Reeves has publicly stated that he expects a redistricting special session and that Mississippi will "definitely have our redistricting done before the 2027 election." *See supra* note 3. Both chambers have also convened select committees to work on redistricting. *See supra* note 2. And, most recently, the Lieutenant Governor and Speaker both announced members to the Standing Joint Legislative Committee on Redistricting and Reapportionment—the very committee constitutionally and statutorily tasked with redistricting the legislature.

Given the vacatur and likelihood of legislative action, a short stay of any merits proceedings is the most orderly course for proceeding forward. Federal courts possess inherent authority to hold proceedings in abeyance to promote economy of time and effort for the court, counsel, and litigants. *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). That discretion is especially appropriate in redistricting, where reapportionment is primarily the responsibility of the States. *Growe v. Emison*, 507 U.S. 25, 34 (1993). Immediate amended pleadings, expert map work, discovery, and another trial directed to the 2022 Plans would consume substantial resources while the political branches are likely preparing to replace those same plans.

Once new plans supersede the 2022 Plans, Plaintiffs' current request for prospective relief against the 2022 Plans will become moot. In *Thomas v. Reeves*, the *en banc* Fifth Circuit held a Mississippi legislative redistricting challenge moot because the challenged district lines would neither be used nor serve as the basis for a future election. 961 F.3d at 801; *see also Diffenderfer v. Central Baptist Church*, 404 U.S. 412, 414-15 (1972) (per curiam) (replacement of challenged law mooted prospective challenge). Any later challenge will have to be directed to the new plans and pled under *Callais*, not adjudicated through the vacated liability and remedy phases of this case.

Defendants therefore propose that the Court hold all merits proceedings in abeyance until the earlier of: (1) enactment of new legislative plans, or (2) ten (10) days after opening of the 2027 Regular Session on January 5, 2027. The parties would file a status report within seven (7) days after any legislative enactment, or by January 15, 2027 if no enactment has occurred. If new plans have been enacted, the parties can address mootness and whether Plaintiffs seek leave to challenge the new enactments. If no new plans have been enacted apart from the 2022 Plans, the Court can require Plaintiffs to file an amended or supplemental complaint under *Callais* and then set a schedule for responsive pleadings, discovery, expert disclosures, evidence, and briefing.

If the Court declines to stay proceedings, the same sequencing should govern now: Plaintiffs should file an amended or supplemental complaint first. Defendants should be permitted to respond. The parties should receive orderly discovery under the new standard, and Plaintiffs should make the first evidentiary submission because they bear the burden of proof. What should not occur is a return to the remedial phase based on liability findings vacated by the Supreme Court.

16

## CONCLUSION

The Supreme Court's vacatur left no operative liability determination, no remedy, and no prevailing-party judgment. The 2022 Plans remain the only legislatively enacted statewide districting plans not dependent on the vacated liability and approval orders. Likewise, Plaintiffs never became prevailing parties under Section 10310(e), and no fee entitlement arises from Orders [224], [229], [254], [262], or [263]. The Court should therefore hold the merits in abeyance until the earlier of enactment of new plans or January 15, 2027, and address any remaining federal claim only through new pleadings and proof satisfying *Callais*.

THIS the 29th day of July, 2026.

Respectfully submitted,

STATE BOARD OF ELECTION
COMMISSIONERS; TATE REEVES, IN HIS
OFFICIAL CAPACITY AS GOVERNOR OF
MISSISSIPPI; LYNN FITCH, IN HER OFFICIAL
CAPACITY AS ATTORNEY GENERAL OF
MISSISSIPPI; MICHAEL WATSON, IN HIS
OFFICIAL CAPACITY AS SECRETARY OF
STATE, DEFENDANTS

By:        */s/ Tommie S. Cardin*
           Tommie S. Cardin (MB #5863)
           ONE OF THEIR COUNSEL

17

OF COUNSEL:

Tommie S. Cardin (MB #5863)
P. Ryan Beckett (MB #99524)
B. Parker Berry (MB #104251)
J. Dillon Pitts (MB #106399)
**BUTLER SNOW LLP**
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
P.O. Box 6010, Ridgeland, MS 39158-6010
Phone: 601.948.5711
Fax:   601.985.4500
tommie.cardin@butlersnow.com
ryan.beckett@butlersnow.com
parker.berry@butlersnow.com
dillon.pitts@butlersnow.com


Douglas T. Miracle (MB #9648)
**STATE OF MISSISSIPPI**
**OFFICE OF THE ATTORNEY GENERAL**
**CIVIL LITIGATION DIVISION**
Post Office Box 220
Jackson, Mississippi 39205-0220
Tel.: (601) 359-4184
Fax: (601) 359-2003
doug.miracle@ago.ms.gov

## **CERTIFICATE OF SERVICE**

I, Tommie S. Cardin, one of the attorneys for the Defendants, do hereby certify that I have this day filed the above and foregoing document with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

This the 29th day of July, 2026.

*/s/ Tommie S. Cardin*
Tommie S. Cardin

101832711.v2