**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

MISSISSIPPI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; DR. ANDREA WESLEY; DR. JOSEPH WESLEY; ROBERT EVANS; GARY FREDERICKS; PAMELA HAMNER; BARBARA FINN; OTHO BARNES; SHIRLINDA ROBERTSON; SANDRA SMITH; DEBORAH HULITT; RODESTA TUMBLIN; DR. KIA JONES; MARCELEAN ARRINGTON; VICTORIA ROBERTSON,

*Plaintiffs*,

vs.

STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES, *in his official capacity as Governor of Mississippi*; LYNN FITCH, *in her official capacity as Attorney General of Mississippi*; MICHAEL WATSON, *in his official capacity as Secretary of State of Mississippi,*

*Defendants,*

AND

MISSISSIPPI REPUBLICAN EXECUTIVE COMMITTEE,

*Intervenor-Defendant.*

**CIVIL ACTION NO.
3:22-cv-734-DPJ-HSO-LHS**

**DEFENDANTS' BRIEF IN SUPPORT OF RESPONSE IN OPPOSITION TO PLAINTIFFS' URGENT AND NECESSITOUS MOTION FOR A TEMPORARY RESTRAINING ORDER OR OTHER INJUNCTIVE RELIEF**

## INTRODUCTION

Defendants State Board of Election Commissioners, Governor Tate Reeves, Attorney General Lynn Fitch, and Secretary of State Michael Watson respectfully request that the Court deny Plaintiffs' Urgent and Necessitous Motion for a Temporary Restraining Order [308]. The

Motion concerns an administrative configuration in the Statewide Elections Management System ("SEMS"), not an election. No disputed legislative line will be used in the November 2026 election, and this administrative configuration does not affect that election whatsoever.[1] There is ample time for both legislative and judicial action—if necessary—before the 2027 election cycle. That absence of any impending electoral consequence independently defeats the need for the requested emergency relief. The ongoing legislative process is further reinforcement that a TRO is not proper here.

Plaintiffs seek two forms of relief. They ask the Court to (1) restrain Secretary Watson from directing circuit clerks to restore the 2022 Plans in SEMS and (2) affirmatively require him to cause clerks to reverse any changes they have already made in response to his July 24, 2026, email regarding SEMS updates. [308] at 3. But the evidence submitted with the Motion does not establish what SEMS changes, if any, have actually been completed. Plaintiffs' counsel states only that one circuit clerk contacted an employee of the Secretary of State's Office "regarding altering SEMS." [308-1] ¶ 6. This is not proof of a changed voter record, a completed district reassignment, or anything that can presently be ordered reversed.

More importantly, Plaintiffs concede that the 2026 election "does not feature any state legislative races in any of the areas affected by the 2025 redistricting." [309] at 8. No voter will cast a ballot under a disputed legislative line in 2026; no candidate will qualify for an affected legislative district in 2026; and no legislative ballot will be altered by the SEMS work at issue. The next regular legislative election cycle is in 2027. These SEMS administrative updates do not, and cannot, harm Plaintiffs.

[1] Only two special elections are presently scheduled for 2026—House Districts 70 and 77 on November 3—neither of which implicate the disputed district lines.

Mississippi's political branches have already begun the post-*Callais* redistricting process, and the Governor has stated that he expects a special session to address legislative redistricting before the 2027 election process starts in January. [306] at 2–3, 14–16. Plaintiffs themselves previously proposed staying this litigation through the end of 2026 or until new lines are enacted because the existing lines "may soon change." [305] at 1, 9–10. Thus, even apart from the fact that the subject SEMS work will not affect any 2026 election, there is a substantial likelihood that legislative action will materially alter or supersede the present dispute before either existing SEMS configuration produces an electoral consequence. A TRO would not resolve the uncertainty Plaintiffs identify. It would freeze the SEMS configuration, require state and local officials to undo any work already performed, and potentially require the same work to be performed again after the Legislature acts. A TRO would not determine (non-party) Senator Dupree's eventual district, identify the lines candidates will contest in 2027, or protect a single vote cast in 2026. SEMS is an administrative system; it does not enact a redistricting plan, repeal legislation, or adjudicate which plan possesses legal force.

The parties' broader dispute over the consequences of the Supreme Court's vacatur includes the question of which enactment governs. The Court may ultimately need to resolve that dispute. But it need not do so to decide this Motion. Plaintiffs must first satisfy the requirements for emergency relief, including establishing a substantial threat of irreparable injury and a substantial likelihood of success on a presently enforceable federal theory. At minimum, no presently enforceable federal judgment holds the 2022 Plans unlawful under *Louisiana v. Callais*, 608 U.S. ___, 146 S. Ct. 1131 (2026), and Plaintiffs acknowledge that substantial additional proceedings would be required before liability could be adjudicated under that standard. [305] at 9–10, 15–19; [309] at 2, 8.

Defendants incorporate the relevant factual background, legal authorities, reservations of defenses, and arguments contained in Defendants' Response to Order [303] Regarding Status of the Case [306], together with Exhibits A through D to that filing. The Court should deny emergency relief without resolving the operative map dispute and hold substantive merits proceedings and proceedings concerning attorneys' fees in abeyance until the earliest of legislative enactment in a special session, notice that no further legislative action will occur in 2026, or December 14, 2026.[2]

**BACKGROUND**

On May 18, 2026, the Supreme Court vacated the judgment in this action and remanded for further consideration in light of *Callais*. [302]. On June 9, Secretary Watson notified the presiding officers of the Legislature that his office had begun preparing SEMS for the 2022 Plans for legislative districts. [306], Ex. D. The letter explained that SEMS redistricting changes cannot be made during an active election period and that local election officials require substantial lead time to implement district data. On July 24, the Secretary's office advised affected circuit clerks and local election officials that the 2022 district information should be restored and offered technical assistance for these updates. [308-1]. Defendants attached Secretary Watson's June 9 letter to their July 29 Response [306], formally disclosing the State's election administration posture to the Court and to Plaintiffs, two weeks before Plaintiffs filed the present Motion.

The parties filed competing briefs on July 29 concerning the effect of vacatur. [305], [306]. Plaintiffs contend that the Legislature's 2025 resolutions remain operative; Defendants contend

[2] In the July 29 brief [306], Defendants stated the Court should "hold any further merits proceedings in abeyance until the earlier of legislative enactment of new plans or January 15, 2027 (which is ten days after the opening of the 2027 Regular Session of the Mississippi Legislature)." [306] at 3. If no new legislative redistricting plans are enacted in a special session, Defendants propose December 14 as an earlier date certain to determine the effect of the Supreme Court's vacatur prior to the beginning of qualifying for the 2027 legislative elections on January 1, 2027.

that the 2022 Plans are the statewide fallback following vacatur. Meanwhile, both chambers of the Legislature have commenced redistricting work, and Defendants have requested an abeyance while the Legislature considers new plans. [306] at 2–3, 14–17. Plaintiffs filed the present Motion on August 11, seeking to stop further SEMS work and to require reversal of any changes already made. [308] at 3. The August 28 proceeding is noticed as a status conference before Judge Jordan, not as a merits or preliminary injunction hearing before the three-judge Court.

## STANDARD

A temporary restraining order is an extraordinary remedy. Plaintiffs must clearly establish: "(1) irreparable injury[,] (2) substantial likelihood of success on the merits, (3) a favorable balance of hardships, and (4) no adverse effect on the public interest." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 268 (5th Cir. 2012) (quoting *Black Fire Fighters Ass'n v. City of Dallas*, 905 F.2d 63, 65 (5th Cir. 1990). Failure to establish any factor requires denial. *See Black Fire Fighters Ass'n*, 905 F.2d at 65.

## ARGUMENT

### I. PLAINTIFFS CANNOT SHOW A SUBSTANTIAL THREAT OF IRREPARABLE INJURY.

Irreparable injury must be likely, not merely possible or speculative. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). The asserted injury must also be imminent and not capable of being adequately repaired through later relief. *Anibowei v. Morgan*, 70 F.4th 898, 903 (5th Cir. 2023). Again, failure to establish any one of the Rule 65 requirements defeats emergency relief; thus, if Plaintiffs cannot establish the required threat of irreparable injury, the Court need not reach every disputed merits question or any other element of Plaintiffs' claim. This is particularly significant here, in this three-judge action, where a single judge may issue a

temporary restraining order only upon "a specific finding, based on evidence submitted, that **specified irreparable damage** will result." 28 U.S.C. § 2284(b)(3) (emphasis added).

Furthermore, Plaintiffs' request for affirmative reversal of unidentified SEMS changes is mandatory in operation and thus must satisfy Rule 65(d)'s heightened burden. [308] at 2–3; [309] at 10. A mandatory preliminary injunction "should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party." *TitleMax of Texas, Inc. v. City of Dallas*, 142 F.4th 322, 328 (5th Cir. 2025) (quoting *Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971)); *see also Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976) ("Mandatory preliminary relief ... is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party.") (citing cases); *TitleMax of Texas, Inc.*, 142 F.4th at 328 (discussing the "heightened standard of proof" required for mandatory injunction) (quotations omitted; citing cases).

Here, there is no substantial threat of irreparable injury. On this ground alone, Plaintiffs' Motion should be denied.

### A. No disputed legislative line will be used before the existing configurations are likely superseded.

No regular legislative election will occur in 2026. Plaintiffs expressly acknowledge that the 2026 election does not include a legislative race in any area affected by the 2025 redistricting. [309] at 8. The challenged SEMS work therefore will not change any voter's district, ballot, candidate choice, eligibility, or precinct in a 2026 election. The actual voting injury recognized in redistricting cases—casting a ballot under an unlawful plan—cannot occur before the Court and the Legislature have ample opportunity to act.

Even if no new legislation were enacted, Plaintiffs identify no reason this Court could not adjudicate any remaining federal dispute and, if warranted, afford effective relief well before the

2027 legislative elections. Plaintiffs themselves previously contemplated supplemental discovery, new expert work, an additional evidentiary hearing, updated submissions, and—if necessary—preliminary injunctive relief "in advance of the 2027 election cycle." [305] at 10–15 & n.7. Their own proposed procedure therefore confirms that effective judicial relief remains available without an injunction governing SEMS in August 2026.

Nor is there a substantial threat that either disputed configuration will govern an affected election in 2027. The Legislature has begun the redistricting process in light of *Callais*, and the Governor expects a special session before the 2027 election cycle begins in January. [306] at 2-3, 14-16. Plaintiffs themselves previously proposed staying the litigation through year-end or until new lines are enacted because the current configurations may soon change. [305] at 1, 9-10.

Plaintiffs' asserted future electoral injury depends on a series of events that have not occurred. [309] at 7. No disputed line will be used in 2026. For an actual voting injury to arise thereafter, the present dispute would have to remain unresolved into the 2027 election cycle, no superseding legislative plan could intervene, and effective judicial relief would have to become unavailable before an affected election. Plaintiffs identify no basis for concluding that this combination of events is likely to occur. To the contrary, both the legislative process and this Court remain available long before any affected vote will be cast. *See Robinson v. Ardoin*, 86 F.4th 574, 600 (5th Cir. 2023) (vacating preliminary relief where no imminent election deadline required it, even though the underlying controversy remained live).

Even if Plaintiffs had put on proof of some injury here (and they have not), a likelihood of ultimate success on the merits does not *ipso facto* establish irreparable harm for purposes of injunctive relief. *Foster et al. v. SBEC et al.*, No. 3:26-CV-181-SA-JMV, slip op. at 20–21 (N.D.

Miss. Aug. 13, 2026) (denying motion for preliminary injunction, regardless of potential merits analysis).

At any rate, the current SEMS configuration (whether set to the 2022 lines or otherwise) will not alter the boundaries governing either legislative special election in 2026 (*see supra* fn. 1) and can be modified after legislative or judicial action before the 2027 election cycle. There is no irreparable harm in this case.

**B. Plaintiffs have not shown an actual or irreversible SEMS consequence.**

Plaintiffs have not established what SEMS changes, if any, have been completed. The July 24 email is undisputed, but the TRO record does not identify any particular county in which district assignments have actually been changed, any voter whose district assignment has been altered, or any completed change that has produced a legal or electoral consequence.

Nor did the July 24 email reveal a new or concealed administrative position. In Defendants' July 29 Response to Order [303], Defendants attached Secretary Watson's June 9 letter stating that he had "instructed [his] team to begin preparing the Statewide Elections Management System (SEMS) for a reversion to the original 2022 legislative district maps adopted by the Mississippi Legislature." [306], Ex. D. The letter also explained that circuit clerks would need at least one month to reinstall the 2022 district information and complete the associated statutory duties. *Id.* Thus, by the time Plaintiffs filed the present Motion on August 11, the Court and Plaintiffs had already been formally advised that the Secretary's Office was preparing SEMS for reversion and that implementation would require work by local election officials. The July 24 email did not announce a new legal position. It communicated to local officials the same administrative course disclosed in [306].

Against that background, counsel's declaration states only that one circuit clerk contacted an employee of the Secretary of State's Office "regarding altering SEMS." [308-1] ¶ 6. It does not identify the clerk or county, establish what—if anything—was thereafter changed, identify an altered voter record or public-facing display, or describe any resulting injury. Plaintiffs' memorandum cannot enlarge that record by asserting that "at least some Circuit Clerks have begun" making changes. [309] at 4. That evidentiary failure independently defeats Plaintiffs' request for mandatory reversal. But even if some administrative changes have occurred, the result is the same. Plaintiffs identify no resulting ballot change, no pending candidate qualification, no affected election, and no irreversible legal consequence. A completed database entry would establish administrative activity—not irreparable injury.

The TRO record also contains no declaration from a named individual Plaintiff, an officer or identified member of the Mississippi NAACP, a circuit clerk, or a voter who has received different district information. Plaintiffs instead rely on Senator Johnny Dupree. Senator Dupree is not a named Plaintiff, and his declaration does not identify him as a member of the organizational Plaintiff. His predictions regarding constituent services and a future campaign do not, without an evidentiary link to a movant, establish the second Rule 65 factor.

These evidentiary deficiencies also present a threshold Article III problem as to the particular prospective relief Plaintiffs request. In *La Union del Pueblo Entero v. Abbott*, No. 25-50246, slip op. at 6–8 (5th Cir. Aug. 12, 2026), the Fifth Circuit held that an organization seeking prospective relief through associational standing must identify a specific member who faces a substantial risk of future injury. It further held that an organization's voluntary diversion of resources in response to challenged government action cannot independently establish organizational standing. *La Union del Pueblo Entero*, slip op. at 8.

Plaintiffs' TRO record identifies no named Plaintiff or identified Mississippi NAACP member whose SEMS assignment has changed, who has received inaccurate district information, or who faces an affected 2026 election under disputed lines. Plaintiffs submit only the campaign and constituent service concerns of one individual—Senator Dupree—who is not a Plaintiff and is not identified as a member of the Mississippi NAACP. Whatever standing Plaintiffs may possess to litigate their underlying claims, they have not carried their burden on this record to establish standing for the specific forward-looking relief they now request. At minimum, the same evidentiary failure further demonstrates they cannot demonstrate the irreparable injury required by Rule 65 and § 2284(b)(3).

More fundamentally, even accepting Senator Dupree's predictions, a TRO would not redress the uncertainty he describes. [308-2] at 2–3. That uncertainty arises from the Supreme Court's vacatur, the parties' competing legal positions, and the possibility of further legislative redistricting. Freezing SEMS would not establish Senator Dupree's eventual district, identify the lines on which he should campaign for the 2027 election, or determine which configuration will ultimately govern. Nor has any voter identified actual confusion, any constituent been denied service, or any official candidate-qualification or ballot decision occurred.

Thus, Plaintiffs have not merely failed to show a sufficiently serious injury; they have failed to show that the requested TRO would prevent the uncertainty they identify. Whether SEMS temporarily reflects one configuration or another, the parties will continue to dispute the legal effect of vacatur and candidates will continue to face the possibility of new legislative lines until that process is resolved.

SEMS itself does not determine which plan is legally operative. Updating an administrative database does not enact the 2022 Plans, repeal the 2025 remedial resolutions, resolve the parties'

legal dispute, or bind the Court. A mandatory order requiring unidentified changes to be reversed is not necessary to preserve the Court's authority or any future remedy.

Plaintiffs' mandatory reversion request presents an additional problem under Rule 65(d) and further confirms the absence of irreparable injury. Specifically, Plaintiffs have not identified any specific SEMS changes (county, voter record, district assignment, or other alleged SEMS change) that must be "reversed" to provide relief. And they have not shown that any such change has altered a ballot, affected a pending election, modified a candidate qualification determination, or caused any irreversible legal or electoral consequence. But Plaintiffs request an order directing Secretary Watson—the chief election officer of Mississippi—to "cause any changes" already made by clerks to be reversed. If Plaintiffs cannot identify a SEMS change and cannot identify an election consequence, then necessarily, an order granting Plaintiffs' requested relief cannot describe in reasonable detail the specific act(s) required of Secretary Watson, as Rule 65(d)(1) demands.[3] The facts and law do not "clearly favor" Plaintiffs, as required to obtain mandatory preliminary relief—relief that is "particularly disfavored," in any event. *TitleMax*, 142 F.4th at 328; *Martinez*, 544 F.2d at 1243. Thus, the same evidentiary deficiency that prevents Plaintiffs from establishing a substantial threat of irreparable injury also leaves no concrete administrative act for the Court to order reversed. An order requiring the reversal of "any changes" does not describe in reasonable detail the conduct required by Rule 65(d)(1).

---

[3] Regardless of the precise state of local SEMS implementation, Plaintiffs may not obtain the requested mandatory reversion by asserting that Secretary Watson exceeded his authority under Mississippi law. *Ex parte Young*, 209 U.S. 123 (1908), permits prospective official capacity relief only to redress an ongoing violation of federal—not state—law. *See Freedom From Religion Found., Inc. v. Abbott*, 955 F.3d 417, 424–25 (5th Cir. 2020). A federal court may not direct state officials how to perform their state law duties or exercise state law administrative judgment solely because a plaintiff contends that they have misconstrued state law. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106, 117–21 (1984); *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 739–41 (5th Cir. 2020). No presently enforceable federal judgment or remedial decree independently commands the reversal Plaintiffs request.

Plaintiffs' remaining asserted harms do not alter the analysis. Ordinary litigation expense and expert costs are not irreparable injury. *See FTC v. Standard Oil Co. of California*, 449 U.S. 232, 244 (1980). Any supplemental discovery will be triggered by the Court's determination of the governing legal framework, not by a database field. No affected legislative election is approaching here. Nor does the SEMS configuration itself determine which plan has legal force or foreclose judicial relief before 2027. These evidentiary deficiencies preclude what 28 U.S.C. § 2284(b)(3) requires: "a specific finding, based on evidence submitted, that specified irreparable damage will result" before an affected election or before the three-judge Court can act.

Plaintiffs' invocation of *Purcell* likewise does not establish irreparable injury. [309] at 8. *Purcell* generally addresses the risks associated with federal court intervention in election rules as elections approach. *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam). Plaintiffs' prediction that Defendants may someday invoke *Purcell* supplies no present basis for emergency relief, especially since there is no operative liability order. And whether the operative plan is enacted now or in December, *Purcell* likely applies in the same manner. If the 2022 Plans are declared effective, Plaintiffs intend—before the 2027 election cycle begins—to sue and again seek an expedited setting to relitigate the matter under the new *Callais* framework. Bottom line: it is too late to compress this case into an expedited schedule and trial under a new framework announced in *Callais*, particularly when the existing record was not developed under that framework and does not support doing so. As this Court knows and experienced during trial, Voting Rights Act litigation requires intensive discovery with highly experienced experts in statistical analyses and methodologies.[4] If the 2022 Plans are deemed effective, Plaintiffs are free to sue in the ordinary course under the new *Callais* standard. If liability is determined, this Court can order special

[4] Even the underlying litigation with an expedited calendar granted to Plaintiffs occurred over 15 months: December 2022 complaint date to a February/March 2024 trial setting.

elections as it did before the Supreme Court's vacatur. Waiting a mere four months to determine the operative plan, if necessary, doesn't change these options nor cause irreparable harm to the Plaintiffs.

## II. PLAINTIFFS HAVE NOT SHOWN A SUBSTANTIAL LIKELIHOOD OF SUCCESS.

### A. No presently enforceable federal judgment establishes that the 2022 Plans violate federal law.

The Supreme Court vacated the judgment and directed reconsideration in light of *Callais*. [302]. At minimum, there is no presently enforceable final judgment or injunction holding that the 2022 Plans violate Section 2 under the governing framework.[5] *See* [306] at 5-7; *Hewitt v. United States*, 606 U.S. 419, 431 (2025); *Camreta v. Greene*, 563 U.S. 692, 713 (2011).

*Callais* materially changed the governing Section 2 framework. It requires, among other things, race-neutral illustrative mapping satisfying each and every one of the State's legitimate districting objectives, analysis disentangling race from partisan affiliation, and circumstances supporting a strong inference that the State intentionally drew districts to afford minority voters less opportunity because of race. 146 S. Ct. at 1155–60. The trial in this case was conducted under a materially different framework, and Plaintiffs expressly disclaimed a theory of intentional racial discrimination in the pretrial order. [199] at 16 ¶ 9.

Plaintiffs themselves recognize that the current record is insufficient simply to re-enter the former judgment. Their July 29 filing proposes supplemental discovery, new expert analysis, another evidentiary hearing, and updated submissions before liability is reconsidered under

[5] If Plaintiffs believed Secretary Watson's SEMS activity violated a presently enforceable injunction, the ordinary procedural vehicle would be a motion to enforce or for civil contempt—not a request for a new TRO. *See Martin v. Trinity Industries, Inc.*, 959 F.2d 45, 47 (5th Cir. 1992) (contempt requires violation of a definite and specific order); *Taggart v. Lorenzen*, 587 U.S. 554, 561–62 (2019) (contempt is inappropriate where there is a fair ground of doubt whether the order barred the conduct). Plaintiffs identify no extant order clearly prohibiting Secretary Watson's SEMS preparation.

*Callais*. [305] at 10–15. Whatever the ultimate result of those proceedings, Plaintiffs cannot simultaneously admit the need to materially supplement the liability record and at the same time rely on the vacated judgment as establishing a present federal entitlement to emergency relief.[6]

**B. The Court need not resolve the disputed operative map question to deny relief.**

Plaintiffs' principal merits argument is that the 2025 resolutions remain operative under Mississippi law and that Secretary Watson lacks state law authority to implement the 2022 lines. Defendants preserve and incorporate their contrary arguments from [306]. Those competing positions present substantial questions concerning the effect of vacatur, the approval language in the 2025 remedial resolutions, Mississippi repeal law, and the Court-selected DeSoto County Senate configuration in the State Board of Election Commissioners Plan.

The Court may, of course, determine the legal effect of the Supreme Court's vacatur on its own judgment and remedial orders. But the distinct question presented in the TRO is whether Mississippi's 2022 or 2025 remedial enactments govern during the interim; that turns principally on Mississippi law and the allocation of authority among Mississippi officials. Where no presently enforceable federal liability judgment requires a remedy, no affected election is imminent, and the Legislature is actively considering replacement plans, the Court need not resolve that disputed state law question as a prerequisite to deny emergency relief. Plaintiffs' interpretation of Mississippi law does not, standing alone, establish the ongoing federal violation necessary for prospective relief. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984).

This does not mean Mississippi law is irrelevant or that the Court may never consider it. It means only that Plaintiffs cannot obtain emergency federal relief merely by asserting that state

[6] *Foster* likewise applied *Callais* at the preliminary injunction stage and declined to presume a present federal violation where the movants had not supplied the evidence required by the updated framework. *Foster*, slip op. at 14–20. Although the evidentiary record here differs, *Foster* confirms that a federal violation cannot simply be assumed for purposes of emergency relief after *Callais*.

officials have misconstrued state law. At minimum, the substantial competing arguments prevent Plaintiffs from demonstrating a substantial likelihood of success. The Court should deny the Motion without deciding which prior configuration possesses continuing legal force.

## III. THE EQUITIES AND PUBLIC INTEREST FAVOR DENIAL AND A DATE-CERTAIN ABEYANCE.

Plaintiffs repeatedly question why the Secretary began administrative preparations when no affected legislative election will occur in 2026. But the Rule 65 question is not whether Plaintiffs would have preferred a different administrative timetable. It is whether the Secretary's preparations create a substantial threat of irreparable injury requiring extraordinary federal relief. They do not. The absence of an affected election, the reversibility of the administrative work, and the availability of effective relief before 2027 defeat the need for an injunction regardless of whether the same work could instead have been deferred.

The practical question is not which temporary configuration the Court prefers, but instead, whether emergency federal intervention is necessary before either configuration affects an election. It is not. New redistricting enactments are likely to supersede both disputed configurations before the 2027 cycle, and Plaintiffs know it. [305] at 1, 9-10 (proposing a stay through the end of 2026 or until new plans are enacted because proceeding against lines that may soon change would waste party and judicial resources).

*Robinson* is directly instructive and confirms that the absence of imminent election harm can eliminate the need for preliminary relief, even if the underlying controversy remains live. 86 F.4th at 600. The Fifth Circuit recognized that, even if plaintiffs establish some injury (and notably, these Plaintiffs have not), a preliminary injunction is still unnecessary where a trial can occur before that injury affects an election and there is no looming election deadline. *Id.*

Just as important, *Robinson* also shows the proper steps where (as here) immediate injunctive relief is unnecessary and the Legislature still has time to act. *See id. generally.* Emphasizing that federalism is specifically implicated in redistricting, the Fifth Circuit gave the Louisiana Legislature a defined opportunity to enact a new plan before further merits proceedings. *Id.* at 601. It directed the district court to conduct no substantive proceedings until the earlier of legislative action, notice that the Legislature would not act, or a date certain. *Id.* at 601–02. The same federalism principles were also recognized in *Growe v. Emison*, 507 U.S. 25, 32–34 (1993) and *Scott v. Germano*, 381 U.S. 407, 409 (1965) (per curiam). The point is, redistricting is primarily the responsibility of the State, and federal courts should afford the State a reasonable opportunity to act while retaining jurisdiction to address any remaining federal controversy.

Here, Mississippi's House and Senate have appointed redistricting committees, the Standing Joint Committee has convened, and the Governor has indicated that legislative redistricting will be addressed before the 2027 elections. [306] at 2–3, 14–16. No disputed lines are on the ballot in 2026. Instead of granting extraordinary interim relief before any election injury has occurred (as Plaintiffs request), the Court should instead hold this matter in abeyance and preserve its ability to afford appropriate relief later, if necessary (as Defendants request).

Plaintiffs' requested order would also impose practical costs without preventing an electoral injury. SEMS will be unavailable for redistricting changes beginning September 4 and will remain unavailable through election certification in mid-December. [306], Ex. D. Plaintiffs seek relief lasting until the Court decides the operative map issue, not merely until the August 28 status conference.[7] Their requested reversion would require any completed work to be undone now

[7] The August 28 setting is noticed as a Zoom status conference before Judge Jordan, not as an evidentiary hearing or a preliminary injunction hearing before the three-judge Court. *See* Notice (August 6, 2026 at 1:31 PM CDT). The notice likewise does not state that the Plaintiffs' Motion [308] will be adjudicated at that conference.

and potentially repeated after the Legislature enacts new plans. At most, that would substitute one administrative configuration for another while creating additional work for state and local election officials.

The Court should therefore deny emergency relief without deciding the effect of the Supreme Court's vacatur (i.e., the operative map question) and hold substantive merits and attorneys' fee proceedings in abeyance until the earliest of legislative enactment in a special session, notice that no further legislative action will occur in 2026, or December 14, 2026.[8]

## CONCLUSION

This Motion concerns the SEMS configuration, not an election. No disputed legislative line will be used in 2026. Plaintiffs have not shown that any SEMS change has produced an altered ballot, candidate qualification, affected election, or irreversible legal consequence. And even if the Legislature ultimately takes no further action, ample time remains for this Court to adjudicate any live federal dispute and determine the effective map before the 2027 legislative elections commence.

The Court need not decide the disputed operative map question to deny emergency relief. There is no presently enforceable federal liability determination, so the Court need not use emergency equitable power to settle the disputed state law consequences of vacatur while Mississippi's political branches are actively considering replacement plans. This Court may instead retain jurisdiction and allow the Legislature a finite opportunity to act while leaving ample time to address any remaining federal controversy. That course is particularly appropriate because, following the Supreme Court's vacatur, no presently enforceable federal liability determination or remedial decree requires immediate federal intervention.

[8] *See supra* fn. 2.

The SEMS configuration of the 2022 lines does not determine a single legislative vote cast in 2026. Nothing occurring now will prevent effective judicial relief on the operative map before the 2027 elections commence. Rule 65 does not require—and the present record does not justify—emergency federal intervention to resolve a temporary administrative dispute that may never produce an electoral consequence.

The Motion should be denied.

THIS the 17th day of August, 2026.

Respectfully submitted,

STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF MISSISSIPPI; LYNN FITCH, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF MISSISSIPPI; MICHAEL WATSON, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE, DEFENDANTS

By: */s/ Tommie S. Cardin*
Tommie S. Cardin (MB #5863)
ONE OF THEIR COUNSEL

OF COUNSEL:

Tommie S. Cardin (MB #5863)
P. Ryan Beckett (MB #99524)
B. Parker Berry (MB #104251)
J. Dillon Pitts (MB #106399)
**BUTLER SNOW LLP**
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
P.O. Box 6010, Ridgeland, MS 39158-6010
Phone: 601.948.5711
Fax: 601.985.4500
tommie.cardin@butlersnow.com
ryan.beckett@butlersnow.com
parker.berry@butlersnow.com
dillon.pitts@butlersnow.com

Douglas T. Miracle (MB #9648)
**STATE OF MISSISSIPPI**
**OFFICE OF THE ATTORNEY GENERAL**
Post Office Box 220
Jackson, Mississippi 39205-0220
Tel.: (601) 359-4184
Fax: (601) 359-2003
doug.miracle@ago.ms.gov

**CERTIFICATE OF SERVICE**

I, Tommie S. Cardin, one of the attorneys for the Defendants, do hereby certify that I have this day filed the above and foregoing document with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

This the 17th day of August, 2026.

*/s/ Tommie S. Cardin*
Tommie S. Cardin

102077693.v7
102154630.v2