**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

MISSISSIPPI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; DR. ANDREA WESLEY; DR. JOSEPH WESLEY; ROBERT EVANS; GARY FREDERICKS; PAMELA HAMNER; BARBARA FINN; OTHO BARNES; SHIRLINDA ROBERTSON; SANDRA SMITH; DEBORAH HULITT; RODESTA TUMBLIN; DR. KIA JONES; MARCELEAN ARRINGTON; VICTORIA ROBERTSON,

*Plaintiffs*,

vs.

STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES, *in his official capacity as Governor of Mississippi*; LYNN FITCH, *in her official capacity as Attorney General of Mississippi*; MICHAEL WATSON, *in his official capacity as Secretary of State of Mississippi,*

*Defendants,*

AND

MISSISSIPPI REPUBLICAN EXECUTIVE COMMITTEE,

*Intervenor-Defendant.*

**CIVIL ACTION NO.**
**3:22-cv-734-DPJ-HSO-LHS**

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR URGENT AND NECESSITOUS MOTION FOR A TEMPORARY RESTRAINING ORDER**

## INTRODUCTION

Defendant Secretary Watson unilaterally ordered changes to the legislative lines in Mississippi to reassign voters and destroy opportunity districts for Black voters that the Legislature drew in 2025, claiming the U.S. Supreme Court's order in the case as his basis for doing so. The Circuit Clerks are complying with his orders. And voters and candidates—especially Black voters and the candidates preferred by Black voters—are suffering and will continue to suffer irreparable harm as a result. That includes Senator DuPree, a life member of the NAACP, whose district has already been changed. *See* Supp. Declaration of Johnny DuPree ("Supp. DuPree Decl."), Ex. A, ¶¶ 3, 8. It also includes NAACP member Mamie Cunningham of Chickasaw County, who testified at trial, and who is now being told by her county that she will imminently be reassigned to House District 36 and away from House District 22, her district under the 2025 plan adopted by the Legislature. *See* Declaration of Mamie Cunningham ("Cunningham Decl."), Ex. B, ¶ 12; *see also* Trial Tr. 239:18-240:13 (Ms. Cunningham testifying to having had NAACP membership since 1976); DX-67 at 2 (Defendants' SEMS report identifying Ms. Cunningham's previous district as House District 36).

Despite Defendants' attempts to downplay the Statewide Election Management System (SEMS) as a merely "administrative system," SBEC TRO Resp. (Dkt. 314) 3, the State effectuates district lines by changing the district assignment information for each voter in SEMS, which dictates the district information that each voter receives and ultimately which candidates appear on their ballot. Supp. Dupree Decl. ¶¶ 4, 8-9; Cunningham Decl. ¶¶ 7, 12; Trial Tr. 1187:19-21, 1188:10-17, 1236:21-1238:6, 1238:19-1239:6 (then-Assistant Secretary of State Kyle Kirkpatrick testifying about SEMS). By directing changes to those district assignments, Secretary Watson is

effectively rewriting, by executive fiat, the redistricting legislation that the Mississippi Legislature passed in 2025, which will cause voter confusion and other irreparable harms.

The Court should grant the limited relief requested and order Defendant Secretary Watson to stand down, stop frontrunning the Court and the Legislature, and return the lines to the rightful status quo ante.

## ARGUMENT

### I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

Defendants barely try to argue that Secretary Watson's actions in unilaterally ordering a return to district lines that were repealed and declared null and void by the Legislature are lawful. They note that there is "no presently enforceable federal judgment" declaring the old 2022 lines unlawful, SBEC TRO Resp. 13-14, but that is of no moment. Secretary Watson cannot order counties to change Mississippi's legislative district lines to any configuration he wishes simply because there is no active judgement declaring that his desired configuration is unlawful. Indeed, he has no authority at all to unilaterally change the district lines as enacted by the Mississippi Legislature. *See* Miss. Const., art. 13, § 254; Miss. Code Ann. § 5-3-93; *Mauldin v. Branch*, 866 So.2d 429, 433 (Miss. 2003).

Defendants do not claim otherwise. Rather, as Secretary Watson's statement to the Circuit Clerks makes clear, his purported authority to order a return to the 2022 district lines stems not from state law but from the U.S. Supreme Court's vacatur order in this case. *See* Savitzky Decl., Ex. A to Pls.' MOL ISO TRO ("Savitzky Decl."), Dkt. 308-1, at ¶ 5 & Ex.1 ("The United States Supreme Court vacated that judgment …. The last legislative redistricting for your counties that was not ordered by the Court was in 2022, and therefore, those House and Senate district lines should be restored to what they were prior to the redistricting in 2025."). For this basic reason, the *Pennhurst* doctrine that Defendants invoke, SBEC TRO Resp. Br. 14-15, is inapposite here.

Secretary Watson is claiming that *federal law*, and specifically the effect of a federal court vacatur order, is what gives him the authority to order the reimposition of the nullified 2022 lines. Whether the vacatur order does so is properly before this Court, and for the reasons already explained and unrebutted by Defendants, it does no such thing. *See* Pls.' Brief Regarding Next Steps (Dkt. 305) at 4, 5.

Moreover, to whatever extent *Pennhurst* could be said to apply here, this is precisely the circumstance where the well-established exception to the doctrine, for ultra vires action, would apply. *E.g.*, *Danos v. Jones*, 652 F.3d 577, 583 (5th Cir. 2011) (citing *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 690 (1949)); *see also Word of Faith World Outreach Ctr. Church, Inc. v. Morales*, 986 F.2d 962, 966 (5th Cir. 1993) ("As the Supreme Court has stated, it is plain that the Eleventh Amendment does not bar an action against a state official that is based on a theory that the officer acted beyond the scope of his statutory authority or, if within that authority, that such authority is unconstitutional." (citation omitted)); *Bryan v. Cano*, No. 20-CV-025-DC, 2021 WL 12301968, at *8 n.4, 11 (W.D. Tex. Dec. 15, 2021) ("The Supreme Court in *Larson* explained that *the ultra vires* exception applies in two situations: (1) where an officer's powers are limited by statute, but his actions go beyond those limitations, or (2) if his actions are unconstitutional."), *aff'd*, No. 22-50035, 2022 WL 16756388 (5th Cir. Nov. 8, 2022); *Scham v. Dist. Cts. Trying Crim. Cases*, 967 F. Supp. 230, 232-33 (S.D. Tex. 1997) (similar). Secretary Watson "is without any authority whatever" to change or refuse to implement duly enacted district lines absent new legislation, and he never even tries to argue otherwise. *Cf. Danos*, 652 F.3d at 583 (quoting *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101 n. 11, (1984)); *see also Morales*, 986 F.2d at 965-66 (holding that *Pennhurst* did not forbid federal court from construing state law to determine scope of defendant's authority). Defendants' failure to

meaningfully defend the lawfulness of Secretary Watson's actions confirms Plaintiffs' likelihood of success on the merits.

## II. PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT RELIEF FROM THIS COURT.

Plaintiffs have shown irreparable harm, too, and Defendants' counterarguments lack merit.

To start, Defendants suggest that there is no evidence of completed or imminent SEMS changes, without actually denying those changes are taking place. *E.g.*, SBEC TRO Resp. 8. In fact, they are. Prior to filing their motion, Plaintiffs spoke with one county clerk who was preparing to make those changes. Savitzky Decl. ¶ 6. Mamie Cunningham, an NAACP member who testified at trial and lives in Chickasaw County, has since spoken with her county clerk and was told that she would soon be moved back into old House District 36, and out of new House District 22, a Black-majority district in Chickasaw and Monroe Counties that was enacted by the Legislature in 2025. Cunningham Decl. ¶¶ 2, 9, 12. Unsurprisingly, she was told that these changes were being made based on Secretary Watson's directive. *Id.* ¶¶ 11. That is consistent with public reporting from a Monroe County Board of Supervisors meeting earlier this month:

> A reversal is underway regarding redistricting completed last year for Mississippi legislative seats. Circuit clerk Dana Sloan requested board of supervisor approval Aug. 3 to unredistrict the Mississippi House of Representatives maps for the county following a recent court order.
>
> "The Supreme Court entered an order vacating the United States District Court order regarding those house districts, so we have to take them and put them back to where they were prior to that '25 order," she said. …
>
> Last year, 20 of Monroe County's 27 voting precincts underwent changes for Mississippi House of Representatives districts following a district court ruling in that case. However, they'll be redrawn to the same boundaries where they were following the supreme court ruling.

Ray Van Dusen, *Supervisors discuss Supreme Court redistricting reversal*, Monroe J. (Aug. 13, 2026), https://www.djournal.com/monroe/news/supervisors-discuss-supreme-court-redistricting-reversal/article_2ec2c3ab-e91a-47a3-9005-fc9b2caee911.html.

Additionally, Senator DuPree has now confirmed that his Hattiesburg district has already been altered in SEMS. Supp. DuPree Decl. ¶ 8.[1]

Defendants also wrongly claim that "the Court and Plaintiffs" were "formally advised" of Secretary Watson's unilateral order because Secretary Watson sent a letter to legislative leaders in June noting he has "instructed [his] team to begin preparing [SEMS] for a reversion" to the 2022 district lines, and Defendants attached that letter to their July 29 brief. SBEC TRO Resp. Br. 8. The June letter was directed to legislative leaders, and it purported to advise them of various blackout dates for updating SEMS. Ex. D to Defs.' Resp. to Order Regarding Status of the Case, Dkt. 306-4. It was not addressed to Circuit Clerks, did not unilaterally order a reversion to the 2022 lines, and did not state or imply that such a reversion would be ordered absent some action by the Legislature or this Court. *Id.* At most, it indicated that Secretary Watson's office was making *internal* preparations for reverting to the 2022 map, suggesting that no definitive decision had yet been made and no action taken. Plaintiffs had no reason to object to such internal preparations. Disturbingly, it is now clear that Secretary Watson ordered the Circuit Clerks to

---

[1] Defendants are accordingly wrong to assert that Plaintiffs have failed to point to NAACP members who are facing imminent harm and in need of relief. SBEC TRO Resp. Br. 9-10. And they are doubly wrong to suggest that there are any Article III standing limitations on Plaintiffs' ability to seek to protect legislative districts that are the product of their own Section 2 litigation, the elimination of which could cause vote dilution (the merits of which are to be assumed to be in Plaintiffs' favor for purposes of standing). *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("When considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim." (quoting *Cole v. General Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007))).

move forward with a unilateral reversion to the 2022 lines on July 24, five days *before* Defendants filed their brief. Plaintiffs could have and would have sought relief even sooner if Secretary Watson's actions had been disclosed or made public at the time.

Beyond that, Defendants assert that the "challenged SEMS work" (*i.e.* the unilateral alteration of state legislative district lines, which they apparently *do* acknowledge is occurring) will not directly affect the 2026 elections, and theoretically could be altered again prior to state legislative elections in 2027. SBEC TRO Resp. Br. 6-8, 12. But this does not address the multiple irreparable harms that Plaintiffs are suffering, which are more than adequately supported by the record.

For one, voters and candidates are being harmed now. Opportunity districts in which Black voters were able to elect candidates of choice, and in which Black candidates were able to run and win despite high levels of racially polarized voting, are being reverted to districts that this Court previously found do not allow Black voters to elect their preferred candidates. *Miss. State Conf. of NAACP v. State Bd. of Election Comm'rs*, 739 F. Supp. 3d 383, 464 (S.D. Miss. 2024). With the qualification period for 2027 state legislative elections opening in January 2027, the time to begin mounting a campaign for state legislature, or organizing neighbors in advance of a competitive campaign season, is now. Yet prospective candidates and engaged citizens like NAACP members Senator DuPree and Ms. Cunningham are unable to plan for activities to engage and turn out voters given the uncertainty created by election officials' reversion away from the 2025 districts, and voters who call their counties to find out what district they are in will be severely confused. *See* Supp. DuPree Decl. ¶¶ 8-9; Decl. of Johnny DuPree, Ex. B to Pls.' MOL ISO TRO ("DuPree Decl."), Dkt. 308-2, ¶¶ 7-9; Cunningham Decl. ¶¶ 6, 12. Even if SEMS is later altered again to return to the 2025 lines, voters and candidates cannot get back the time and opportunity

cost they will lose between now and December, when the qualifying deadline will be weeks away.[2] *See* SBEC TRO Resp. Br. 4 n.2 (noting that candidate qualifying begins on January 1, 2027, for the 2027 legislative elections). Defendants never dispute that these changes will undermine candidates and organizers and prevent them from starting up campaigns for 2027 in advance of the January 2027 qualification period.

For another, Plaintiffs will be prejudiced in this case by Secretary Watson's efforts to alter the status quo. *Purcell* looms large in redistricting cases, especially where a plaintiff seeks a preliminary injunction. Here, Secretary Watson's changes will have the effect of forcing Plaintiffs to expedite the discovery process and disclose new Section 2 expert analysis much sooner than they otherwise would have needed, in order to try to obtain relief reverting to the 2025 lines enacted by the Legislature before the *Purcell* window closes. This would amount not just to added financial cost, but *strategic* prejudice.

Defendants are simply wrong to claim that *Purcell* "likely applies in the same manner" regardless of the status quo. SBEC TRO Resp. 12. To the contrary, *Purcell* forbids federal courts from ordering *changes* to districts on the eve of an action. *See, e.g.*, *Foster v. State Board of Election Commissioners*, No. 3:26-CV-181-SA-JMV, 2026 WL 2352910, at *4-6 (N.D. Miss. Aug. 13, 2026) (detailing recent *Purcell* rulings in districting cases); *see also Moore v. Harper*, 142 S. Ct. 1089 (2022) (Kavanaugh, J., concurring) ("In light of the *Purcell* principle . . . it is too late for the federal courts to order that the district lines be changed for the 2022 primary and general

---

[2] Defendants argue that "[f]reezing SEMS would not establish Senator DuPree's eventual district, identify the lines on which he should campaign for the 2027 election, or determine which configuration will ultimately govern." SBEC TRO Resp. 10. But just because there are other potential changes that *could* happen to district lines does not mean that candidates and voters lack an interest in having their district lines be fixed unless and until they are validly altered through the legislative process. *See also infra* p. 10.

elections."). So long as the 2025 lines enacted by the Legislature remain in effect, Plaintiffs do not need to seek preliminary judicial relief. But Secretary Watson's unilateral dissolution of those lines and restoration of the voided 2022 lines would seriously prejudice Plaintiffs in their continued prosecution of this case. Absent relief restoring the status quo, Plaintiffs will need to rush their merits case into court right now with a challenge to the 2022 lines, or seek changes to SEMS in December or later, when the election is closer—precisely the type of scenario where courts often find *Purcell* applies. *See*, *e.g.*, *Petteway v. Galveston Cnty., Texas*, 87 F.4th 721, 723 (5th Cir. 2023) (en banc); *Foster*, 2026 WL 2352910, at *5.[3]

Defendants claim that Plaintiffs will not suffer irreparable harm because there is sufficient time for the Court to order the restoration of the 2025 district lines in December 2026, after the conclusion of the elections in November 2026. *See* SBEC TRO Resp. Br. 8. But according to Defendants' own view of the timeline, no changes can be made in SEMS until "mid-December," when the November election is certified. *Id.* at 16. Defendants also contend that "circuit clerks would need at least one month" to implement districting changes. *Id.* at 8. Thus, even if this Court ordered a reversion to 2025 districts to take place immediately in mid-December, implementation would stretch into mid- or late-January 2027, even though the qualifying deadline, according to Defendants, begins January 1, 2027. *Id.* at 4 n.2. Unless Defendants' position can be construed as a concession that a court order requiring new district lines in mid-December or later will not pose any *Purcell* concerns, there is reason to doubt their claims that Plaintiffs are not irreparably harmed by Secretary Watson's unilateral actions.

---

[3] Defendants suggest that it is already too late to hold a trial in this case in time for 2027 elections, SBEC TRO Resp. Br. 12 & n.4, which only underscores Plaintiffs' point about *Purcell*. And in any case, it would not be too late to obtain relief via preliminary injunction if such relief were required due to the fiat re-imposition of the legislatively voided 2022 lines.

Defendants also suggest at various points that Plaintiffs' harms will ultimately be rendered moot, because the Legislature will in the end change the district lines anyway. SBEC TRO Resp. Br. 3, 7, 10, 15-16. Again, voters and candidates need and deserve to plan their lives with the lawful, duly enacted lines in effect unless and until the Legislature changes the lines. But in any case, Defendants' assertions on this score are speculative. There is no legal requirement whatsoever to redistrict following *Callais*, and legislatures do not always convert inchoate desires into concrete action. The South Carolina legislature attempted to redistrict post-*Callais*, but could not reach agreement and adjourned without passing any redistricting legislation.[4] Governor Reeves called a special session earlier this year for the purpose of post-*Callais* redistricting, but later cancelled the call.[5]

Indeed, the intended point of Secretary Watson's attempt to alter the status quo seems to be to transfer political risk to Black Mississippians, and to accomplish a political goal (reversion from the 2025 lines) without any legislative action. Secretary Watson's unilateral actions make it more likely that, whether or not the Legislature ultimately takes the type of redistricting action he desires, Black Mississippians will lose representation.

Black Mississippians do not deserve to be treated this way by their public officials. Voters and candidates in places like Hattiesburg and Chickasaw County do not deserve to be illegally shifted back to the voided 2022 lines during the critical period between now and the January 2027

---

[4] Timm and Dixon, *South Carolina's Trump-backed Redistricting Push Fails in the State Senate Amid GOP Opposition*, NBC News (May 26, 2026), https://tinyurl.com/3xm7karf.

[5] Tate Reeves (@tatereeves), Facebook (May 13, 2026, at 3:22PM ET), https://www.facebook.com/tatereeves/posts/1519753976180796?ref=embed_post.

qualification period, with all the harms that entails. The record is more than sufficient to establish irreparable harm necessitating the limited relief sought here.[6]

## III. THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST FAVOR GRANTING RELIEF.

Defendants cannot identify any harm to their interests that Plaintiffs' requested relief would pose.

First, while Plaintiffs' ability to obtain relief will be seriously compromised under the *Purcell* doctrine if Secretary Watson is permitted to improperly alter the status quo, preserving the status quo does not impact Defendants' ability to make changes to the district lines in the future, including close to the 2027 election. The Supreme Court has held that *Purcell* is a one-way ratchet: "While federal courts should not impose changes close to an election, States are free to decide for themselves whether last-minute changes to an election are in their best interests." *Allen v. Milligan*, 146 S. Ct. 1377, 1381 (2026). Thus, *plaintiffs* must preserve the status quo as much as possible in seeking judicial relief, to ensure that no significant changes are necessary close to an election, but state defendants face no such procedural barrier and remain free to

[6] Plaintiffs do not seek to compel any affirmative steps and do not need to meet the heightened standard for a mandatory injunction, as Defendants wrongly argue, SBEC TRO Resp. Br. 6, 11. The only relief sought is a restoration to the status quo that was in effect pending this Court's ruling on the operative districts, before Secretary Watson unilaterally decided to front-run the Court and change the facts on the ground. *See Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003) (holding that maintenance of status quo did not constitute mandatory injunction). Rule 65's specificity requirement is also easily satisfied here by an order requiring a return to the district assignments as reflected in SEMS prior to Secretary Watson's July 24 directive for the districts to be redrawn. *See* Fed. R. Civ. P. 65(d)(1)(C) (requiring only "reasonable detail" of "the act or acts restrained or required"); *Matter of Highland Cap. Mgmt., L.P.*, 105 F.4th 830, 837 (5th Cir. 2024). And if there were any concern with ordering Secretary Watson to take any action to effectuate a return to the status quo, the Court can issue an order enjoining Secretary Watson from directing the reversion to the 2022 lines and Plaintiffs can send the order to Circuit Clerks directly.

change the relevant district lines as needed. Defendants claim that there is sufficient time to implement a court order before the 2027 elections—but if that is so, then there is by definition more than sufficient time for Secretary Watson and election administrators to implement any reversion to 2022 after this Court's ruling on the issue. *See* SBEC TRO Resp. Br. 8 ("[T]he current SEMS configuration (whether set to the 2022 lines or otherwise) . . . can be modified after legislative or judicial action before the 2027 election cycle."). All the more so here where, unlike Plaintiffs, Defendants have articulated no reason why Secretary Watson needed to front-run the Court and unilaterally order SEMS redistricting in the first place.

Defendants also suggest that this Court should not grant relief because "redistricting is primarily the responsibility of the State," SBEC TRO Resp. 16, but they ignore that the power to redistrict resides in the state *legislature*, and that Secretary Watson, as an executive official, is usurping that power. *See* Miss. Const., art. 13, § 254; Miss. Code Ann. § 5-3-93; *see also* Pls.' Br. on Next Steps at 9. This Court owes no deference to Secretary Watson's' unilateral action, which is wholly unauthorized by statute and contrary to the Mississippi Constitution for the reasons already stated. *See Mississippi State Conf. of Nat'l Ass'n for Advancement of Colored People v. State Bd. of Election Commissioners*, 782 F. Supp. 3d 349, 360 (S.D. Miss. 2025) (noting that deference to executive officials on redistricting "could be seen as failing to demonstrate respect for state law" and "would create its own federalism concerns," because the "Mississippi Constitution grants authority to the Legislature and no other state entity or official to" to draw legislative districts), *vacated and remanded on other grounds sub nom. Bd. of Election Comm'rs v. NAACP*, 224 L. Ed. 2d 827 (May 18, 2026).

Defendants also suggest that granting Plaintiffs' motion may create "additional" work for election officials that may have to be "potentially repeated after the Legislature enacts new

plans." SBEC TRO Resp. 16-17. This argument fails for several reasons. To the extent that any unnecessary work is created, that is a self-inflicted consequence of Secretary Watson's unilaterally directing Circuit Clerks to change district lines while the issue is *sub judice*. *See State v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021) ("[F]inally, we turn to the Government's non-strawmen arguments for its irreparable injuries. Most of these are self-inflicted and therefore do not count."). Moreover, if the Legislature were to enact new plans, election officials will have to undertake that implementation work regardless of this Court's order.

On the other side of the ledger, the proposed relief preserving the status quo as it existed prior to Secretary Watson's unauthorized redraw of the district lines will ameliorate civic harm and serve the public interest. Secretary Watson's actions are causing and will undoubtedly cause voter confusion. As shown in Senator DuPree's SEMS report, circuit clerks have indeed begun implementing the Secretary's directive by changing the district assignments for voters in the state database. That change is not an internal change to a backend system—when voters ask for information regarding their districts, the district assignment in SEMS is the information that is provided. *See* Supp. Dupree Decl. ¶¶ 4, 8-9; Cunningham Decl. ¶¶ 7, 12. The risk for confusion under those circumstances is obvious—for instance, Senator DuPree, the sitting legislator for Senate District 45, is no longer a voter in his own district according to the state voter registration system. Supp. Dupree Decl. ¶¶ 8-9. Indeed, the SEMS report obtained by Senator DuPree shows that his district has *no incumbent senator*. *Id.* Absent action from this Court, voters in the affected areas who request their district information will be told incorrect information as to their incumbent legislator and their electoral district. Under these circumstances, it is hard to imagine a voter who would not be confused.

Plaintiffs seek limited, targeted relief to maintain the status quo until the Court can resolve

the question before it regarding which lines are currently in effect. They meet the relevant test for temporary relief, including a likelihood of success on the merits, and ongoing irreparable harm stemming from Defendant Secretary Watson's unlawful action. Their motion should be granted.

## CONCLUSION

The Court should restrain Defendant Secretary Watson from ordering the re-installation of the 2022 lines pending this Court's decision regarding the effect, if any, of the U.S. Supreme Court's order on the operative state legislative lines and order Defendant Secretary Watson to cause any changes to the state legislative lines in SEMS that have already been instituted as a result of his email to be reversed and returned to the *status quo ante*.

This the 18th day of August, 2026.


*/s/_ Ari J. Savitzky_____*
Ari J. Savitzky
*asavitzky@aclu.org*
Ming Cheung
*mcheung@aclu.org*
Nina Nayiri McKay*
*nmckay@aclu.org*
ACLU FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500

Robert B. McDuff, MSB 2532
*rbm@mcdufflaw.com*
MISSISSIPPI CENTER FOR JUSTICE
767 North Congress Street
Jackson, MS 39202
(601) 969-0802

Carroll Rhodes, MSB 5314
Law Offices of Carroll Rhodes
*crhodes6@bellsouth.net*
PO Box 588
Hazlehurst, MS 39083
(601) 894-1464

John P. Lavelle, Jr.

Joshua Tom, MSB 105392
*jtom@aclu-ms.org*
ACLU OF MISSISSIPPI
101 South Congress Street
Jackson, MS 39201
(601) 354-3408

Jennifer Nwachukwu
*jnwachukwu@lawyerscommittee.org*
David Rollins-Boyd
*drollins-boyd@lawyerscommittee.org*
Javon Davis
*jdavis@lawyerscommittee.org*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street NW Suite 900
Washington, DC 20005
(202) 662-8600

MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103-2921
Telephone: +1.215.963.4824
Facsimile: +1.215.963.5001
*john.lavelle@morganlewis.com*

Drew C. Jordan
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Telephone: +1.202.739.5962
Facsimile: +1.202.739.3001
*drew.jordan@morganlewis.com*

**Pro hac vice motion forthcoming*

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Ari J. Savitzky, do certify that on this day I caused to be served a true and correct copy of the foregoing by electronic mail to all counsel of record.

This the 18th day of August, 2026.

*/s/_ Ari J. Savitzky*_____
Ari J. Savitzky