**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**MISSISSIPPI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, ET AL.** **PLAINTIFFS**

**v.** **CIVIL NO. 3:22-CV-734-DPJ-HSO-LHS**

**STATE BOARD OF ELECTION COMMISSIONERS, ET AL.** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION [308] FOR A TEMPORARY RESTRAINING ORDER**

Before Southwick, *Circuit Judge*, Ozerden, *Chief District Judge*, and Jordan, *District Judge*

Per Curiam:

Following the Supreme Court's vacatur of our Final Judgment [263] in *Mississippi NAACP v. State Board of Election Commissioners*, 739 F. Supp. 3d 383 (S.D. Miss. 2024), the parties submitted briefs [305], [306] at our request concerning the status of the case and next steps. Shortly thereafter, Plaintiffs filed a Motion [308] for a Temporary Restraining Order against individual-Defendant Mississippi Secretary of State Michael Watson to (1) restrain him from reinstating the 2022 legislative district lines, and (2) order the reversion of any changes made back to the 2025 lines. After consideration of the record, the parties' briefs, and applicable law, we conclude that Plaintiffs' Motion [308] should be denied.

## I. BACKGROUND

The Mississippi State Conference of the National Association for the Advancement of Colored People and numerous individual black Mississippi voters brought this suit against the Mississippi State Board of Election Commissioners and other Mississippi officials. They challenged the State's 2022 redistricting maps for electing members of the State Legislature. The Plaintiffs alleged the 2022 maps diluted black Mississippians' votes in violation of Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301, and constituted unconstitutional racial gerrymanders in violation of the Fourteenth Amendment to the United States Constitution.

Following an eight-day bench trial, this Court held that "Mississippi's 2022 Enacted [Senate and House] Plans violate Section 2 of the Voting Rights Act."[1] *Miss. NAACP*, 739 F. Supp. 3d at 464. While retaining final approval, we gave the Mississippi Legislature an opportunity to remedy those Section 2 violations by drawing new maps in three geographic interest areas. The Legislature accepted that invitation. After further Findings of Fact and Conclusions of Law [229], [254], [262], this Court approved the Legislature's revised plan as modified by the Mississippi State Board of Election Commissioners. *See* Formal Notice [241]; Notice of Submission of Remedial Redistricting Plan [259]; May 7, 2025 Findings of Fact and Conclusions of Law [262]; J. [263]. The State held special legislative elections in all districts affected by these new maps on November 4, 2025.

---

[1] As for Plaintiffs' Equal Protection claim, we held that because Plaintiffs proved neither (1) that race was the predominant factor in drawing the maps nor (2) that the maps were drawn to invidiously discriminate, there were no Equal Protection violations under the 2022 maps. *Miss. NAACP*, 739 F. Supp. 3d at 409.

On April 29 of the following year, the Supreme Court decided *Louisiana v. Callais*, 146 S. Ct. 1131 (2026). In *Callais*, the Court clarified the applicable legal standards and the evidentiary proofs that plaintiffs must make to demonstrate a violation of Section 2 of the Voting Rights Act. Then, on May 18, 2026, the Supreme Court vacated our Final Judgment [263] in *Mississippi NAACP*, remanding "for further consideration in light of *Louisiana v. Callais*." *Bd. of Election Comm'rs v. Miss. NAACP*, No. 25-234, 608 U.S. ___ (May 18, 2026) (mem.); *see* Supreme Court Judgment [302].

On July 14, 2026, we ordered the parties to file briefs concerning the status of the case and anticipated next steps. Order [303]. Both sides' briefs focused primarily on whether the Supreme Court vacatur of our judgment in *Mississippi NAACP* reverted Mississippi to its 2022 legislative district lines or whether the 2025 lines are still in effect. *See generally* Pls.' Br. [305]; Defs.' Br. [306]. On August 11, 2026, Plaintiffs filed a Motion [308] for a Temporary Restraining Order. That Motion [308] alleged that on July 24, 2026, Mississippi's Secretary of State, Michael Watson, ordered Circuit Clerks across Mississippi to update the Statewide Election Management System (SEMS) to revert the legislative district lines back to the 2022 lines in light of the Supreme Court's vacatur of *Mississippi NAACP*. Mot. [308] at 2, [308-1] at 5-6. Plaintiffs ask this Court to (1) restrain Secretary of State Watson from reinstalling the 2022 legislative district lines, and (2) order the reversion of any changes that may have already been made back to the 2025 lines. Mot. [308] at 3.

## II. DISCUSSION

### A. Standards of Review

#### 1. Temporary Restraining Orders

Federal Rule of Civil Procedure 65(b) authorizes courts to enter a temporary restraining order (TRO) if the moving party demonstrates: "(1) irreparable injury, (2) a substantial likelihood of success on the merits, (3) a favorable balance of hardships, and (4) no adverse effect on the public interest." *Black Fire Fighters Ass'n v. City of Dallas*, 905 F.2d 63, 65 (5th Cir. 1990). A TRO should not be granted unless the moving party carries its burden of persuasion on each element. *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 268 (5th Cir. 2012). Of relevance here, irreparable injury is harm that does not have an adequate remedy at law. *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023). To establish irreparable injury, the movant must show that the injury is likely. *Id.* (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). The injury must also be imminent. *Id.* To show a substantial likelihood of success on the merits, the moving party "must present a prima facie case, but need not prove that [they are] entitled to summary judgment." *TitleMax of Texas, Inc. v. City of Dallas*, 142 F.4th 322, 329 (5th Cir. 2025) (quoting *Daniels Health Scis., L.L.C. v. Vascular Health Scie., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013)). Courts look to standards provided by the substantive law at issue to assess the likelihood of success on the merits. *Id.*

2. Vacatur

"[V]acated court orders are void *ab initio* and thus lack any prospective legal effect . . . . By operation of legal fiction, the law acts as though the vacated order never occurred." *Hewitt v. United States*, 606 U.S. 419, 431 (2025). To that end, vacatur "strips the decision below of its binding effect," *Camreta v. Greene*, 563 U.S. 692, 713 (2011) (quoting *Deakins v. Monaghan*, 484 U.S. 193, 200 (1988)), and "clears the path for future relitigation," *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950).[2] As the Fifth Circuit has stated, "when a judgment is vacated, 'all is effectually extinguished.'" *Falcon v. Gen. Tel. Co.*, 815 F.2d 317, 320 (5th Cir. 1987) (quoting *Lebus v. Seafarer's International Union, Etc.*, 398 F.2d 281, 283 (5th Cir. 1968)). That includes extinguishing the findings made prior to a vacated final judgment. *See id.* (explaining that findings made pre-judgment are "swept away" by Supreme Court vacatur when that vacatur is ordered in light of altered legal standards that underlay those findings).

B. Analysis

Failure to establish any of the four criteria required to secure a TRO results in denial. *See Dennis Melancon*, 703 F.3d 268. Here, Plaintiffs have shown no irreparable injury because they have alleged no irreparable harm that is imminent. Nor have Plaintiffs demonstrated that they are substantially likely to succeed on the merits because vacatur has rendered the 2025 redistricting resolutions inoperative.

[2] Though *Camreta* and *Munsingwear* concern vacatur after a case becomes moot, the cited language discusses the general effect of vacatur and is thus applicable to this case.

1. <u>Plaintiffs Have not Shown Imminent Irreparable Harm</u>

Plaintiffs cannot show irreparable harm because their alleged injuries are not imminent. *See Anibowei*, 70 F.4th at 902. They assert that Defendant Secretary of State Watson's order to change the SEMS back to the 2022 legislative district lines will result in irreparable harm by retracting district lines that allow black voters to elect candidates of their choice during a "crucial period." Pls.' Mem. [309] at 6. Plaintiffs' claim that there is presently a "crucial period" for black voters in the places affected by Watson's change is unavailing because no regular legislative election will occur until 2027.[3] Pls.' Mem. [309] at 1; Defs.' Resp. [311] at 6. Additionally, as Plaintiffs admit, the 2026 general election will not include any state legislative races in the areas changed by the 2025 lines. Pls.' Mem. [309] at 8. Thus, reverting to the 2022 lines in the SEMS does not create an imminent harm for those in the affected districts.

Any supposed harm posed by a return to the 2022 lines would not produce a threat of harm until the 2027 election cycle. The 2027 general election is 14 months away, which allows adequate time for courts or the Legislature to act before any harm would occur. *See Robinson v. Ardoin*, 86 F.4th 574, 600 (5th Cir. 2023) (vacating a preliminary injunction because no imminent deadline existed where general elections were more than 13 months away).

Further, sufficient time and adequate remedies at law exist to address the alleged injuries, so there is no irreparable harm. *See Anibowei*, 70 F.4th at 902.

[3] Defendants have informed the Court that the Legislature's current composition will remain unchanged until the 2027 election. Thus, this Order has no impact on those currently holding office.

Plaintiffs assert prejudice to their continued efforts in this litigation as an irreparable harm due to the potential need to engage in expedited discovery, seek a preliminary injunction, expend significant resources, prepare new experts, and rapidly litigate this case before the 2027 election cycle. Pls.' Mem. [309] at 7. Defendants correctly point out that this proposed procedure confirms the availability of adequate remedies at law. Defs.' Resp. [311] at 7. Injuries concerning time, money, and energy expended in the absence of injunctive relief are not enough, and the availability of corrective relief later in litigation weighs heavily against a claim of irreparable harm. *Dennis Melancon*, 703 F.3d at 279.

For this reason alone, Plaintiffs have not carried their burden to show the irreparable harm necessary for this Court to enter a TRO.

2. Plaintiffs are not Likely to Succeed on the Merits

Even if Plaintiffs were able to demonstrate an imminent irreparable injury, they have not shown substantial likelihood of success on the merits. The centerpiece of Plaintiffs' argument is that the text of 2025 House J.R. 1 and 2025 Senate J.R. 202 made the Joint Resolutions effective upon the approval of this Court, which we gave in *Mississippi NAACP*. *See* Pls.' Mem. [309] at 4-5; Pls.' Br. [305] at 5-9. As the Senate's Joint Resolution states:

> this resolution shall take effect and be in force from and after its approval by the United States District Court for the Southern District of Mississippi, Northern Division, in the matter styled Mississippi State Conf. of the NAACP v. State Bd. of Election Comm'rs., No. 3:22-CV-734.

2025 Senate J.R. 202 (*accord* 2025 House J.R. 1). Plaintiffs submit that this language denotes a one-way ratchet; the Resolutions were conditioned solely on this

Court's approval, and vacatur of the judgment providing that approval does not retract the Resolutions' passage—so the 2025 maps are still in effect. Pls.' Mem. [309] at 4-5. But that argument ignores long-established federal law on the effect of vacatur, which is the substantive law the Court looks to here for substantial likelihood of success on the merits. *See TitleMax*, 142 F.4th at 329.

When the Supreme Court vacated *Mississippi NAACP*, it stripped that judgment of its binding effect approving the 2025 legislative district lines. *See Camreta*, 563 U.S. at 713. Defendants would have no meaningful "path for future relitigation" of the subject matter of our ruling, which invited the Legislature to draft new lines and later approved those lines, were it otherwise. *Munsingwear*, 340 U.S. at 40.

Plaintiffs argue Mississippi law for the proposition that the Legislature has exclusive power to redistrict, *Mauldin v. Branch*, 866 So. 2d 429, 433 (Miss. 2003), so only further legislative action can revert Mississippi back to its 2022 lines, Pls.' Br. [305] at 9. But that state-law authority concerns the distribution of redistricting power under Mississippi's Constitution and statutes. It makes no mention of the effect of the vacatur of a federal court order on which redistricting legislation is made contingent. And the Mississippi Legislature conditioned the effectuation of both J.R. 1 and J.R. 202 on a federal court order, after this Court all but commanded it to do so. *Miss. NAACP*, 739 F. Supp. 3d at 466 ("The State has discretion in determining how best to remove the [Voting Rights Act] violation, *subject to further judicial review*" (emphasis added)). Once vacated, "the law acts as

though the vacated order never occurred." *Hewitt*, 606 U.S. at 431. To treat our decision in *Mississippi NAACP* as though it never occurred, J.R. 1 and J.R. 202 must be treated as though never approved. Thus, they are not operative.

Plaintiffs also insist that the Mississippi Legislature could have included reversionary language in the Joint Resolutions but chose not to. Pls.' Br. [305] at 6. While reversionary text concerning what the effect would be if Defendants prevailed on appeal might have provided an additional reason that Plaintiffs are unlikely to succeed on the merits, it is not necessary in order to demonstrate the Legislature's intention that vacatur retracts the Resolutions.[4] As already stated, the Legislature conditioned J.R. 1 and J.R. 202 on a federal court order. In doing so, it subjected those Resolutions to federal rules. Vacatur is one such rule. By conditioning the Resolutions on the approval of this Court, the Legislature also conditioned the Resolutions on the continued validity of this Court's order. And that order is no longer valid. *See* Supreme Court Judgment [302]. Our prior Findings of Fact and Conclusions of Law [224], [229], [254], [262] that preceded our vacated Judgment [263] in *Mississippi NAACP* are necessarily vacated as well, *see Falcon,* 815 F.2d at 320, and no remnant of the relief we ordered in *Mississippi NAACP* carries the force of law at this juncture.

[4] No searching analysis of the Mississippi Legislature's intent is required on these particular facts. The Legislature drafted, proposed, and adopted J.R. 1 and J.R. 202 at this Court's direction and would not have done so otherwise. This Court retained final authority over the 2025 map-drawing process. Hence, invalidation of the 2025 legislative maps following vacatur of our orders aligns with the Legislature's actuating intent to comply with federal court orders.

Accordingly, Plaintiffs are not substantially likely to succeed on the merits because federal vacatur law is squarely at odds with their argument for the validity of the 2025 legislative district lines.

## III. CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Plaintiffs' Motion [308] for a Temporary Restraining Order is **DENIED**.

**SO ORDERED**, this the 11th day of September, 2026.