**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

MISSISSIPPI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; DR. ANDREA WESLEY; DR. JOSEPH WESLEY; ROBERT EVANS; GARY FREDERICKS; PAMELA HAMNER; BARBARA FINN; OTHO BARNES; SHIRLINDA ROBERTSON; SANDRA SMITH; DEBORAH HULITT; RODESTA TUMBLIN; DR. KIA JONES; MARCELEAN ARRINGTON; VICTORIA ROBERTSON,

*Plaintiffs*,

vs.

STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES, *in his official capacity as Governor of Mississippi*; LYNN FITCH, *in her official capacity as Attorney General of Mississippi*; MICHAEL WATSON, *in his official capacity as Secretary of State of Mississippi,*

*Defendants,*

AND

MISSISSIPPI REPUBLICAN EXECUTIVE COMMITTEE,

*Intervenor-Defendant.*

**CIVIL ACTION NO. 3:22-cv-734-DPJ-HSO-LHS**

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR URGENT AND NECESSITOUS MOTION FOR A SCHEDULING ORDER**

**TABLE OF CONTENTS**


INTRODUCTION .......... 1

BACKGROUND .......... 1

ARGUMENT .......... 2

**I.** SUPPLEMENTAL EXPERT DISCOVERY AND ADDITIONAL TRIAL DAYS ARE NEEDED. .......... 2

**II.** THE COURT SHOULD SET AN EXPEDITED SCHEDULE THAT ENABLES A REMEDIAL RULING IN TIME FOR THE NOVEMBER 2027 ELECTIONS. .......... 5

CONCLUSION .......... 9

## INTRODUCTION

The U.S. Supreme Court changed the legal standard for proving vote dilution under Section 2 of the Voting Rights Act while this case was on appeal. Now that this case has been remanded in light of the change in law engendered by *Louisiana v. Callais*, Plaintiffs are entitled to an opportunity to engage in supplemental discovery and offer additional evidence to satisfy the new legal standard, so that this Court may issue a new ruling on liability.

Because this Court recently clarified that the 2022 district lines that Plaintiffs originally challenged are now the operative districts, Plaintiffs are in a similar position now as they were in June 2023, when this Court granted their motion for an expedited trial. Order, Dkt. No. 44. The Court determined then that an expedited discovery and trial schedule was necessary to ensure that, should Plaintiffs prevail, the Court is able to grant timely relief and prevent further irreparable harm. *Id.* at 2–3. This Court should do the same now, to ensure that, if Plaintiffs prevail once more, a remedial order can be entered sufficiently in advance of the November 2027 elections, similar to the timeframe set out in this Court's previous remedial order. *See Miss. State Conf. of NAACP v. SBEC*, 782 F. Supp. 3d 349, 361 (S.D. Miss. 2025) (granting remedial districts six months before November 2025). Plaintiffs' motion for a scheduling order that includes an expedited period of supplemental expert discovery and then additional hearing days in January 2027 (or any other time deemed appropriate by the Court) should be granted.

## BACKGROUND

On April 29, 2026, the U.S. Supreme Court issued a decision altering the legal standard for proving vote dilution under Section 2 of the Voting Rights Act. *See Louisiana v. Callais,* 146 S. Ct. 1131, 1159 (2026). The Court in *Callais* confirmed the constitutionality of Section 2, and affirmed the general applicability of the longstanding *Gingles* framework, but also "update[d]" the *Gingles* standard for proving Section 2 liability in several discrete ways. *Id.* at 1143, 1159.

Defendants' appeal of this Court's Section 2 ruling was pending at the time, and the Supreme Court vacated and remanded this Court's judgment "for further consideration in light of" *Callais*. Mem. Op. & Order, Dkt. No. 318 at 3 (quoting *State Board Election Comm'rs v. Miss. State Conf. of the NAACP*, 224 L. Ed. 2d 827 (May 18, 2026) (mem.)). Following that vacatur, the Secretary of State began reimplementing the 2022 legislative district lines that were previously held unlawful, and Plaintiffs moved for a temporary restraining order ("TRO"), which this Court denied on September 11, 2026. Mem. Op. & Order, Dkt. No. 318 at 10. Thus, for election administration purposes, the operative state legislative districts for future elections will be those enacted by the Mississippi Legislature in 2022. While the Court denied the TRO based on a determination that the 2025 remedial lines enacted by the Legislature were likely void in light of the Supreme Court's vacatur order, it also concluded that granting a TRO was unnecessary because there is still "sufficient time . . . to address [Plaintiffs'] alleged injuries" before the 2027 election. *Id.* at 6–7. As previewed in their briefing and at argument on the motion for a TRO, Plaintiffs now seek a scheduling order that provides for a period of supplemental expert discovery and additional hearing days so that this case may be resubmitted for a liability determination in time to obtain relief from vote dilution in advance of the 2027 General Election.

Plaintiffs have conferred with counsel for Defendants regarding this motion. Defendants' position remains that proceedings in this case should be stayed pending the possibility of further redistricting by the Legislature.

## ARGUMENT

### I. SUPPLEMENTAL EXPERT DISCOVERY AND ADDITIONAL TRIAL DAYS ARE NEEDED.

The Court has now declined to prevent Defendant Secretary of State Watson from reverting to the 2022 lines for future state legislative elections in Mississippi. Mem. Op. & Order, Dkt. No.

318 at 10. With the 2022 lines effectively back in place, Plaintiffs should have a fair opportunity to re-establish liability under the updated *Callais* standard by conducting supplemental discovery—and, per the Court's decision on the TRO motion, there is time for Plaintiffs to do that and obtain relief prior to the 2027 election. *Id.* at 6–7. Defendants have acknowledged that such an approach is appropriate post-*Callais* in *White v. SBEC*, another Section 2 case in Mississippi in a virtually identical procedural posture. Defs.' Response to Court Order, Dkt. No. 314 at 1, *White v. SBEC*, No. 4:22-cv-00062-SA (N.D. Miss. May 26, 2026) (SBEC arguing that "[t]he Court should order further proceedings that afford the parties a fair chance to present evidence and argument in light of *Callais*" because "*Callais* imposes a new standard that governs plaintiffs' claim under section 2 of the Voting Rights Act"). Plaintiffs therefore ask that the Court order an expedited supplemental discovery period to enable the parties to supplement the record with additional evidence to conform the existing record to the new *Callais* standard, culminating in additional trial days to receive the parties' new evidence and then the submission of supplemental proposed findings of fact and conclusions of law by the parties.

Re-opening discovery following an intervening change in the legal standard is the ordinary course and well within this Court's discretion. *See United States v. Corp. Mgmt., Inc.*, 78 F.4th 727, 750 (5th Cir. 2023) (explaining district court's broad discretion to reopen discovery); *see also* 18B Wright & Miller's Federal Practice & Procedure § 4478.3 & n.39 (3d ed.) (noting that the "decision to admit new evidence on remand was within the district court's discretion" (citing *Carter Jones Lumber Co. v. LTV Steel Co.*, 237 F.3d 745, 751 (6th Cir. 2001))). Indeed, that is exactly what the district court did in *White*, after its Section 2 liability ruling was vacated in light of *Callais*. *See* Order, *White v. SBEC*, 4:22-cv-00062-SA, Dkt. 317 at 7 (N.D. Miss. July 7, 2026) ("*White* Order"). Similarly, in Alabama, the three-judge panel in *Singleton v. Allen* set an

expedited schedule before issuing a new preliminary injunction ruling and then setting an expedited discovery and trial schedule. *See Singleton v Allen,* 833 F. Supp. 3d 1222, 1245–46, 1271–72 (N.D. Ala. 2026).

Here, the supplemental discovery that Plaintiffs are requesting is aimed at addressing the updated factors set forth in *Callais*, and Plaintiffs are prepared to move quickly to complete the factual record. Plaintiffs anticipate disclosing additional expert reports, primarily if not exclusively from the existing expert witnesses in this case; no new fact witnesses are expected at this time. Thus, the Court has already heard from, qualified, and credited most if not all of the witnesses Plaintiffs would put forth. Plaintiffs are prepared to submit all of those reports within 30 days of the Court's scheduling order, or within any other timeframe ordered by the Court. The additional expert reports and expert testimony will supplement the existing record with evidence addressing the discrete "updates" to the *Gingles* standard imposed by *Callais*, such as by drawing illustrative districts without the use of racial data and further controlling for partisan affiliation in their analyses of racially polarized voting. *Callais*, 146 S. Ct. at 1159–60.

The Court should then hold additional hearing days to supplement the existing trial record and allow the parties to submit supplemental proposed findings of fact and conclusions of law under the updated *Callais* standard. Again, other courts presiding over Section 2 cases in a similar procedural posture—in which a finding of actual or likely Section 2 liability was later vacated and remanded for further consideration in light of *Callais*—have ordered supplemental discovery and scheduled additional trial days to receive new evidence. *White* Order at 7; *see also Allen*, 833 F. Supp. 3d at 1271–72. This is the most efficient way to get the case re-submitted for decision.

Plaintiffs accordingly submit that the Court should issue a scheduling order forthwith that provides for supplemental discovery and additional trial days so that this case can be expeditiously resubmitted for decision.

## II. THE COURT SHOULD SET AN EXPEDITED SCHEDULE THAT ENABLES A REMEDIAL RULING IN TIME FOR THE NOVEMBER 2027 ELECTIONS.

To prevent irreparable harm to Plaintiffs, this Court should set a schedule that preserves its ability to issue a remedy in advance of state legislative elections in 2027 in the event that Plaintiffs prevail. This Court previously concluded that an expedited discovery schedule was warranted to ensure that Plaintiffs' requested remedy could be granted in time, *see* Order, Dkt. No. 44, and it should do so again here to avoid the prospect of holding additional elections using district lines that unlawfully dilute the voting strength of Plaintiffs and other Black Mississippians in the areas at issue in this case.

As courts including this Court have consistently held, voters suffer irreparable harm when they are forced to vote for candidates using district lines that unlawfully dilute their voting strength. *E.g.*, *Robinson v. Ardoin*, 86 F.4th 574, 600 (5th Cir. 2023); *see also Miss. NAACP v. SBEC*, 739 F. Supp. 3d 383, 464–65 (S.D. Miss. 2024) (citing *Reynolds v. Sims*, 377 U.S. 533, 585 (1964)). That is because, "[o]nce an 'election occurs, there can be no do-overs and no redress' for voters whose votes were diluted." *Robinson*, 86 F.4th at 600 (quoting *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014)). "Plaintiffs [have] already suffered this irreparable injury once in this census cycle, when they voted under the unlawful . . . Plan." *See Singleton*, 690 F. Supp. 3d at 1319. Here, unless an injunction and remedy are in place before the November 2027 general election, Plaintiffs will again suffer that irreparable harm.

In denying Plaintiffs' TRO motion, this Court held that there currently remain "sufficient time and adequate remedies at law exist to address the alleged injuries" that Plaintiffs may suffer.

Mem. Op. & Order, Dkt. No. 318 at 6–7. However, that time is constrained by the *Purcell* principle, which instructs "that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Abbott v. League of United Latin Am. Citizens*, 146 S. Ct. 418, 419 (2025). And *Purcell* is a doctrine whose outer bounds are not clear, though the Supreme Court is known to have stayed a preliminary injunction more than five months before the general election. *See, e.g.*, *Robinson*, 86 F.4th at 599.

Defendants' refusal to articulate a date by which this Court should rule to avoid *Purcell* concerns exacerbates the risk that a lengthy discovery schedule and other litigation-related delays will irreparably injure Plaintiffs' right to fair and equal districts. Unless Defendants persuasively come forward with any additional facts or explanation to the contrary, the best benchmark available is the timing of this Court's previous remedial order, which was issued on May 7, 2025. *Miss. NAACP*, 782 F. Supp. 3d at 361. That remedial order was successfully implemented without incident, with the primary election being held three months later on August 5, 2025, and the special general election on November 4, 2025, six months after the final remedial order. *Id.*

To adhere to a similar timeline as this Court's prior remedial order, any new maps this cycle would need to be finally ordered into place by around May 3, 2027, six months ahead of the November 2, 2027 general election.[1] In typical circumstances, the Legislature must be given "a reasonable opportunity" to adopt a plan that remedies the adjudicated vote dilution. *Miss. NAACP*, 739 F. Supp. 3d at 466. In this case, however, if this Court were to find vote dilution in the same areas that it previously found, the Legislature has already received that opportunity, and the Legislature has already expressed its preferred remedial maps via the 2025 remedial legislation.

[1] Primary elections for state legislative office are scheduled for August 3, 2027. Miss. Code Ann. § 23-15-191.

*Miss. NAACP*, 782 F. Supp. 3d at 352. Under these circumstances, the Legislature need not be given a second opportunity to draw remedial districts in the relevant areas. However, to the extent this Court concludes that the Legislature should receive yet another chance to enact compliant maps following any renewed liability determination, the schedule should build in no more than one month following any liability ruling by the Court for the Legislature to enact a remedial plan.

Because of the risk of irreparable harm to Plaintiffs, this Court should reject Defendants' suggestion that this case be stayed pending the possibility of further redistricting by the Legislature. Defendants' scenario is simply too speculative to justify the risk of irreparable harm to Plaintiffs. For one, the Governor has not yet called a special session. Even if one were to be called, it may not occur—the last special session that the Governor called for purposes of post-*Callais* redistricting was cancelled. And even if a special session were to be held, legislation may not be passed—similar efforts have failed in South Carolina, for instance.[2] Finally, even if a new redistricting plan were to be enacted, it would not moot this litigation unless it actually remedies the alleged vote dilution. *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'"); *Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 142 F.4th 819, 827 (5th Cir. 2025) (holding that case "remain[s] live" despite change in challenged admissions policy because new "policy does not fully redress those alleged injuries"); *Veasey v. Abbott*, 248 F. Supp. 3d 833, 836

[2] Recent experience illustrates why legislative activity is hard to predict and should not be presumed. Following *Callais*, the Governor of South Carolina convened a special session of the state legislature to pass new districting maps, and the legislature ultimately adjourned without enacting any new maps. Timm and Dixon, *South Carolina's Trump-backed Redistricting Push Fails in the State Senate Amid GOP Opposition*, NBC News (May 26, 2026), https://www.nbcnews.com/politics/2026-election/south-carolinas-redistricting-effort-fails-state-senate-gop-opposition-rcna346962.

(S.D. Tex. 2017) (holding that case was not moot because "the remedies proposed by pending legislation are neither final nor complete and nothing has been done to grant Plaintiffs the entirety of the remedies they seek").[3]

Accordingly, Plaintiffs would propose that this Court issue a scheduling order that provides for up to one week of additional trial days, to supplement the existing trial record, in either January 2027 (or as early as December 2026 if the Court prefers), with the following associated deadlines:

- **October 23, 2026 (or approximately one month after this Court's scheduling order)**: Plaintiffs' expert reports due.
- **November 23, 2026 (one month after disclosure of Plaintiffs' reports)**: Defendants' expert reports due.
- **December 7, 2026 (two weeks after disclosure of Defendants' reports)**: Plaintiffs' rebuttal reports due.
- **December 18, 2026 (one and a half weeks for any depositions)**: Close of discovery, including all depositions.
- **January 5, 2026 (one week before trial)**: Supplemental exhibit and witness lists due, along with pre-trial briefing if helpful to the Court.
- **January 11-15, 2027**: Additional trial days.
- **January 22, 2027 (one week after trial)**: Post-trial briefing and proposed findings of fact if helpful to the Court.

[3] Moreover, if the Legislature does enact new lines that do not remedy the vote dilution experienced by Black voters, having additional trial days already in place will help ensure that Plaintiffs can seek relief as against any such new maps in advance of 2027 because the existing trial days could also be converted into a preliminary injunction hearing. Plaintiffs also reserve the right to seek a preliminary injunction against the 2022 lines if necessary to do so, due to *Purcell* and other constraints on their ability to seek timely relief.

- **February/March 2027**: Court ruling on liability (and, if appropriate, the remedial map).
- **[If needed] March 31, 2027**: Deadline for the Legislature to enact any remedial plans, should the Court decide that the Legislature should receive another opportunity to draw compliant maps.
- **[If needed] April 14, 2027**: All parties to submit any objections and alternative plans to any remedial plan enacted by the Legislature.
- **[If needed] April 21, 2027**: All parties to file any responses to objections and alternative plans.
- **[If needed] May 3, 2027**: Court ruling on remedy for November 2027.

**CONCLUSION**

Plaintiffs respectfully request that the Court grant the urgent and necessitous motion for a scheduling order and set a schedule for supplemental expert discovery and additional trial days that preserves Plaintiffs' ability to obtain a remedy in time for the state legislative elections in November 2027. Given the time-sensitive nature of the request, Plaintiffs ask the Court direct Defendants to file any response by September 24, 2026.

Respectfully submitted,

This the 18th day of September, 2026.

*/s/ Ari J. Savitzky*
Ari J. Savitzky
*asavitzky@aclu.org*
Ming Cheung
*mcheung@aclu.org*
Nina Nayiri McKay*
*nmckay@aclu.org*
ACLU FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500

Joshua Tom, MSB 105392
*jtom@aclu-ms.org*
ACLU OF MISSISSIPPI
101 South Congress Street
Jackson, MS 39201
(601) 354-3408

Jennifer Nwachukwu
*jnwachukwu@lawyerscommittee.org*
David Rollins-Boyd
*drollins-boyd@lawyerscommittee.org*

Kelli Slater*
*kslater@aclu.org*
ACLU FOUNDATION
915 15th Street NW
Washington, DC 20005
(202) 457-0800

Robert B. McDuff, MSB 2532
*rbm@mcdufflaw.com*
MISSISSIPPI CENTER FOR JUSTICE
767 North Congress Street
Jackson, MS 39202
(601) 969-0802

Carroll Rhodes, MSB 5314
Law Offices of Carroll Rhodes
*crhodes6@bellsouth.net*
PO Box 588
Hazlehurst, MS 39083
(601) 894-1464

John P. Lavelle, Jr.
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103-2921
Telephone: +1.215.963.4824
Facsimile: +1.215.963.5001
*john.lavelle@morganlewis.com*

Javon Davis
*jdavis@lawyerscommittee.org*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street NW Suite 900
Washington, DC 20005
(202) 662-8600

Drew C. Jordan
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Telephone: +1.202.739.5962
Facsimile: +1.202.739.3001
*drew.jordan@morganlewis.com*

**Pro hac vice motion forthcoming*
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Ari J. Savitzky, do certify that on this day I caused to be served a true and correct copy of the foregoing by electronic mail to all counsel of record.

This the 18th day of September, 2026.

*/s/_ Ari J. Savitzky*_____
Ari J. Savitzky