**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

MISSISSIPPI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; DR. ANDREA WESLEY; DR. JOSEPH WESLEY; ROBERT EVANS; GARY FREDERICKS; PAMELA HAMNER; BARBARA FINN; OTHO BARNES; SHIRLINDA ROBERTSON; SANDRA SMITH; DEBORAH HULITT; RODESTA TUMBLIN; DR. KIA JONES; MARCELEAN ARRINGTON; VICTORIA ROBERTSON,

*Plaintiffs*,

vs.

STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES, *in his official capacity as Governor of Mississippi*; LYNN FITCH, *in her official capacity as Attorney General of Mississippi*; MICHAEL WATSON, *in his official capacity as Secretary of State of Mississippi,*

*Defendants,*

AND

MISSISSIPPI REPUBLICAN EXECUTIVE COMMITTEE,

*Intervenor-Defendant.*

**CIVIL ACTION NO.**
**3:22-cv-734-DPJ-HSO-LHS**

**DEFENDANTS' BRIEF IN SUPPORT OF RESPONSE IN OPPOSITION TO PLAINTIFFS' URGENT AND NECESSITOUS MOTION FOR SCHEDULING ORDER**

## I. INTRODUCTION

Defendants State Board of Election Commissioners, Governor Tate Reeves, Attorney General Lynn Fitch, and Secretary of State Michael Watson respectfully request that the Court deny Plaintiffs' Urgent and Necessitous Motion for Scheduling Order [319].

Plaintiffs ask the Court to take a statewide legislative redistricting case from a vacated judgment to a supplemental trial in fewer than four months. Their proposed schedule assumes the case can be confined to narrow expert supplements which it cannot. Their position omits the threshold work required after *Louisiana v. Callais*, 608 U.S. 85, 146 S. Ct. 1131 (2026): defining the claims to be tried, resolving the status of the final pretrial order, conducting necessary fact discovery, testing expert opinions, addressing dispositive and evidentiary issues, and preparing a final pretrial order.

The Court has already rejected the emergency premise. In denying Plaintiffs' recent request for temporary restraining order, the Court held that no affected regular legislative election will occur in 2026 and that the November 2027 general election was fourteen months away. [318] at 6. The Court also held that the costs of expedited discovery, experts, and rapid litigation do not establish irreparable injury. *Id.* at 6-7. Those findings do not compel an immediate trial. As set forth below, any schedule designed to alter the 2027 election cycle is neither practical nor feasible and would substantially prejudice the State by compressing the threshold, discovery, expert, motion, and trial phases required after *Callais*. Liability must first be adjudicated through an orderly process. Only then, if Plaintiffs prevail, should the Court consider the appropriate remedy, including whether special elections are warranted.

There is an additional reason not to force immediate proceedings. Defendants do not ask the Court to predict what the Legislature will enact or to decide mootness in advance. But expedited discovery and trial would require the parties and the Court to litigate the 2022 Plans while the Legislature is actively considering whether to replace them.

Separate and apart from the legislative process, this case is not procedurally ready for an expedited trial. Plaintiffs pleaded and tried Count I as a results only Section 2 claim and disclaimed

a claim premised on invidiously discriminatory intent. [27] ¶ 55; [199] at 16 ¶ 9. Their Amended Complaint and final pretrial order also preserve five Fourteenth Amendment racial gerrymandering claims in Count II. [27] ¶¶ 187-191; [199] at 5, 10, 13. The Court previously rejected those claims, but vacatur swept away that merits disposition with the judgment. [318] at 5, 9. Plaintiffs have not stated whether they intend to retry, amend, or dismiss Count II. That choice bears directly on the permissible scope of discovery and trial and may also affect the continued role of the three-judge court. *See* 28 U.S.C. § 2284(a).

The risk of rushing is concrete. In *Allen v. Milligan*, the Supreme Court stayed an injunction entered two weeks after a *Callais* vacatur because the lower court likely failed to apply *Callais*'s requirements concerning legitimate state objectives and partisan affiliation. 608 U.S. 511, 513–14 (2026) (per curiam). This Court should not compress the same threshold questions into a December 2026 or January 2027 trial. It should deny expedition and grant Defendants' separately filed request for a short stay through December 28, 2026. At minimum, if the Court declines a stay, it should require Plaintiffs to plead the claim they contend is viable under *Callais* and allow Defendants to respond before setting fact discovery, expert, dispositive motion, evidentiary, or trial deadlines.

## II. BACKGROUND

### A. Plaintiffs propose an unnecessarily compressed schedule.

Plaintiffs filed their Urgent and Necessitous Motion on September 18, 2026. [319]. They request supplemental discovery and up to one week of additional trial days so that the Court may issue a liability and remedial ruling before the November 2027 general election. *Id.* at 1-3. Their memorandum proposes trial on January 11-15, 2027, or as early as December 2026. [320] at 8.

The proposed schedule requires Plaintiffs to disclose expert reports on October 23, Defendants on November 23, and Plaintiffs' rebuttal reports on December 7. It closes all discovery,

including depositions, on December 18; requires pretrial submissions on January 5; begins trial on January 11; and requires post-trial submissions on January 22. *Id.* at 8-9. Plaintiffs then ask for a liability ruling in February or March, a legislative remedy by March 31 if the Court allows one, and a final remedial ruling by May 3. *Id.* at 9.

Plaintiffs premise that schedule on their present expectation that they will rely primarily or exclusively on existing experts and call no new fact witnesses. *Id.* at 4. Yet, they reserve the right to seek a preliminary injunction and suggest that the proposed trial dates could be converted into a preliminary injunction hearing if the Legislature enacts new lines. *Id.* at 8 n.3. Their proposal thus does more than simply supplement the old record. It seeks to preserve an expedited vehicle for litigating either the 2022 Plans or, somehow, plans not even enacted yet by the Legislature, notwithstanding the myriad of issues that new plans could present, such as mootness and the continued jurisdiction of this Court.

**B. The Supreme Court vacated the judgment and changed the governing Section 2 framework.**

The case proceeded to trial in February and March 2024. *Miss. NAACP*, 739 F. Supp. 3d at 464. The Court later entered judgment for Plaintiffs on portions of their Section 2 claims and supervised remedial proceedings, while dismissing all of their constitutional racial gerrymandering claims. [229]; [254]; [262]. In April 2026, however, the Supreme Court decided *Callais*. 146 S. Ct. 1131. On May 18, 2026, the Supreme Court vacated this Court's final judgment and remanded for further consideration in light of *Callais*. [302].

The TRO Order describes the resulting posture. [318]. Vacatur strips the prior decision of binding effect, treats the vacated order as though it never occurred, and sweeps away findings that preceded the vacated judgment. *Id.* at 5, 8-9. The Court therefore held that no remnant of the prior

relief presently carries the force of law. *Id.* at 9. The case cannot resume at the remedy stage or proceed as though the prior merits determinations remain intact.

*Callais* also materially altered the Section 2 inquiry. 146 S. Ct. at 1157-1161. As Defendants explained in their July 29 status brief, Plaintiffs litigated this case as a Section 2 results case and expressly disclaimed an intentional discrimination theory in the pretrial order.[1] [306] at 13-14 (citing [199] at 16 ¶ 9). *Callais* now at least requires proof directed to present day intentional discrimination, race neutral illustrative maps that satisfy the State's legitimate districting objectives, and evidence that disentangles race from politics. 146 S. Ct. at 1155-60. The prior pleadings, pretrial order, expert reports, and record were created under a different, now superseded, framework. Further, Count II of the Amended Complaint creates a separate unresolved issue: Plaintiffs must state whether those constitutional claims remain in the case and, if not, the Court may need to address the continued role of the three-judge panel. *See Shapiro v. McManus*, 577 U.S. 39, 43-45 (2015).

**C. The Legislature is actively conducting a public redistricting process.**

The prospect of legislative action is now more concrete than it was in July. The Standing Joint Committee on Reapportionment and Redistricting has been conducting a series of statewide public hearings, with hearings scheduled through October 1, 2026. *See* Exhibit. A, Redistricting Hearing Schedule. The Governor has publicly indicated that legislative redistricting will be completed before the 2027 elections, and Defendants understand that a special session is highly

[1] Plaintiffs separately pleaded five Fourteenth Amendment racial gerrymandering claims, alleging that race predominated in drawing SDs 2 and 48 and HDs 22, 34, and 64. [27] ¶¶ 187–91; [199] at 5, 10, 13. They nevertheless expressly disclaimed any claim premised on "invidiously discriminatory intent on the basis of race." [199] at 16 ¶ 9. The Court rejected all five claims after trial. [224] at 114. Vacatur stripped that disposition of legal force, [318] at 5, 9, yet Plaintiffs' Motion says nothing about Count II. As discussed further below, before setting discovery or trial, Plaintiffs should be required to state whether they intend to abandon, amend, or retry those claims—a choice that affects the scope of discovery and trial and may bear on the continued role of the three-judge court under 28 U.S.C. § 2284.

likely before the 2027 Regular Session. [306] at 2-3, 14-16. Defendants do not ask the Court to assume enactment is certain. They ask only that the Court avoid forcing the parties through immediate discovery and trial while the constitutionally responsible branch is actively considering replacement plans.

## III. ARGUMENT

### A. THE COURT'S RECENT TRO ORDER AND PRIOR SCHEDULING HISTORY DO NOT SUPPORT EXPEDITION.

#### 1. The Court has already found no imminent election injury.

Plaintiffs' scheduling motion rests on the same premise as their TRO request: because the 2022 Plans are operative, the case must move immediately to expedited discovery and adjudication before the 2027 election cycle. The Court already rejected that claimed urgency. [318] at 6. It held that no regular legislative election will occur until 2027, that no affected legislative race appears on the regular 2026 ballot, and any alleged voting injury would not arise until the 2027 cycle. *Id.*

The Court's statement that the available period permits either judicial or legislative action does not establish any necessity for a December or January 2027 trial date. It simply rejects the contention that harm is imminent in the context of the TRO. Defendants do not concede that a trial can or should be completed on a timetable designed to alter the 2027 elections. The orderly course is liability first, remedy second. If Plaintiffs ultimately establish liability after proceedings in due course, the Court can then determine what relief, if any, is warranted under the governing equitable standards. That sequencing mirrors the prior proceedings: Plaintiffs filed suit in December 2022 and moved to expedite; trial was in February and March 2024; the liability order issued in July 2024; and the final remedial order issued in May 2025. Even with expedition, the liability and remedial process took more than two years—and that was before *Callais* introduced the additional threshold, discovery, and expert issues now presented.

Plaintiffs also cannot rely on the burden of litigation itself. The TRO Order held that the asserted need to undertake expedited discovery, retain or prepare experts, seek further injunctive relief, and litigate rapidly is not irreparable injury. [318] at 6-7. Those same burdens do not become a reason for expedition merely because Plaintiffs now present them through a scheduling motion.

**2. The 2023 order granting an expedited trial setting confirms why expedition is unwarranted now.**

The 2023 order was not based on a generalized preference for speed. It accelerated trial because a February 2024 setting preserved the possibility of holding any remedial special elections concurrently with the November 2024 general election, while a December 2024 trial would foreclose that option and risk either disruptive stand-alone elections or delay until 2027. [44] at 2–3. That concrete electoral objective drove the schedule.

Even then, acceleration did not produce an implementable remedy for the November 2024 cycle. Trial began in February 2024, liability was decided in July 2024, and the Court ultimately deferred to special elections in 2025. [229] at 5; [262] at 1, 12. The history therefore cautions against assuming that a compressed trial date guarantees a particular election remedy.

The disparity in preparation time is also telling. In 2023, with settled pleadings and governing law, Plaintiffs proposed approximately nine months to trial. [44] at 1-2. They now seek fewer than four months—and potentially only two—after vacatur, a new controlling standard, unresolved claims, and the need for new fact and expert discovery. Plaintiffs derive their proposed May 3, 2027 cutoff principally from the six-month interval used during the prior remedial process. [320] at 6–9. But that schedule was fashioned after liability had been adjudicated and was tailored to the specific election administration record then before the Court. It did not establish a categorical timetable governing this remand following *Callais*. The Court need not now determine the last possible date on which relief could be ordered. It should reject Plaintiffs' unsupported premise that

avoiding *Purcell* requires a December 2026 or January 2027 merits trial before the claims and proof have been properly defined.

Plaintiffs previously urged a stay through year-end or enactment because proceeding against lines likely to change would waste resources. [305] at 1, 9-10. Less than two months ago, they represented that pausing would not jeopardize adjudication before the 2027 election and would serve efficiency. *Id*. Plaintiffs may respond that their proposed stay depended on the 2025 lines remaining in force. But the Court's TRO order answered both parts of that concern: it held the 2022 Plans operative and separately found no imminent harm from that result. [318] at 6, 8-9. Nothing in that history supports an emergency setting now.

### B. PLAINTIFFS CANNOT PROCEED TO AN EXPEDITED MERITS TRIAL WITHOUT FIRST DEFINING THE CLAIM TO BE TRIED UNDER *CALLAIS*.

#### 1. The operative pleadings and final pretrial order do not define the *Callais* theory Plaintiffs now seek to try.

The Amended Complaint pleaded Count I under the former "results only" understanding of Section 2. It expressly alleged that "a court needs determine only whether the result of a challenged redistricting plan is the dilution of minority political strength, regardless of any intent." [27] ¶ 55. The final pretrial order then stated that the pleadings were amended to conform to that order, framed the Section 2 case under the former *Gingles* results framework, and recorded Plaintiffs' representation that they asserted no claim "premised on invidiously discriminatory intent on the basis of race." [199] at 5, 7–10, 16 ¶ 9, 19.

Those limitations matter now. A final pretrial order "supersedes all pleadings and governs the issues and evidence to be presented at trial." *Kona Tech. Corp. v. Southern Pacific Transp. Co.*, 225 F.3d 595, 604 (5th Cir. 2000). It may be modified only to prevent manifest injustice, and the Fifth Circuit requires each party to identify the factual and legal bases on which they intend to

proceed. *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 345–46 (5th Cir. 2002) (citing Fed. R. Civ. P. 16(e)).

*Callais* cannot be reconciled with the "results only" claim defined in those operative documents merely by exchanging new expert reports. The Supreme Court held that Section 2 imposes liability only when the circumstances support "a strong inference that the State intentionally drew its districts to afford minority voters less opportunity because of their race." *Callais*, 146 S. Ct. at 1157; *see also Allen v. Milligan*, 608 U.S. 511, 513-14 (2026) (per curiam) (staying a renewed preliminary injunction entered two weeks after the prior injunctions were vacated under *Callais* because the district court likely departed from *Callais* by finding liability even though plaintiffs' alternative map did not perform "just as well" on the State's legitimate districting criteria and by failing to control for partisan affiliation in its racial bloc voting analysis). *Callais* accordingly requires illustrative plans drawn without race that perform just as well as the challenged plans with respect to every legitimate state objective; analyses that separate race from partisan affiliation; and current evidence bearing on present-day intentional racial discrimination. *Id.* at 1157–60. A claim expressly premised on the proposition that intent is irrelevant does not identify the acts, actors, challenged decisions, and specific district circumstances that allegedly support that newly required inference.

Defendants do not contend that Plaintiffs must invoke particular magic words or cite *Callais* by name. The defect is substantive notice, not terminology. Plaintiffs did not merely omit the name of a legal doctrine. They defined the claim for trial under a different liability theory and expressly excluded claims premised on invidiously discriminatory intent. Plaintiffs cannot now reverse that limitation through expert reports while bypassing the pleading and pretrial order process that notifies Defendants and the Court what claim is actually being tried.

*White v. State Board of Election Commissioners* does not support immediate trial. Although the court declined to require an amended complaint, it found the existing record was incomplete, reopened both fact and expert discovery, and concluded that "extensive supplementation" was necessary. No. 4:22-cv-62-SA, Dkt. [317] at 4-7 (N.D. Miss. July 7, 2026). At most, *White* shows that the Court may choose among procedural vehicles for defining the claim. It does not permit Plaintiffs to bypass that threshold step.

**2. Count II must also be resolved before the scope of trial can be known.**

The Amended Complaint and final pretrial order preserve racial gerrymandering claims against SDs 2 and 48 and HDs 22, 34, and 64. [27] ¶¶ 187-191; [199] at 5, 10, 13. The Court previously rejected those claims, but vacatur swept away that merits determination with the judgment. [318] at 5, 9.

Plaintiffs' scheduling motion addresses only Section 2 and does not state whether Count II will be retried, amended, or dismissed. That omission matters. If Plaintiffs pursue Count II, discovery and expert work must address racial predominance, strict scrutiny, and five district-specific constitutional claims. If they abandon it, the Court may need to determine whether a three-judge panel remains necessary under 28 U.S.C. § 2284(a). *See Shapiro,* 577 U.S. at 43-45. The Court should resolve those issues before fixing deadlines or a trial date—not after the parties undergo preparation for an undefined proceeding.

**3. Both sides require meaningful fact and expert discovery under the new standard.**

When controlling law changes after trial, fairness ordinarily requires an opportunity for both sides to present evidence relevant to the new standard. *Carter v. Local 556, Transport Workers Union of America*, 156 F.4th 459, 488 (5th Cir. 2025); *see also Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 282 (5th Cir. 1999). Plaintiffs' former illustrative maps were

developed with express consideration of racial data. Their political science evidence did not disentangle race from partisan preference in the manner *Callais* now requires. And their totality evidence relied substantially on historical discrimination that *Callais* directs courts to evaluate according to its bearing on present day intentional discrimination. [306] at 13-15; *Callais*, 146 S. Ct. at 1155-60. Plaintiffs will need new reports or materially revised opinions.

Fact discovery will likewise be substantial. A post-*Callais* claim is likely to place at issue legislative documents and communications, map-drawing files, public hearing materials, and evidence concerning the State's legitimate districting objectives and political goals.

Such discovery will raise relevance, proportionality, privilege, legislative immunity, and deliberative process issues. Experts cannot prepare final opinions until the claims, state objectives, data, and relevant discovery are known. Defendants must then have time for rebuttal reports, expert depositions, dispositive motions, and *Daubert* motions. The original scheduling record anticipated up to twelve testifying experts and a ten-day trial. [37] at 2-3. The Supreme Court's post-*Callais* treatment of the Alabama litigation underscores the danger of skipping those steps. The three-judge court entered a renewed injunction two weeks after vacatur. *Allen*, 608 U.S. at 513. The Supreme Court stayed it after concluding that the court likely departed from *Callais* by failing to require an alternative map that performed "just as well" on legitimate state criteria and by failing to separate race from partisan voting. *Id.* at 513-14. An abbreviated second record here would invite the same issues and another appellate cycle.

### C. ACTIVE LEGISLATIVE REDISTRICTING MAKES AN IMMEDIATE TRIAL LIKELY TO WASTE RESOURCES ON A PLAN THAT MAY SOON BE SUPERSEDED.

Legislative reapportionment is primarily the responsibility of the State. *Growe v. Emison*, 507 U.S. 25, 34 (1993); *Scott v. Germano*, 381 U.S. 407, 409 (1965) (per curiam). In *Robinson v.*

*Ardoin*, the Fifth Circuit retained jurisdiction but paused substantive merits proceedings while Louisiana's Legislature considered replacement plans, with proceedings to resume upon enactment, notice that no plan would be considered, or a date certain arrived. 86 F.4th 574, 599-602 (5th Cir. 2023). Here, restraint is at least as appropriate because no liability finding remains in force and Mississippi's legislative process is already underway.

The Standing Joint Committee is holding statewide public hearings through October 1; and the Governor has indicated that redistricting will be completed before the 2027 elections. [306] at 2-3, 14-16; *see* Exhibit A, Redistricting Hearing Schedule. If new plans supersede the 2022 Plans, Plaintiffs' claims for prospective relief directed to those plans may become moot, or may require materially different pleadings, evidence, and relief. *See Thomas v. Reeves*, 961 F.3d 800, 801 (5th Cir. 2020) (*en banc*); *Diffenderfer v. Central Baptist Church*, 404 U.S. 412, 414-15 (1972). Requiring Defendants to complete compressed discovery and trial preparation before a new redistricting plan is even known—and under a substantially revised *Gingles* framework—would impose significant and unnecessary prejudice. Defendants do not ask the Court to predict enactment or decide mootness now. The point is narrower: immediate discovery and a December trial risk adjudicating lines the Legislature is actively considering replacing. By contrast, a short stay preserves the party's rights and permits the Court to know what plan, if any, requires adjudication.

Defendants address the requested pause in their contemporaneous motion to stay. For present purposes, the active legislative process independently defeats Plaintiffs' demand for expert disclosures within weeks and trial in December or January. The Court should first determine what plans and claims remain, then set whatever orderly proceedings are actually necessary thereafter.

## IV. CONCLUSION

The Court should deny Plaintiffs' Urgent and Necessitous Motion for Scheduling Order [319] and decline to set the proposed December 2026 or January 2027 trial. It should grant Defendants' contemporaneous motion for a short stay through December 28, 2026.

THIS the 25th day of September, 2026.

Respectfully submitted,

STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF MISSISSIPPI; LYNN FITCH, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF MISSISSIPPI; MICHAEL WATSON, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE, DEFENDANTS

By: *_/s/ Tommie S. Cardin_*
Tommie S. Cardin (MB #5863)
ONE OF THEIR COUNSEL

OF COUNSEL:

Tommie S. Cardin (MB #5863)
P. Ryan Beckett (MB #99524)
B. Parker Berry (MB #104251)
J. Dillon Pitts (MB #106399)
**BUTLER SNOW LLP**
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
P.O. Box 6010, Ridgeland, MS 39158-6010
Phone: 601.948.5711
Fax: 601.985.4500
tommie.cardin@butlersnow.com
ryan.beckett@butlersnow.com
parker.berry@butlersnow.com
dillon.pitts@butlersnow.com

Douglas T. Miracle (MB #9648)
**STATE OF MISSISSIPPI**
**OFFICE OF THE ATTORNEY GENERAL**
Post Office Box 220
Jackson, Mississippi 39205-0220
Tel.: (601) 359-4184
Fax: (601) 359-2003
doug.miracle@ago.ms.gov

**CERTIFICATE OF SERVICE**

I, Tommie S. Cardin, one of the attorneys for the Defendants, do hereby certify that I have this day filed the above and foregoing document with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

This the 25th day of September, 2026.

*/s/ Tommie S. Cardin*
Tommie S. Cardin

102651894.v6