**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

MISSISSIPPI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; DR. ANDREA WESLEY; DR. JOSEPH WESLEY; ROBERT EVANS; GARY FREDERICKS; PAMELA HAMNER; BARBARA FINN; OTHO BARNES; SHIRLINDA ROBERTSON; SANDRA SMITH; DEBORAH HULITT; RODESTA TUMBLIN; DR. KIA JONES; MARCELEAN ARRINGTON; VICTORIA ROBERTSON,

*Plaintiffs*,

vs.

STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES, *in his official capacity as Governor of Mississippi*; LYNN FITCH, *in her official capacity as Attorney General of Mississippi*; MICHAEL WATSON, *in his official capacity as Secretary of State of Mississippi,*

*Defendants,*

AND

MISSISSIPPI REPUBLICAN EXECUTIVE COMMITTEE,

*Intervenor-Defendant.*

**CIVIL ACTION NO.**
**3:22-cv-734-DPJ-HSO-LHS**

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO STAY**

## I. INTRODUCTION

Defendants State Board of Election Commissioners, Governor Tate Reeves, Attorney General Lynn Fitch, and Secretary of State Michael Watson respectfully seek a short, date certain stay of further merits proceedings until the earliest of enactment of new legislative plans, official notice that no plans will be considered before the 2027 Regular Session, or December 28, 2026.

Immediate litigation would require substantial, new proceedings under *Callais* while the Legislature considers replacing the 2022 Plans. A stay is appropriate.

After *Louisiana v. Callais*, 608 U.S. 85, 146 S. Ct. 1131 (2026), the Supreme Court vacated the judgment and this Court held that the prior findings and relief no longer carry legal force. [318] at 3, 5, 9; [302]. Any renewed merits proceedings must first define the claims to be tried under *Callais* and then develop new fact and expert evidence. Yet Plaintiffs seek opening expert reports by October 23, discovery complete by December 18, and trial on January 11-15, 2027—or sooner—while the Standing Joint Committee conducts statewide hearings and the Legislature considers replacement plans. [319]; [320] at 8-9; *See* Exhibit A, Redistricting Hearing Schedule.

A brief stay avoids potentially duplicative proceedings, respects the Legislature's primary role in redistricting, and causes no present prejudice. The Court has already held that no affected regular legislative election will occur in 2026 and that no imminent injury exists. [318] at 6-7. Defendants do not concede that this case can or should be tried on a schedule designed to alter the 2027 elections. The immediate question is only whether merits proceedings should pause through December 28 while the legislative process continues. *Robinson v. Ardoin* provides the appropriate model: retain jurisdiction, allow a finite period for legislative action, require prompt notice, and resume orderly proceedings upon enactment, notice that action will not occur, or a date certain. 86 F.4th 574, 599-602 (5th Cir. 2023).

## II. BACKGROUND

This Court entered final judgment in May 2025 after liability, remedial, and special election proceedings. On April 29, 2026, the Supreme Court decided *Callais* and on May 18, 2026, the Supreme Court vacated the judgment and remanded this case for further consideration in light of

that decision. [302]. The September 11 TRO Order then held that the vacated findings and relief possess no continuing legal force and that the 2022 Plans are operative. [318] at 5, 8-9.

The case therefore cannot simply resume where the prior trial ended. Plaintiffs pleaded and tried Count I as a results claim, and the final pretrial order records that Plaintiffs did not assert a claim premised on invidiously discriminatory intent. [27] ¶ 55; [199] at 5, 16 ¶ 9, 19. *Callais* now requires, among other things, proof supporting a strong inference that the State intentionally afforded minority voters less electoral opportunity because of race, race neutral illustrative maps satisfying the State's legitimate objectives, and analysis disentangling race from partisanship. 146 S. Ct. at 1155-60. At minimum, Plaintiffs must define the theory they contend satisfies that framework before any meaningful setting of discovery and expert deadlines.

The Amended Complaint also continues to assert five Fourteenth Amendment racial gerrymandering claims in Count II. [27] ¶¶ 187-191. Although the Court previously rejected those claims, vacatur swept away that merits disposition. [318] at 2 n.1, 5, 9. Plaintiffs have not stated whether they intend to retry Count II, dismiss it, or amend it. That choice affects the scope of discovery and may bear on the continued applicability of 28 U.S.C. § 2284(a). Until both counts are defined, no merits schedule can be meaningfully set.

Plaintiffs nevertheless request expert disclosures beginning October 23, completion of all discovery by December 18, and a merits trial in December 2026 or January 2027. [319]; [320] at 8-9. At the same time, the House and Senate have formed redistricting committees, the Standing Joint Committee has been appointed, and statewide public hearings are scheduled through October 1. [306] at 2-3, 14-16; *See* Exhibit. A.

## III. STANDARD

A district court has broad discretion to stay proceedings as an incident of its authority to control its docket. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). In exercising that authority, the Court balances the prejudice from delay, hardship or inequity from proceeding, and the orderly and economical disposition of the case. *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). The movant bears the burden of justification, and any stay must be reasonably limited rather than immoderate or indefinite. *Landis*, 299 U.S. at 255; *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983).

## IV. ARGUMENT

### A. A SHORT STAY WILL AVOID DUPLICATIVE PROCEEDINGS WHILE THE LEGISLATURE CONSIDERS NEW PLANS.

Under the Plaintiffs' proposed schedule, and without a stay, the parties must immediately undertake a new merits process whose subject and proof may soon change. The Court must first resolve the threshold issues presented by *Callais*, Counts I and II of the Amended Complaint, and the final pretrial order. The parties would then conduct legislative and election discovery, address privilege disputes, develop new maps and political analyses, conduct expert depositions, and litigate dispositive motions, *Daubert* motions, and trial issues. The prior proceedings illustrate the scale of that undertaking: Plaintiffs challenged ten districts affecting numerous adjoining districts, anticipated up to twelve testifying experts, and proposed a ten-day trial. [37] at 2–4. This is not a narrow supplement.

*Allen v. Milligan* confirms the risk of haste. 608 U.S. 511, 513–14 (2026) (per curiam). After the Supreme Court vacated Alabama redistricting injunctions in light of *Callais*, the district court entered a new injunction two weeks later on largely the same grounds. The Supreme Court stayed that injunction, concluding that the State was likely to succeed because the district court

had not followed *Callais*'s requirements concerning legitimate state objectives and partisan affiliation. *Allen*, 608 U.S. at 513–14. Compressing the determination of the pending claims, discovery, expert work, and trial into the Plaintiffs' proposed schedule risks the same kind of avoidable error.

That work would be tied to the 2022 Plans—their configuration, legislative record, state objectives, decisionmakers, and alleged injuries. If the Legislature enacts new plans, those subjects may materially change, and claims directed to the 2022 Plans may become moot or require different allegations, evidence, and relief. *See Thomas v. Reeves*, 961 F.3d 800, 801 (5th Cir. 2020) (en banc) (dismissing appeal as moot because the challenged lines were superseded and no longer governed future elections); *Diffenderfer v. Central Baptist Church*, 404 U.S. 412, 414–15 (1972). The resulting burden is not merely the ordinary cost of litigation—it is the avoidable cost of building one redistricting record while the State is creating another.

The legislative process has advanced materially since the Supreme Court's remand and justifies a short pause. The political branches have established redistricting committees, appointed the Standing Joint Committee, and are actively conducting statewide hearings through October 1. [306] at 2–3, 14–16; Exhibit. A. Defendants understand that a special session is likely before the 2027 Regular Session, but the requested stay does not depend on that prediction. Its termination provisions account for the possibility that no session is called or no plan is enacted.

Plaintiffs rely on the cancellation of an earlier Mississippi special session that did not involve legislative redistricting and on another State's unsuccessful redistricting effort; those events do not make Mississippi's current process speculative. [320] at 7. They show only that legislative outcomes are uncertain—an uncertainty the stay's termination provisions expressly

address. *Landis* does not require certainty that another process will end the case; it permits a practical, finite pause when proceeding now creates a serious risk of duplication. 299 U.S. at 255.

Federalism reinforces the same conclusion. Redistricting is primarily a state responsibility, and federal courts should avoid preempting an active legislative task while retaining jurisdiction over any controversy that remains. *Growe v. Emison*, 507 U.S. 25, 34 (1993); *Scott v. Germano*, 381 U.S. 407, 409 (1965) (per curiam). In *Robinson*, the Fifth Circuit allowed Louisiana's Legislature until a date certain to consider a new plan and directed that substantive merits proceedings remain paused until enactment, notice that no plan would be enacted, or the deadline. 86 F.4th at 599-602. That sequencing is even more appropriate here, where no liability finding remains in force, no affected 2026 regular legislative election exists, and the Legislature is already holding hearings.

Plaintiffs' mootness authorities do not foreclose a stay. [320] at 7-8. *Friends of the Earth*, *Students for Fair Admissions*, and *Veasey* concern whether changed conduct or pending legislation required dismissal. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000); *Students for Fair Admissions, Inc. v. University of Texas at Austin*, 142 F.4th 819, 827 (5th Cir. 2025); *Veasey v. Abbott*, 248 F. Supp. 3d 833, 836 (S.D. Tex. 2017). Defendants seek no dismissal at this time. The Court need only to decide whether a short pause will allow it to determine—on an actual record—what plan and claims remain, if any. Nor do *White* and *Singleton* require immediate trial. *White v. State Board of Election Commissioners*, No. 4:22-cv-62-SA, Dkt. [317] (N.D. Miss. July 7, 2026); *Singleton v. Allen*, 833 F. Supp. 3d 1222 (N.D. Ala. 2026). *White* reopened fact and expert discovery and described extensive supplementation, and *Singleton* allowed approximately seven and a half months for the parties to become trial ready.

Dkt. [317] at 4–7, *White*, No. 4:22-cv-62-SA (N.D. Miss. July 7, 2026); *Singleton*, 833 F. Supp. 3d at 1271–72.

### B. A SHORT STAY WILL NOT MATERIALLY PREJUDICE PLAINTIFFS OR COMMIT THE COURT TO AN EXPEDITED 2027 TRIAL.

The Court's TRO Order substantially undercuts Plaintiffs' principal prejudice argument. No regular legislative election will occur until 2027, no affected regular legislative race appears on the regular 2026 ballot, and any alleged injury is not imminent. [318] at 6. It does not establish or require a trial schedule aimed at the 2027 election.

Plaintiffs' proposed May 3, 2027 remedial target does not establish present prejudice. It is a litigation benchmark derived from the timing of the prior remedial process, not a statutory deadline or a date established by this Court. [320] at 6–9. The question now is not the last possible date for relief. And the question is not whether this case can be tried before the 2027 election; for the reasons stated here and in Defendants' response opposing Plaintiffs' expedited briefing schedule, it cannot. The question is whether a stay ending no later than December 28 materially impairs Plaintiffs' rights. The TRO Order answers that question. [318] at 6–7 (concluding that no affected regular legislative election would occur in 2026 and that the November 2027 election was fourteen months away). Defendants do not concede that an expedited pre-2027 trial is feasible or appropriate. If liability is ultimately established after orderly proceedings, as in the underlying case, the Court can then determine the appropriate remedy under *North Carolina v. Covington*, 581 U.S. 486, 488 (2017) (per curiam), including whether special elections are warranted. *See* [229] at 5; [262] at 1, 12.

The Order also rejected the concept that litigation costs in time, money, experts, and expedited preparation are irreparable injury and noted that later corrective relief remains available. [318] at 6–7. A stay changes no vote, no district assignment for a regular 2026 legislative election,

and no current officeholder. *See id.* at 6 n.3. Plaintiffs' own July proposal likewise reflects their practical judgment that a stay through year-end or enactment could conserve resources while district lines might change. [305] at 1, 9–10. Their earlier proposal depended on a different view of the operative lines, but the Court separately held that the resulting timing presents no imminent injury.

The proposed stay is finite and does not prejudge any later schedule. It would end upon the earliest of:

1. enactment of new legislative plans;
2. Defendants' filing of official notice that no new plans will be considered before the 2027 Regular Session; or
3. December 28, 2026.

Defendants would notify the Court of an official special session call or cancellation, enactment, or a decision not to proceed. The parties would file a joint status report by December 28, 2026, and within seven days after any terminating event. The stay would expire on December 28 absent a further order, and any request for additional time would require a separate motion supported by concrete developments and good cause.

The stay is therefore finite, monitored, and independent of legislative success. It neither waives any merits issue nor concedes that a trial can or should occur on a timetable designed to alter the 2027 elections. It simply avoids litigating claims or plans that may soon cease to govern, while the legislative process unfolds.

## V. CONCLUSION

The Court should grant Defendants' Motion to Stay Further Merits Proceedings on the terms set forth above.

THIS the 25th day of September, 2026.

Respectfully submitted,

STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF MISSISSIPPI; LYNN FITCH, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF MISSISSIPPI; MICHAEL WATSON, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE, DEFENDANTS

By: *<u>/s/ Tommie S. Cardin</u>*
Tommie S. Cardin (MB #5863)
ONE OF THEIR COUNSEL

OF COUNSEL:

Tommie S. Cardin (MB #5863)
P. Ryan Beckett (MB #99524)
B. Parker Berry (MB #104251)
J. Dillon Pitts (MB #106399)
**BUTLER SNOW LLP**
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
P.O. Box 6010, Ridgeland, MS 39158-6010
Phone: 601.948.5711
Fax: 601.985.4500
tommie.cardin@butlersnow.com
ryan.beckett@butlersnow.com
parker.berry@butlersnow.com
dillon.pitts@butlersnow.com

Douglas T. Miracle (MB #9648)
**STATE OF MISSISSIPPI**
**OFFICE OF THE ATTORNEY GENERAL**
Post Office Box 220
Jackson, Mississippi 39205-0220
Tel.: (601) 359-4184
Fax: (601) 359-2003
doug.miracle@ago.ms.gov

**CERTIFICATE OF SERVICE**

I, Tommie S. Cardin, one of the attorneys for the Defendants, do hereby certify that I have this day filed the above and foregoing document with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

This the 25th day of September, 2026.

*/s/ Tommie S. Cardin*
Tommie S. Cardin

102675299.v3