**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

MISSISSIPPI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; DR. ANDREA WESLEY; DR. JOSEPH WESLEY; ROBERT EVANS; GARY FREDERICKS; PAMELA HAMNER; BARBARA FINN; OTHO BARNES; SHIRLINDA ROBERTSON; SANDRA SMITH; DEBORAH HULITT; RODESTA TUMBLIN; DR. KIA JONES; MARCELEAN ARRINGTON; VICTORIA ROBERTSON,

*Plaintiffs*,

vs.

STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES, *in his official capacity as Governor of Mississippi*; LYNN FITCH, *in her official capacity as Attorney General of Mississippi*; MICHAEL WATSON, *in his official capacity as Secretary of State of Mississippi,*

*Defendants,*

AND

MISSISSIPPI REPUBLICAN EXECUTIVE COMMITTEE,

*Intervenor-Defendant.*

**CIVIL ACTION NO. 3:22-CV-734-DPJ-HSO-LHS**

**PLAINTIFFS' COMBINED REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A SCHEDULING ORDER AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS**

# TABLE OF CONTENTS

INTRODUCTION ........................................................ 1

BACKGROUND ........................................................ 2

ARGUMENT ........................................................ 3

**I.** PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT EXPEDITION ........................................................ 3

**II.** AN EXPEDITED TRIAL SCHEDULE IS FEASIBLE ........................................................ 6

**III.** DEFENDANTS' SPECULATION AS TO POSSIBLE FURTHER REDISTRICTING IS NOT A BASIS TO STAY OR DECLINE TO EXPEDITE ........................................................ 13

CONCLUSION ........................................................ 17

## INTRODUCTION

This Court should immediately grant Plaintiffs' motion for an expedited scheduling order and deny Defendants' motion for a stay.[1] Absent an expedited schedule, Plaintiffs are likely to suffer irreparable harm, because if and when Plaintiffs re-establish liability, the November 2027 election will likely be too close to obtain a remedy without triggering the *Purcell* principle (or else the election will have happened already). An expedited schedule is plainly feasible, as demonstrated by the parties' ability to adhere to a similar schedule in *White v. SBEC*, a procedurally identical case involving post-*Callais* supplementation. And the need for an expedited schedule is not outweighed by the possibility of special-session, mid-decade redistricting, which Mississippi voters are not asking for and *Callais* does not demand. That possibility is speculative and does not create any prejudice to Defendants in their defense of this case, whereas the risk of irreparable harm from staying this litigation and then running legislative elections on maps that violate federal law is crystal clear.

Defendants' submissions only confirm why expedition is necessary. They seek a stay of this litigation for three months, but they refuse to provide a date by which this Court could feasibly order a remedy without violating *Purcell*. Indeed, Defendants' position now appears to be that it is *already* too late for Plaintiffs to obtain relief in time for November 2027, despite repeatedly representing the opposite when opposing Plaintiffs' motion for a temporary restraining order ("TRO"). *Compare* Defs.' Opp. at 2, 6 (Dkt. 322) with Defs.' TRO Opp. at 2, 6–7, 15–17 (Dkt. 317). Defendants' shifting answer to the timing question shows that their strategy is to run out the

[1] Because Defendants' motion to stay (Dkt. 323) raises virtually identical issues as their simultaneously-filed opposition to Plaintiffs' motion for a scheduling order (Dkt. 319), Plaintiffs submit one combined memorandum of law in reply in support of their motion and in response in opposition to Defendants' motion, in order to minimize briefing and the burdens on the parties and the Court.

clock and prevent Plaintiffs from having an opportunity to submit supplemental evidence, reprove their claims, and obtain relief from vote dilution before the next election.

This Court previously ordered an expedited trial in 2023. Now, with an extensive trial record already in place and only targeted supplementation of that record left to be done, proceeding on an expedited basis is comparatively more feasible—and even if some further redistricting does occur, opening discovery now and beginning to supplement the record will still aid the Court and the parties in resolving this case quickly. This Court should order an expedited schedule so that this matter can be resubmitted and Plaintiffs can have a chance at obtaining relief for the 2027 election cycle.

**BACKGROUND**

Only weeks ago, in opposing Plaintiffs' motion for a TRO to halt the Secretary of State's reversion to the 2022 legislative district lines, Defendants repeatedly argued that "immediate injunctive relief is unnecessary," because the "actual voting injury" of "casting a ballot under an unlawful plan . . . cannot occur before the Court and the Legislature have ample opportunity to act," and that "[t]here is ample time for both legislative and judicial action—if necessary—before the 2027 election cycle." Defs.' TRO Opp. at 2, 6, 16 (Dkt. 317). Defendants emphasized that, in their view, even after completion of a special session that concluded by January 2027, "ample time" would "remain[] for this Court to adjudicate any live federal dispute and determine the effective map before the 2027 legislative elections commence." *See id.* at 3, 17; *see also id.* at 17 ("This Court may instead retain jurisdiction and allow the Legislature a finite opportunity to act while leaving ample time to address any remaining federal controversy."). Indeed, Defendants expressly argued that preliminary relief was "unnecessary" because "*a trial can occur* before that injury affects an election and there is no looming election deadline," telling the Court that there is "no reason this Court could not adjudicate any remaining federal dispute and, if warranted, afford

effective relief well before the 2027 legislative elections." *See id.* at 6–7, 15 (emphasis added).

On September 11, 2026, this Court adopted Defendants' arguments and denied Plaintiffs' TRO motion, finding that the exigent relief sought was unnecessary at the time. *See Miss. NAACP v. SBEC*, No. 22-CV-734, 2026 WL 2676633, at *3 (S.D. Miss. Sept. 11, 2026). Specifically, the Court found that there is still "sufficient time . . . to address [Plaintiffs'] alleged injuries" from the use of the 2022 lines and to impose a remedial map, if needed, before the 2027 election. *Id.* The State thus proceeded to revert back to the 2022 district lines that Plaintiffs had previously shown violate Section 2 of the Voting Rights Act.

The instant motion followed. To avoid delay and mitigate the risk that Plaintiffs will be unable to obtain judicial relief in time before the November 2027 elections, Plaintiffs filed an urgent and necessitous motion for an expedited discovery and trial schedule, as Plaintiffs previously indicated would be necessary if the TRO were denied. Pls.' Mot. (Dkt. 319).

Defendants opposed the motion and filed a separate motion to stay this litigation, now claiming that Plaintiffs will not be prejudiced by a stay and that any attempt to obtain relief before the 2027 election "is neither practical nor feasible." Defs.' Opp. at 2 (Dkt. 322); *see also* Defs.' Stay Br. at 7–8 (Dkt. 324).

## ARGUMENT

## I. PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT EXPEDITION

Defendants' briefs are notable for what they do not say. First, Defendants do not (and cannot) dispute the reality that requiring elections to be held under unlawful district lines constitutes irreparable harm. *See* Pls.' Br. at 5 (Dkt. 320); *e.g.*, *Robinson v. Ardoin*, 86 F.4th 574, 600 (5th Cir. 2023); *Miss. NAACP v. SBEC*, 739 F. Supp. 3d 383, 464–65 (S.D. Miss. 2024) (citing *Reynolds v. Sims*, 377 U.S. 533, 585 (1964)). Nor do they deny that an expedited schedule like the one proposed by Plaintiffs will be necessary if a remedy is to be in place by May 2027 (which,

as demonstrated in 2025, provides sufficient time for the State to implement a judicial remedy, a fact that Defendants also fail to address). Critically, Defendants do not propose any less expedited schedule or provide any date later than May 2027 by which the implementation of a remedy would still be feasible for *Purcell* purposes. *See* Defs.' Opp. at 7 (Dkt. 322) ("The Court need not now determine the last possible date on which relief could be ordered."); Defs.' Stay Br. at 7 (Dkt. 324) (refusing to address the question of "the last possible date for relief" in 2027). The facts that Defendants do not address or dispute are sufficient to confirm that Plaintiffs' proposed schedule is imperative to ensure that voters do not unnecessarily endure another election cycle in which their voting strength is diluted and fair representation is denied.

Defendants contend that this Court's denial of the Plaintiffs' TRO motion "already rejected [Plaintiffs'] claimed urgency," Defs.' Opp. at 6 (Dkt. 322), but that grossly misreads this Court's order. This Court held that insufficient urgency existed to support a TRO as of September 11, 2026, precisely because sufficient time remained, for the moment, for a judicial remedy to be adopted before the November 2027 elections. *See Miss. NAACP*, 2026 WL 2676633, at *3. But this Court did not determine that sufficient time would remain even if the parties were to do nothing for over three months, as Defendants propose now. Nor did it suggest that ensuring that Plaintiffs have a chance to reestablish liability and obtain a remedy in advance of November 2027 is unimportant or unnecessary. Just the opposite.

This Court must accordingly reject Defendants' claim that "a short stay will not materially prejudice Plaintiffs." Defs.' Stay Br. at 7 (Dkt. 324). One might think that, given Defendants' position that "a short stay" of three months makes no difference to Plaintiffs' ability to obtain relief, Defendants must necessarily agree that a slower schedule would still enable relief prior to the 2027 elections. But no: In the same paragraph in which they advocate for a three-month delay,

Defendants make clear that they "do not concede" that *any* "pre-2027 trial is feasible or appropriate." *Id.*; *see also* Defs.' Opp. at 6 (Dkt. 322) ("Defendants do not concede that a trial can or should be completed on a timetable designed to alter the 2027 elections."). In other words, the premise of Defendants' argument that a short stay will cause no prejudice is that 2027 relief is *already impossible*.

Defendants' attempt to backtrack directly contradicts their prior representations to this Court, mere weeks ago, that a TRO was unnecessary because there remains ample time for judicial relief before November 2027. Defs.' TRO Opp. at 2, 6–7, 15–17 (Dkt. 317). Because this Court accepted Defendants' prior arguments that urgent relief is not necessary because ample time remained in advance of November 2027 to grant relief, Defendants are now estopped from taking the position that there is insufficient time to grant relief before next year's election. *See Reed v. City of Arlington*, 650 F.3d 571, 573 (5th Cir. 2011) (en banc). And in any case, this Court already reached the opposite conclusion, holding that there remains "adequate time for courts . . . to act before any harm would occur" in 2027. *Miss. NAACP*, 2026 WL 2676633, at *3.

More specifically, this Court's prior remedial order demonstrates that sufficient time does exist to implement a remedy if one were to be ordered by May 2027. *See* Pls.' Br. at 6 (Dkt. 320). Defendants have refused to provide any evidence or argument to the contrary, despite this Court's questioning at the TRO hearing and Plaintiffs' request that Defendants explain their view on timing. *Id.* Defendants have therefore forfeited any argument that May 2027 would be *too late* for *Purcell* purposes.

On other point bears mention on the subject of irreparable harm and Defendants' representations during the recent TRO proceedings. In downplaying the prejudice to Plaintiffs from further delay, Defendants reiterate that there are "no affected 2026 *regular* legislative

election[s]," Defs.' Stay Br at 6(emphasis added); *see also* Defs.' Opp. at 6 (Dkt. 322). But Defendants this language skirts around the fact that, due to a recent vacancy in Senate District 34,[2] in the Hattiesburg area, a special election will be held using the challenged 2022 district lines on December 22, 2026.[3]

Other vacancies could similarly arise, and additional special elections could be held using district lines that violate federal law. *See* Miss. Code Ann. § 23-15-851 (giving governor 30 days to issue writ of election to fill legislative vacancies). Plaintiffs seek an expedited schedule so they can have a full and fair opportunity to prevent the irreparable harm of running elections on the vote-dilutive 2022 lines from occurring in multiple areas of the State in and before November 2027.[4]

## II. AN EXPEDITED TRIAL SCHEDULE IS FEASIBLE

The schedule in *White v. SBEC*, which also concerns post-*Callais* supplemental discovery and trial, leaves no doubt that Plaintiffs' proposed schedule in this case is eminently achievable. In *White*, on July 10, 2026, the district court gave the parties four months to complete all discovery, including one month for Plaintiffs to disclose expert reports, one month for Defendants to respond, and two weeks for rebuttal. Scheduling Order at 1, *White v. SBEC*, No. 22-CV-62-SA-JMV, Dkt.

---

[2] Bea Anhuci, *Mississippi Democratic Senator Juan Barnett of Heidelberg retires*, Clarion Ledger (Aug.31, 2026), https://perma.cc/ASC9-35DC.

[3] On September 25, Defendant Governor Reeves issued a writ of election to the election commissioners of Forrest, Jasper, and Jones Counties declaring the special election. Under the 2022 lines, SD 34 was drawn from portions of those three counties. Caleb Salers, *Governor sets special election for Senate District 34 seat*, SuperTalk Mississippi Media (Sept. 28, 2026), https://perma.cc/6BGA-Y6VY.

[4] Plaintiffs previously suggested a potential stay pending further redistricting could be appropriate, but as Defendants acknowledge, that position was expressly contingent upon the 2025 maps being kept in place, because the 2025 lines remedied much of the harm caused by the 2022 lines. *See* Defs.' Opp. at 8 (Dkt. 322). But with the reversion back to the 2022 lines, the risk of harm militates sharply against a stay and in favor of expedition.

320 (N.D. Miss. July 10, 2026). Defendants note that the court in *White* indicated that "extensive supplementation" would be necessary post-*Callais*, Defs.' Opp. at 10 (Dkt. 322), but the court there nevertheless rejected Defendants' request for a "lengthy discovery period" and instead set a four-month calendar. Order at 7–8, *White v. SBEC*, No. 22-CV-62-SA-JMV, Dkt. 317 (N.D. Miss. July 7, 2026). And at this time, the parties in *White* have already successfully engaged in supplemental fact discovery and exchanged expert reports, with rebuttal reports and expert depositions to come over the next three weeks, followed by an additional week of trial in mid-November. There is no reason why a similar schedule cannot be adopted in this case.

Defendants' arguments to the contrary are virtually identical to those rejected by the court in *White*.

First, they suggest that the Court "require Plaintiffs to plead the claim they contend is viable under *Callais*." Defs.' Opp. at 3 (Dkt. 322). But in *White*, these same Defendants made the same argument, in the same procedural posture, and the court declined to require Plaintiffs to file a new complaint. Order at 5, *White v. SBEC*, No. 22-CV-62-SA-JMV, Dkt. 317 (N.D. Miss. July 7, 2026) ("As noted by the Plaintiffs, they are the masters of their own complaint.") (citing *Cody v. Allstate Fire and Cas. Ins. Co.*, 19 F. 4th 712, 715 (5th Cir. 2021)).

The reasoning behind the court's decision in that case applies equally here. Defendants rightly concede that a new pleading that contains "particular magic words or cite[s] *Callais* by name" is not actually required, arguing that there must be "substantive notice" of Plaintiffs' claims. Defs.' Opp. at 9 (Dkt. 322). But here just as in *White*, Plaintiffs' post-*Callais* "theory of the case is far from a secret." Order at 5, *White v. SBEC*, No. 22-CV-62-SA-JMV, Dkt. 317 (N.D. Miss. July 7, 2026). Like the plaintiffs in *White*, Plaintiffs here have already provided a detailed roadmap of their theory of the case, discussing each of the four "updates" to the *Gingles* framework and the

kind of evidence that Plaintiffs will adduce to supplement the existing record. *See* Pls.' Br. Regarding Next Steps at 11–15 (Dkt. 305). To the extent that Defendants have further questions, they can propound interrogatories or other discovery requests to fill perceived gaps, as the SBEC did in *White*. There is no lack of substantive notice here that might require a re-do of the pleading phase.

Defendants' contrary argument is that Plaintiffs' Amended Complaint in this action was predicated on a "results only" test, and Plaintiffs did not previously intend to assert any claim based on "invidiously discriminatory intent," Defs.' Opp. at 8 (Dkt. 322). But their suggestion that this framing of the Section 2 claim here is inconsistent with *Callais* or otherwise requires revision misconstrues the *Callais* Court's analysis and, in any event, has no bearing on the proper case management schedule going forward.

As Plaintiffs previously explained, *see* Pls.' Br. Regarding Next Steps at 11 (Dkt. 305), *Callais* confirmed the constitutionality of Section 2 and reiterated that Section 2 consists of "an effects test" and a "disclaimer against proportionality" of representation. *Louisiana v. Callais*, 146 S. Ct. 1131, 1145 (2026) (explaining the history of Section 2 and noting that the legislative compromise produced a "final product [that] included both an effects test in § 2(a) and a 'robust disclaimer against proportionality' in § 2(b)." (quoting *Allen v. Milligan*, 599 U.S. 1, 13 (2023))); *Milligan*, 599 U.S. at 25 ("§ 2 turns on the presence of discriminatory effects, not discriminatory intent."). Though the Court in *Callais* noted that ultimate liability is shown when the "circumstances give rise to strong inference that intentional discrimination occurred," *id.* at 1155–56, nowhere did the Court require plaintiffs to definitively prove intentional discrimination, invidious or otherwise, or install intentional discrimination as any element of a Section 2 claim.

Rather, *Callais* imposed discrete updates on the *Gingles* framework, such as race-blind maps and a requirement to control for party in assessing racially polarized voting, precisely to ensure that, when the updated *Gingles* test has been satisfied, the requisite "strong inference" of intentional discrimination will be present. *Callais,* 146 S. Ct. at 1159. Consistent with that, the *Callais* Court relied on and reaffirmed *White v. Regester*, 412 U.S. 755 (1973), a constitutional vote dilution case where the circumstances gave rise to a strong inference of intentional discrimination. *Callais*, 146 S. Ct. at 1145. Indeed, the *Gingles* framework, and specifically the Senate factors informing the totality of the circumstances test, was drawn from constitutional vote dilution cases like *White v. Regester* and *Rogers v. Lodge*. *See Thornburg v. Gingles*, 478 U.S. 30, 48 (1986).

Notably, the factual circumstances in *White v. Regester* are similar to the evidence that Plaintiffs have already pleaded and proved in this case, as this Court has recognized.[5] *Miss. NAACP*, 739 F. Supp. 3d 383, 452 (S.D. Miss. 2024) ("In *White [v. Regester]*, the Court found Equal Protection violations in some Texas districts based on evidence of lack of minority political success since Reconstruction, a history of discrimination, voting requirements that depressed minority votes, racial campaign tactics, and a lack of responsiveness from elected officials in minority communities. Our facts and record are similar."); *see also White v. Regester*, 412 U.S. 755, 765–67 (1973). The parallels between the evidence already in the record and the original constitutional vote dilution cases on which the reaffirmed *Gingles* vote-dilution framework was

[5] While Defendants attempt to characterize Plaintiffs' claims as "results only," Defs.' Opp. at 9 (Dkt. 322), Plaintiffs merely contended that proof of intentional discrimination was not *necessary* for Section 2 liability. Plaintiffs never represented that proof of intentional discrimination would be *irrelevant*, and indeed, the Amended Complaint contains numerous allegations of "discriminatory electoral devices," racial appeals, including those made by sitting legislators, and the lack of legitimate policy justifications behind the challenged districts, all of which may be strong and mutually reinforcing circumstantial evidence supporting an inference of intentional discrimination. *See, e.g.*, Am. Compl. at 88–95 (Dkt. 27).

based only highlights the need to move quickly to supplement the existing record so that the real possibility of irreparable harm can be prevented.

To be sure, Defendants may disagree with Plaintiffs' interpretation of *Callais* and are free to advance their own understanding—but either way, this Court can apply the correct standard to the evidence that Plaintiffs will put forth to meet their burden and establish liability. Disagreement between the parties over the interpretation of *Callais* can be resolved via briefing and argument; it need not slow the pace of supplemental discovery and certainly does not require a lengthy do-over from first principles.[6]

Defendants also claim, incorrectly, that an expedited schedule is unworkable because of a need for "substantial" fact discovery implicating "the State's legitimate districting objectives and political goals," which in turn could raise questions of privilege that might need to be resolved. Defs.' Opp. at 11 (Dkt. 322). As an initial matter, *Callais* requires plaintiffs to take into account "specified" goals. *Callais,* 146 S. Ct. at 1159. Thus, to the extent that legislators had undisclosed or unspecified political objectives, they are irrelevant. In addition, the State cannot simultaneously assert privilege over those objectives while requiring Plaintiffs to satisfy them—a classic sword-and-shield problem. *See, e.g.*, *League of United Latin Am. Citizens v. Abbott*, 708 F. Supp. 3d 870, 886 (W.D. Tex. 2023); *League of Women Voters of Fla., Inc v. Lee*, No. 21-CV-186, 2022 WL 610400, at *2 (N.D. Fla. Jan. 4, 2022); *Singleton v. Merrill*, 576 F. Supp. 3d 931, 940 (N.D. Ala.

[6] Even if Defendants were right that Plaintiffs are now required to prove invidious discriminatory intent despite disclaiming any prior need to do so as part of the final pretrial order, Defs.' Opp. at 8 (Dkt. 322), a superseding final pretrial order would be appropriate given the supplemental trial proceedings and the intervening change in the legal standard. Categorically barring Plaintiffs from amending the final pretrial order to conform to a change in the law would undoubtedly constitute a "manifest injustice," and Defendants do not appear to suggest otherwise. *Id.* at 8–9 (citing *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 345–46 (5th Cir. 2002)).

2021); *see also Willy v. Admin. Rev. Bd.*, 423 F.3d 483, 497 (5th Cir. 2005) ("[A] party may not use privileged information both offensively and defensively at the same time.").

Here, the relevant legislative history has already been explored in discovery and is already in the trial record. This includes the redistricting objectives formally specified by the Legislature. *See* Pls.' Br. Regarding Next Steps at 13 (Dkt. 305) (discussing Miss. Code Ann. § 5-3-101 and Joint Trial Exhibit 8). If Defendants contend there were other, hidden legislative goals beyond those in the publicly available legislative record that Plaintiffs must account for in their *Gingles* submissions, then Defendants must identify those objectives and support them with evidence or else waive them. Plaintiffs already engaged in motion practice over legislative privilege during the original discovery phase, *see* Order (Dkt. 147) (denying motion to compel privilege log), and do not need or intend to do so again as part of the supplemental discovery process. Defendants cannot have it both ways by maintaining that extensive fact discovery into legislative intent is necessary to prove Plaintiffs' case while also maintaining that the evidence Plaintiffs already sought regarding legislative intent remains privileged from disclosure. *See* Joint Stipulation as to Discovery Matters (Dkt. 159) ¶ 4 (Defendants agreeing not to rely on documents withheld on the basis of legislative privilege).

Moreover, even if significant fact discovery were needed, that is only more of a reason to deny Defendants' motion for a stay and put a scheduling order in place, so that the parties can have the maximum amount of time to litigate the unspecified ancillary disputes that Defendants hint might somehow arise. Plaintiffs remain open to negotiating a schedule with Defendants that builds in additional time for discovery, especially if Defendants are able to identify some schedule that will preserve Plaintiffs' fair opportunity to resubmit this case for decision and obtain relief in advance of November 2027.

Defendants are also wrong to look to the original discovery schedule as a benchmark for the proposed supplemental discovery period. *See* Defs.' Opp. at 7 (Dkt. 322). The parties are not beginning from a blank slate—most, if not all, of the evidence that the parties have already adduced remains relevant and need only be reevaluated under the updated *Callais* revisions to *Gingles*. That is because the Supreme Court in *Callais* preserved the existing *Gingles* requirements while adding only the specified updates. Thus, the more appropriate benchmark for a *supplemental* discovery period is the one ordered by the court in *White v. SBEC*. Defendants also point out that the trial schedule in *Allen* is longer than the one Plaintiffs propose here, Defs.' Stay Br. at 6 (Dkt. 324), but the schedule in *Allen* was predicated on Plaintiffs' being protected from irreparable harm by the Court's preliminary injunction, which was entered at the same time as the trial schedule.[7] *See Singleton v. Allen*, 833 F. Supp. 3d 1222, 1271–72 (N.D. Ala. 2026). Moreover, *Allen* involves Congressional elections, which after 2026 will not occur again until 2028, allowing more than enough time for the Alabama matter to be tried and for relief to be put into place before November 2028. Here, as discussed above, Plaintiffs face imminent irreparable harm without an expedited schedule that allows for the possibility of relief in advance of Mississippi's November 2027 legislative elections.

In their final effort to delay and prolong discovery, Defendants point to Plaintiffs' Fourteenth Amendment racial gerrymandering claims, Defs.' Opp. at 3, 10 (Dkt. 322), which have not been impacted by *Callais*. Plaintiffs are not required to and do not intend to take discovery or introduce additional evidence specific to those constitutional claims, although this Court may need

[7] Defendants also suggest that the district court in *Allen* "rush[ed]" to issue a preliminary injunction only two weeks after vacatur under *Callais*, but this Court, unlike in *Allen*, would not be issuing an injunction until after supplemental discovery and the submission of additional trial evidence to conform with the updated *Callais* standard. *See* Defs.' Opp. at 3 (Dkt. 322); *Allen*, 833 F. Supp. 3d at 1237–39, 1246 n.9 (panel receiving only *Purcell*-relevant evidence at preliminary injunction hearing).

to consider those claims anew and may rely on any new evidence that the parties may adduce post-*Callais* to the extent such evidence may also be relevant to the constitutional claims. Plaintiffs at this time *do* intend to proceed as against two of the districts challenged on constitutional grounds, Senate District 2 in the DeSoto County area and HD 22 in the Chickasaw County area, which are also areas where Plaintiffs have alleged and previously proved Section 2 vote dilution. Accordingly, because Plaintiffs' constitutional claims do not broaden the scope of supplemental discovery or trial, their continued presence has no independent bearing on the supplemental discovery period or the trial schedule. And because Plaintiffs do not abandon their constitutional claims, Defendants' suggestion that the Court may need to reevaluate the necessity for the currently constituted three-judge panel is unwarranted. *See* Defs.' Opp. at 3, 10 (Dkt. 322).

In short, an expedited schedule is both necessary and practicable. As Plaintiffs made clear in their request for a TRO, Plaintiffs would have preferred to avoid seeking an expedited trial. But with the reimposition of the 2022 lines, Plaintiffs now have no choice but to move quickly to try to prevent irreparable harm.

## III. DEFENDANTS' SPECULATION AS TO POSSIBLE FURTHER REDISTRICTING IS NOT A BASIS TO STAY OR DECLINE TO EXPEDITE

Defendants seek a stay based on the prospect of further redistricting action by the Legislature, but a stay is not warranted here—especially when the clock is running on Plaintiffs' voting rights. *See supra* Part I. In addition to the risk of irreparable harm to voters, "the public interest [also] favors prompt resolution of cases concerning federal voting rights violations." *La. NAACP v. Louisiana*, 495 F. Supp. 3d 400, 419 (M.D. La. 2020) (collecting cases). Meanwhile, any prejudice to Defendants from advancing this case is speculative and not irreparable; even if new districts are enacted, beginning supplemental discovery now would expedite judicial resolution of any challenge to those new districts and would not waste resources. Defendants have

therefore failed to carry their burden of justifying a stay of litigation. *See In re Toronto-Dominion Bank*, 59 F.4th 1326, 1327 (5th Cir. 2023); *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, No. 13-CV-0366, 2015 WL 13227930, at *5 & n.101 (E.D. La. Dec. 4, 2015) (citing *Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982)).

Defendants' claimed interest in a stay is too speculative to warrant a stay. *See In re Ramu Corp.*, 903 F.2d 312, 320 (5th Cir. 1990) (holding that "good cause [for a stay] requires more than the mere possibility of prejudice"); *X Corp. v. Media Matters for Am.*, No. 23-CV-1175, 2024 WL 1895255, at *1 (N.D. Tex. Apr. 26, 2024) (holding that "a stay of discovery is an 'extraordinary step'" and that "courts should only exercise 'discretion to stay discovery for good cause shown'" (citation omitted)). *Callais* was decided in April 2026, and despite repeated insinuations that a special session would be convened for redistricting, none has been. Defendants note that a legislative committee has begun holding some statewide hearings, Defs.' Opp. at 5 (Dkt. 322), but those are merely public listening sessions, and the public response has been firmly opposed to unnecessary mid-decade redistricting, especially at the expense of Black Mississippians' voting power.[8] Defendants suggest that the Legislature is "actively considering replacement plans," Defs.' Opp. at 6 (Dkt. 322), but they provide no evidence of that, and no plans have been released or reported in the press. And while the Governor has suggested that he will call a special session at some point, he has not done so yet, and even if he did, the Legislature could still choose not to adopt new lines, especially given significant public opposition and the fact that new redistricting plans are not required by *Callais*. Defendants' invitation to read political tea leaves and presume

[8] *See, e.g.*, Taylor Vance, *Hattiesburg voters pack hearing to oppose redistricting plans*, Miss. Today (Sept. 18, 2026), https://perma.cc/XZD3-5MU2; Jaylin Smith, *'Leave Us Alone': Speakers Push Back at Mississippi Redistricting Hearing in Cleveland*, Miss. Free Press (Sept. 25, 2026), https://perma.cc/D8M5-B9N4.

an outcome cannot overcome the real and present need to ensure that Plaintiffs can obtain a remedy to avoid irreparable harm.

And in the meantime, the *Purcell* window looms closer. If this case is stayed until December 28, 2026, as Defendants propose, Defendants will no doubt contend on New Year's Eve that there is no avenue towards relief in 2027, because candidate qualification begins on January 1, 2027, Defs.' TRO Opp. at 4 n.2 (Dkt. 317), and supplemental discovery will not yet have commenced. By contrast, denying a stay "would permit the Court to move forward with the case . . . and would favor resolution of the dispute as quickly as practicable." *La. NAACP*, 495 F. Supp. 3d at 419.

Nor can Defendants identify any serious harm even if their chain of predictions comes to pass. Defendants claim that an expedited discovery schedule will consume litigation resources, Defs.' Opp. at 8, 11 (Dkt. 322), but they also repeatedly acknowledge that "the costs of expedited discovery" and the "burden of litigation" do not constitute irreparable harm, Defs.' Opp. at 2, 7 (Dkt. 322). *See SEC v. First Fin. Grp. of Texas, Inc.*, 659 F.2d 660, 668 (5th Cir. 1981) (affirming district court decision not to stay proceedings because stay was not necessary "to prevent a party from suffering substantial and irreparable prejudice"). The prospect that the parties may expend some additional resources as a result of expedited discovery despite the possibility of further redistricting action by the Legislature cannot outweigh Plaintiffs' interest in avoiding the irreparable harm of having their right to vote diluted by unlawful district lines. *See* Pls.' Br. at 5 (Dkt. 320) (collecting cases).

Moreover, the expedited discovery that Plaintiffs propose is designed to conserve litigation and judicial resources. Absent an expedited discovery and trial schedule, Plaintiffs will have no choice but to file a motion for a preliminary injunction, in order to try to obtain interim relief ahead

of the November 2027 elections. That is not Plaintiffs' preferred course of action, because it would likely entail having two trial-like proceedings in this case—a preliminary injunction hearing (including any relating remedy proceedings should Plaintiffs prevail) and a later trial on the merits (again including potential remedial remedy proceedings). Both sets of proceedings would feature the same or similar sets of expert witnesses, facts, and legal standards. That would involve greater duplication and burden on the parties and the Court than a single hearing on the merits of Plaintiffs' claims under *Callais*.

Notably, the parties' efforts to engage in expedited discovery are unlikely to be "waste[]." *See* Defs.' Opp. at 11 (Dkt. 322). Even if the Legislature were to enact a new map, unless it remedies the alleged vote dilution, much of Plaintiffs' supplemental evidence will remain relevant and applicable. For instance, *Callais* requires that plaintiffs provide an analysis of racial polarization that "controls for party affiliation." *See* 146 S. Ct. at 1159. Such an analysis does not meaningfully depend on the precise lines that the Legislature enacts. Nor will the totality of the circumstances evidence significantly differ; regardless of the precise lines enacted, that analysis must focus on "current data" and "current political conditions." *Id.* at 1160. By contrast, if the Court were to stay the case as Defendants suggest and the parties do not begin discovery now, the parties will face the prospect of an even more truncated discovery and trial schedule (and less time for this Court to rule and less opportunity for the Legislature to enact a remedy if liability is reestablished) once the stay that Defendants request is lifted.

Defendants suggest that the circumstances in 2023 were different when this Court set an expedited trial, because the Court was then presented with a "concrete electoral objective" of potentially ordering special elections that would coincide with planned elections in 2024 to minimize disruption. Defs.' Opp. at 7 (Dkt. 322). But the remedy that Plaintiffs intend to seek at

this juncture is just as concrete. Granting a remedy in time for November 2027 would also minimize disruption by ensuring that elections in remedial districts can be held at the same time as the regularly scheduled legislative elections, which would obviate the need for special elections to truncate, for the second time in this case, the elected terms of affected legislators.

A legislature can always engage in further redistricting. Staying a case simply because of the possibility that this might occur would open the door to unlimited gamesmanship in redistricting cases, especially given the harshness of the *Purcell* principle. As this Court recognized when it ordered an expedited trial schedule in 2023, the Court must preserve its ability to grant relief, and it should give Plaintiffs a fair chance to seek that relief in advance of the next election. Here, those imperatives require this case to proceed via the issuance of a scheduling order that provides for expedited proceedings to supplement the record and get this case resubmitted for decision.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for an expedited scheduling order and deny Defendants' motion to stay.

Respectfully submitted,

This the 28th day of September, 2026.

*<u>/s/_ Ari J. Savitzky_____</u>*
Ari J. Savitzky
*asavitzky@aclu.org*
Ming Cheung
*mcheung@aclu.org*
Nina Nayiri McKay*
*nmckay@aclu.org*
ACLU FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500

Joshua Tom, MSB 105392
*jtom@aclu-ms.org*
ACLU OF MISSISSIPPI
101 South Congress Street
Jackson, MS 39201
(601) 354-3408

Jennifer Nwachukwu
*jnwachukwu@lawyerscommittee.org*
David Rollins-Boyd
*drollins-boyd@lawyerscommittee.org*

Kelli Slater*
*kslater@aclu.org*
ACLU FOUNDATION
915 15th Street NW
Washington, DC 20005
(202) 457-0800

Robert B. McDuff, MSB 2532
*rbm@mcdufflaw.com*
MISSISSIPPI CENTER FOR JUSTICE
767 North Congress Street
Jackson, MS 39202
(601) 969-0802

Carroll Rhodes, MSB 5314
Law Offices of Carroll Rhodes
*crhodes6@bellsouth.net*
PO Box 588
Hazlehurst, MS 39083
(601) 894-1464

John P. Lavelle, Jr.
*john.lavelle@morganlewis.com*
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103-2921
Telephone: +1.215.963.4824
Facsimile: +1.215.963.5001

Javon Davis
*jdavis@lawyerscommittee.org*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street NW Suite 900
Washington, DC 20005
(202) 662-8600

Drew C. Jordan
*drew.jordan@morganlewis.com*
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Telephone: +1.202.739.5962
Facsimile: +1.202.739.3001

**Pro hac vice motion forthcoming*
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Ari J. Savitzky, do certify that on this day I caused to be served a true and correct copy of the foregoing by electronic mail to all counsel of record.

This the 28th day of September, 2026.

*/s/ Ari J. Savitzky*
Ari J. Savitzky