**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

MISSISSIPPI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; DR. ANDREA WESLEY; DR. JOSEPH WESLEY; ROBERT EVANS; GARY FREDERICKS; PAMELA HAMNER; BARBARA FINN; OTHO BARNES; SHIRLINDA ROBERTSON; SANDRA SMITH; DEBORAH HULITT; RODESTA TUMBLIN; DR. KIA JONES; MARCELEAN ARRINGTON; VICTORIA ROBERTSON,

*Plaintiffs*,

vs.

STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES, *in his official capacity as Governor of Mississippi*; LYNN FITCH, *in her official capacity as Attorney General of Mississippi*; MICHAEL WATSON, *in his official capacity as Secretary of State of Mississippi,*

*Defendants,*

AND

MISSISSIPPI REPUBLICAN EXECUTIVE COMMITTEE,

*Intervenor-Defendant.*

**CIVIL ACTION NO.
3:22-cv-734-DPJ-HSO-LHS**

# DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR STAY

## I. INTRODUCTION

Plaintiffs' opposition manufactures a contradiction that the record forecloses. They accuse Defendants of "backtrack[ing]" only by rewriting the issue presented during the TRO proceedings, selectively quoting Defendants' TRO brief, and ignoring the same brief's express statement that

"it is too late to compress this case into an expedited schedule and trial under a new framework announced in *Callais*." [328] at 7; [317] at 12. Defendants did not change positions. Plaintiffs changed the question.

The TRO proceedings concerned a narrow, interim dispute: whether the Secretary of State should be immediately enjoined from configuring the Statewide Election Management System ("SEMS") to the 2022 lines while the Court determined which plans—the 2022 Plans or the 2025 resolutions—were operative after vacatur. The present Motion asks a different question: whether the parties should immediately undertake a full post-*Callais* merits process, with expert reports beginning within weeks and a statewide legislative redistricting trial in December 2026 or January 2027, all while the Legislature is actively considering replacement plans. [308] at 2-3; [319]; [320] at 8-9. Those are different questions, presented in different procedural postures, under different legal standards. And Defendants' positions on those questions have been consistent.

Plaintiffs quote general statements from Defendants' TRO brief that judicial and legislative remedies remained available before an affected regular election. [328] at 2–5. But they omit the same brief's direct treatment of the merits trial question: "Bottom line: it is too late to compress this case into an expedited schedule and trial under a new framework announced in *Callais*," particularly because the existing record was not developed under that framework. [317] at 12. Defendants further explained that, if the 2022 Plans were operative, Plaintiffs could pursue their claims "in the *ordinary* course under the new *Callais* standard." *Id.* at 12–13 (emphasis added). There is no backtracking and no basis for estoppel.

The reason those are genuinely different questions is *Callais* itself. *Callais* holds that Section 2 "imposes liability only when" the evidence supports "a strong inference that the State intentionally drew its districts to afford minority voters less opportunity because of their race."

*Louisiana v. Callais*, 608 U.S. 85, 146 S. Ct. 1131, 1157 (2026). Under the updated *Gingles* framework, Plaintiffs' alternative maps must be race neutral and perform "just as well" on every legitimate state objective and must have a racially polarized voting analysis that controls for partisan affiliation. *Callais*, 146 S. Ct. at 1159-63; *Allen v. Milligan*, 608 U.S. 511, 513-14 (2026) (per curiam). Plaintiffs tried this case under the former "results" framework that did not require proof of intent. That material change is why an orderly—not compressed—process is required.

Plaintiffs' other points do not establish prejudice from a short stay. The December 22, 2026 special election in Senate District 34 will occur before Plaintiffs' own proposed schedule could yield a liability ruling, much less a remedy. And *White v. State Board of Election Commissioners* is not "procedurally identical." [328] at 3. It involves one Section 2 claim concerning Mississippi's three Supreme Court districts, focused on vote dilution in District 1. This case challenges two statewide legislative plans through multiple Section 2 theories and constitutional claims. [27]; [199]. *White* also found the existing record was incomplete and required "extensive supplementation." No. 4:22-cv-62-SA, Dkt. [317] at 4-7 (N.D. Miss. July 7, 2026).

Defendants seek a stay through the earliest of enactment, official notice that no new plans will be considered before the 2027 Regular Session, or December 28, 2026. [323] at 1-2. The stay does not decide mootness, predict enactment, or foreclose any future remedy. It avoids forcing the Court and the parties to build a record while the Legislature conducts an official process that may replace the plans under review. A short, date certain stay under *Robinson v. Ardoin* remains the correct course. 86 F.4th 574 (5th Cir. 2023).

## II. ARGUMENT

### A. PLAINTIFFS' ESTOPPEL THEORY CONFUSES THE TRO'S INTERIM OPERATIVE MAP ISSUE WITH THE PRESENT REQUEST FOR A COMPRESSED TRIAL.

Plaintiffs accuse Defendants of reversing position and pursuing a strategy to "run out the clock." [328] at 1–5. That accusation is irreconcilable with the very TRO brief Plaintiffs cite. The same filing that used the "ample time" language Plaintiffs quote also expressly stated that "it is too late to compress this case into an expedited schedule and trial under a new framework announced in *Callais*." [317] at 12. Plaintiffs' estoppel theory survives only by quoting the first statement, omitting the second, and pretending the two addressed the same question. They did not.

Plaintiffs' TRO did not seek a statewide merits trial adjudicating the underlying constitutional and Section 2 allegations present in this case. It sought immediate relief restraining Secretary Watson from restoring the 2022 lines in SEMS and requiring reversal of any changes already made "until such time as the Court determines the effect, if any, of the U.S. Supreme Court's vacatur order . . . on the 2025 lines." [308] at 2-3. Plaintiffs themselves described the requested relief as "limited to maintaining the status quo until this Court can resolve the question of which district lines are currently in effect." *Id.* at 2. The Rule 65 question was whether reversible administrative work in SEMS created an imminent, irreparable injury before the Court resolved the operative map dispute.

Defendants answered that question: no. They argued that no affected regular legislative election would occur in 2026, that SEMS did not determine which plan possessed legal force, that the administrative work in SEMS could be modified after judicial or legislative action, and that the Court retained time to determine the effective map (*i.e.*, 2022 or 2025) before the 2027 cycle. [317] at 2–4, 6–8, 15–18. Defendants' arguments addressed imminence and the need for

extraordinary interim relief. They did not concede that Plaintiffs' later proposed condensed merits and remedy schedule would be fair or feasible. (And it isn't.)

Plaintiffs' selective quotation is especially untenable because the same TRO brief directly answered the precise question now before the Court. Defendants squarely addressed Plaintiffs' anticipated attempt to relitigate the 2022 Plans under *Callais*:

> Bottom line: it is too late to compress this case into an expedited schedule and trial under a new framework announced in *Callais*, particularly when the existing record was not developed under that framework and does not support doing so.

[317] at 12. That statement cannot be reconciled with Plaintiffs' claim that Defendants previously conceded the feasibility of an expedited post-*Callais* trial. Defendants expressly stated the opposite. Defendants also noted that the original case took approximately fifteen months from complaint to trial even on an expedited schedule and stated that, if the 2022 Plans were deemed effective, Plaintiffs could proceed "in the ordinary course under the new *Callais* standard." *Id.* at 12–13 & n.4. Plaintiffs now manufacture a contradiction by isolating the TRO brief's discussion of the interim operative map dispute while ignoring its explicit treatment of the full merits trial question. Selective quotation cannot turn those statements into a basis for judicial estoppel. Defendants have not changed their answer. Plaintiffs changed the question and then claimed Defendants' answer changed.

Plaintiffs then repeat the same maneuver with the Court's TRO Order, attempting to convert a ruling that no imminent harm is near into a scheduling issue the Court never addressed. The Court's Order held that Plaintiffs had not shown imminent irreparable harm because no regular legislative election would occur in 2026, the November 2027 election was fourteen months away, and adequate time remained "for courts or the Legislature to act before any harm would occur" as it relates to the SEMS issue in the TRO. [318] at 6. (That holding mirrors *Robinson v. Ardoin*,

where the Fifth Circuit found no imminent deadline—and vacated a preliminary injunction—because the general elections were more than thirteen months away, "even though the underlying controversy [was] not moot." 86 F.4th 574, 600 (5th Cir. 2023)). The Court did not set discovery deadlines, did not find that a post-*Callais* trial could be completed by January 2027, did not establish May 3 as a remedial deadline, and did not hold that relief affecting the 2027 election must remain available regardless of the proceedings required after vacatur. Plaintiffs added those conclusions to the Order—the Court did not.

Once Plaintiffs' selective reading of the TRO record is corrected, their estoppel theory collapses before the doctrine is even reached. Judicial estoppel requires a later position that is "clearly inconsistent" with an earlier position accepted by the court. *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001); *Reed v. City of Arlington*, 650 F.3d 571, 573–74 (5th Cir. 2011) (en banc). Plaintiffs identify no such position. Opposing emergency relief directed at SEMS changes is not inconsistent with opposing a later demand to compress an entire statewide merits and remedy proceeding into a few months. Plaintiffs invoke an equitable doctrine to bind Defendants to a position Defendants never took and the Court never adopted. That is not judicial estoppel.

Plaintiffs' *Purcell* argument is another attempt to manufacture a concession from silence on a question that was not presently before the Court. [328] at 4–6. *Purcell* was part of the equitable backdrop during the TRO proceedings and remains so now. Its application depends on the relief sought, the proximity of the election, and the disruption an order would cause when relief is requested. *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam). Defendants did not waive that doctrine by declining to litigate—during a TRO proceeding about SEMS—the last hypothetical date for a future remedial order. Plaintiffs' May 3 target is a litigation benchmark derived from the

prior remedial process—not a statutory safe harbor or a deadline previously adopted by this Court. [320] at 6–9.

### B. THE SENATE DISTRICT 34 SPECIAL ELECTION DOES NOT ESTABLISH PREJUDICE CAUSED BY THE REQUESTED STAY.

Plaintiffs invoke the December 22, 2026 special election in Senate District 34 as though it proves the need for expedition.[1] [328] at 7-8. It proves nothing about the relief now requested. Plaintiffs' own schedule closes discovery on December 18, begins trial on January 11, anticipates a liability ruling in February or March, and seeks a final remedial ruling by May 3. [320] at 8–9. The election will be over before Plaintiffs' proposed trial begins. It does not justify denying the stay or accelerating a challenge to the statewide legislative plans.

Any attempt to alter the lines governing the already called special election for Senate District 34 would also present the late intervention concerns addressed by *Purcell*. The Court need not decide that issue now because Plaintiffs have not moved for relief capable of changing the December 22 special election.[2] The point is simply that Senate District 34 supplies no logical basis for the statewide December or January trial Plaintiffs request. Senate District 34 is a distraction from the actual scheduling question, not an answer to it.

Next, a midterm vacancy in one district is an ordinary incident of any districting plan, not a statewide scheduling emergency. Plaintiffs speculate that other vacancies "could similarly arise," [328] at 6, but identify no other new vacancy or scheduled special election involving their challenged areas. That contingent possibility does not establish material prejudice from a stay ending no later than December 28, 2026. This is the same kind of speculation the Court rejected in denying the TRO. [318] at 6. If Plaintiffs later establish liability through orderly proceedings,

[1] Notably, the vacancy did not occur until August 31, 2026, after the August 28, 2026 status conference.

[2] Nor would they because the political performance of Senate District 34 demonstrates that it will almost certainly elect a Democrat in both the 2022 and 2025 Plans.

the Court can then determine the appropriate district specific remedy under *North Carolina v. Covington*, 581 U.S. 486, 488–89 (2017), including whether a special election is equitable.

### C. *WHITE* DOES NOT ESTABLISH THAT PLAINTIFFS' PROPOSED SCHEDULE IS APPROPRIATE HERE.

Plaintiffs repeatedly label *White v. State Board of Election Commissioners* as "procedurally identical" and treat the schedule entered there as proof that their proposal is feasible here. [328] at 1, 7–13. Repetition does not make the assertion accurate.

*White* involves a single Section 2 claim challenging the district boundaries used in Mississippi Supreme Court elections. The map consists of three judicial districts, and the claim focuses on alleged vote dilution in District 1. The amended complaint abandoned the constitutional claims contained in the original complaint. *White v. State Board of Election Commissioners*, No. 4:22-cv-62-SA-JMV, [264] at 1–3 & n.1, 10 (N.D. Miss. Aug. 19, 2025).

This case is materially broader. Plaintiffs challenge separate House and Senate plans through Section 2 claims involving seven geographic areas and additionally plead five district specific Fourteenth Amendment claims. The original scheduling record reflected ten directly challenged districts, approximately sixty adjoining districts potentially affected, as many as twelve testifying experts, and a proposed ten-day trial. [37] at 2–4; [27] ¶¶ 184–191. Plaintiffs now state that, "at this time," they intend to proceed with the constitutional claims concerning Senate District 2 and House District 22. [328] at 13. That statement narrows their present intention, but it does not dismiss the remaining Count II claims or modify the final pretrial order. It confirms that the case's operative scope still must be fixed before a trial schedule is imposed.

More importantly, *White* refutes Plaintiffs' description of the remaining work as "targeted supplementation." The court found the prior record incomplete regarding the State's objectives, held that further factual development was necessary, reopened both fact and expert discovery, and

concluded that "extensive supplementation" was required. *White*, [317] at 5–8 (N.D. Miss. July 7, 2026). The court specifically warned that denying discovery would "hamstring" the State. *Id.* at 5–6. Those issues apply with at least equal force here—and reflect what *Callais* and *Allen v. Milligan* require. *Allen*, 608 U.S. at 513-14; *Callais*, 146 S.Ct. at 1155-60.

And *White* did not allow the plaintiffs' desired November 2027 remedy to dictate the liability schedule. The court stated that it was "squarely focused on liability," would address remedy "if/when appropriate," and regarded the plaintiffs' desired special election timing as "not the predominant concern" at that stage. *White*, [317] at 7 (N.D. Miss. July 7, 2026). That is the same order of events Defendants request here: first determine what claims and plans remain, then develop a complete *Callais* record, adjudicate liability, and address remedy only if liability is established.

A discretionary schedule fitted to a narrower, single claim judicial redistricting case does not establish that the present case can be compressed into the same calendar. The fact that the parties in *White* have complied with the order entered in that case proves only that they have complied with that order. It does not erase the material differences in claims, districts, proof, and pending legislative activity in the present case.

### D. PLAINTIFFS' REMAINING ARGUMENTS DO NOT OVERCOME THE PRACTICAL BASIS FOR A STAY.

The requested stay is a routine exercise of this Court's authority. The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket," and its exercise calls for judgement that weighs competing interests and maintains an even balance. *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). The Fifth Circuit applied that authority to a materially identical situation in *Robinson*, directing the district

court to "conduct no substantive proceedings until the earliest of" completed legislative action, notice that the Legislature would not act, or a date certain. 86 F.4th at 601.

Restraint is warranted for the additional reason that rushing risks reversible error. In *Allen*, a three-judge court entered a renewed injunction just two weeks after the Supreme Court vacated its prior injunction under *Callais*. 608 U.S. at 513. The Supreme Court stayed it, holding the State likely to succeed because the district court departed from *Callais*—finding a violation on an alternative map that did not perform "just as well" on all legitimate criteria and finding the failure to control for partisan affiliation. *Id.* at 513-515. A December 2026 or January 2027 trial on a record not carefully built for the *Callais* framework invites the same risk of error here.

Plaintiffs characterize future legislative action as speculative because no special session has yet been called and no plan has been released. [328] at 14–15. But Defendants do not ask the Court to presume enactment. The requested stay's termination provisions account for the possibility that no plan will be enacted. But the facts remain that both chambers established redistricting committees, the Standing Joint Committee was appointed, and the Committee conducted an official statewide hearing process concerning legislative redistricting. [306] at 2–3, 14–16; [324], Ex. A. Those governmental acts create a concrete risk that immediate map specific litigation will be duplicated or overtaken.

Plaintiffs' observation that some political science or totality evidence might remain useful under a replacement plan does not eliminate that risk. [328] at 16. The central *Callais* work is plan specific. Race neutral illustrative districts must be measured against the challenged configuration and the State's legitimate objectives; the relevant legislative record, decisionmakers, districting criteria, alleged injuries, standing, and requested relief may change with a new enactment. The

Court should not order discovery now merely to bank generalized evidence for a potential challenge to legislation that does not yet exist.

Plaintiffs' "public interest" argument does not tip the balance. [328] at 15. The public interest in voting rights cases is best served by adjudication under the *correct* legal standard and by respect for the Legislature's primary role in redistricting—not by a rushed judgment that *Purcell* would bar and that *Allen* shows is prone to reversal. *Allen*, 608 U.S. at 513-15.

Plaintiffs also conflate the Rule 65 irreparable harm standard with the Court's separate authority under *Landis*. [328] at 15. Defendants do not contend that ordinary litigation expense is itself irreparable injury. The hardship and inefficiency arise from requiring the parties, legislators, experts, and the Court to build and adjudicate a map specific record while an official process may replace the maps during that work. *Landis* permits the Court to consider that duplication, the orderly disposition of the case, and the competing prejudice from a short delay. 299 U.S. at 254–55.

Plaintiffs repeatedly label the anticipated injury "irreparable," but their argument largely assumes the point. A short stay does not eliminate the Court's remedial authority. If liability is established only after the 2027 elections, the Court may then consider whether special elections or other relief are equitable under *Covington*. 581 U.S. at 488-89. That is what occurred after the 2023 elections: this Court adjudicated liability in 2024 and later ordered special elections under remedial plans in 2025. [229] at 5; [262] at 1, 12; *see also* [318] at 2. Defendants opposed that remedy then and preserve all objections to any similar remedy in the future. But the potential availability of that relief defeats Plaintiffs' premise that failure to alter the November 2027 election schedule would necessarily leave them without a remedy. Plaintiffs therefore identify, at most, a preference for relief before the regular election—not irreparable prejudice caused by a stay ending

no later than December 28, 2026. Nor does Plaintiffs' threatened preliminary injunction motion establish present prejudice. Any such motion would rise or fall on the facts, law, and timing then before the Court. That motion would fail for the same reason the TRO did—the absence of imminent, irreparable harm the Court already found. [328] at 17; [318] at 6. The possibility of a future motion does not justify denying this stay.

Finally, Plaintiffs themselves recognized the same practical concern in July, when they proposed a stay through either year end or enactment because litigating lines that might soon change would waste judicial and party resources. [305] at 1, 9–10. Their proposal rested on a different view of the operative plans, and Defendants do not invoke it as estoppel. But it remains relevant that Plaintiffs themselves made the practical assessment that a finite pause conserves resources while the governing plans may change.

The requested stay is short and certain. It terminates upon the earliest of enactment, official notice that no new plans will be considered before the 2027 Regular Session, or December 28, 2026. Defendants must promptly notify the Court of material legislative developments and the parties must submit a status report upon a terminating event or by December 28. [323] at 1–2. Any extension would require a separate motion supported by concrete developments and good cause. This structure preserves the Court's control and the parties' positions while avoiding immediate proceedings that may address the wrong plans.

## III. CONCLUSION

Plaintiffs' opposition does not identify material prejudice caused by this short stay. It instead relies on a manufactured estoppel theory, an election their own schedule cannot affect, and a materially different case they inaccurately label "procedurally identical." None justifies forcing a statewide post-*Callais* merits proceeding into immediate discovery and trial while an official

legislative process may replace the plans under review. The requested stay is short and certain. The Court should grant Defendants' Motion [323] and stay further merits proceedings until the earliest of: (1) enactment of new legislative redistricting plans; (2) Defendants' filing of official notice that no new plans will be considered before the 2027 Regular Session; or (3) December 28, 2026.

This the 2nd day of October, 2026.

Respectfully submitted,

STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF MISSISSIPPI; LYNN FITCH, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF MISSISSIPPI; MICHAEL WATSON, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE, DEFENDANTS

By: *<u>/s/ Tommie S. Cardin</u>*
Tommie S. Cardin (MB #5863)
ONE OF THEIR COUNSEL

OF COUNSEL:

Tommie S. Cardin (MB #5863)
P. Ryan Beckett (MB #99524)
B. Parker Berry (MB #104251)
J. Dillon Pitts (MB #106399)
**BUTLER SNOW LLP**
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
P.O. Box 6010, Ridgeland, MS 39158-6010
Phone: 601.948.5711
Fax: 601.985.4500
tommie.cardin@butlersnow.com
ryan.beckett@butlersnow.com
parker.berry@butlersnow.com
dillon.pitts@butlersnow.com

Douglas T. Miracle (MB #9648)
**STATE OF MISSISSIPPI**
**OFFICE OF THE ATTORNEY GENERAL**
Post Office Box 220
Jackson, Mississippi 39205-0220
Tel.: (601) 359-4184
Fax: (601) 359-2003
doug.miracle@ago.ms.gov

**CERTIFICATE OF SERVICE**

I, Tommie S. Cardin, one of the attorneys for the Defendants, do hereby certify that I have this day filed the above and foregoing document with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

This the 2nd day of October, 2026.

*/s/ Tommie S. Cardin*
Tommie S. Cardin

102835604.v2